FILED
2020 Aug-17  PM 04:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

KEITH EDMUND GAVIN,      )
                            )
        Petitioner,        )
                            )
v.                        )    Case No.   4:16-cv-00273-KOB
                            )
JEFFERSON S. DUNN,      )
Commissioner of the Alabama    )
Department of Corrections,     )
                            )
        Respondent.     )

# VOLUME 2

# State Court – Trial Transcript

LUTHER STRANGE
ALABAMA ATTORNEY GENERAL

AND

BETH JACKSON HUGHES
ALABAMA ASSISTANT ATTORNEY GENERAL

ADDRESS OF COUNSEL:

Office of the Alabama Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL  36130
(334) 242-7392

COURT OF CRIMINAL APPEALS No. CR-99-1127
CR-00-0133

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS

### FROM

## CIRCUIT COURT OF ___CHEROKEE___ COUNTY, ALABAMA

CIRCUIT COURT NO. CC-98-61 & CC-98-62

CIRCUIT JUDGE ___DAVID A. RAINS___

**Type of Conviction / Order Appealed From:** CC-98-61 JURY VERDICT OF GUILTY OF CAPITAL MURDER
CC-98-62 JURY VERDICT OF GUILTY OF ATTEMPTED MURDER

**Sentence Imposed:** CC-98-61 DEATH   CC-98-62 LIFE

**Defendant Indigent:** ☒ YES  ☐ NO

KEITH EDMUND GAVIN

**NAME OF APPELLANT**

Stephen P. Bussman          256-845-7900
(Appellant's Attorney)                         (Telephone No.)
P. O. Box 680925
(Address)
Fort Payne,        Alabama        35967
(City)                (State)                (Zip Code)

### V.

## STATE OF ALABAMA

**NAME OF APPELLEE**

(State represented by Attorney General)
NOTE: If municipal appeal, indicate above, and enter
name and address of municipal attorney below.

_____

_____

**(For Court of Criminal Appeals Use Only)**

Appellant's Attorney:

Steven G. Noles          256-845-0716
P. O. Box 680883
Fort Payne, Alabama        35967



202

STATE OF ALABAMA,           *     IN THE CIRCUIT COURT FOR

     PLAINTIFF              *

VS.                        *     CHEROKEE COUNTY, ALABAMA

KEITH EDMUND GAVIN,        *

     DEFENDANT           *     CASE NO:  CC-98-61

## O R D E R

    This Court has appointed Mr. Stephen P. Bussman to represent the Defendant on appeal.  It is this Court's intention that the appointment of Mr. Bussman shall constitute a termination of the appointment of Mr. H. Bayne Smith and Mr. John H. Ufford who have previously represented the Defendant at trial.

    For the purpose of confirming this Court's intention as set out herein, it is

    ORDERED that Mr. H. Bayne Smith and Mr. John H. Ufford is hereby cancelled effective January 5, 2000.  Likewise, the appointment of Mr. Stephen P. Bussman to represent the Defendant on appeal shall be, and is hereby, deemed effective January 5, 2000.

    Done this ___28___ day of January, 2000.

                                DAVID A. RAINS, CIRCUIT JUDGE

FILED

FEB 01 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

Copies to:             Attorney for:

Mr. Michael E. O'Dell     State of Alabama
Mr. Robert F. Johnston

Mr. Stephen P. Bussman     Keith Edmund Gavin

Mr. H. Bayne Smith

Mr. John H. Ufford

ORDER
CC-98-61   (CHEROKEE COUNTY)
PAGE 2


The Court of Criminal Appeals
300 Dexter Avenue
Montgomery, Alabama  36104-3741

The Supreme Court of Alabama
300 Dexter Avenue
Montgomery, Alabama  36104-3741

# FILED

Feb 01 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

**203**

STATE OF ALABAMA,                          *       IN THE CIRCUIT COURT FOR

    PLAINTIFF                          *

                                   *

VS.                                        *       CHEROKEE COUNTY, ALABAMA

                                   *

KEITH EDMUND GAVIN,                        *

    DEFENDANT                          *       CASE NO:  CC-98-61 and
                                                             CC-98-62
                                           *

## O R D E R

    On January 5, 2000, this Court appointed Mr. Stephen P. Bussman to represent the Defendant on appeal in case number CC-98-61. Mr. Bussman has requested that associate counsel be appointed to assist him in the appeal of this Capital Murder case.

    In consideration of the request made, it is **ORDERED** that Mr. Steven G. Noles, 105 B Grand Avenue South, P.O. Box  883, Fort Payne, Alabama  35967, (256) 845-0716, is hereby appointed to assist Mr. Stephen P. Bussman as associate appellate counsel.

    By oversight this Court failed to enter a written order appointing Mr. Bussman as appellate counsel in case number CC-98-62; however, Mr. Bussman has assured the Court that he understood his appointment extended to CC-98-62, and that he likewise requests the service of Mr. Noles as associate appellate counsel in CC-98-62, which said request *is granted.*

    Done this _____1_____ day of February, 2000.

FILED

FEB 0 2 2000

_Carolyn P. Clark_
CIRCUIT CLERK
CHEROKEE CO., AL

_____
DAVID A. RAINS, CIRCUIT JUDGE

ORDER
CC-98-61 and CC-98-62
CHEROKEE COUNTY, ALABAMA
PAGE 2


Copies to:                          Attorney for:

Mr. Michael E. O'Dell              State of Alabama
Mr. Robert F. Johnston

Mr. Stephen P. Bussman             Keith Edmund Gavin
Mr. Steven G. Noles

Mr. H. Bayne Smith

Mr. John H. Ufford                 FILED

The Court of Criminal Appeals      FEB 0 2 2000
300 Dexter Avenue
Montgomery, Alabama  36104-3741    Judy M. Hood
                                   CIRCUIT CLERK
The Supreme Court of Alabama       CHEROKEE COUNTY, AL
300 Dexter Avenue
Montgomery, Alabama  36104-3741

IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA        *
                        *
VS.                     *        CASE NO.: CC-98-61
                        *                  CC-98-62
KEITH EDMUND GAVIN      *
        DEFENDANT       *

## MOTION FOR NEW TRIAL

**COMES NOW,** the Defendant, Keith Edmund Gavin, by and through his attorneys of record, and would say unto the court as follows:

1) It appearing that, due to uncertainty on the part of appointed Appellate Defense Counsel, Stephen P. Bussman, Esq., as to his status as appellate defense counsel for purposes of filing a Motion for New Trial in accordance with ARCrP Rule 24, the possibility exists that he may not file said Motion, and

2) It appearing that said Motion is due to be filed, therefore the Defendant would say unto the court he is due to receive a new trial on the convictions rendered in subject cases for the following reasons:

  a) The verdict is contrary to law and to the weight of the evidence and

  b) The defendant did not receive a fair and impartial trial.

A hearing is requested.

**FILED**

FEB 0 4 2000

*Carolyn M. Smith*
CIRCUIT CLERK
CHEROKEE COUNTY, ALA.

H. Bayne Smith
105 Seaboard Avenue
Piedmont, AL 36272
(256) 447-0022/Fax (256) 447-0046

## CERTIFICATE OF SERVICE

I certify that I have served a copy of the above pleading on the District Attorney this 4th day of February, 2000, by first class mail..

# FILED

FEB 0 4 2000

*Carolyn M. Smith*
CIRCUIT CLERK
CHEROKEE COUNTY, ALA.

## IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,            *

       PLAINTIFF            *

VS.                         * CASE NUMBER: CC-98-61

KEITH EDMUND GAVIN,          *

       DEFENDANT            *

### MOTION FOR NEW TRIAL

Without benefit of any documentation or transcript save for an uncertified copy of the court file and to preserve any and all issues reviewable either on direct appeal or other post-conviction remedies and reserving the right to amend or modify this motion within a reasonable time upon receipt of a transcript and additional documentation, Defendant Keith Edmund Gavin moves the Court to set aside the verdict and imposition of sentence and to grant him a new trial on the adjudication of guilt phase and/or the sentencing phase and/or a rehearing on the imposition of sentence for one or more of the following reasons:

1. The verdict is contrary to the law.

2. The verdict is contrary to the facts.

3. The verdict is contrary to the weight of the evidence.

4. The verdict is contrary to the law and to the weight of the evidence.

5. The sentence is contrary to the law.

6. The sentence does not comport to the facts.

7. The sentence does not comport to the weight of the evidence.

8. The sentence does not comport to the law and to the weight of the evidence.

9. The sentence of death was imposed under the influence of passion, prejudice, or other arbitrary factor or factors.

10. The sentence of death is excessive or disproportionate to the penalty imposed in similar cases.

11. The defendant was denied a fair and impartial trial by duplicating the finding of conviction as a factor of aggravation.

12. The trial court's findings concerning aggravating circumstances were not supported by the evidence.

13. The defendant was denied a fair and impartial trial because the trial court failed to consider trial counsel's performance as a mitigating factor.

14. The trial court's findings concerning mitigating circumstances were not supported by the evidence.

15. The defendant was denied a fair and impartial trial because of improper judicial rulings and actions before and during the guilt and penalty phases of the trial.

16. The defendant was denied a fair and impartial trial because the trial court's instruction on mitigating circumstances created a substantial possibility that the jury interpreted the instruction to prevent it from considering a mitigating circumstance unless it unanimously agreed on that circumstance.

17. The defendant was denied a fair and impartial trial because of the trial court's instructions on the weighing of aggravating and mitigating circumstances and the role of the jury in the sentencing process.

18.   The defendant was denied a fair and impartial trial because the Court erred in sustaining objections to questions addressed to a witness.

19.   The defendant was denied a fair and impartial trial because the Court erred in admitting testimony of a witness.

20.   The defendant was denied a fair and impartial trial because the Court erred in charging the jury.

21.   The defendant was denied a fair and impartial trial because the Court erred in refusing to charge the jury as requested by defendant.

22.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to dismiss appointed counsel.

23.   The defendant was denied a fair and impartial trial because the Court erred in granting the State's motion for consolidation of cases.

24.   The defendant was denied a fair and impartial trial because of extensive pretrial publicity.

25.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to permit discovery from all news organizations.

26.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to require the prosecution to make known any incentives or agreements they have made with any witness who will give testimony in this case.

27.   The defendant was denied a fair and impartial trial

because the Court erred in denying the defendant's motion to require the State of Alabama and other investigators working on the case, in particular the chief investigating officer in this cause, to produce for the defendant the names and information concerning any person or persons suspected of involvement in the death of the deceased or who have information touching on such death.

28.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to require the prosecution to produce all information available on the DNA tests performed.

29.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to require to prosecution to produce the criminal history of all witnesses whom it expects to call to testify in this case as impeachment material under *Brady*.

30.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion for the prosecution to make known to the defendant as to any witness who has identified the defendant as connected with this crime at issue whether such witness has ever made a prior misidentification or was previously hesitant or equivocating in their identification.

31.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion for discovery of prosecution files, records, and information necessary for a fair trial.

32.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to change location of the defendant's incarceration.

33.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's assertion of right to proceed ex parte on application of funds.

34.   The defendant was denied a fair and impartial trial because the Court erred in denying in whole or in part the defendant's application for funds.

35.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to continue dated April 19, 1999, so as to allow the assistance of the Alabama Prison Project.

36.   The defendant was denied a fair and impartial trial because the Court erred in denying in whole or in part the defendant's ex parte application for additional investigative expenses.

37.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to renew motion to dismiss counsel.

38.   The defendant was denied a fair and impartial trial because the Court erred in granting the State's motion to strike surplusage.

39.   The defendant was denied a fair and impartial trial because the Court erred in granting the State's motion to compel discovery.

40.   The defendant was denied a fair and impartial trial

because the Court erred in granting the State's motion for hair samples.

41.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to suppress in court identification of defendant.

42.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion in opposition to the use of stun belt.

43.   The defendant was denied a fair and impartial trial because the Court erred in granting the State's motion to compel attendance of out-of state witness.

44.   The sentence as carried out in Alabama by use of the electric chair unnecessarily exposes defendant to a constitutionally impermissible risk of physical violence, disfigurement, and torment, and constitutes cruel and unusual punishment in violation of the Eight Amendment.

45.   The arbitrary and capricious imposition of capital indictments by the grand juries of the Ninth Judicial Circuit violates the rights of the defendant to equal protection of the laws, due process of the law, freedom from imposition of cruel and unusual punishment, the right to trial by jury, the right to present an effective defense and the right to effective assistance of counsel as such rights are established and guaranteed by U.S. Const., Amends. IV, V, VI, and XIV, and Ala. Const., Art. I §6 and §15.

46.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion

challenging the method of execution.

47.  The defendant was denied a fair and impartial trial because the Court erred in the convening of the Grand Jury.

48.  The defendant was denied a fair and impartial trial because the Court erred in composing the Grand Jury.

49.  The defendant was denied a fair and impartial trial because the Court erred in the selection of the foreperson.

50.  The defendant was denied a fair and impartial trial because the Court erred in the convening of the jury venire.

51.  The defendant was denied a fair and impartial trial because the Court erred in composing the jury venire.

52.  The defendant was denied a fair and impartial trial because the Court erred in the convening of the Petit Jury.

53.  The defendant was denied a fair and impartial trial because the Court erred in composing the Petit Jury.

54.  The defendant was denied a fair and impartial trial because the method of selecting the grand jury and the jury venire in Cherokee County deprived him to his right to a trial by jury of his peers.

55.  The defendant was denied a fair and impartial trial because the Court erred in sustaining objections to questions addressed to the jury venire.

56.  The defendant was denied a fair and impartial trial because the Court erred in allowing questions to be posed to the jury venire.

57.  The defendant was denied a fair and impartial trial because the Court erred in granting the State's challenges for

cause after qualifying on death.

58.  The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's challenges for cause.

59.  The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's *Batson* challenges.

60.  The defendant was denied a fair and impartial trial because the Court erred in allowing the State to use its peremptory challenges to exclude black persons and other groups.

61.  The defendant was denied a fair and impartial trial because the Court rested its decision in part on erroneous, and/or inaccurate, incomplete information in the presentence investigation report which the defendant had no meaningful opportunity to explain or deny.

62.  The defendant was denied a fair and impartial trial because the Court erred in failing to comply with the provisions of Article 2 of Chapter 5 of Title 13A, Code of Alabama (1975).

63.  The defendant was denied a fair and impartial trial because he was denied the effective assistance of counsel at the guilt phase of this trial in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution and Laws of the state of Alabama.

64.  The defendant was denied a fair and impartial trial because the Court erred in failing to appoint experienced counsel for the defendant.

65.  The defendant was denied a fair and impartial trial

because the Court erred in failing to appoint counsel who meet the American Bar Association's guidelines for the appointment and performance of counsel in death penalty cases.

66.  The defendant was denied a fair and impartial trial because the Court erred in failing to properly monitor the performance of assigned counsel to ensure that the defendant is receiving quality representation.

67.  The defendant was denied a fair and impartial trial because the Court erred in not removing appointed counsel *ex mero motu*.

68.  The defendant was denied a fair and impartial trial because of ineffective assistance of counsel.

69.  The defendant was denied a fair and impartial trial because of ineffective assistance of counsel prior to indictment.

70.  The defendant was denied a fair and impartial trial because of ineffective assistance of counsel prior to trial.

71.  The defendant was denied a fair and impartial trial because of ineffective assistance of counsel during the guilt phase of the trial.

72.  The defendant was denied a fair and impartial trial because of ineffective assistance of counsel during the sentencing phase of the trial.

73.  The defendant was denied a fair and impartial trial because he was denied the effective assistance of counsel at the penalty phase of this trial in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution and Laws of the state of Alabama.

74.  The defendant was denied a fair and impartial trial because of ineffective assistance of counsel during the sentencing hearing.

75.  The defendant was denied a fair and impartial trial because of incompetency of counsel.

76.  The defendant was denied a fair and impartial trial because of prosecutorial misconduct during penalty phase argument.

77.  The defendant was denied a fair and impartial trial because of prosecutorial misconduct during sentencing hearing.

78.  The foregoing errors of the Court violate the rights of the defendant under the Constitutions of the United States and Alabama, including, but not limited to, the right to due process of law established by U.S. Const., Amends. V amd XIV and Ala. Const., Art. I § 6; the right to equal protection of the laws established by U.S. Const., Amend. XIV and Ala. Const., Art. I §§ 1, 6 and 22; the freedom from cruel and unusual punishments established by U.S. Const., Amend. VIII and XIV and Ala. Const., Art. I § 15; the right to freedom from unreasonable searches and seizures, as established by U.S. Const., Amends. IV and XIV and Ala. Const., Art. I § 5; the right to effective assistance of counsel, as established by U.S. Const., Amends, VI and XIV and Ala. Const., Art. I § 6; the right to be heard through self or counsel, as established by Ala. Const., Art. I, §§ 6 and 13; the right to compulsory process for witnesses, as established by U.S. Const., Amends. VI and XIV and Ala. Const., Art. I § 6; the right to confrontation of witnesses, as established by U.S. Const.,

Amends. VI and XIV and Ala. Const., Art. I § 6; the right to be
informed of the nature of an accusation, as established by the
U.S. Const., Amends. VI and XIV and Ala. Const., Art. I § 6;
the right to trial by a fair and impartial jury, as established
U.S. Const., Amends. VI and XIV and Ala. Const., Art. I § 6 and
11; the freedom from self-incriminating testimony, as established
by U.S. Const., Amends. V and XIV and Ala. Const., Art. I § 6;
and the right to indictment by a fair and impartial grand jury,
as established by Ala. Const., Art I § 8.

STEPHEN P. BUSSMAN
Attorney for Defendant
P. O. Box 680925
Fort Payne, AL   35968

## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the
foregoing on the District Attorney and Keith Edmund Gavin, by
placing a copy of the same in the United States mail, properly
addressed and postage prepaid, this ~~Fifth~~ 4th day of February, 2000.

STEPHEN P. BUSSMAN

**FILED**

FEB 0 4 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,          *

      PLAINTIFF          *

VS.                        * CASE NUMBER: CC-98-62

KEITH EDMUND GAVIN,        *

      DEFENDANT          *

## MOTION FOR NEW TRIAL

Without benefit of any documentation or transcript save for an uncertified copy of the court file and to preserve any and all issues reviewable either on direct appeal or other post-conviction remedies and reserving the right to amend or modify this motion within a reasonable time upon receipt of a transcript and additional documentation, Defendant Keith Edmund Gavin moves the Court to set aside the verdict and imposition of sentence and to grant him a new trial on the adjudication of guilt phase and/or the sentencing phase and/or a rehearing on the imposition of sentence for one or more of the following reasons:

1. The verdict is contrary to the law.

2. The verdict is contrary to the facts.

3. The verdict is contrary to the weight of the evidence.

4. The verdict is contrary to the law and to the weight of the evidence.

5. The sentence is contrary to the law.

6. The sentence does not comport to the facts.

7. The sentence does not comport to the weight of the evidence.

8.   The sentence does not comport to the law and to the weight of the evidence.

9.   The defendant was *denied a fair and impartial trial* because of improper judicial rulings and actions before and during the guilt and penalty phases of the trial.

10.   The *defendant was denied a fair and impartial trial* because the Court erred in sustaining objections to questions addressed to a witness.

11.   The defendant was denied a fair and impartial trial because the Court erred in admitting testimony of a witness.

12.   The defendant was denied a fair and impartial trial because the Court erred in charging the jury.

13.   The defendant was denied a fair and impartial trial because the Court erred in refusing to charge the jury as requested by defendant.

14.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to dismiss appointed counsel.

15.   The defendant was denied a fair and impartial trial because the Court erred in granting the State's motion for consolidation of cases.

16.   The defendant was denied a fair and impartial trial because of extensive pretrial publicity.

17.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to permit discovery from all news organizations.

18.   The defendant was denied a fair and impartial trial

because the Court erred in denying the defendant's motion to require the prosecution to make known any incentives or agreements they have made with any witness who will give testimony in this case.

19.  The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to require the State of Alabama and other investigators working on the case, in particular the chief investigating officer in this cause, to produce for the defendant the names and information concerning any person or persons suspected of involvement in the death of the deceased or who have information touching on such death.

20.  The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to require the prosecution to produce all information available on the DNA tests performed.

21.  The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to require to prosecution to produce the criminal history of all witnesses whom it expects to call to testify in this case as impeachment material under *Brady*.

22.  The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion for the prosecution to make known to the defendant as to any witness who has identified the defendant as connected with this crime at issue whether such witness has ever made a prior misidentification or was previously hesitant or equivocating in

their identification.

23.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion for discovery of prosecution files, records, and information necessary for a fair trial.

24.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to change location of the defendant's incarceration.

25.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's assertion of right to proceed ex parte on application of funds.

26.   The defendant was denied a fair and impartial trial because the Court erred in denying in whole or in part the defendant's application for funds.

27.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to continue dated April 19, 1999, so as to allow the assistance of the Alabama Prison Project.

28.   The defendant was denied a fair and impartial trial because the Court erred in denying in whole or in part the defendant's ex parte application for additional investigative expenses.

29.   The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to renew motion to dismiss counsel.

30.   The defendant was denied a fair and impartial trial because the Court erred in granting the State's motion to compel

discovery.

31.  The defendant was denied a fair and impartial trial because the Court erred in granting the State's motion for hair samples.

32.  The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion to suppress in court identification of defendant.

33.  The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's motion in opposition to the use of stun belt.

34.  The defendant was denied a fair and impartial trial because the Court erred in granting the State's motion to compel attendance of out-of state witness.

35.  The defendant was denied a fair and impartial trial because the Court erred in the convening of the Grand Jury.

36.  The defendant was denied a fair and impartial trial because the Court erred in composing the Grand Jury.

37.  The defendant was denied a fair and impartial trial because the Court erred in the selection of the foreperson.

38.  The defendant was denied a fair and impartial trial because the Court erred in the convening of the jury venire.

39.  The defendant was denied a fair and impartial trial because the Court erred in composing the jury venire.

40.  The defendant was denied a fair and impartial trial because the Court erred in the convening of the Petit Jury.

41.  The defendant was denied a fair and impartial trial because the Court erred in composing the Petit Jury.

42. The defendant was denied a fair and impartial trial because the method of selecting the grand jury and the jury venire in Cherokee County deprived him to his right to a trial by jury of his peers.

43. The defendant was denied a fair and impartial trial because the Court erred in sustaining objections to questions addressed to the jury venire.

44. The defendant was denied a fair and impartial trial because the Court erred in allowing questions to be posed to the jury venire.

45. The defendant was denied a fair and impartial trial because the Court erred in granting the State's challenges for cause after qualifying on death.

46. The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's challenges for cause.

47. The defendant was denied a fair and impartial trial because the Court erred in denying the defendant's *Batson* challenges.

48. The defendant was denied a fair and impartial trial because the Court erred in allowing the State to use its peremptory challenges to exclude black persons and other groups.

49. The defendant was denied a fair and impartial trial because the Court rested its decision in part on erroneous, and/or inaccurate, incomplete information in the presentence investigation report which the defendant had no meaningful opportunity to explain or deny.

50.  The defendant was denied a fair and impartial trial because he was denied the effective assistance of counsel at the guilt phase of this trial in violation of the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and the Constitution and Laws of the state of Alabama.

51.  The defendant was denied a fair and impartial trial because the Court erred in failing to appoint experienced counsel for the defendant.

52.  The defendant was denied a fair and impartial trial because the Court erred in failing to appoint counsel who met the American Bar Association's guidelines for the appointment and performance of counsel in death penalty cases.

53.  The defendant was denied a fair and impartial trial because the Court erred in failing to properly monitor the performance of assigned counsel to ensure that the defendant is receiving quality representation.

54.  The defendant was denied a fair and impartial trial because the Court erred in not removing appointed counsel *ex mero motu*.

55.  The defendant was denied a fair and impartial trial because of ineffective assistance of counsel.

56.  The defendant was denied a fair and impartial trial because of ineffective assistance of counsel prior to indictment.

57.  The defendant was denied a fair and impartial trial because of ineffective assistance of counsel prior to trial.

58.  The defendant was denied a fair and impartial trial because of ineffective assistance of counsel during the guilt

phase of the trial.

59.  The defendant was denied a fair and impartial trial because of ineffective assistance of counsel during the sentencing hearing.

60.  The defendant was denied a fair and impartial trial because of incompetency of counsel.

61.  The defendant was denied a fair and impartial trial because of prosecutorial misconduct during penalty phase argument.

62.  The defendant was denied a fair and impartial trial because of prosecutorial misconduct during sentencing hearing.

63.  The foregoing errors of the Court violate the rights of the defendant under the Constitutions of the United States and Alabama, including, but not limited to, the right to due process of law established by U.S. Const., Amends. V amd XIV and Ala. Const., Art. I § 6; the right to equal protection of the laws established by U.S. Const., Amend. XIV and Ala. Const., Art. I §§ 1, 6 and 22; the freedom from cruel and unusual punishments established by U.S. Const., Amend. VIII and XIV and Ala. Const., Art. I § 15; the right to freedom from unreasonable searches and seizures, as established by U.S. Const., Amends. IV and XIV and Ala. Const., Art. I § 5; the right to effective assistance of counsel, as established by U.S. Const., Amends, VI and XIV and Ala. Const., Art. I § 6; the right to be heard through self or counsel, as established by Ala. Const., Art. I, §§ 6 and 13; the right to compulsory process for witnesses, as established by U.S. Const., Amends. VI and XIV and Ala. Const., Art. I § 6; the right

to confrontation of witnesses, as established by U.S. Const., Amends. VI and XIV and Ala. Const., Art. I § 6; the right to be informed of the nature of an accusation, as established by the U.S. Const., Amends. VI and XIV and Ala. Const., Art. I § 6; the right to trial by a fair and impartial jury, as established U.S. Const., Amends. VI and XIV and Ala. Const., Art. I § 6 and 11; the freedom from self-incriminating testimony, as established by U.S. Const., Amends. V and XIV and Ala. Const., Art. I § 6; and the right to indictment by a fair and impartial grand jury, as established by Ala. Const., Art I § 8.


STEPHEN P. BUSSMAN
Attorney for Defendant
P. O. Box 680925
Fort Payne, AL  35968


## CERTIFICATE OF SERVICE

I do hereby certify that I have served a copy of the foregoing on the District Attorney and Keith Edmund Gavin, by placing a copy of the same in the United States mail, properly addressed and postage prepaid, this 4th day of February, 2000.


STEPHEN P. BUSSMAN

**FILED**

FEB 0 4 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

## IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

| | | |
|---|---|---|
| STATE OF ALABAMA, | * | |
| Plaintiff, | * | |
| Vs. | * | Case Nos. CC-98-61 |
| | | CC-98-62 |
| KEITH EDMUND GAVIN, | * | |
| Defendant. | * | |

### STATE'S RESPONSE TO DEFENDANT'S
### MOTION FOR NEW TRIAL

Comes now the State of Alabama, by and through its District Attorney, and responds to the Defendant's "Motion For New Trial" as follows:

1. That Rule 24.1 provides that a "court may grant a new trial" for the following grounds:

   (1) For the reason that the verdict is contrary to law or to the weight of the evidence; or
   (2) If for any other reason the defendant has not received a fair and impartial trial. *Rule 24.1(c), Alabama Rules of Criminal Procedure*;

2. That the verdict was not contrary to law or to the weight of the evidence;

3. That the Defendant received a fair and impartial trial.

WHEREFORE THE PREMISES CONSIDERED, the State requests that the Defendant's "Motion For A New Trial" be summarily denied based upon the overwhelming evidence and the clear application of the law in support of the jury's verdict. The Court is well aware that the Defendant received a fair and impartial trial.

Respectfully submitted this 7th day of February, 2000.

**FILED**

FEB 0 8 2000

*Carolyn M. Girad*
CIRCUIT CLERK
CHEROKEE COUNTY, AL

Michael E. O'Dell
District Attorney
Ninth Judicial Circuit

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon counsel for the Defendant, Stephen Bussman, by placing a copy of the same in his DeKalb County courthouse mailbox. Done this 7th day of February, 2000.

Michael E. O'Dell

## IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,                    *

      PLAINTIFF                   *

VS.                                  * CASE NUMBER: CC-98-61 and
                                           CC-98-62

KEITH EDMUND GAVIN,                  *

      DEFENDANT                   *

## MOTION TO SHORTEN TIME

    Comes now the Defendant and requests that this Honorable Court shorten the time for Attorneys Bayne Smith and John Ufford to respond to the Requests for Production which have been filed this date.

                                                      STEPHEN P. BUSSMAN
                                                      Attorney for Defendant

**BUSSMAN & DOBBINS, P.C.**
Attorneys at Law
P.O. Box 680925
212 Alabama Avenue, South
Fort Payne, Alabama 35967
(256)845-7900

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the foregoing upon Attorneys Bayne Smith and John Ufford, by placing same in the U.S. Mail, postage prepaid and properly addressed, this _16_ day of February, 2000.

                                                        STEPHEN P. BUSSMAN

FILED

MAR 0 1 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

<u>IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA</u>

STATE OF ALABAMA,                          *

       PLAINTIFF                      *

VS.                                        * CASE NUMBER: CC-98-61 and
                                        CC-98-62

KEITH EDMUND GAVIN,                         *

       DEFENDANT                      *

<u>ORDER</u>

On Defendant's Motion to Shorten Time and after a consideration of same, it is **ORDERED** that Attorneys Bayne Smith and John Ufford shall respond to the Defendant's Request for Production no later than 5:00 p.m. Friday, February 25, 2000.

DONE this __18__ day of ___February___, 2000.

_____
CIRCUIT JUDGE

Copies to:

Bayne Smith
John Ufford
Stephen P. Bussman

FILED

MAR 0 1 2000

_____
CIRCUIT CLERK
CHEROKEE COUNTY, AL

STATE OF ALABAMA,            *    IN THE CIRCUIT COURT FOR

    PLAINTIFF                *

VS.                         *    CHEROKEE COUNTY, ALABAMA

KEITH EDMUND GAVIN,          *

    DEFENDANT                *    CASE NO: CC-98-61 and
                            *              CC-98-62

## ORDER TO TRANSPORT DEFENDANT

    The Defendant's MOTION FOR NEW TRIAL is set before the Court in the above cases on March 3, 2000, at 9:00 a.m. in the courtroom of the Cherokee County Courthouse, Centre, Alabama, and the Defendant is presently in the custody of the Department of Corrections.  It is therefore,

    **ORDERED** that the Sheriff of Cherokee County, Alabama, or his duly authorized deputy, shall transport the Defendant from the custody of the Department of Corrections, to the Cherokee County Jail for the hearing in the above cases.

    At the conclusion the Sheriff shall redeliver the Defendant to the custody of the Department of Corrections.

    Done this ___25___ day of February, 2000.

                          DAVID A. RAINS—CIRCUIT JUDGE

FILED

MAR 01 2000

___ ___ ___
CIRCUIT CLERK
CHEROKEE COUNTY, AL

ORDER TO TRANSPORT
CHEROKEE COUNTY, ALABAMA

Copies to:                          Attorney for:

Mr. Michael E. O'Dell              State of Alabama
Mr. Robert F. Johnston

Mr. Steven P. Bussman              Keith Edmund Gavin
Mr. Steven G. Noles

Hon. Roy Wynn
Sheriff, DeKalb County

Mr. Cecil Atchison                 FILED
Transfer Agent
Alabama Department of Corrections       MAR 0 1 2000
50 South Ripley Street
Montgomery, Alabama   36130             CIRCUIT CLERK
                                    CHEROKEE COUNTY, AL

233

STATE OF ALABAMA,           \*   IN THE CIRCUIT COURT FOR
                           \*

    PLAINTIFF             \*

VS.                       \*   CHEROKEE COUNTY, ALABAMA
                           \*

KEITH EDMUND GAVIN,       \*

    DEFENDANT             \*   CASE NO:  CC-98-61 and
                           \*                 CC-98-62

## O R D E R

The Defendant's MOTION FOR NEW TRIAL is hereby set for hearing on the 3rd day of March, 2000, at 9:00 a.m. in the Cherokee County Courthouse, Centre, Alabama.

Done this _____ 25 _____ day of February, 2000.

                           DAVID A. RAINS, CIRCUIT JUDGE

Copies to:              Attorney for:

Mr. Michael E. O'Dell      State of Alabama
Mr. Robert F. Johnston

Mr. Stephen P. Bussman     Keith Edmund Gavin
Mr. Steven G. Noles

FILED

MAR 0 1 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

## AUTHORIZATION TO RELEASE INFORMATION

TO H. BAYNE SMITH, ESQ:


I, Keith Edmund Gavin, hereby authorize you to make available to my duly appointed attorneys, Stephen P. Bussman and Steven G. Noles, your complete file compiled as a result of your appointment as my attorney including any and all documents. "Documents" mean the original, or a copy when the original is not available, and non-identical copy, including those that are non-identical because of notations or markings: paper, tapes, discs, or other substances on which communications, data or information is recorded or stored, whether made by manual, mechanical, photographic, or electronic process.  This definition includes all drafts or superseded revisions of each document used in this request.  Document(s) include, but are not limited to:  books, pamphlets, periodicals, letters, reports, memoranda, notations, messages, telegrams, cables, records, drafts, diaries, studies, analysis, summaries, instructions, questionnaires, working papers, taped or printed correspondence, charts, graphs, time and expense records, State of Alabama, Unified Judicial Systems Attorney's Declaration estimates, opinions, memoranda of transactions, electronic or other transcriptions or taping of telephone or personal conversations or conferences or any other written, printed, typed, punched, taped, filed, or graphic matter or tangible thing, of whatever description, however produced or reproduced (including computer stored or generated data, together with instructions and programs necessary to search and retrieve such data), and includes all attachments, and enclosures to any requested item.  "Documents" also include any document that relates in any way to Keith Edmund Gavin that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to Keith Edmund Gavin without limitation, documents concerning the preparation of other documents.  "Relating thereto" means concerning, referring to, relying upon,  alluding to, responding to, in connection with, commenting on, in response to, about, regarding, announcing, explaining, discussing, showing, describing, studying, reflecting, analyzing, or constituting.
For the limited purpose of this authorization and for this authorization alone, I hereby waive any attorney-client priviledge that I may have with you as a result of your representation of me in cases CC-98-61 and CC-98-62 in the Circuit Court of Cherokee County Alabama.

*Keith Edmund Gavin*
KEITH EDMUND GAVIN

Dated: 2-9-2000

**FILED**

MAR 0 7 2000

CIRCUIT CLERK
CHERKEE COUNTY, AL

255

## AUTHORIZATION TO RELEASE INFORMATION

TO JOHN H. UFFORD, II, ESQ:

    I, Keith Edmund Gavin, hereby authorize you to make available to my duly appointed attorneys, Stephen P. Bussman and Steven G. Noles, your complete file compiled as a result of your appointment as my attorney including any and all documents. "Documents" mean the original, or a copy when the original is not available, and non-identical copy, including those that are non-identical because of notations or markings: paper, tapes, discs, or other substances on which communications, data or information is recorded or stored, whether made by manual, mechanical, photographic, or electronic process. This definition includes all drafts or superseded revisions of each document used in this request. Document(s) include, but are not limited to: books, pamphlets, periodicals, letters, reports, memoranda, notations, messages, telegrams, cables, records, drafts, diaries, studies, analysis, summaries, instructions, questionnaires, working papers, taped or printed correspondence, charts, graphs, time and expense records, State of Alabama, Unified Judicial Systems Attorney's Declaration estimates, opinions, memoranda of transactions, electronic or other transcriptions or taping of telephone or personal conversations or conferences or any other written, printed, typed, punched, taped, filed, or graphic matter or tangible thing, of whatever description, however produced or reproduced (including computer stored or generated data, together with instructions and programs necessary to search and retrieve such data), and includes all attachments, and enclosures to any requested item. "Documents" also include any document that relates in any way to Keith Edmund Gavin that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to Keith Edmund Gavin without limitation, documents concerning the preparation of other documents. "Relating thereto" means concerning, referring to, relying upon, alluding to, responding to, in connection with, commenting on, in response to, about, regarding, announcing, explaining, discussing, showing, describing, studying, reflecting, analyzing, or constituting.
    For the limited purpose of this authorization and for this authorization alone, I hereby waive any attorney-client priviledge that I may have with you as a result of your representation of me in cases CC-98-61 and CC-98-62 in the Circuit Court of Cherokee County Alabama.

*Keith Edmund Gavin*
KEITH EDMUND GAVIN

Dated: 2-9-2000

**FILED**

MAR 0 7 2000

*Dana M. Bird*
CIRCUIT CLERK
CHEROKEE COUNTY, AL

236

STATE OF ALABAMA,                  *    IN THE CIRCUIT COURT FOR
                                   *
    PLAINTIFF                      *
                                   *
VS.                                *    CHEROKEE COUNTY, ALABAMA
                                   *
KEITH EDMUND GAVIN,                *
                                   *
    DEFENDANT                      *    CASE NO:  CC-98-61 and
                                   *              CC-98-62

## ORDER EXTENDING TIME
## FOR DISPOSITION OF MOTIONS FOR NEW TRIAL

The parties have come before the Court making known that they consent and agree that the time for consideration of the Defendant's pending MOTIONS FOR NEW TRIAL may be extended to a date certain. The parties have recorded their consent on the record by subscribing this Order below. Upon consideration of the same, it is

ORDERED, ADJUDGED AND DECREED that the time for consideration of the Defendant's MOTIONS FOR NEW TRIAL is continued through and including September 1, 2000. It is further,

ORDERED that the hearing on said Motions set for March 3, 2000, is hereby rescheduled for the 30th day of May, 2000, at 1:30 p.m. in the courtroom of the Cherokee County Courthouse, Centre, Alabama.

The ORDER TO TRANSPORT the Defendant from the Department of Corrections for the hearing on March 3, 2000, is hereby VACATED.

Done this _____2_____ day of March, 2000.

# FILED

MAR 0 8 2000

*Carolyn M. Ward*
CIRCUIT CLERK
CHEROKEE COUNTY, AL

DAVID A. RAINS, CIRCUIT JUDGE

ORDER
CC-98-61 and CC-98-62
(CHEROKEE COUNTY)
PAGE 2


_____
MICHAEL E. O'DELL,
DISTRICT ATTORNEY


_____
MR. STEPHEN P. BUSSMAN,
ATTORNEY FOR DEFENDANT


_____
MR. STEVEN G. NOLES,
ATTORNEY FOR DEFENDANT



Copies to:                      Attorney for:

Mr. Michael E. O'Dell           State of Alabama
Mr. Robert F. Johnston

Mr. Stephen P. Bussman          Keith Edmund Gavin
Mr. Steven G. Noles

Hon. Roy Wynn,
Sheriff                         **FILED**

Mr. Cecil Atchison              MAR 0 8 2000
Transfer Agent
Alabama Department of Corrections   *Carolyn M. Arnold*
50 South Ripley Street          CIRCUIT CLERK
Montgomery, Alabama 36130       CHEROKEE COUNTY, AL
**(by facsimile)**

235

REV. 4/1/97

## NOTICE OF APPEAL TO THE ALABAMA COURT OF CRIMINAL APPEAL
### BY THE TRIAL COURT CLERK

**FILE COPY**

KEITH EDMUND GAVIN _____   v.   [XXX] STATE OF ALABAMA
**APPELLANT'S NAME**                              [  ] CITY OF _____
(as it appears on the indictment)                                    **APPELLEE**

[XXX] CIRCUIT   [  ] DISTRICT   [  ] JUVENILE COURT OF _____ CHEROKEE ____ COUNTY
CIRCUIT/DISTRICT/JUVENILE JUDGE:   DAVID A. RAINS

DATE OF NOTICE OF APPEAL: _____ January 5, 2000 _____
(NOTE: If the appellant is incarcerated and files notice of appeal, this date should be the date on the certificate of service, or if there was no certificate of service, use the postmark date on the envelope.)

**INDIGENCY STATUS:**
Granted Indigency Status at Trial Court:                [XX]Yes ☐ No
Appointed Trial Counsel Permitted to Withdraw on Appeal:   [XXX]Yes ☐ No
Indigent Status Revoked on Appeal:                         ☐ Yes ☐ No

**DEATH PENALTY:**
Does this appeal involve a case where the death penalty has been imposed?   [XXX]Yes ☐ No

**TYPE OF APPEAL:** (Please check the appropriate block.)
[XX]State Conviction        ☐ Pretrial Appeal by State    ☐ Juvenile Transfer Order
☐ Rule 32 Petition          ☐ Contempt Adjudication       ☐ Juvenile Delinquency
☐ Probation Revocation      ☐ Municipal Conviction        ☐ Habeas Corpus Petition
☐ Mandamus Petition         ☐ Writ of Certiorari          ☐ Other(specify) _____

**IF THIS APPEAL IS FROM AN ORDER DENYING A PETITION (I.E. RULE 32 PETITION, WRIT OF HABEAS CORPUS, ETC.) OR FROM ANY OTHER ORDER ISSUED BY THE TRIAL JUDGE, COMPLETE THE FOLLOWING:**

TRIAL COURT CASE NO.: _____

DATE ORDER WAS ENTERED: _____   PETITION: ☐ Dismissed ☐ Denied ☐ Granted

**IF THIS IS AN APPEAL FROM A CONVICTION, COMPLETE THE FOLLOWING:**
DATE OF CONVICTION: _November 6, 1999_   DATE OF SENTENCE: _January 5, 2000_

**YOUTHFUL OFFENDER STATUS:**
Requested:  ☐ Yes [XX]No     Granted:  ☐ Yes ☐ No

**LIST EACH CONVICTION BELOW:** (attach additional page if necessary)   COUNT I:  CAPITAL MURDER
1. Trial Court Case No. _CC-98-61_   CONVICTION: COUNT II:  CAPITAL MURDER
   Sentence: _DEATH_
2. Trial Court Case No. _____   CONVICTION: _____
   Sentence: _____
3. Trial Court Case No. _____   CONVICTION: _____
   Sentence: _____

| POST-JUDGMENT MOTIONS FILED: (complete as appropriate) | Date Filed | Date Denied | Continued by Agreement To (Date) |
|---|---|---|---|
| ☐ Motion for New Trial | 2-4-2000 | | 5-30-2000 |
| ☐ Motion for Judgment of Acquittal | | | |
| ☐ Motion to Withdraw Guilty Plea | | | |
| ☐ Motion in Arrest of Judgment | | | |
| ☐ Other | | | |

COURT REPORTER(S): ........   Trina Higgins
ADDRESS: ...................   Suite 406, Dekalb County Courthouse
                              Fort Payne, Alabama 35967

APPELLATE COUNSEL: ........   Mr. Stephen P. Bussman       Mr. Steven G. Noles
ADDRESS: ...................  212 Alabama Ave. South       105B Grand Ave. South
                              P. O. Box 925                P. O. Box 883
APPELLANT: (IF PRO SE) ......  AIS# Fort Payne, AL  35967   Fort Payne, AL 35967
ADDRESS: ...................

APPELLEE (IF CITY APPEAL): ...
ADDRESS: ...................

I certify that the information provided above is accurate
to the best of my knowledge and I have served a copy of this
Notice of Appeal on all parties to this action on
this _10th_ day of _March_ _____ 2000 .



_Carolyn M. Smith_
CIRCUIT COURT CLERK

| State of Alabama<br>Unified Judicial System<br>Form ARAP-1C      8/91 | REPORTER'S TRANSCRIPT ORDER -- CRIMINAL<br>See Rules 10(c) and 11(b) of the<br>Alabama Rules of Appellate Procedure (A.R. App.P.) | Criminal Appeal Number<br>CR _ 99 - 1127 |
|---|---|---|

**TO BE COMPLETED BY COUNSEL FOR THE APPELLANT OR BY THE APPELLANT IF NOT REPRESENTED AND FILED WITH THE WRITTEN NOTICE OF APPEAL OR FILED WITHIN 7 DAYS AFTER ORAL NOTICE OF APPEAL IS GIVEN.**

[X] CIRCUIT COURT   [ ] DISTRICT COURT   [ ] JUVENILE COURT OF _____ CHEROKEE _____ COUNTY

KEITH EDMUND GAVIN _____ , Appellant

v.   [X] STATE OF ALABAMA   [ ] MUNICIPALITY OF _____

| Case Number<br>CC-98-61; CC-98-62 | Date of Judgment/Sentence/Order<br>1-5-00 |
|---|---|

| Date of Notice of Appeal<br>Oral:  Pending                    Written: | Indigent Status Granted:<br>[X] Yes   [ ] No |
|---|---|

**PART 1. TO BE SIGNED IF THE APPEAL WILL NOT HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT NO REPORTER'S TRANSCRIPT IS EXPECTED AND THAT THE RECORD ON APPEAL SHALL CONSIST OF THE CLERK'S RECORD ONLY. IF THE APPEAL IS FROM DISTRICT COURT OR JUVENILE COURT, I ALSO CERTIFY (1) THAT A STIPULATION OF FACTS WILL BE INCLUDED IN THE CLERK'S RECORD AND THAT THE APPELLANT WAIVES HIS RIGHT TO A JURY TRIAL IF SO ENTITLED; OR (2) THAT THE PARTIES HAVE STIPULATED THAT ONLY QUESTIONS OF LAW ARE INVOLVED AND THAT THE QUESTIONS WILL BE CERTIFIED BY THE JUVENILE/DISTRICT COURT FOR INCLUSION IN THE CLERK'S RECORD (SEE RULE 28(A)(1), ALABAMA RULES OF JUVENILE PROCEDURE, AND §12-12-72, *CODE OF ALABAMA 1975*)

| Signature | Date | Print or Type Name |
|---|---|---|

**PART 2. DESIGNATION OF PROCEEDINGS TO BE TRANSCRIBED.** Request is hereby made to the court reporter(s) indicated below for a transcript of the following proceedings in the above referenced case (see Rule 10(c)(2), Alabama Rules of Appellate Procedure (A.R.App.P.)).

**MARK PROCEEDINGS REQUESTED:**                                          COURT REPORTER(S)

A. [X] **TRIAL PROCEEDINGS** - Although this designation will include the judgment and sentence proceedings, a transcript of the organization of the jury and arguments of counsel must be designated separately          Trina Higgins

B. [X] **ORGANIZATION OF THE JURY** - This designation will include voir dire examination and challenges for cause. Note that in noncapital cases the voir dire of the jury will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)          Trina Higgins

C. [X] **ARGUMENTS OF COUNSEL** - Note that in noncapital cases the arguments of counsel will not be recorded unless the trial judge so directs. (See Rule 19.4, ARCrP.)          Trina Higgins

IN ADDITION TO ANY PROCEEDINGS DESIGNATED ABOVE, SPECIAL REQUEST IS HEREBY MADE TO INCLUDE THE FOLLOWING PROCEEDINGS IN THE REPORTER'S TRANSCRIPT PORTION OF THE RECORD ON APPEAL. (ATTACH ADDITIONAL PAGES IF NECESSARY):

| ADDITIONAL PROCEEDINGS REQUESTED | DATE | COURT REPORTER(S) |
|---|---|---|
| D.  All pretrial & postrial proceedings | 1-05-00 | Trina Higgins |
|  | 11-8-99 | Trina Higgins |
|  | 11-6-99 | Trina Higgins |
| E. | 10-22-99 | Trina Higgins |
|  | 8-10-99 | Trina Higgins |
| F. | 7-02-99 | Trina Higgins |
|  | 4-28-99 | Trina Higgins |
| G. | 11-2-98 | Trina Higgins |
|  | 4-23-98 | Trina Higgins |

**IMPORTANT NOTICE:** The court reporter who reported the proceedings for which a transcript is requested must be identified on this form to be effective. Additionally, it is important to note that the appellant may not be permitted to raise any issue on appeal relating to any proceedings in the case that are not specifically designated on this form for inclusion in the reporter's transcript. A general designation such as "all proceedings" is not sufficient. (See Rule 10(c)(2), A.R.App.P.)

**PART 3. MUST BE SIGNED IF THE APPEAL WILL HAVE A COURT REPORTER'S TRANSCRIPT:**
I CERTIFY THAT I HAVE DISTRIBUTED THIS FORM AS SET OUT BELOW. I ALSO CERTIFY (1) THAT I HAVE MADE SATISFACTORY FINANCIAL ARRANGEMENTS WITH EACH COURT REPORTER LISTED ABOVE FOR PREPARING HIS OR HER PORTION OF THE REPORTER'S TRANSCRIPT HEREIN REQUESTED; OR (2) THAT THE APPELLANT PROCEEDED AT TRIAL AS AN INDIGENT AND THAT THAT STATUS HAS NOT BEEN REVOKED; OR, (3) THAT THE APPELLANT HAS BEEN GIVEN PERMISSION TO PROCEED ON APPEAL IN FORMA PAUPERIS

FILED
MAR 2 1 2000

| Signature | Date  3-20-00 | Print or Type Name  Stephen P. Bussman |
|---|---|---|

**DISTRIBUTION:** Original filed with Clerk of Trial Court and copies mailed to:   (1) Clerk of the Court of Criminal Appeals   (2) Court Reporter(s)   (3) District Attorney

240

| State of Alabama<br>Unified Judicial System<br>Form ARAP-26 (front)    8/91 | **COURT OF CRIMINAL APPEAL**<br>**DOCKETING STATEMENT** | Criminal Appeal Number<br>CR - 99 - 1127 |
|---|---|---|

**A. GENERAL INFORMATION:**

☒ CIRCUIT COURT  ☐ DISTRICT COURT  ☐ JUVENILE COURT OF ___CHEROKEE___ COUNTY

___KEITH EDMUND GAVIN___ , **Appellant**

V.  ☒ STATE OF ALABAMA  ☐ MUNICIPALITY OF _____

| Case Number<br>CC-98-61; CC-98-62 | Date of Complaint or Indictment<br>4-14-98 | Date of Judgment/Sentence/Order<br>1-5-00 |
|---|---|---|
| Number of Days of Trial/Hearing<br>unknown      Days | Date of Notice of Appeal<br>Oral:  Pending | Written: |

Indigent Status Requested:  ☒ Yes  ☐ No          Indigent Status Granted:  ☒ Yes  ☐ No

**B. REPRESENTATION:**

Is Attorney Appointed or Retained?  ☒ Appointed  ☐ Retained.    If no attorney, will appellant represent self?  ☐ Yes  ☐ No

| Appellant's Attorney (Appellant if pro se) (Attach additional pages if necessary)<br>STEPHEN P. BUSSMAN | Telephone Number<br>(256) 845-7900 |
|---|---|

| Address<br>P. O. Box 680925 | City<br>Fort Payne | State<br>AL | Zip Code<br>35968 |
|---|---|---|---|

**C. CODEFENDANTS:** List each CODEFENDANT and the codefendant's case number.

| Codefendant<br>Dwayne Meeks | Case Number |
|---|---|
| Codefendant | Case Number |
| Codefendant | Case Number |

**D. TYPE OF APPEAL:**  Please check the applicable block.

1 ☒ State Conviction   4 ☐ Pretrial Order   7 ☐ Juvenile Transfer Order   10 ☐ Other (Specify)
2 ☐ Post-Conviction Remedy   5 ☐ Contempt Adjudication   8 ☐ Juvenile Delinquency
3 ☐ Probation Revocation   6 ☐ Municipal Conviction   9 ☐ Habeas Corpus Petition

**E. UNDERLYING CONVICTION/CHARGE:**  Regardless of the type of appeal checked in Section D, please check the box beside each offense category for which the appellant has been convicted or charged as it relates to this appeal. Also include the applicable section of the Code of Alabama for State convictions.

1 ☒ Capital Offense - § 13A-5-40   6 ☐ Trafficking in Drugs - §   11 ☐ Fraudulent Practices - §
2 ☒ Homicide - § 13A-4-286-2   7 ☐ Theft - §   12 ☐ Offense Against Family - §
3 ☐ Assault - §   8 ☐ Damage or Intrusion to Property - §   13 ☐ Traffic - DUI - §
4 ☐ Kidnapping/Unlawful Imprisonment - §   9 ☐ Escape - §   14 ☐ Traffic - Other - §
5 ☐ Drug Possession - §   10 ☐ Weapons/Firearms - §   15 ☐ Miscellaneous (Specify) . §

**F. DEATH PENALTY:**
Does this appeal involve a case where the death penalty has been imposed?  ☒ Yes  ☐ No

**FILED**

**G. TRANSCRIPT:**
1. Will the record on appeal have a reporter's transcript?  ☒ Yes  ☐ No
2. If the answer to question "1" is "Yes," state the date the Reporter's Transcript Order was filed.
3. If the answer to question "1" is "No":
   (a) Will a stipulation of facts be filed with the circuit clerk?  ☐ Yes  ☐ No
   (b) Will the parties stipulate that only questions of law are involved and will the trial court certify the questions?  ☐ Yes  ☐ No

NOTE: If the appeal is from the district or juvenile court and the answer to question "1" is "No," then a positive response is required for question 3(a) or 3(b).

MAR 2 1 2000
(Date)
CIRCUIT CLERK
CHEROKEE COUNTY, AL

245

| Form ARAP-26 (back)   8/91 | COURT OF CRIMINAL APPEALS DOCKETING STATEMENT |

**H. POST-JUDGMENT MOTIONS:** List all post-judgment motions by date of filing, type, and date of disposition (whether by trial court order or by the provisions of Rules 20.3 and 24.4 (ARCrP)):

| DATE OF FILING | | | TYPE OF POST-JUDGMENT MOTION | DATE OF DISPOSITION | | |
|---|---|---|---|---|---|---|
| Month | Day | Year | | Month | Day | Year |
| 2 | 04 | 00 | Motion for New Trial | pending | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**I. NATURE OF THE CASE:** Without argument, briefly summarize the facts of the case.

capital case

**J. ISSUE(S) ON APPEAL:** Briefly state the anticipated issues that will be presented on appeal. *(Attach additional pages if necessary.)*

unknown

**K. SIGNATURE:**

3-20-00

IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,                    *

      PLAINTIFF                   *

VS.                                  * CASE NUMBER: CC-98-61 and
                                             CC-98-62

KEITH EDMUND GAVIN,                  *

      DEFENDANT                   *

## MOTION TO SHORTEN TIME

Comes now the Defendant and requests that this Honorable Court shorten the time for Attorneys Bayne Smith and John Ufford to respond to the Requests for Production which have been filed this date.

_____
STEPHEN P. BUSSMAN
Attorney for Defendant

**FILED**

MAY 1 2 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

BUSSMAN & DOBBINS, P.C.
Attorneys at Law
P.O. Box 680925
212 Alabama Avenue, South
Fort Payne, Alabama 35967
(256)845-7900

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the District Attorney, Attorneys Bayne Smith and John Ufford, by placing same in the U.S. Mail, postage prepaid and properly addressed, this ___ day of May, 2000.

_____
STEPHEN P. BUSSMAN

**FILED**

MAY 1 2 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,            *

     PLAINTIFF            *

VS.                         * CASE NUMBER: CC-98-61 and
                                            CC-98-62

KEITH EDMUND GAVIN,          *

     DEFENDANT            *

## MOTION TO SHORTEN TIME

    Comes now the Defendant and requests that this Honorable Court shorten the time for the Custodian of Records of the Alabama Prison Project to respond to the Requests for Production which have been filed this date.

                                        STEPHEN P. BUSSMAN
                                      Attorney for Defendant

**FILED**

MAY 1 2 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

**BUSSMAN & DOBBINS, P.C.**
Attorneys at Law
P.O. Box 680925
212 Alabama Avenue, South
Fort Payne, Alabama 35967
(256)845-7900

## CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the foregoing upon the D.A. and the Alabama Prison Project, by placing same in the U.S. Mail, postage prepaid and properly addressed, this 2 day of May, 2000.

                                        STEPHEN P. BUSSMAN

**FILED**

MAY 1 2 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

## IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,                    *

     PLAINTIFF                    *

VS.                                  * CASE NUMBER: CC-98-61 and
                                   CC-98-62

KEITH EDMUND GAVIN,                  *

     DEFENDANT                    *

### MOTION TO TRANSPORT DEFENDANT

    Comes now counsel for Defendant Keith Edmund Gavin and moves this Honorable Court for an order to transport the Defendant to any jail in a contiguous county to Cherokee County, Alabama at least seven (7) days prior to the hearing scheduled for May 30, 2000.

                                STEPHEN P. BUSSMAN
                                Attorney for Defendant

**FILED**

**BUSSMAN & DOBBINS, P.C.**
Attorneys at Law
P.O. Box 680925
212 Alabama Avenue, South
Fort Payne, Alabama 35967
(256)845-7900

MAY 1 2 2000

*Carey M. Bird*
CIRCUIT CLERK
CHEROKEE COUNTY, AL

### CERTIFICATE OF SERVICE

    I hereby certify that I have served a copy of the foregoing upon the D.A., by placing same in the U.S. Mail, postage prepaid and properly addressed, this 8 day of May, 2000.

                              STEPHEN P. BUSSMAN

**FILED**

MAY 1 2 2000

*Carey M. Bird*
CIRCUIT CLERK
CHEROKEE COUNTY, AL

FROM : 9th_Cir.Cherokee          FAX NO. : 1 256 927 0503      May. 12 2000 09:29AM  P5

## IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,                      *

       PLAINTIFF                  *

VS.                                    *  CASE NUMBER: CC-98-61 and
                                                  CC-98-62

KEITH EDMUND GAVIN,                    *

       DEFENDANT                  *

### ORDER

On Defendant's Motion to Shorten Time and after a consideration of same, it is **ORDERED** that Attorneys Bayne Smith and John Ufford shall respond to the Defendant's Request for Production no later than 5:00 p.m. Tuesday , May 23, 2000.

DONE this 12 day of ___May___, 2000.

_____
CIRCUIT JUDGE

Copies to:

Bayne Smith
John Ufford
Stephen P. Bussman
District Attorney

FILED

MAY 15 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

STATE OF ALABAMA,     * IN THE CIRCUIT COURT FOR

   PLAINTIFF     *

VS.         * CHEROKEE COUNTY, ALABAMA

KEITH EDMUND GAVIN,   *

   DEFENDANT     * CASE NO: CC-98-61 and
            CC-98-62

## ORDER TO TRANSPORT DEFENDANT

A hearing on the Defendant's MOTION FOR NEW TRIAL is set before the Court in the above cases on May 30, 2000, at 1:30 p.m. in the courtroom of the Cherokee County Courthouse, Centre, Alabama, and the Defendant is presently in the custody of the Department of Corrections. It is therefore,

**ORDERED** that the Sheriff of Cherokee County, Alabama, or his duly authorized deputy, shall transport the Defendant from the custody of the Department of Corrections, to the Cherokee County Jail for the hearing in the above cases.

At the conclusion the Sheriff shall redeliver the Defendant to the custody of the Department of Corrections.

Done this _____ day of May, 2000.

_____
DAVID A. RAINS, CIRCUIT JUDGE

# FILED

MAY 1 8 2000

_CIRCUIT CLERK_
CHEROKEE COUNTY, AL

ORDER TO TRANSPORT
CHEROKEE COUNTY, ALABAMA


Copies to:                        Attorney for:

Mr. Michael E. O'Dell             State of Alabama

Mr. Stephen P. Bussman            Keith Edmund Gavin
Mr. Steven G. Noles

Hon. Roy Wynn
Sheriff, DeKalb County                    **FILED**

Mr. Cecil Atchison                   MAY 1 8 2000
Transfer Agent
Alabama Department of Corrections    *Cindy M. Reed*
50 South Ripley Street               CIRCUIT CLERK
Montgomery, Alabama   36130      CHEROKEE COUNTY, AL

IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,      )
     PLAINTIFF       )
                          )
VS.                  )   CASE NO. CC-98-61 and
                       )          CC-98-62
KEITH GAVIN,        )
     DEFENDANT      )

## RESPONSE AND OBJECTION TO SUBPOENA

COMES NOW, John Ufford, and moves the court to consider this, his objection to Subpoena Duces Tecum, a copy of which is attached hereto and incorporated herein as Exhibit A, and as grounds therefor shows the following:

1.  That the items requested have already been provided.

2.  That items that are protected by the attorney client privilege may not be discovered.

3.  That items that may be work product and/or attorney client privileged may not be discovered.

**WHEREFORE**, John Ufford respectfully objects to providing any additional items and prays for an order clarifying the Court's Order of May 15, 2000 as to what if anything should be provided, and in addition and in the alternative moves the court to set this matter for hearing.

JOHN H. UFFORD, II
P.O. Box 396
Crossville, Alabama 35962
(256) 528-2107

**FILED**

-MAY 2 3 2000

*Cindy M. Clark*
CIRCUIT CLERK
CHEROKEE COUNTY, AL

## CERTIFICATE OF SERVICE

I hereby certify that I have this date served a copy of the above and foregoing document on the Cherokee County District Attorney and on Stephen P. Bussman, Attorney for Defendant, by placing a copy of same in the U.S. Mail, postage prepaid, or by placing a copy of same in his proper drawer at the Cherokee County Clerk's Office, this 19th day of May, 2000.

JOHN H. UFFORD, II

*EXHIBIT "A"*

served 5-18-00

COPY

<u>IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA</u>

STATE OF ALABAMA,                      *

      PLAINTIFF                       *

VS.                                    * CASE NUMBER: CC-98-61 and
                                        CC-98-62

KEITH EDMUND GAVIN,                     *

      DEFENDANT                       *

<u>SUBPOENA DUCES TECUM</u>

TO:      John Ufford
            Attorney at Law
            Crossville, Alabama

You are hereby commanded to appear in the Law Office of
Bussman and Dobbins, located at 212 Alabama Avenue, South, Fort
Payne, Alabama, on the 23RD day of May, 2000 no later than 5:00
o'clock p.m., at the request and bring with you the following
items:

1. **Complete** file compiled as a result of your appointment
as attorney for the above-referenced Defendant, including any and
all documents. "Documents" mean the original, or a copy when the
original is not available, and non-identical copy, including
those that are non-identical because of notations or markings:
paper, tapes, discs, or other substances on which communications,
data or information is recorded or stored, whether made by
manual, mechanical, photographic, or electronic process. This
definition includes all drafts or superseded revisions of each
document used in this request. Document(s) include, but are not
limited to: books, pamphlets, periodicals, letters, reports,
memoranda, notations, messages, telegrams, cables, records, -
drafts, diaries, studies, analysis, summaries, instructions,
questionnaires, working papers, taped or printed correspondence,
charts, graphs, time and expense records, State of Alabama

FILE

MAY 1 9 2000

JIMMY LINDSEY

Unified Judicial Systems Attorney's Declaration estimates, COPY
opinions, memoranda of transactions, electronic or other
transcriptions or taping of telephone or personal conversations
or conferences or any other written, printed, typed, punched,
taped, filed, or graphic matter or tangible thing, of whatever
description, however produced or reproduced (including computer
stored or generated data, together with instructions and programs
necessary to search and retrieve such data), and includes all
attachments, and enclosures to any requested item.  "Documents"
also include any document that relates in any way to Keith Edmund
Gavin that constitutes, contains, embodies, reflects, identifies,
states, refers to, deals with, or is in any way pertinent to
Keith Edmund Gavin without limitation, documents concerning the
preparation of other documents.  "Relating thereto" means
concerning, referring to, relying upon,  alluding to, responding
to, in connection with, commenting on, in response to, about,
regarding, announcing, explaining, discussing, showing,
describing, studying, reflecting, analyzing, or constituting.

DONE this 12th day of May, 2000.

*Carolyn M. Smith*
Clerk

## RETURN OF SERVICE

Received this summons and on _____ at _____
I served it on John Ufford, by delivering a copy of the process
and accompanying documents to him.

Dated this _____ day of _____, 2000.

_____
SHERIFF/DEPUTY

FILE

MAY 1 9 2000

JIMMY HOUSE
CLERK

## IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,                    *

      PLAINTIFF                    *

VS.                                  * CASE NUMBER: CC-98-61 and
                                                      CC-98-62

KEITH EDMUND GAVIN,                  *

      DEFENDANT                    *

### MOTION TO SHORTEN TIME

Comes now the Defendant and requests that this Honorable Court shorten the time for Attorneys Bayne Smith and John Ufford to respond to the Requests for Production which have been filed this date.

STEPHEN P. BUSSMAN
Attorney for Defendant

**FILED**

MAY 1 2 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

BUSSMAN & DOBBINS, P.C.
Attorneys at Law
P.O. Box 680925
212 Alabama Avenue, South
Fort Payne, Alabama 35967
(256)845-7900

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon the District Attorney, Attorneys Bayne Smith and John Ufford, by placing same in the U.S. Mail, postage prepaid and properly addressed, this ____ day of May, 2000.

STEPHEN P. BUSSMAN

**FILED**

MAY 1 2 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

FILED

MAY 1 9 2000

JIMMY LINDSEY
CLERK

IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,                    *

      PLAINTIFF                 *

VS.                                  *   CASE NUMBER: CC-98-61 and
                                             CC-98-62
KEITH EDMUND GAVIN,                  *

      DEFENDANT                 *

ORDER

On Defendant's Motion to Shorten Time and after a consideration of same, it is ORDERED that Attorneys Bayne Smith and John Ufford shall respond to the Defendant's Request for Production no later than 5:00 p.m. Tuesday , May 23, 2000.

DONE this 12 day of _____May_____, 2000.

_____
CIRCUIT JUDGE

FILED

MAY 1 5 2000

*CIRCUIT CLERK*
*CHEROKEE COUNTY, AL*

Copies to:

Bayne Smith
John Ufford
Stephen P. Bussman
District Attorney

FILED

MAY 1 9 2000

JIMMY LINDSE
CLERK

253

## IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,            *

     PLAINTIFF            *

VS.                          * CASE NUMBER: CC-98-61 and
                                             CC-98-62

KEITH EDMUND GAVIN,          *

     DEFENDANT            *

### MOTION TO SET HEARING

COMES NOW the Defendant, Keith Edmund Gavin, and moves this Honorable Court to set the Response and Objection to Subpoena filed by John Ufford for hearing immediately so the Defendant will be afforded a fair and full opportunity to present his Motion For New Trial.

                                  STEPHEN P. BUSSMAN
                                  Attorney for Defendant

**FILED**

**BUSSMAN & DOBBINS, P.C.**
Attorneys at Law
P.O. Box 680925
Fort Payne, AL  35968
(256) 845-7900

MAY 2 3 2000

*Cecelyn M. Reid*
CIRCUIT CLERK
CHEROKEE COUNTY, AL

### CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing upon John H. Ufford, II, Esq., and Bain Smith, Esq., by placing copy of same in the U.S. Mail, properly addressed and postage prepaid, this __23__ day of May, 2000.

                                  STEPHEN P. BUSSMAN

STATE OF ALABAMA,            *    IN THE CIRCUIT COURT FOR

    PLAINTIFF           *

                       *

VS.                    *    CHEROKEE COUNTY, ALABAMA

                       *

KEITH EDMUND GAVIN,      *

    DEFENDANT           *    CASE NO:  CC-98-61 and

                       *              CC-98-62

## O R D E R

The RESPONSE AND OBJECTION TO SUBPOENA filed by Mr. John H. Ufford shall come for hearing on the 25th day of May, 2000, at 9:00 a.m. in the courtroom of the Cherokee County Courthouse, Centre, Alabama.

Done this ___23___ day of May, 2000.

                                    _____
                                    DAVID A. RAINS, CIRCUIT JUDGE

Copies to:              Attorney for:

Mr. Michael E. O'Dell     State of Alabama
Mr. Robert F. Johnston

Mr. Stephen P. Bussman    Keith Edmund Gavin
Mr. Steven G. Noles

Mr. John H. Ufford

Mr. H. Bayne Smith

COURT'S EXHIBIT # 1
(5-25-2000)

**JOHN H. UFFORD, II**
**ATTORNEY AT LAW**
**P.O. BOX 396, 8 JUSTICE STREET**
**CROSSVILLE, ALABAMA  35962**
**PHONE: 256-528-2107**
**FAX: 256-528-7429**

February 25, 2000

Steven Bussman
P.O. Box 925
212 Alabama Ave., South
Fort Payne, AL  35967

RE:  KEITH GAVIN

Steve:

Yesterday I had delivered to your office copies of Bayne Smith's file in the Gavin case. My file is the same as Bayne's file except that the complete trial notebook compiled by the District Attorney and supplied to us, was only delivered to Bayne by the District Attorney.  Since I do not have anything in my file that Bayne has not copied for you, I consider your request for what is in my file to be fulfilled by my supplying you with copies of Bayne's file.

Sincerely,

*John Ufford*

John Ufford

JHU/sl

cc:  David A. Rains, Judge
     Bayne Smith

*COURT Ex # 1*
*5-25-2000*

250

COURT'S EXHIBIT # 2
(5-25-2000)

*COURT EXHIBIT #2*
*5·25·2000*



Steve,

This is some case law that the D.A. gave to me at Court when I was arguing a motion prior to trial beginning. Also there are copies of police radio tapes.

John U.

Stephen P. Bussman
P.O. Box 925
Fort Payne, AL 35967

John Ufford Attorney
P O Box 398 Justice St.
Crossville, Al. 35962

RE: Keith Gavin

DATE 2-28-00   NUMBER

*COURT EXHIBIT #2*
*5·25·2000*

COURT'S EXHIBIT # 3
(5-25-2000)

## AUTHORIZATION TO RELEASE INFORMATION

TO JOHN H. UFFORD, II, ESQ:

I, Keith Edmund Gavin, hereby authorize you to make available to my duly appointed attorneys, Stephen P. Bussman and Steven G. Noles, your complete file compiled as a result of your appointment as my attorney including any and all documents. "Documents" mean the original, or a copy when the original is not available, and non-identical copy, including those that are non-identical because of notations or markings: paper, tapes, discs, or other substances on which communications, data or information is recorded or stored, whether made by manual, mechanical, photographic, or electronic process.  This definition includes all drafts or superseded revisions of each document used in this request.  Document(s) include, but are not limited to:  books, pamphlets, periodicals, letters, reports, memoranda, notations, messages, telegrams, cables, records, drafts, diaries, studies, analysis, summaries, instructions, questionnaires, working papers, taped or printed correspondence, charts, graphs, time and expense records, State of Alabama, Unified Judicial Systems Attorney's Declaration estimates, opinions, memoranda of transactions, electronic or other transcriptions or taping of telephone or personal conversations or conferences or any other written, printed, typed, punched, taped, filed, or graphic matter or tangible thing, of whatever description, however produced or reproduced (including computer stored or generated data, together with instructions and programs necessary to search and retrieve such data), and includes all attachments, and enclosures to any requested item.  "Documents" also include any document that relates in any way to Keith Edmund Gavin that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to Keith Edmund Gavin without limitation, documents concerning the preparation of other documents.  "Relating thereto" means concerning, referring to, relying upon,  alluding to, responding to, in connection with, commenting on, in response to, about, regarding, announcing, explaining, discussing, showing, describing, studying, reflecting, analyzing, or constituting.
For the limited purpose of this authorization and for this authorization alone, I hereby waive any attorney-client privilege that I may have with you as a result of your representation of me in cases CC-98-61 and CC-98-62 in the Circuit Court of Cherokee County Alabama.

*Keith Edmund Gavin*
KEITH EDMUND GAVIN

Dated: *2-9-2000*

*COURT EXHIBIT #3*
*5-25-2000*

COURT'S EXHIBIT # 4
(5-25-2000)

## AUTHORIZATION TO RELEASE INFORMATION

TO H. BAYNE SMITH, ESQ:

I, Keith Edmund Gavin, hereby authorize you to make available to my duly appointed attorneys, Stephen P. Bussman and Steven G. Noles, your complete file compiled as a result of your appointment as my attorney including any and all documents. "Documents" mean the original, or a copy when the original is not available, and non-identical copy, including those that are non-identical because of notations or markings: paper, tapes, discs, or other substances on which communications, data or information is recorded or stored, whether made by manual, mechanical, photographic, or electronic process.  This definition includes all drafts or superseded revisions of each document used in this request.  Document(s) include, but are not limited to:  books, pamphlets, periodicals, letters, reports, memoranda, notations, messages, telegrams, cables, records, drafts, diaries, studies, analysis, summaries, instructions, questionnaires, working papers, taped or printed correspondence, charts, graphs, time and expense records, State of Alabama, Unified Judicial Systems Attorney's Declaration estimates, opinions, memoranda of transactions, electronic or other transcriptions or taping of telephone or personal conversations or conferences or any other written, printed, typed, punched, taped, filed, or graphic matter or tangible thing, of whatever description, however produced or reproduced (including computer stored or generated data, together with instructions and programs necessary to search and retrieve such data), and includes all attachments, and enclosures to any requested item. "Documents" also include any document that relates in any way to Keith Edmund Gavin that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to Keith Edmund Gavin without limitation, documents concerning the preparation of other documents.  "Relating thereto" means concerning, referring to, relying upon, alluding to, responding to, in connection with, commenting on, in response to, about, regarding, announcing, explaining, discussing, showing, describing, studying, reflecting, analyzing, or constituting.
For the limited purpose of this authorization and for this authorization alone, I hereby waive any attorney-client privilledge that I may have with you as a result of your representation of me in cases CC-98-61 and CC-98-62 in the Circuit Court of Cherokee County Alabama.

*Keith Edmund Gavin*
KEITH EDMUND GAVIN

Dated: *2-9-2000*

*COURT EXHIBIT #4*
*2-25-2000*

STATE OF ALABAMA,                    *    IN THE CIRCUIT COURT FOR
                                     *
    PLAINTIFF                      *
                                     *
VS.                                  *    CHEROKEE COUNTY, ALABAMA
                                     *
KEITH EDMUND GAVIN,                  *
                                     *
    DEFENDANT                      *    CASE NO:  CC-98-61 and
                                     *              CC-98-62

### O R D E R

    The Defendant was found guilty of Capital Murder and Attempted Murder on November 6, 1999.  On January 5, 2000, the Defendant was sentenced to Death for Capital Murder and Life in the State Penitentiary for Attempted Murder.  The Defendant's trial attorneys were Mr. H. Bayne Smith and Mr. John H. Ufford.

    A MOTION FOR NEW TRIAL was filed on February 4, 2000.  The Defendant's post trial attorneys are Mr. Stephen P. Bussman and Mr. Steven G. Noles.

    The Defendant executed an authorization for his trial attorneys to release information to the post trial attorneys.  On March 1, 2000, the Defendant filed a Subpoena Duces Tecum directed to the trial attorneys for production of the matters set out in said subpoenas.  The trial attorneys were directed to produce same on or before February 25, 2000.

    It is this Court's understanding that in response to said subpoenas the trial attorneys have produced for the post trial attorneys certain matters and things contained in their respective files, but that said attorneys  have not produced those things which they contend are not subject to production as work product, or are otherwise protected under an attorney-client privilege.

ORDER
CC-98-61 and CC-98-62
CHEROKEE COUNTY, ALABAMA
PAGE 2

On May 15, 2000, a second Subpoena Duces Tecum was served on attorney John H. Ufford. It does not appear that a second such subpoena has been served on attorney H. Bayne Smith, but the subpoenas directed to each such attorney are attached hereto.

In response to the subject subpoena, Mr. Ufford filed an objection asserting the attorney client privilege and work product in opposition thereto. Because Mr. Smith has not been served with his subpoena no objection has been filed by him; however, this Court proceeds on the assumption that a like objection might be asserted by Mr. Smith.

Because the Defendant has waived the attorney client privilege, it is hereby ORDERED that attorneys John H. Ufford and H. Bayne Smith shall produce for the Defendant's post trial attorneys on or before 4:00 p.m. on June 2, 2000, all of the matters and things sought by said subpoenas except for such matters which the respective attorneys contend are not subject to discovery as work-product.

Should the trial attorneys, or either of them, insist on a work product objection to the production of any records or other matter sought to be produced, either or both attorneys asserting such an objection should either produce the work-product material or file a brief with supporting legal authorities on or before 4:00

ORDER
CC-98-61 and CC-98-62
CHEROKEE COUNTY, ALABAMA
PAGE 3


p.m. on June 9, 2000.   Should a brief be filed, the Court will decide the matter on the basis thereof, or set a hearing as deemed appropriate.  If a brief is timely filed by the trial attorney, the work-product material made the subject of such brief shall be placed in a sealed envelope and delivered to the Court with the filing of the brief.   If no brief is filed, or the trial attorney(s) determine that their respective objections are without merit, the work-product material in question shall be produced no later than 4:00 p.m. on June 9, 2000.

Done this _____26_____ day of May, 2000.

_____
DAVID A. RAINS, CIRCUIT JUDGE

Copies to:                     Attorney for:

Mr. Michael E. O'Dell          State of Alabama
Mr. Robert F. Johnson

Mr. Stephen P. Bussman         Keith Edmund Gavin
Mr. Steven G. Noles

Mr. H. Bayne Smith

Mr. John H. Ufford


GAVIN.7

EXHIBIT "A"

served 5-18-00

COPY

## IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,                         *

    PLAINTIFF                          *

VS.                                       *   CASE NUMBER: CC-98-61 and
                                                        CC-98-62

KEITH EDMUND GAVIN,                       *

    DEFENDANT                          *

### SUBPOENA DUCES TECUM

TO:      John Ufford
         Attorney at Law
         Crossville, Alabama

    You are hereby commanded to appear in the Law Office of Bussman and Dobbins, located at 212 Alabama Avenue, South, Fort Payne, Alabama, on the 23RD day of May, 2000 no later than 5:00 o'clock p.m., at the request and bring with you the following items:

    1. **Complete** file compiled as a result of your appointment as attorney for the above-referenced Defendant, including any and all documents.  "Documents" mean the original, or a copy when the original is not available, and non-identical copy, including those that are non-identical because of notations or markings: paper, tapes, discs, or other substances on which communications, data or information is recorded or stored, whether made by manual, mechanical, photographic, or electronic process.  This definition includes all drafts or superseded revisions of each document used in this request.  Document(s) include, but are not limited to:  books, pamphlets, periodicals, letters, reports, memoranda, notations, messages, telegrams, cables, records, drafts, diaries, studies, analysis, summaries, instructions, questionnaires, working papers, taped or printed correspondence, charts, graphs, time and expense records, State of Alabama,

FILE

MAY 1 9 2000

JIMMY LINDSE
CLERK

COPY

Unified Judicial Systems Attorney's Declaration estimates, opinions, memoranda of transactions, electronic or other transcriptions or taping of telephone or personal conversations or conferences or any other written, printed, typed, punched, taped, filed, or graphic matter or tangible thing, of whatever description, however produced or reproduced (including computer stored or generated data, together with instructions and programs necessary to search and retrieve such data), and includes all attachments, and enclosures to any requested item.  "Documents" also include any document that relates in any way to Keith Edmund Gavin that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to Keith Edmund Gavin without limitation, documents concerning the preparation of other documents.  "Relating thereto" means concerning, referring to, relying upon,  alluding to, responding to, in connection with, commenting on, in response to, about, regarding, announcing, explaining, discussing, showing, describing, studying, reflecting, analyzing, or constituting.

DONE this 12th day of May, 2000.

Carolyn M. Smith
Clerk

## RETURN OF SERVICE

Received this summons and on _____ at _____
I served it on John Ufford, by delivering a copy of the process and accompanying documents to him.

Dated this _____ day of _____, 2000.

_____
SHERIFF/DEPUTY

FILE

MAY 1 9 2000

JIMMY LINDSE
CLERK

**FILE COPY**

IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,                    *

　　　　PLAINTIFF                     *

VS.                                  *   CASE NUMBER: CC-98-61 and
　　　　　　　　　　　　　　　　　　　　　　　　　　　CC-98-62
KEITH EDMUND GAVIN,                  *

　　　　DEFENDANT                     *


## SUBPOENA DUCES TECUM


TO:      H. Bayne Smith
         Attorney at Law
         105 Seaboard Avenue
         Piedmont, AL 36272

     You are hereby commanded to appear in the Law Office of
Bussman and Dobbins, located at 212 Alabama Avenue, South, Fort
Payne, Alabama, on the 23RD day of May, 2000 no later than  5:00
o'clock p.m., at the request and bring with you the following
items:

     1.  **Complete** file compiled as a result of your appointment
as attorney for the above-referenced Defendant, including any and
all documents.  "Documents" mean the original, or a copy when the
original is not available, and non-identical copy, including
those that are non-identical because of notations or markings:
paper, tapes, discs, or other substances on which communications,
data or information is recorded or stored, whether made by
manual, mechanical, photographic, or electronic process.  This
definition includes all drafts or superseded revisions of each
document used in this request.  Document(s) include, but are not
limited to:  books, pamphlets, periodicals, letters, reports,
memoranda, notations, messages, telegrams, cables, records,
drafts, diaries, studies, analysis, summaries, instructions,
questionnaires, working papers, taped or printed correspondence,

COPY

Unified Judicial Systems Attorney's Declaration estimates, opinions, memoranda of transactions, electronic or other transcriptions or taping of telephone or personal conversations or conferences or any other written, printed, typed, punched, taped, filed, or graphic matter or tangible thing, of whatever description, however produced or reproduced (including computer stored or generated data, together with instructions and programs necessary to search and retrieve such data), and includes all attachments, and enclosures to any requested item.  "Documents" also include any document that relates in any way to Keith Edmund Gavin that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is in any way pertinent to Keith Edmund Gavin without limitation, documents concerning the preparation of other documents.  "Relating thereto" means concerning, referring to, relying upon,  alluding to, responding to, in connection with, commenting on, in response to, about, regarding, announcing, explaining, discussing, showing, describing, studying, reflecting, analyzing, or constituting.

DONE this 12ᵀᴴ day of May, 2000.

_Carolyn M. Smith_
Clerk

### RETURN OF SERVICE

Received this summons and on _____ at _____
I served it on John Ufford, by delivering a copy of the process and accompanying documents to him.

Dated this _____ day of _____, 2000.

_____
SHERIFF/DEPUTY

FILED

MAY 1 9 2000

JIMMY LINDSE
CLERK

DEFENDANT'S EXHIBIT # 1
(5-30-2000)

```
JUR210                    ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:      1
OPER: CAS                          CHEROKEE COUNTY              RUN DATE: 05/30/2000
                           STRIKE LIST BY: STRIKE#             RUN TIME: 12:40:06

TERM DATE: 04/13/1998    PANEL: ALL    STATUS: ALL
```

| STRIKE | JUROR# | JUROR'S NAME | BIRTH DATE | SEX | RACE | PANEL | STATUS |
|--------|--------|--------------|------------|-----|------|-------|--------|
| 0007 | 002533 | ANDERSON PAULA C | 01/26/1966 | F | W | 03 | ACTIVE |
| 0010 | 011624 | BAILEY ANGELA JILL | 08/18/1964 | F | W | 03 | ACTIVE |
| 0019 | 004609 | BROWN SALETA G | 04/19/1969 | F | W | 03 | ACTIVE |
| 0021 | 000584 | BURT MELISSA B | 10/31/1971 | F | W | 03 | ACTIVE |
| 0028 | 006192 | CHANDLER TOMMY R | 02/12/1966 | M | W | 03 | ACTIVE |
| 0036 | 014080 | CRIDER PAUL L | 01/11/1936 | M | W | 03 | ACTIVE |
| 0055 | 008596 | GOODWIN CAROL L | 01/26/1967 | F | W | 03 | ACTIVE |
| 0057 | 016480 | GOWENS HELEN M | 09/27/1940 | F | W | 03 | ACTIVE |
| 0060 | 002332 | HALL DORIS M | 11/30/1944 | F | W | 03 | ACTIVE |
| 0063 | 015230 | HARLAN MICHAEL J | 12/12/1944 | M | W | 03 | ACTIVE |
| 0079 | 000052 | KERR FREDA W | 08/23/1936 | F | W | 03 | ACTIVE |
| 0113 | 001130 | PARR LAGINA FANNELL | 08/07/1969 | F | W | 03 | ACTIVE |
| 0116 | 003988 | PRUITT BETTY J | 02/05/1937 | F | W | 03 | ACTIVE |
| 0117 | 009445 | PRUITT MELANIE L | 04/30/1962 | F | W | 03 | ACTIVE |
| 0121 | 001710 | REED LOYD D | 11/22/1946 | M | W | 03 | ACTIVE |
| 0144 | 007112 | TIERCE M JOYCE | 04/14/1936 | F | W | 03 | ACTIVE |
| 0145 | 015854 | TILLERY FREDA C | 04/05/1948 | F | W | 03 | ACTIVE |
| 0147 | 011766 | TRAMMELL GLENDA T | 12/01/1970 | F | W | 03 | ACTIVE |

```
            * * *   P R O G R A M   T O T A L S * * *

RECORDS WRITTEN:     18
```



DEFENDANT'S EXHIBIT # 2
(5-30-2000)

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM         PAGE:      1
OPER: CAS                          CHEROKEE COUNTY              RUN DATE: 05/30/2000
                             JUROR VENIRE BY STRIKE#            RUN TIME: 12:26:20

TERM DATE: 04/13/1998   PANEL: ALL    STATUS: ALL
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0001 | ACKER CYNTHIA J<br>ROUTE 1 BOX 177<br>PIEDMONT AL 36272 | 10/08/1958<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 013864 |
| 0002 | ACKER TED H<br>2680 CO RD 10<br>PIEDMONT AL 36272 | 01/01/1950<br>STATUS: OTHER<br>OCCUPATION: ELECTRONICS S'VISOR<br>EMPLOYER: ANNISTON ARMY DEPOT | M | W | 04 | 012002 |
| 0003 | ACREY MATTIE L<br>ROUTE 1 BOX 904<br>CENTRE AL 35960 | 01/17/1927<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 002227 |
| 0004 | ADKISON ZELMA B<br>GENERAL DELIVERY<br>SPRING GARDEN AL 36275 | 04/15/1943<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 007197 |
| 0005 | AGAN BILLY H<br>ROUTE 1 BOX 71E<br>LEESBURG AL 35983 | 05/02/1938<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 014709 |
| 0006 | AMMONS FRANKLIN<br>ROUTE 2 BOX 217A 1<br>CENTRE AL 35960 | 03/20/1951<br>STATUS: EXCUSED<br>OCCUPATION: | M | B | 01 | 015743 |
| 0007 | ANDERSON PAULA C<br>5805 HWY 9 SOUTH<br>PIEDMONT AL 36272 | 01/26/1966<br>STATUS: ACTIVE<br>OCCUPATION: | F | W | 03 | 002533 |
| 0008 | ASHWORTH ARLENE<br>P O BOX 401<br>CEDAR BLUFF AL 35959 | 03/20/1926<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 007424 |
| 0009 | ASHWORTH BONNIE F<br>ROUTE 1 BOX 326<br>PIEDMONT AL 36272 | 08/28/1918<br>STATUS: DISQUALIFIED<br>OCCUPATION: | F | W | 02 | 010448 |
| 0010 | BAILEY ANGELA JILL<br>245 CO RD 53<br>CEDAR BLUFF AL 35959 | 08/18/1964<br>STATUS: ACTIVE<br>OCCUPATION: TEACHER<br>EMPLOYER: CC BD OF ED | F | W | 03 | 011624 |
| 0011 | BARNES HARVEY E<br>ROUTE 2 BOX 377 B<br>CENTRE AL 35960 | 07/22/1926<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 014926 |
| 0012 | BISHOP RUSSEL L<br>ROUTE 3 BOX 238<br>CENTRE AL 35960 | 05/31/1935<br>STATUS: DISQUALIFIED<br>OCCUPATION: | M | W | 01 | 004187 |
| 0013 | BOBO MILTON J<br>ROUTE 2 BOX 400 E<br>LEESBURG AL 35983 | 12/08/1944<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 014498 |
| 0014 | BONE DAVID A<br>ROUTE 2 BOX 185L<br>LEESBURG AL 35983 | 09/05/1974<br>STATUS: DISQUALIFIED<br>OCCUPATION: | M | W | 02 | 010502 |

DEFENDANT'S EXHIBIT

```
JUR220                ALABAMA JUDICIAL INFORMATION SYSTEM      PAGE:      2
OPER: CAS                        CHEROKEE COUNTY              RUN DATE: 05/30/2000
                            JUROR VENIRE BY STRIKE#           RUN TIME: 12:26:20

TERM DATE: 04/13/1998   PANEL: ALL  STATUS: ALL
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0015 | BRADLEY TEENA A<br>ROUTE 2 BOX 394A<br>CEDAR BLUFF   AL   35959 | 08/05/1965<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 008061 |
| 0016 | BROOKS SUSAN W<br>P O BOX 253<br>CENTRE   AL   35960 | 10/05/1963<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 013018 |
| 0017 | BROWN JAMES C<br>RT 6 BOX 298 H<br>FORT PAYNE   AL   35967 | 06/29/1973<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 002992 |
| 0018 | BROWN MICHAEL L<br>P O BOX 763<br>CEDAR BLUFF   AL   35959 | 07/29/1953<br>STATUS: OTHER<br>OCCUPATION: MFG SPECIALIST<br>EMPLOYER: WESTINGHOUSE | M | B | 01 | 009660 |
| 0019 | BROWN SALETA G<br>10430 CO RD 19<br>CENTRE   AL   35960 | 04/19/1969<br>STATUS: ACTIVE<br>OCCUPATION: | F | W | 03 | 004609 |
| 0020 | BUCHANAN BRUCE L<br>P O BOX 192<br>CENTRE   AL   35960 | 05/16/1952<br>STATUS: OTHER<br>OCCUPATION: LINEMAN<br>EMPLOYER: CHEROKEE ELEC COOP | M | W | 01 | 014607 |
| 0021 | BURT MELISSA B<br>P O BOX 115<br>GAYLESVILLE   AL   35973 | 10/31/1971<br>STATUS: ACTIVE<br>OCCUPATION: | F | W | 03 | 000584 |
| 0022 | BUTLER CHARLOTTE S<br>510 CIRCLE DR<br>LEESBURG   AL   35983 | 04/20/1935<br>STATUS: OTHER<br>OCCUPATION: SAND ROCK LUNCHROOM<br>EMPLOYER: CC BD OF ED | F | W | 04 | 004711 |
| 0023 | BYNUM JOSEPH L<br>P O BOX 297<br>CEDAR BLUFF   AL   35959 | 09/29/1977<br>STATUS: EXCUSED<br>OCCUPATION: | M | B | 01 | 002029 |
| 0024 | CHAMBERS ERBY L<br>ROUTE 1 BOX 541<br>LEESBURG   AL   35983 | 08/21/1911<br>STATUS: DISQUALIFIED<br>OCCUPATION: | M | W | 02 | 009367 |
| 0025 | CHANCELLOR JONATHAN L<br>ROUTE 2 BOX 144<br>CEDAR BLUFF   AL   35959 | 09/19/1971<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 014368 |
| 0026 | CHANDLER ANNIE R<br>113 TATUM STREET<br>CENTRE   AL   35960 | 09/09/1916<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 003374 |
| 0027 | CHANDLER PEGGY S<br>312 STINSON STREET<br>CENTRE   AL   35960 | 01/21/1944<br>STATUS: POSTPONED<br>OCCUPATION: | F | W | 01 | 003472 |
| 0028 | CHANDLER TOMMY R<br>5405 CO RD 22<br>CENTRE   AL   35960 | 02/12/1966<br>STATUS: ACTIVE<br>OCCUPATION: | M | W | 03 | 006192 |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM          PAGE:      3
OPER: CAS                          CHEROKEE COUNTY              RUN DATE: 05/30/2000
                              JUROR VENIRE BY STRIKE#           RUN TIME: 12:26:20

TERM DATE: 04/13/1998      PANEL: ALL    STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS          BIRTH DATE    SEX  RACE    PANEL    JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|---|---|---|---|---|---|---|
| 0029 | COFFEY BILLY M<br>ROUTE 3-BOX 181<br>PIEDMONT AL 36272<br>STATUS: EXCUSED<br>OCCUPATION: | 02/13/1949 | M | W | 01 | 013234 |
| 0030 | COFFEY WEBBY B<br>ROUTE 4 BOX 441C<br>CENTRE AL 35960<br>STATUS: EXCUSED<br>OCCUPATION: | 06/25/1930 | M | W | 01 | 008916 |
| 0031 | CONNER JACKIE L<br>3485 CO RD 101<br>CENTRE AL 35960<br>STATUS: OTHER<br>OCCUPATION: TECHNICIAN<br>EMPLOYER: LINDALE MFG CO | 11/20/1965 | M | W | 01 | 001083 |
| 0032 | COOK ROBERT L III<br>14205 CO RD 29<br>LOT # 10<br>CENTRE AL 35960<br>STATUS: EXCUSED<br>OCCUPATION: | 05/22/1972 | M | W | 01 | 012826 |
| 0033 | COOPER MACK E<br>ROUTE 2 BOX 93<br>GAYLESVILLE AL 35973<br>STATUS: DISQUALIFIED<br>OCCUPATION: | 08/22/1942 | M | W | 02 | 003883 |
| 0034 | CRANE LENA G<br>P O BOX 204<br>CEDAR BLUFF AL 35959<br>STATUS: EXCUSED<br>OCCUPATION: | 09/01/1941 | F | W | 01 | 010194 |
| 0035 | CRIDER JOE F<br>10245 CO RD 29<br>CENTRE AL 35960<br>STATUS: OTHER<br>OCCUPATION: PIPE SHOP WORKER<br>EMPLOYER: INLAND-ROME | 05/01/1942 | M | W | 04 | 013123 |
| 0036 | CRIDER PAUL L<br>7350 CO RD 29<br>CENTRE AL 35960<br>STATUS: ACTIVE<br>OCCUPATION: | 01/11/1936 | M | W | 03 | 014080 |
| 0037 | CRONAN JOHNNY B<br>ROUTE 1 BOX 321<br>PIEDMONT AL 36272<br>STATUS: UNDELIVERED<br>OCCUPATION: | 01/15/1933 | M | W | 01 | 004810 |
| 0038 | CRUNK EMMAGENE H<br>ROUTE 3 BOX 317<br>CENTRE AL 35960<br>STATUS: UNDELIVERED<br>OCCUPATION: | 11/21/1956 | F | W | 01 | 010644 |
| 0039 | DAUGHERTY IRIS E<br>ROUTE 2 BOX 218 A<br>COLLINSVILLE AL 35961<br>STATUS: DISQUALIFIED<br>OCCUPATION: | 01/28/1928 | M | W | 01 | 006228 |
| 0040 | DAVIS PAMELA D<br>RT 3 BOX 364<br>CENTRE AL 35960<br>STATUS: EXCUSED<br>OCCUPATION: | 07/25/1966 | F | W | 01 | 009869 |
| 0041 | DECKER SHANE E<br>3315 ARMSTRONG ROAD<br>CEDAR BLUFF AL 35959<br>STATUS: UNDELIVERED<br>OCCUPATION: | 04/29/1971 | M | W | 01 | 016680 |
| 0042 | DEERMAN MARY S<br>PO BOX 135  ROUTE 1<br>LEESBURG AL 35983<br>STATUS: EXCUSED<br>OCCUPATION: | 06/02/1934 | F | W | 01 | 005870 |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM          PAGE:     4
OPER: CAS                          CHEROKEE COUNTY              RUN DATE: 05/30/2000
                               JUROR VENIRE BY STRIKE#          RUN TIME: 12:26:20

TERM DATE: 04/13/1998   PANEL: ALL   STATUS: ALL
------------------------------------------------------------------------------------
STRIKE   JUROR'S NAME / ADDRESS        BIRTH DATE   SEX   RACE   PANEL   JUROR#
------------------------------------------------------------------------------------
0043   DOTSON COREY M              01/28/1974    M      W     01     007307
       615 MCFADDEN CIRCLE              STATUS: EXCUSED
       CENTRE  AL  35960           OCCUPATION:

0044   DREW REX E                  04/03/1962    M      W     04     011881
       372 OVERLOOK ST                  STATUS: OTHER
       LEESBURG  AL  35983         OCCUPATION: FIXER
                                   EMPLOYER: ROBIN LYNN MILLS

0045   DUPREE JAMES G              03/16/1953    M      B     01     009220
       ROUTE 1 BOX 497                  STATUS: POSTPONED
       LEESBURG  AL  35983         OCCUPATION:

0046   DUTTON ALICE C              12/01/1949    F      W     01     010389
       ROUTE 2 BOX 216                  STATUS: POSTPONED
       COLLINSVILLE  AL  35961     OCCUPATION:

0047   FARRAR RUBY K               08/31/1919    F      W     01     005559
       324 WILLIAM STREET               STATUS: EXCUSED
       CENTRE  AL  35960           OCCUPATION:

0048   FIELDS SHIELA S             06/26/1948    F      W     01     008395
       3806 OLD HWY 9                   STATUS: EXCUSED
       CEDAR BLUFF  AL  35959      OCCUPATION:

0049   FREEMAN KENNETH J           10/06/1925    M      W     01     000989
       ROUTE 1 BOX 116 COUNTRY C        STATUS: EXCUSED
       CENTRE  AL  35960           OCCUPATION:

0050   GARMON WANDA H              06/16/1948    F      W     01     015124
       540 CO RD 355                    STATUS: EXCUSED
       LEESBURG  AL  35983         OCCUPATION:

0051   GARNER MICHAEL D            12/20/1965    M      W     01     011354
       1671 CO RD 44                    STATUS: EXCUSED
       LEESBURG  AL  35983         OCCUPATION:

0052   GARRETT HARBIN              07/01/1939    M      W     01     009343
       13640 HWY 411 NORTH              STATUS: OTHER
       CENTRE  AL  35960           OCCUPATION: MILLWRIGHT
                                   EMPLOYER: GOODYEAR

0053   GARRETT MARTHA W            01/02/1938    F      W     02     013664
       P O BOX 244                      STATUS: EXCUSED
       CENTRE  AL  35960           OCCUPATION:

0054   GLADDEN LEROY R             02/23/1952    M      W     01     003580
       P O BOX 353                      STATUS: DISQUALIFIED
       FORT PAYNE  AL  35967       OCCUPATION:

0055   GOODWIN CAROL L             01/26/1967    F      W     03     008596
       910 CO RD 151                    STATUS: ACTIVE
       COLLINSVILLE  AL  35961     OCCUPATION:

0056   GOODWIN DEWAYNE             08/11/1955    M      W     02     014386
       PO BOX 805                       STATUS: DISQUALIFIED
       CENTRE  AL  35960           OCCUPATION:
```

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM          PAGE:     5
OPER: CAS                          CHEROKEE COUNTY              RUN DATE: 05/30/2000
                             JUROR VENIRE BY STRIKE#            RUN TIME: 12:26:20

TERM DATE: 04/13/1998    PANEL: ALL    STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS        BIRTH DATE    SEX  RACE   PANEL    JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# | STATUS |
|--------|------------------------|------------|-----|------|-------|--------|--------|
| 0057 | GOWENS HELEN M<br>8914 HWY 411 N<br>CENTRE   AL   35960 | 09/27/1940 | F | W | 03 | 016480 | ACTIVE |
| 0058 | GREEN RODNEY D<br>1307 ALEXIS ROAD<br>CENTRE   AL   35960 | 04/23/1954 | M | W | 01 | 009565 | DISQUALIFIED |
| 0059 | GUICE WILMA Y<br>4235 CO RD 22<br>CENTRE   AL   35960 | 12/08/1935 | F | W | 01 | 014278 | EXCUSED |
| 0060 | HALL DORIS M<br>730 CO RD 127<br>GAYLESVILLE   AL   35973 | 11/30/1944 | F | W | 03 | 002332 | ACTIVE |
| 0061 | HAMILTON KARLA H<br>ROUTE 2 BOX 266B<br>CENTRE   AL   35960 | 07/30/1970 | F | W | 01 | 006324 | UNDELIVERED |
| 0062 | HAMPTON OTTIS E<br>ROUTE 1 BOX 952<br>CENTRE   AL   35960 | 05/09/1917 | M | W | 01 | 008606 | EXCUSED |
| 0063 | HARLAN MICHAEL J<br>5245 OAK TREE LANE<br>CEDAR BLUFF   AL   35959 | 12/12/1944 | M | W | 03 | 015230 | ACTIVE |
| 0064 | HART JEFFREY J<br>ROUTE 1 BOX 198<br>CEDAR BLUFF   AL   35959 | 08/07/1973 | M | B | 01 | 005773 | UNDELIVERED |
| 0065 | HAWKINS TERRY L<br>ROUTE 1 BOX 101 B2<br>CEDAR BLUFF   AL   35959 | 01/19/1960 | M | W | 01 | 003575 | UNDELIVERED |
| 0066 | HICKS JOSEPH E<br>ROUTE 5 BOX 183<br>CENTRE   AL   35960 | 12/26/1926 | M | W | 01 | 012609 | EXCUSED |
| 0067 | HILL HENRY L<br>ROUTE 1 BOX 130K HOUSE NO<br>CEDAR BLUFF   AL   35959 | 08/28/1952 | M | W | 01 | 009073 | UNDELIVERED |
| 0068 | HOLCOMB JODY L<br>203 SOUTH PRATT STREET<br>CENTRE   AL   35960 | 11/26/1973 | M | W | 01 | 015884 | UNDELIVERED |
| 0069 | HUDGINS JOHN P<br>PO BOX 24<br>CEDAR BLUFF   AL   35959 | 10/22/1963 | M | W | 01 | 012100 | EXCUSED |
| 0070 | HUNTER MILDRED A<br>P O BOX 222<br>CEDAR BLUFF   AL   35959 | 11/21/1932 | F | W | 01 | 013344 | EXCUSED |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM              PAGE:    6
OPER: CAS                          CHEROKEE COUNTY               RUN DATE: 05/30/2000
                                JUROR VENIRE BY STRIKE#          RUN TIME: 12:26:20

TERM DATE: 04/13/1998   PANEL: ALL   STATUS: ALL
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0071 | INGRAM GLEN A<br>ROUTE 1 BOX 603<br>CENTRE AL 35960 | 10/26/1918<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 000475 |
| 0072 | INGRAM JOHN C<br>484 CO RD 641<br>CENTRE AL 35960 | 02/22/1952<br>STATUS: POSTPONED<br>OCCUPATION: | M | W | 01 | 013549 |
| 0073 | JAMES PATRICIA S<br>960 CO RD 810<br>GAYLESVILLE AL 35973 | 09/12/1961<br>STATUS: OTHER<br>OCCUPATION: PAIRER<br>EMPLOYER: DESOTO MILLS | F | W | 04 | 004920 |
| 0074 | JENNINGS JACK W<br>ROUTE 4 BOX 98<br>CENTRE AL 35960 | 02/13/1935<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 001510 |
| 0075 | JOHNSON MARY J<br>880 HWY 9 SOUTH<br>PIEDMONT AL 36272 | 07/09/1940<br>STATUS: OTHER<br>OCCUPATION: INSPECTOR/PACKER<br>EMPLOYER: SPRING INDUSTRIES | F | W | 04 | 001409 |
| 0076 | JOLLY ALVIS S<br>ROUTE 4 BOX 300<br>CENTRE AL 35960 | 04/05/1949<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 000167 |
| 0077 | JONES ROBERT M<br>1134 CO RD 33<br>PIEDMONT AL 36272 | 11/11/1960<br>STATUS: OTHER<br>OCCUPATION: CUSTODIAN-SPG GARDEN<br>EMPLOYER: CC BRD OF ED | M | W | 04 | 005028 |
| 0078 | KELSEY ANDREA L<br>ROUTE 1 BOX 955<br>CENTRE AL 35960 | 09/24/1975<br>STATUS: DISQUALIFIED<br>OCCUPATION: | F | W | 01 | 010742 |
| 0079 | KERR FREDA W<br>6532 CO RD 29<br>PIEDMONT AL 36272 | 08/23/1936<br>STATUS: ACTIVE<br>OCCUPATION: | F | W | 03 | 000052 |
| 0080 | KISER EDNA M<br>260 CO RD 176<br>PIEDMONT AL 36272 | 07/08/1939<br>STATUS: OTHER<br>OCCUPATION: HOMEMAKER | F | W | 04 | 001921 |
| 0081 | KISER MARIE F<br>335 CO RD 263<br>PIEDMONT AL 36272 | 04/17/1936<br>STATUS: OTHER<br>OCCUPATION: HOMEMAKER | F | W | 01 | 005336 |
| 0082 | KISOR RONALD W<br>ROUTE 1 BOX 516<br>LEESBURG AL 35983 | 12/10/1957<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 006298 |
| 0083 | LANCASTER LATHAN F<br>ROUTE 6 BOX 416<br>GADSDEN AL 35901 | 09/16/1930<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 004399 |
| 0084 | LANGLEY BOBBY E<br>ROUTE 1 BOX 474<br>PIEDMONT AL 36272 | 04/28/1934<br>STATUS: DISQUALIFIED<br>OCCUPATION: | M | W | 01 | 007308 |

```
JUR220                  ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:      7
OPER: CAS                      CHEROKEE COUNTY              RUN DATE: 05/30/2000
                           JUROR VENIRE BY STRIKE#          RUN TIME: 12:26:20

TERM DATE: 04/13/1998   PANEL: ALL   STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS           BIRTH DATE   SEX  RACE   PANEL   JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|---|---|---|---|---|---|---|
| 0085 | LARUE CHARLES G<br>ROUTE 5 BOX 114<br>FORT PAYNE AL 35967 | 08/24/1964<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 012506 |
| 0086 | LAW BEATRICE W<br>ROUTE 1 BOX 453A<br>PIEDMONT AL 36272 | 03/10/1928<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 002947 |
| 0087 | LAWSON WENDELL E<br>920 MTVIEW ROAD<br>LEESBURG AL 35983 | 10/04/1948<br>STATUS: OTHER<br>OCCUPATION: EDUCATOR<br>EMPLOYER: CC BD OF ED | M | W | 01 | 004509 |
| 0088 | LEATH MARJORIE W<br>ROUTE 2 BOX 4 B<br>CEDAR BLUFF AL 35959 | 02/27/1935<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 009860 |
| 0089 | LECROY RANDALL L<br>ROUTE 3 BOX 441<br>CENTRE AL 35960 | 01/15/1956<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 014608 |
| 0090 | LEDFORD JIMMY R<br>ROUTE 2 BOX 383A<br>CEDAR BLUFF AL 35959 | 02/01/1932<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 003056 |
| 0091 | MACDONALD STANLEY E<br>ROUTE 1 BOX 16R<br>LEESBURG AL 35983 | 05/04/1951<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 014183 |
| 0092 | MATTHEWS TIMOTHY B<br>ROUTE 4 BOX 102<br>CENTRE AL 35960 | 03/04/1967<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 006407 |
| 0093 | MAYRAND RITA D<br>260 HWY 411 SOUTH<br>GADSDEN AL 35901 | 05/11/1967<br>STATUS: OTHER<br>OCCUPATION: SERVER<br>EMPLOYER: RED LOBSTER REST | F | W | 01 | 013767 |
| 0094 | MCCAIN ROBERT E<br>ROUTE 1 BOX 123<br>CEDAR BLUFF AL 35959 | 11/24/1939<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 010922 |
| 0095 | MCCULLOUGH JAMES M<br>ROUTE 1 BOX 390A<br>GAYLESVILLE AL 35973 | 10/16/1966<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 02 | 008275 |
| 0096 | MCGATHA JANICE<br>460 NORTHWOOD DRIVE<br>CENTRE AL 35960 | 05/13/1963<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 012923 |
| 0097 | MCGEE STACIE B<br>ROUTE 1 BOX 422<br>PIEDMONT AL 36272 | 09/25/1975<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 009971 |
| 0098 | MCKNIGHT GWENDOLYN K<br>ROUTE 1 BOX 248 B<br>GAYLESVILLE AL 35973 | 03/04/1969<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 002846 |

```
JUR220                 ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:     8
OFER: CAS                       CHEROKEE COUNTY            RUN DATE: 05/30/2000
                          JUROR VENIRE BY STRIKE#          RUN TIME: 12:26:20

TERM DATE: 04/13/1998   PANEL: ALL   STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS          BIRTH DATE   SEX  RACE   PANEL   JUROR#
```

0099   MCMICHEN DEBRA J                 11/21/1955    F      W     02     010815
       RT 2 BOX 258 A 11                     STATUS: EXCUSED
       CEDAR BLUFF   AL   35959          OCCUPATION:

0100   MCWHORTER TRACY M                11/04/1972    M      W     01     003482
       240 CHURCH STREET                     STATUS: UNDELIVERED
       BOAZ   AL   35957                OCCUPATION:

0101   MEDLIN GLORIA A                  03/21/1938    F      W     01     004089
       ROUTE 2 BOX 464                       STATUS: DISQUALIFIED
       CENTRE   AL   35960              OCCUPATION:

0102   MINTON ALBERT H                  03/26/1921    M      W     01     011027
       ROUTE 1 BOX 393                       STATUS: EXCUSED
       PIEDMONT   AL   36272            OCCUPATION:

0103   MOBBS BRENT F                    08/24/1977    M      W     02     004286
       RT 3 BOX 35                           STATUS: DISQUALIFIED
       GAYLESVILLE   AL   35973         OCCUPATION:

0104   MOON DEBBIE K                    11/09/1965    F      W     01     016781
       ROUTE 5 BOX 245                       STATUS: POSTPONED
       CENTRE   AL   35960              OCCUPATION:

0105   MOORE RONNIE                     08/25/1942    M      W     01     002745
       ROUTE 1 BOX 519 A                     STATUS: EXCUSED
       GAYLESVILLE   AL   35973         OCCUPATION:

0106   MORGAN WANDA J                   04/07/1948    F      W     01     005220
       ROUTE 1 BOX 122                       STATUS: EXCUSED
       LEESBURG   AL   35983            OCCUPATION:

0107   MOTES GARY D                     06/18/1954    M      W     01     012711
       301 WILLIAMS STREET                   STATUS: EXCUSED
       CENTRE   AL   35960              OCCUPATION:

0108   MURPHY MAX B SR                  10/11/1936    M      W     01     015642
       ROUTE 1 BOX 361                       STATUS: EXCUSED
       GAYLESVILLE   AL   35973         OCCUPATION:

0109   NAUGHER JEFFREY M                11/12/1954    M      W     01     001612
       460 NORTHWOOD DRIVE                   STATUS: EXCUSED
       CENTRE   AL   35960              OCCUPATION:

0110   NAVARRO MIGUEL A                 07/16/1976    M      O     01     006970
       229 SHERRY DRIVE APT B                STATUS: UNDELIVERED
       CENTRE   AL   35960              OCCUPATION:

0111   OVERSTREET JUANITA F             04/14/1948    F      W     01     000675
       ROUTE 3 BOX 438 C                     STATUS: EXCUSED
       CENTRE   AL   35960              OCCUPATION:

0112   OWENS CARL J                     08/24/1947    M      W     04     012413
       8210 CO RD 16                         STATUS: OTHER
       CENTRE   AL   35960              OCCUPATION: WAREHOUSEMAN
                                        EMPLOYER: WHEELER'S LUMBER CO

```
JUR220                  ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:      9
OPER: CAS                        CHEROKEE COUNTY              RUN DATE: 05/30/2000
                            JUROR VENIRE BY STRIKE#           RUN TIME: 12:26:20

TERM DATE: 04/13/1998   PANEL: ALL   STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS        BIRTH DATE   SEX  RACE   PANEL    JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|---|---|---|---|---|---|---|
| 0113 | FARR LAGINA FANNELL<br>P O BOX 318<br>LEESBURG AL 35983<br>STATUS: ACTIVE<br>OCCUPATION: | 08/07/1969 | F | W | 03 | 001130 |
| 0114 | FATTY JOHN D<br>ROUTE 1 BOX 632<br>LEESBURG AL 35983<br>STATUS: EXCUSED<br>OCCUPATION: | 01/31/1969 | M | W | 01 | 002306 |
| 0115 | PETTYJOHN NETTIE S<br>4195 CO RD 75<br>CEDAR BLUFF AL 35959<br>STATUS: OTHER<br>OCCUPATION: HOMEMAKER | 02/04/1939 | F | W | 01 | 015018 |
| 0116 | PRUITT BETTY J<br>1285 BIG NOSE RD<br>CENTRE AL 35960<br>STATUS: ACTIVE<br>OCCUPATION: | 02/05/1937 | F | W | 03 | 003988 |
| 0117 | PRUITT MELANIE L<br>9694 HWY 9 NORTH<br>CEDAR BLUFF AL 35959<br>STATUS: ACTIVE<br>OCCUPATION: | 04/30/1962 | F | W | 03 | 009445 |
| 0118 | RAY ERICA M<br>371 COLLEGE STREET<br>CENTRE AL 35960<br>STATUS: OTHER<br>OCCUPATION: HAIRDRESSER<br>EMPLOYER: NEW ATTITUDE SALON | 03/30/1957 | F | W | 04 | 009018 |
| 0119 | RAY LINDA M<br>583 COLLEGE STREET<br>CENTRE AL 35960<br>STATUS: OTHER<br>OCCUPATION: REGISTERED NURSE<br>EMPLOYER: CC HOME HEALTH | 08/20/1956 | F | W | 01 | 013964 |
| 0120 | REAGAN MARILYN H<br>ROUTE 1 BOX 142<br>LEESBURG AL 35983<br>STATUS: DISQUALIFIED<br>OCCUPATION: | 07/01/1949 | F | W | 02 | 003279 |
| 0121 | REED LOYD D<br>P O BOX 13<br>CENTRE AL 35960<br>STATUS: ACTIVE<br>OCCUPATION: | 11/22/1946 | M | W | 03 | 001710 |
| 0122 | REED TERRY L<br>RT 5 BOX 160<br>CENTRE AL 35960<br>STATUS: DISQUALIFIED<br>OCCUPATION: | 10/28/1949 | M | W | 02 | 005448 |
| 0123 | REESE EARLEEN T<br>PO BOX 161 SPRING STREET<br>CEDAR BLUFF AL 35959<br>STATUS: OTHER<br>OCCUPATION: RETIRED<br>EMPLOYER: CC DHR-FOOD STAMPS | 03/02/1929 | F | W | 01 | 000272 |
| 0124 | RHINEHART MARTHA H<br>4325 CO RD 45<br>PIEDMONT AL 36272<br>STATUS: EXCUSED<br>OCCUPATION: | 08/22/1956 | F | W | 01 | 012206 |
| 0125 | RICHARDS FAYE H<br>P O BOX 991<br>CEDAR BLUFF AL 35959<br>STATUS: EXCUSED<br>OCCUPATION: | 04/23/1941 | F | W | 01 | 016166 |
| 0126 | RICHEY DARREN D<br>ROUTE 3 BOX 57 J<br>CENTRE AL 35960<br>STATUS: EXCUSED<br>OCCUPATION: | 03/26/1974 | M | W | 01 | 001294 |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM              PAGE:    10
OPER: CAS                          CHEROKEE COUNTY              RUN DATE: 05/30/2000
                             JUROR VENIRE BY STRIKE#            RUN TIME: 12:26:20

TERM DATE: 04/13/1998   PANEL: ALL   STATUS: ALL
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|

```
0127   RICKETT NANCY T              05/09/1946    F      W      01     006516
       P O BOX 451                     STATUS: POSTPONED
       CEDAR BLUFF  AL  35959        OCCUPATION:

0128   ROBERTS KATIE H              04/21/1920    F      W      01     000781
       ROUTE 2 BOX 357E                STATUS: EXCUSED
       LEESBURG  AL  35983          OCCUPATION:

0129   ROGERS CLARA R               06/28/1962    F      W      02     007896
       ROUTE 4 BOX 509                 STATUS: DISQUALIFIED
       CENTRE  AL  35960            OCCUPATION:

0130   ROGERSON JAMES F II          03/25/1975    M      W      01     007965
       PO BOX 679                      STATUS: DISQUALIFIED
       PIEDMONT  AL  36272          OCCUPATION:

0131   ROLLIN RHONDA W              06/02/1967    F      W      01     016056
       ROUTE 1 BOX 255 D               STATUS: UNDELIVERED
       CEDAR BLUFF  AL  35959       OCCUPATION:

0132   ROWLAND REGINA B             02/16/1959    F      W      01     008695
       ROUTE 2 BOX 119                 STATUS: POSTPONED
       CENTRE  AL  35960            OCCUPATION:

0133   SLATE LEE H                  03/20/1943    M      W      01     010719
       ROUTE 1 BOX 301                 STATUS: EXCUSED
       PIEDMONT  AL  36272          OCCUPATION:

0134   SMITH EARL E JR              08/09/1969    M      W      02     007541
       PO  BOX 238                     STATUS: DISQUALIFIED
       COLLINSVILLE  AL  35961      OCCUPATION:

0135   SMITH GINGER H               02/27/1974    F      W      01     016579
       ROUTE 3 BOX 130F                STATUS: POSTPONED
       GAYLESVILLE  AL  35973       OCCUPATION:

0136   SMITH KATHY L                06/14/1965    F      W      01     009547
       ROUTE 1 BOX 368                 STATUS: DISQUALIFIED
       CENTRE  AL  35960            OCCUPATION:

0137   SMITH TRACEY L               04/29/1968    M      W      04     008168
       35 CO RD 164                    STATUS: OTHER
       CENTRE  AL  35960            OCCUPATION: TRUCK DRIVER
                                     EMPLOYER: TRUCK STYLES

0138   STALLINGS FREDRICK L         10/14/1963    M      B      01     011673
       2491 CO RD 117                  STATUS: EXCUSED
       CEDAR BLUFF  AL  35959       OCCUPATION:

0139   STOUT CHARLES C              06/06/1942    M      W      01     012309
       1355 CO RD 115                  STATUS: OTHER
       CEDAR BLUFF  AL  35959       OCCUPATION: RETIRED EDUCATOR

0140   STRAWBRIDGE STANLEY J        07/29/1957    M      W      01     000373
       NO 2 WOODLAND DRIVE             STATUS: OTHER
       CENTRE  AL  35960            OCCUPATION: TRUCK DRIVER
                                     EMPLOYER: VEND CO SERVICE
```

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:    11
OPER: CAS                         CHEROKEE COUNTY              RUN DATE: 05/30/2000
                              JUROR VENIRE BY STRIKE#          RUN TIME: 12:26:20

TERM DATE: 04/13/1998     PANEL: ALL     STATUS: ALL

STRIKE  JUROR'S NAME / ADDRESS      BIRTH DATE    SEX  RACE   PANEL    JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|---|---|---|---|---|---|---|
| 0141 | TATE CAROL F<br>PO BOX 406<br>LEESBURG AL 35983<br>STATUS: EXCUSED<br>OCCUPATION: | 09/13/1961 | F | W | 01 | 007074 |
| 0142 | TAYLOR ANTHONY F<br>ROUTE 1 BOX 764<br>CENTRE AL 35960<br>STATUS: DISQUALIFIED<br>OCCUPATION: | 05/21/1921 | M | W | 02 | 008484 |
| 0143 | THOMPSON PENNIE S<br>4610 CO RD 113<br>CENTRE AL 35960<br>STATUS: OTHER<br>OCCUPATION: HOMEMAKER | 05/22/1969 | F | W | 04 | 005122 |
| 0144 | TIERCE M JOYCE<br>4270 CO RD 29<br>PIEDMONT AL 36272<br>STATUS: ACTIVE<br>OCCUPATION: | 04/14/1936 | F | W | 03 | 007112 |
| 0145 | TILLERY FREDA C<br>780 PARK STREET<br>LEESBURG AL 35983<br>STATUS: ACTIVE<br>OCCUPATION: | 04/05/1948 | F | W | 03 | 015854 |
| 0146 | TOWNSEND MARY B<br>P O BOX 693<br>PIEDMONT AL 36272<br>STATUS: OTHER<br>OCCUPATION: RECEPTIONIST<br>EMPLOYER: ATTY CHARLES MCGEE | 03/14/1967 | F | W | 01 | 002132 |
| 0147 | TRAMMELL GLENDA T<br>PO BOX 811 HWY 9<br>CEDAR BLUFF AL 35959<br>STATUS: ACTIVE<br>OCCUPATION: | 12/01/1970 | F | W | 03 | 011766 |
| 0148 | TUCKER BILLY J<br>6886 AL HWY 35<br>GAYLESVILLE AL 35973<br>STATUS: OTHER<br>OCCUPATION: RETIRED/PARTIME EMP<br>EMPLOYER: SALES/EMPIRE PRTING | 11/24/1932 | M | W | 01 | 002641 |
| 0149 | WATTS THOMAS G<br>827 CO RD 16<br>CENTRE AL 35960<br>STATUS: OTHER<br>OCCUPATION: FIELD SERVICE REP<br>EMPLOYER: ATLANTA GAS LIGHT | 02/06/1944 | M | W | 04 | 005662 |
| 0150 | WEEKS DOYLE L<br>1599 E MAIN STREET<br>CENTRE AL 35960<br>STATUS: EXCUSED<br>OCCUPATION: | 07/22/1938 | M | W | 01 | 006088 |
| 0151 | WELSH CRYSTAL T<br>ROUTE 1 BOX 452F<br>PIEDMONT AL 36272<br>STATUS: UNDELIVERED<br>OCCUPATION: | 10/03/1971 | F | W | 01 | 001718 |
| 0152 | WHEELING WILLIAM R<br>ROUTE 1 BOX 56<br>CENTRE AL 35960<br>STATUS: EXCUSED<br>OCCUPATION: | 05/14/1932 | M | W | 01 | 006860 |
| 0153 | WHITAKER LOIS L<br>ROUTE 2 BOX 122<br>CENTRE AL 35960<br>STATUS: EXCUSED<br>OCCUPATION: | 07/11/1935 | F | W | 01 | 015533 |
| 0154 | WHORTON SHELLEY F<br>ROUTE 1 BOX 683<br>CENTRE AL 35960<br>STATUS: EXCUSED<br>OCCUPATION: | 09/08/1976 | F | W | 01 | 015250 |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:    13
OPER: CAS                          CHEROKEE COUNTY              RUN DATE: 05/30/2000
                            JUROR VENIRE BY STRIKE#             RUN TIME: 12:26:20

TERM DATE: 04/13/1998   PANEL: ALL   STATUS: ALL
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0155 | WILLS RALPH E<br>PO BOX 462<br>LEESBURG   AL   35983 | 03/07/1930<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 011141 |
| 0156 | WOFFORD PATRICIA H<br>ROUTE 2 BOX 176<br>GAYLESVILLE   AL   35973 | 05/06/1972<br>STATUS: POSTPONED<br>OCCUPATION: | F | W | 01 | 015327 |
| 0157 | WOOD DWIGHT F<br>ROUTE 2 BOX 24<br>CEDAR BLUFF   AL   35959 | 03/06/1929<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 015960 |
| 0158 | WOOD RUNETTE G<br>ROUTE 4 BOX 234<br>CENTRE   AL   35960 | 11/13/1953<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 000884 |
| 0159 | WRIGHT MARY C<br>100B HATCHER DRIVE<br>CENTRE   AL   35960 | 02/26/1909<br>STATUS: EXCUSED<br>OCCUPATION: | F | B | 01 | 007749 |
| 0160 | YOUNG FRANCINE C<br>ROUTE 2 BOX 510<br>CENTRE   AL   35960 | 01/18/1954<br>STATUS: DISQUALIFIED<br>OCCUPATION: | F | W | 02 | 005986 |

```
                    * * *   P R O G R A M   T O T A L S * * *

     RECORDS WRITTEN:    160
```

## COURT'S EXHIBIT # 3
### (5-30-2000)

```
JUR220                  ALABAMA JUDICIAL INFORMATION SYSTEM      PAGE:     1
OPER: CAS                       CHEROKEE COUNTY              RUN DATE: 05/30/2000
                            JUROR VENIRE BY STRIKE#          RUN TIME: 12:24:32

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0001 | ABERNATHY CHARLES T<br>125 CO RD 585<br>CEDAR BLUFF  AL  35959 | 03/22/1967<br>STATUS: OTHER<br>OCCUPATION: | M | W | 01 | 005930 |
| 0002 | ABERNATHY KEN R<br>ROUTE 5 BOX 491<br>CENTRE  AL  35960 | 12/07/1943<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 015874 |
| 0003 | ABERNATHY TERESA S<br>ROUTE 1 BOX 169D<br>LEESBURG  AL  35983 | 02/14/1962<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 010958 |
| 0004 | ADAMS DELBRA M<br>2895 LOOKOUT STREET<br>SAND ROCK  AL  35983 | 07/04/1966<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 009772 |
| 0005 | ADKISON LESSIA A<br>P O  BOX 71<br>SPRING GARDEN  AL  36275 | 04/27/1960<br>STATUS: DISQUALIFIED<br>OCCUPATION: | F | W | 01 | 008642 |
| 0006 | ALFORD LINNIE R<br>1835 LOOKOUT STREET<br>COLLINSVILLE  AL  35961 | 09/20/1909<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 012258 |
| 0007 | ALLEN MARVIN L<br>ROUTE 1 BOX 488A<br>LEESBURG  AL  35983 | 10/04/1958<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | M | B | 01 | 003556 |
| 0008 | ALLRED JAMES C<br>ROUTE 2 BOX 312<br>LEESBURG  AL  35983 | 02/08/1945<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 002595 |
| 0009 | ANDERSON JEAN W<br>P O BOX 77<br>CEDAR BLUFF  AL  35959 | 08/03/1934<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 010112 |
| 0010 | ANDREWS LANA H<br>14 PINE VIEW COURT<br>CENTRE  AL  35960 | 07/27/1949<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | F | W | 01 | 011636 |
| 0011 | ANTHONY PHYLLIS J<br>ROUTE 1 BOX 392<br>CENTRE  AL  35960 | 12/21/1936<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 015591 |
| 0012 | ANTHONY VICKI M<br>2394 COUNTY ROAD 47<br>FORT PAYNE  AL  35967 | 04/16/1959<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 001465 |
| 0013 | BADGETT HERBERT<br>ROUTE 2 BOX 130<br>CENTRE  AL  35960 | 06/25/1931<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 011580 |
| 0014 | BAILEY DONNA D<br>PO BOX 637 RT 1 BOX 129 O<br>CEDAR BLUFF  AL  35959 | 07/16/1967<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 006777 |

DEFENDANT'S EXHIBIT 3

```
JUR220             ALABAMA JUDICIAL INFORMATION SYSTEM      PAGE:     2
JUR220                          CHEROKEE COUNTY          RUN DATE: 05/30/2000
OPER: CAS                    JUROR VENIRE BY STRIKE#      RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL    STATUS: ALL

STRIKE  JUROR'S NAME / ADDRESS        BIRTH DATE   SEX  RACE   PANEL    JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | STATUS | PANEL | JUROR# |
|---|---|---|---|---|---|---|---|
| 0015 | BAKER STEVE E<br>ROUTE 1 BOX 65<br>CENTRE  AL  35960 | 07/24/1956 | M | W | EXCUSED | 01 | 009885 |
| 0016 | BALLENGER LARRY G<br>PO BOX 334<br>LEESBURG  AL  35983 | 01/31/1952 | M | W | EXCUSED | 01 | 009207 |
| 0017 | BARNES DONALD E<br>ROUTE 1 BOX 229<br>CEDAR BLUFF  AL  35959 | 05/25/1962 | M | W | UNDELIVERED | 01 | 014009 |
| 0018 | BARNEY SHEILA J<br>ROUTE 3 BOX 16R<br>GAYLESVILLE  AL  35973 | 05/21/1958 | F | W | EXCUSED | 01 | 008924 |
| 0019 | BATTLES FRED L<br>ROUTE 2 BOX 280<br>CEDAR BLUFF  AL  35959 | 12/20/1916 | M | W | DISQUALIFIED | 01 | 010732 |
| 0020 | BAZMORE HARVEY F<br>ROUTE 1 BOX 180<br>LEESBURG  AL  35983 | 10/09/1917 | M | W | FAILED TO APPEAR | 01 | 016495 |
| 0021 | BEARD CHERYL L<br>1100 KEENER DRIVE<br>LEESBURG  AL  35983 | 05/19/1975 | F | W | OTHER | 03 | 003725 |
| 0022 | BEASON JOHN E<br>ROUTE 2 BOX 106<br>GAYLESVILLE  AL  35973 | 03/12/1923 | M | W | EXCUSED | 01 | 012992 |
| 0023 | BECKETT BOBBY ALLEN JR<br>7 FINEVIEW COURT<br>CENTRE  AL  35960 | 03/14/1970 | M | W | OTHER | 03 | 003669 |
| 0024 | BISHOP ROBERT O<br>PO BOX 88<br>CENTRE  AL  35960 | 10/12/1937 | M | W | EXCUSED | 01 | 010676 |
| 0025 | BLACK JIMMIE M<br>P O BOX 607<br>CENTRE  AL  35960 | 12/12/1950 | M | W | EXCUSED | 01 | 011976 |
| 0026 | BLACKMON CHARLIE H<br>ROUTE 4 BOX 179 A<br>CENTRE  AL  35960 | 04/13/1955 | M | W | UNDELIVERED | 01 | 002200 |
| 0027 | BLACKWELL SUZANNE J<br>ROUTE 1 BOX 127<br>LEESBURG  AL  35983 | 07/19/1961 | F | W | UNDELIVERED | 01 | 000957 |
| 0028 | BLANKS RICHARD W<br>1005 COUNTY ROAD 43<br>CEDAR BLUFF  AL  35959 | 08/28/1952 | M | W | OTHER | 01 | 010281 |

Each entry also shows "OCCUPATION:" (blank).

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:     3
OPER: CAS                         CHEROKEE COUNTY              RUN DATE: 05/30/2000
                            JUROR VENIRE BY STRIKE#            RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL    STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS        BIRTH DATE   SEX  RACE   PANEL   JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# | STATUS |
|--------|------------------------|------------|-----|------|-------|--------|--------|
| 0029 | BOLES KENNETH B<br>ROUTE 3 BOX 110A<br>PIEDMONT  AL  36272 | 12/16/1958 | M | W | 01 | 011128 | UNDELIVERED |
| 0030 | BRADLEY DONNA W<br>79 TRADITION ROAD<br>CENTRE  AL  35960 | 03/23/1955 | F | W | 01 | 004404 | EXCUSED |
| 0031 | BRADLEY VIRGLE F<br>840 CO RD 725<br>CEDAR BLUFF  AL  35959 | 06/06/1953 | M | W | 01 | 001804 | OTHER |
| 0032 | BRANNON JANE S<br>265 CO RD 119<br>CENTRE  AL  35960 | 08/31/1945 | F | W | 01 | 000059 | EXCUSED |
| 0033 | BROCK JERRY C<br>P O BOX 56<br>CEDAR BLUFF  AL  35959 | 07/24/1965 | M | W | 01 | 007286 | EXCUSED |
| 0034 | BROOKS CARMEN J<br>PO BOX 777<br>CENTRE  AL  35960 | 02/12/1953 | F | B | 03 | 014292 | OTHER |
| 0035 | BROOKS EDWARD C<br>ROUTE 1 BOX 230A<br>GAYLESVILLE  AL  35973 | 02/24/1958 | M | W | 01 | 002878 | FAILED TO APPEAR |
| 0036 | BROOM JOHN M<br>ROUTE 3 BOX 301A<br>CENTRE  AL  35960 | 11/11/1960 | M | W | 01 | 005026 | UNDELIVERED |
| 0037 | BULLOCK ROBIN R<br>P O BOX 349<br>COLLINSVILLE  AL  35961 | 10/30/1979 | F | W | 01 | 002256 | FAILED TO APPEAR |
| 0038 | BURLESON EUNICE M<br>ROUTE 1 BOX 266<br>GAYLESVILLE  AL  35973 | 11/21/1920 | F | W | 01 | 016552 | EXCUSED |
| 0039 | BURT SHANNON M<br>1175 FRIENDSHIP AVE<br>LEESBURG  AL  35983 | 09/03/1971 | F | W | 01 | 004856 | EXCUSED |
| 0040 | BUTTS KENNETH R<br>RT 1 BOX 303<br>CEDAR BLUFF  AL  35959 | 02/06/1971 | M | W | 01 | 014574 | FAILED TO APPEAR |
| 0041 | CAGLE ALBERT L<br>ROUTE 2 BOX 88<br>CEDAR BLUFF  AL  35959 | 03/06/1962 | M | W | 01 | 007399 | DISQUALIFIED |
| 0042 | CALAWAY ALBERT R<br>2655 CO RD 41<br>GAYLESVILLE  AL  35973 | 12/15/1923 | M | W | 01 | 006551 | OTHER |

```
JUR220                      ALABAMA JUDICIAL INFORMATION SYSTEM      PAGE:      4
OPER: CAS                          CHEROKEE COUNTY            RUN DATE: 05/30/2000
                              JUROR VENIRE BY STRIKE#         RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS        BIRTH DATE   SEX  RACE    PANEL     JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0043 | CALDWELL JUDITH B<br>ROUTE 3 BOX 8<br>CENTRE  AL  35960 | 11/20/1946<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 000115 |
| 0044 | CARROLL DORIS H<br>2784 COUNTY RD 61<br>HENAGAR  AL  35978 | 01/23/1976<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 016043 |
| 0045 | CARROLL JANE C<br>ROUTE 2 BOX 360A<br>LEESBURG  AL  35983 | 12/11/1937<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 013162 |
| 0046 | CARTER KIMBERLY J<br>315 JOHNSON DRIVE<br>CENTRE  AL  35960 | 02/11/1963<br>STATUS: OTHER<br>OCCUPATION: | F | B | 01 | 005704 |
| 0047 | CHADWICK RONALD D<br>1500 CO RD 46<br>GAYLESVILLE  AL  35973 | 12/30/1963<br>STATUS: OTHER<br>OCCUPATION: | M | W | 02 | 016269 |
| 0048 | CHAMBERS DAVID E<br>ROUTE 2 BOX 199A<br>COLLINSVILLE  AL  35961 | 09/06/1971<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 015365 |
| 0049 | CHAMBERS ELEANOR G<br>6010 CO RD 22<br>CENTRE  AL  35960 | 09/16/1947<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 004122 |
| 0050 | CHAMBERS LINDA L<br>ROUTE 1 BOX 91<br>LEESBURG  AL  35983 | 10/16/1940<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 001691 |
| 0051 | CLAYTON BILLY J<br>ROUTE 2 BOX 437<br>CENTRE  AL  35960 | 04/07/1938<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 006099 |
| 0052 | CLEMONS LAUREL R<br>RT 3 BX 144<br>CENTRE  AL  35960 | 08/28/1962<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 004291 |
| 0053 | COBB FRANCES H<br>ROUTE 3 BOX 157<br>PIEDMONT  AL  36272 | 07/08/1947<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 012201 |
| 0054 | COHELEY MICHAEL W<br>ROUTE 2 BOX 160<br>LEESBURG  AL  35983 | 12/16/1970<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 005760 |
| 0055 | COLEY CURTIS T<br>4652 CO RD 19<br>PIEDMONT  AL  36272 | 01/03/1918<br>STATUS: OTHER<br>OCCUPATION: | M | W | 02 | 008303 |
| 0056 | COLLINS RONALD W<br>ROUTE 1 BOX 259C<br>GAYLESVILLE  AL  35973 | 02/20/1957<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 011862 |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM          PAGE:    5
OPER: CAS                         CHEROKEE COUNTY                 RUN DATE: 05/30/2000
                              JUROR VENIRE BY STRIKE#             RUN TIME: 12:24:37

TERM DATE: 11/01/1999    PANEL: ALL    STATUS: ALL
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0057 | COPELAND ROBERT W<br>ROUTE 3 BOX 32<br>GAYLESVILLE  AL  35973 | 02/16/1950<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 006212 |
| 0058 | COTHRAN JUDY<br>PO BOX 284<br>LEESBURG  AL  35983 | 09/05/1971<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 013896 |
| 0059 | COVINGTON JESSEMA M<br>P O BOX 672<br>CEDAR BLUFF  AL  35959 | 12/01/1958<br>STATUS: OTHER<br>OCCUPATION: | F | B | 01 | 013727 |
| 0060 | COX NANCY T<br>855 CO RD 194  LOT # 7<br>CEDAR BLUFF  AL  35959 | 09/04/1966<br>STATUS: OTHER<br>OCCUPATION: | F | W | 02 | 006382 |
| 0061 | CRABTREE TERESA C<br>P O BOX 464<br>CEDAR BLUFF  AL  35959 | 08/05/1961<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 014122 |
| 0062 | CRANE JANET A<br>P O BOX 3<br>CEDAR BLUFF  AL  35959 | 11/19/1963<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 008585 |
| 0063 | CRANE JESSE RANDALL<br>770 CO RD 309<br>LEESBURG  AL  35983 | 02/25/1960<br>STATUS: OTHER<br>OCCUPATION: | M | W | 01 | 002991 |
| 0064 | CRANE PATRICIA K<br>ROUTE 1 BOX 304G<br>CEDAR BLUFF  AL  35959 | 11/20/1962<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 010902 |
| 0065 | CRISP ROBERT L<br>10640 COUNTY ROAD 22<br>CENTRE  AL  35960 | 10/02/1928<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 012766 |
| 0066 | CROWE PATSY M<br>5455 CO RD 99<br>GAYLESVILLE  AL  35973 | 03/31/1950<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 003273 |
| 0067 | DANIEL CHARLES KEITH<br>615 CO RD 401<br>CEDAR BLUFF  AL  35959 | 04/26/1957<br>STATUS: OTHER<br>OCCUPATION: | M | W | 01 | 007852 |
| 0068 | DANIELS BILLY D<br>2610 COUNTY ROAD 17<br>LEESBURG  AL  35983 | 09/04/1960<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 013388 |
| 0069 | DASILVA DENISE D<br>ROUTE 5 BOX 294<br>CENTRE  AL  35960 | 08/11/1968<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 014348 |
| 0070 | DAVIS CHARLOTTE H<br>3155 VALLEY ST<br>LEESBURG  AL  35983 | 04/04/1957<br>STATUS: OTHER<br>OCCUPATION: | F | W | 02 | 001748 |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:     6
OPER: CAS                         CHEROKEE COUNTY           RUN DATE: 05/30/2000
                             JUROR VENIRE BY STRIKE#        RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL
------------------------------------------------------------------------------
STRIKE   JUROR'S NAME / ADDRESS          BIRTH DATE   SEX  RACE   PANEL   JUROR#
------------------------------------------------------------------------------
0071   DAVIS LINDA W                   03/04/1965    F     W     01     004800
       1040 COUNTY ROAD 320                   STATUS: EXCUSED
       PIEDMONT  AL  36272            OCCUPATION:

0072   DAVIS WEYLAND C                 08/25/1920    M     W     01     003217
       570 COUNTY ROAD 119                   STATUS: EXCUSED
       CENTRE  AL  35960              OCCUPATION:

0073   DEAN DANNY H                    02/03/1951    M     W     01     013783
       312 SOUTH RIVER STREET                STATUS: FAILED TO APPEAR
       CENTRE  AL  35960              OCCUPATION:

0074   DECKER REBA C                   06/20/1931    F     W     01     001917
       170 LA RUE FINNIS                     STATUS: UNDELIVERED
       LEESBURG  AL  35983            OCCUPATION:

0075   DOWNEY JOSEPH A                 11/24/1977    M     W     02     012936
       3213 CO RD 19                         STATUS: OTHER
       PIEDMONT  AL  36272            OCCUPATION:

0076   EAST SHELLEY W                  09/08/1976    F     W     01     016382
       4865 CO ROAD 5                        STATUS: EXCUSED
       LEESBURG  AL  35983            OCCUPATION:

0077   EAST VERONICA M                 08/23/1972    F     W     01     013444
       520 CO RD 778                         STATUS: OTHER
       CENTRE  AL  35960              OCCUPATION:

0078   ELROD MARTHA C                  08/23/1941    F     W     01     015704
       P O BOX 93                            STATUS: EXCUSED
       GAYLESVILLE  AL  35973         OCCUPATION:

0079   ELROD MARY J                    10/07/1978    F     W     01     001578
       6645 CO RD 71                         STATUS: EXCUSED
       CENTRE  AL  35960              OCCUPATION:

0080   FLOWERS WADE A                  03/05/1935    M     W     01     014857
       3235 SPRING STREET                    STATUS: EXCUSED
       CEDAR BLUFF  AL  35959         OCCUPATION:

0081   FLOYD LARRY A                   08/06/1969    M     W     01     003443
       RT 1 BOX 461                          STATUS: UNDELIVERED
       PIEDMONT  AL  36272            OCCUPATION:

0082   FLOYD SCOTTY D                  10/28/1973    M     W     01     013275
       1218 E MAIN ST                        STATUS: OTHER
       CENTRE  AL  35960              OCCUPATION:

0083   FORD SHERRON R                  02/25/1949    F     W     01     002143
       P O BOX 305                           STATUS: UNDELIVERED
       COLLINSVILLE  AL  35961        OCCUPATION:

0084   FOWLER GORDON T JR              02/14/1956    M     W     01     015648
       ROUTE 2 BOX 270A                      STATUS: FAILED TO APPEAR
       COLLINSVILLE  AL  35961        OCCUPATION:
------------------------------------------------------------------------------
```

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:     7
OPER: CAS                        CHEROKEE COUNTY              RUN DATE: 05/30/2000
                             JUROR VENIRE BY STRIKE#          RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS          BIRTH DATE   SEX  RACE   PANEL    JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0085 | FOWLER PAUL A<br>PO BOX 271<br>CEDAR BLUFF  AL  35959 | 12/14/1971<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 005591 |
| 0086 | FOX BILLY D<br>ROUTE 4 BOX 376<br>CENTRE  AL  35960 | 05/03/1922<br>STATUS: DISQUALIFIED<br>OCCUPATION: | M | W | 01 | 004630 |
| 0087 | FREE FEGGY H<br>ROUTE 1 BOX 356<br>CENTRE  AL  35960 | 03/07/1947<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 014800 |
| 0088 | FRICKS BARBARA R<br>ROUTE 1 BOX 130 A<br>CEDAR BLUFF  AL  35959 | 01/20/1962<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 009433 |
| 0089 | FROST KATHY B<br>ROUTE 4 BOX 332<br>CENTRE  AL  35960 | 03/28/1963<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 003782 |
| 0090 | GAMBLE WILLA W<br>1285 HWY 278 E<br>PIEDMONT  AL  36272 | 06/17/1946<br>STATUS: OTHER<br>OCCUPATION: | F | B | 01 | 009037 |
| 0091 | GARNER CHRISTOPHER A<br>ROUTE 4 BOX 148<br>CENTRE  AL  35960 | 07/26/1974<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 003896 |
| 0092 | GARRETT STEVEN G<br>P O BOX 454<br>CENTRE  AL  35960 | 08/16/1969<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 011467 |
| 0093 | GILHAM JERRY W<br>ROUTE 4 BOX 44A<br>CENTRE  AL  35960 | 11/10/1948<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 014970 |
| 0094 | GIVENS SHARON S<br>765 COUNTY ROAD 40<br>CENTRE  AL  35960 | 08/28/1954<br>STATUS: OTHER<br>OCCUPATION: | F | W | 03 | 000900 |
| 0095 | GLASS MANARD L<br>ROUTE 3 BOX 282 A<br>CENTRE  AL  35960 | 12/07/1946<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 004009 |
| 0096 | GOODWIN DEBRA H<br>RR 2 BOX 269B<br>COLLINSVILLE  AL  35961 | 04/08/1965<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 003838 |
| 0097 | GOODWIN JAMES M<br>305 SOUTH RIVER STREET<br>CENTRE  AL  35960 | 05/19/1960<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 003330 |
| 0098 | GOSSETT ROGER A<br>ROUTE 5 BOX 51<br>CENTRE  AL  35960 | 05/21/1937<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 007908 |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:      6
OPER: CAS                          CHEROKEE COUNTY           RUN DATE: 05/30/2000
                               JUROR VENIRE BY STRIKE#       RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL
----------------------------------------------------------------------------------
STRIKE  JUROR'S NAME / ADDRESS        BIRTH DATE   SEX  RACE   PANEL    JUROR#
----------------------------------------------------------------------------------
0099   GREEN STEVEN M                 08/08/1959    M    W      01      002426
       P O BOX 215                        STATUS: DISQUALIFIED
       CEDAR BLUFF  AL  35959         OCCUPATION:
----------------------------------------------------------------------------------
0100   GRESHAM GARY L                 01/05/1952    M    W      01      001352
       ROUTE 1 BOX 376                    STATUS: EXCUSED
       PIEDMONT  AL  36272            OCCUPATION:
----------------------------------------------------------------------------------
0101   GRIMES JAMES K                 12/25/1966    M    W      01      000282
       ROUTE 3 BOX 283                    STATUS: UNDELIVERED
       CENTRE  AL  35960              OCCUPATION:
----------------------------------------------------------------------------------
0102   GRIMES PENNY W                 04/13/1970    F    W      01      004743
       9305 HWY 9 S                       STATUS: EXCUSED
       CENTRE  AL  35960              OCCUPATION:
----------------------------------------------------------------------------------
0103   GUTHRIE VERENE E               07/15/1923    F    W      01      008246
       307 HAZEL STREET                   STATUS: EXCUSED
       CENTRE  AL  35960              OCCUPATION:
----------------------------------------------------------------------------------
0104   HAIRRELL NELLIE G              11/10/1937    F    W      01      005195
       ROUTE 2 BOX 224A                   STATUS: FAILED TO APPEAR
       LEESBURG  AL  35983            OCCUPATION:
----------------------------------------------------------------------------------
0105   HANEY MARTHA P                 06/03/1945    F    W      01      015478
       ROUTE 1 BOX 396                    STATUS: EXCUSED
       PIEDMONT  AL  36272            OCCUPATION:
----------------------------------------------------------------------------------
0106   HARKINS MABEL T                10/25/1922    F    W      01      007964
       P O BOX 391                        STATUS: EXCUSED
       LEESBURG  AL  35983            OCCUPATION:
----------------------------------------------------------------------------------
0107   HARRIS BARBARA H               05/24/1951    F    W      02      007455
       1515 CO RD 47                      STATUS: OTHER
       CEDAR BLUFF  AL  35959         OCCUPATION:
----------------------------------------------------------------------------------
0108   HASKINS CAROLYN S              02/17/1945    F    W      01      000674
       3745 OLD HWY 9                     STATUS: OTHER
       CEDAR BLUFF  AL  35959         OCCUPATION:
----------------------------------------------------------------------------------
0109   HASKINS RONALD P               08/22/1943    M    W      04      007681
       3745 OLD HWY 9                     STATUS: OTHER
       CEDAR BLUFF  AL  35959         OCCUPATION:
----------------------------------------------------------------------------------
0110   HAWTHORNE LESSIE R             07/18/1918    F    W      01      003500
       P O BOX 598                        STATUS: EXCUSED
       CENTRE  AL  35960              OCCUPATION:
----------------------------------------------------------------------------------
0111   HAWTHORNE SHARRON C            08/22/1950    F    W      01      015930
       P O BOX 261                        STATUS: UNDELIVERED
       CENTRE  AL  35960              OCCUPATION:
----------------------------------------------------------------------------------
0112   HIGDON MARTY R                 06/01/1952    M    W      01      013557
       PO BOX 684                         STATUS: EXCUSED
       COLLINSVILLE  AL  35961        OCCUPATION:
----------------------------------------------------------------------------------
```

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM           PAGE:      9
OPER: CAS                          CHEROKEE COUNTY               RUN DATE: 05/30/2000
                              JUROR VENIRE BY STRIKE#            RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS          BIRTH DATE   SEX  RACE   PANEL   JUROR#

0113   HIGGINS CLIFFORD   JR          04/03/1948   M    B     03    016439
       P O BOX 134                    STATUS: OTHER
       CEDAR BLUFF  AL  35959         OCCUPATION:

0114   HILL BETTY S                   01/31/1932   F    W     01    001861
       17755 CO RD 31                 STATUS: OTHER
       CENTRE  AL  35960              OCCUPATION:

0115   HIX MILTON D                   11/01/1910   M    W     01    006665
       PO BOX 189                     STATUS: UNDELIVERED
       CEDAR BLUFF  AL  35959         OCCUPATION:

0116   HOLCOMB TAMMY W                09/28/1969   F    W     01    007003
       1960 COUNTY ROAD 22            STATUS: EXCUSED
       CENTRE  AL  35960              OCCUPATION:

0117   HOOSE KATHY F                  04/02/1961   F    W     01    014913
       2370 CO RD 44                  STATUS: OTHER
       LEESBURG  AL  35983            OCCUPATION:

0118   HOPKINS RAYMOND B JR           12/20/1947   M    W     01    012088
       1320 COUNTY ROAD 50            STATUS: OTHER
       LEESBURG  AL  35983            OCCUPATION:

0119   HOWARD JUANITA L               03/18/1932   F    W     01    011015
       ROUTE 5 BOS 209                STATUS: UNDELIVERED
       CENTRE  AL  35960              OCCUPATION:

0120   HOYER SARAH M                  05/13/1977   F    W     01    002765
       PO BOX 36                      STATUS: UNDELIVERED
       CEDAR BLUFF  AL  35959         OCCUPATION:

0121   HUDGINS GORDON                 12/09/1916   M    W     01    007229
       ROUTE 2  BOX 477               STATUS: UNDELIVERED
       CENTRE  AL  35960              OCCUPATION:

0122   HULSEY BRYAN R                 07/20/1978   M    W     01    001183
       3389 CO RD 19                  STATUS: UNDELIVERED
       PIEDMONT  AL  36272            OCCUPATION:

0123   HULSEY JEFFREY F               08/22/1961   M    W     01    012597
       3424 HWY 9 SOUTH               STATUS: FAILED TO APPEAR
       PIEDMONT  AL  36272            OCCUPATION:

0124   HUNT LINDA L                   07/12/1948   F    W     02    000114
       8565 CO RD 6                   STATUS: OTHER
       PIEDMONT  AL  36272            OCCUPATION:

0125   HUNTER JANA R                  05/28/1972   F    W     01    014179
       ROUTE 3 BOX 64C                STATUS: UNDELIVERED
       CENTRE  AL  35960              OCCUPATION:

0126   INGRAM EARL R                  05/14/1925   M    W     01    006609
       4335 CO RD 8                   STATUS: OTHER
       PIEDMONT  AL  36272            OCCUPATION:
```

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:     10
OPER: CAS                           CHEROKEE COUNTY          RUN DATE: 05/30/2000
                            JUROR VENIRE BY STRIKE#          RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS          BIRTH DATE   SEX  RACE   PANEL   JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0127 | IRWIN STEVEN D<br>2370 US HWY 411 S<br>LEESBURG AL 35983 | 09/04/1959<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | M | W | 01 | 005534 |
| 0128 | JOHNSON MARY J<br>ROUTE 5 BOX 103<br>PIEDMONT AL 36272 | 07/09/1940<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 001409 |
| 0129 | JOHNSON PEGGY W<br>RT 1 BOX 897<br>CENTRE AL 35960 | 05/03/1951<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 010393 |
| 0130 | JOHNSON REGINA H<br>5550 CTY RD 29<br>PIEDMONT AL 36272 | 02/05/1970<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 016665 |
| 0131 | JOHNSON SARA D<br>207 IRIS DRIVE<br>CENTRE AL 35960 | 09/14/1926<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 015422 |
| 0132 | JORDAN PAUL C<br>1467 CO RD 79<br>CENTRE AL 35960 | 02/25/1916<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 015987 |
| 0133 | KEASLER CINDY S<br>970 EAST MAIN ST<br>CENTRE AL 35960 | 05/05/1969<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 008133 |
| 0134 | KEEF DIANNIA W<br>ROUTE 1 BOX 433 A<br>GAYLESVILLE AL 35973 | 09/09/1947<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | F | W | 01 | 008190 |
| 0135 | KEENER LAMANDA N<br>1004 NORTH WATSON DRIVE<br>CENTRE AL 35960 | 08/11/1976<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 010845 |
| 0136 | KEENER PATSY R<br>95 CO RD 467<br>CEDAR BLUFF AL 35959 | 09/18/1954<br>STATUS: OTHER<br>OCCUPATION: | F | W | 01 | 014461 |
| 0137 | KELLEY GRETTA M<br>201 DAILEY STREET<br>PIEDMONT AL 36272 | 02/28/1969<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | F | W | 01 | 008755 |
| 0138 | KIMMERLIN TASKA L<br>ROUTE 3 BOX 173<br>CENTRE AL 35960 | 01/26/1969<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 015083 |
| 0139 | KINGSTON JOSEPH P<br>PO BOX 491<br>CENTRE AL 35960 | 03/06/1926<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 016213 |
| 0140 | KINSEY CLYDE H<br>ROUTE 5 BOX 60<br>CENTRE AL 35960 | 11/18/1938<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 009263 |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:   11
OPER: CAS                         CHEROKEE COUNTY               RUN DATE: 05/30/2000
                            JUROR VENIRE BY STRIKE#             RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS          BIRTH DATE   SEX  RACE   PANEL   JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0141 | KIRK BENNIE F<br>5001 CO RD 8<br>SPRING GARDEN  AL  36275<br>STATUS: OTHER<br>OCCUPATION: | 03/09/1949 | M | W | 02 | 013953 |
| 0142 | KISOR INEZ M<br>ROUTE 4 BOX 471<br>CENTRE  AL  35960<br>STATUS: UNDELIVERED<br>OCCUPATION: | 10/02/1922 | F | W | 01 | 007116 |
| 0143 | LANCASTER BEN<br>ROUTE 2 BOX 423<br>CENTRE  AL  35960<br>STATUS: UNDELIVERED<br>OCCUPATION: | 08/26/1922 | M | W | 01 | 009715 |
| 0144 | LANE JONATHAN C<br>RT 4 BOX 497<br>CENTRE  AL  35960<br>STATUS: UNDELIVERED<br>OCCUPATION: | 07/10/1978 | M | W | 01 | 001239 |
| 0145 | LANEY JOSEPH W<br>ROUTE 1 BOX 746<br>CENTRE  AL  35960<br>STATUS: OTHER<br>OCCUPATION: | 10/31/1974 | M | W | 02 | 000563 |
| 0146 | LANEY LOIS B<br>395 COUNTY ROAD 734<br>CEDAR BLUFF  AL  35959<br>STATUS: EXCUSED<br>OCCUPATION: | 11/03/1926 | F | W | 01 | 010450 |
| 0147 | LEE FRANCES E<br>PO BOX 204 ROUTE 1<br>GAYLESVILLE  AL  35973<br>STATUS: EXCUSED<br>OCCUPATION: | 10/14/1976 | F | W | 01 | 013840 |
| 0148 | LEVANGER SHELLY"FLOYD"<br>P O BOX 405<br>CENTRE  AL  35960<br>STATUS: OTHER<br>OCCUPATION: | 07/20/1951 | M | W | 03 | 013049 |
| 0149 | LEWIS REGINA F<br>3760 HWY 411 NORTH<br>CENTRE  AL  35960<br>STATUS: EXCUSED<br>OCCUPATION: | 12/11/1974 | F | W | 01 | 007512 |
| 0150 | LINDSEY ALBERT H<br>ROUTE 3 BOX 52<br>CENTRE  AL  35960<br>STATUS: UNDELIVERED<br>OCCUPATION: | 02/20/1942 | M | W | 01 | 005308 |
| 0151 | LONG JOHN A<br>PO BOX 123<br>CEDAR BLUFF  AL  35959<br>STATUS: EXCUSED<br>OCCUPATION: | 02/11/1923 | M | B | 01 | 011071 |
| 0152 | LONG MILDRED D<br>ROUTE 3 BOX 44<br>CENTRE  AL  35960<br>STATUS: UNDELIVERED<br>OCCUPATION: | 02/11/1924 | F | W | 01 | 016608 |
| 0153 | LOVELESS MARY R<br>3870 RAILROAD AVE<br>CEDAR BLUFF  AL  35959<br>STATUS: EXCUSED<br>OCCUPATION: | 08/18/1944 | F | W | 01 | 014518 |
| 0154 | LOYD LONNY D<br>ROUTE 3 BOX 365<br>CENTRE  AL  35960<br>STATUS: UNDELIVERED<br>OCCUPATION: | 11/04/1965 | M | W | 01 | 001522 |

```
JUR220                 ALABAMA JUDICIAL INFORMATION SYSTEM          PAGE:   12
OPER: CAS                      CHEROKEE COUNTY              RUN DATE: 05/30/2000
                           JUROR VENIRE BY STRIKE#          RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0155 | MACKEY MARY H<br>ROUTE 1 BOX 40<br>LEESBURG  AL  35983 | 04/04/1930<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 002482 |
| 0156 | MACKEY RACHEL D<br>2095 ROCK QUARRY RD<br>LEESBURG  AL  35983 | 02/08/1966<br>STATUS: OTHER<br>OCCUPATION: | F | W | 01 | 010168 |
| 0157 | MADDOX BRENSON A<br>ROUTE 4 BOX 489<br>CENTRE  AL  35960 | 12/05/1972<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 005082 |
| 0158 | MADDOX LUTHER M<br>2435 CO RD 10<br>PIEDMONT  AL  36272 | 07/31/1944<br>STATUS: OTHER<br>OCCUPATION: | M | W | 01 | 011410 |
| 0159 | MALLOWS ROVINE G<br>RT 4 BOX 490<br>CENTRE  AL  35960 | 05/02/1931<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 009546 |
| 0160 | MALONE MASTEN T<br>PO BOX 69<br>LEESBURG  AL  35983 | 04/20/1974<br>STATUS: DISQUALIFIED<br>OCCUPATION: | M | B | 01 | 006043 |
| 0161 | MANLEY TERRY L SR<br>2915 COUNTY ROAD 49<br>CEDAR BLUFF  AL  35959 | 09/23/1966<br>STATUS: OTHER<br>OCCUPATION: | M | W | 03 | 013671 |
| 0162 | MANLEY VIRGINIA E<br>ROUTE 2 BOX 360B<br>LEESBURG  AL  35983 | 06/26/1937<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 004348 |
| 0163 | MARTIN MARILYN S<br>ROUTE 2 BOX 350 B<br>CEDAR BLUFF  AL  35959 | 09/09/1958<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 004178 |
| 0164 | MARTINEZ BELINDA G<br>3965 OLD HWY 9<br>CEDAR BLUFF  AL  35959 | 03/24/1952<br>STATUS: OTHER<br>OCCUPATION: | F | W | 03 | 016326 |
| 0165 | MATHEWS ARLIE C<br>ROUTE 1 BOX 112<br>GAYLESVILLE  AL  35973 | 05/26/1930<br>STATUS: OTHER<br>OCCUPATION: | M | W | 02 | 006890 |
| 0166 | MAXWELL BOBBY L II<br>ROUTE 3 BOX 111<br>GAYLESVILLE  AL  35973 | 08/22/1971<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 005873 |
| 0167 | MCCORD TERRY R<br>P O BOX 678<br>CENTRE  AL  35960 | 08/16/1970<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 003952 |
| 0168 | MCCULLOUGH BARBARA B<br>ROUTE 1 BOX 391<br>GAYLESVILLE  AL  35973 | 01/15/1948<br>STATUS: OTHER<br>OCCUPATION: | F | W | 01 | 012427 |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:    13
OPER: CAS                          CHEROKEE COUNTY            RUN DATE: 05/30/2000
                            JUROR VENIRE BY STRIKE#           RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS          BIRTH DATE   SEX  RACE   PANEL   JUROR#
```

0169   MCCULLOUGH DARLENE J            01/18/1966    F     W      02    003047
       7430 CO RD 91                        STATUS: OTHER
       GAYLESVILLE  AL  35973          OCCUPATION:

0170   MCCULLOUGH VESTER H             09/25/1940    F     W      02    008020
       7275 COUNTY ROAD 91                  STATUS: OTHER
       GAYLESVILLE  AL  35973          OCCUPATION:

0171   MCDANIEL WILLIAM R              02/27/1956    M     W      01    006834
       90 CO RD 861                         STATUS: EXCUSED
       GAYLESVILLE  AL  35973          OCCUPATION:

0172   MCFARLAND DAVID N               07/07/1959    M     W      01    005817
       307 SOUTH RIVER STREET               STATUS: UNDELIVERED
       CENTRE  AL  35960              OCCUPATION:

0173   MCFRY MARK J                    02/04/1946    M     W      01    009489
       ROUTE 1 BOX 268                      STATUS: EXCUSED
       PIEDMONT  AL  36272            OCCUPATION:

0174   MCGATHA ANGELA H                04/09/1972    F     W      01    013501
       444 SECOND AVE EAST                  STATUS: UNDELIVERED
       CENTRE  AL  35960              OCCUPATION:

0175   MCGATHA BONNIE H                11/13/1954    F     W      01    012032
       P O BOX 554                          STATUS: UNDELIVERED
       CENTRE  AL  35960              OCCUPATION:

0176   MCGATHA FRED J                  11/14/1933    M     W      01    016835
       ROUTE 3 BOX 340                      STATUS: UNDELIVERED
       CENTRE  AL  35960              OCCUPATION:

0177   MCGATHA RACHEL                  05/15/1967    F     W      01    013218
       P O BOX 326                          STATUS: FAILED TO APPEAR
       LEESBURG  AL  35983            OCCUPATION:

0178   MCGATHA TONYA H                 12/02/1975    F     W      01    006438
       100 HAMILTON DRIVE APT A6            STATUS: EXCUSED
       PIEDMONT  AL  36272            OCCUPATION:

0179   MCGATHA WALTER D                11/19/1956    M     W      02    006495
       P O BOX 405                          STATUS: OTHER
       PIEDMONT  AL  36272            OCCUPATION:

0180   MCGEE KIMBERLY S                06/23/1969    F     W      01    002539
       PO BOX 532                           STATUS: UNDELIVERED
       LEESBURG  AL  35983            OCCUPATION:

0181   MCMURRAY JEFFREY S              12/10/1977    M     W      01    008868
       ROUTE 3 BOX 281                      STATUS: UNDELIVERED
       PIEDMONT  AL  36272            OCCUPATION:

0182   MCPHERSON JOHNNY C              11/30/1945    M     W      01    006947
       5909 ROSEMARY LANE                   STATUS: OTHER
       CEDAR BLUFF  AL  35959         OCCUPATION:

```
JUR220                   ALABAMA JUDICIAL INFORMATION SYSTEM          PAGE:   14
OPER: CAS                        CHEROKEE COUNTY           RUN DATE: 05/30/2000
                             JUROR VENIRE BY STRIKE#       RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL
-----------------------------------------------------------------------------
STRIKE   JUROR'S NAME / ADDRESS          BIRTH DATE   SEX  RACE   PANEL   JUROR#
```

0183   MEADE KATHY B                    10/25/1957    F     W      01     007738
       5360 CO RD 77                        STATUS: EXCUSED
       GAYLESVILLE  AL  35973           OCCUPATION:

0184   MILLER ANGELA C                  05/31/1972    F     W      01     005139
       ROUTE 1 BOX 274B                     STATUS: EXCUSED
       PIEDMONT  AL  36272              OCCUPATION:

0185   MILLS EVERETT                    09/22/1949    M     W      02     008416
       304 CO RD 553                        STATUS: OTHER
       GAYLESVILLE  AL  35973           OCCUPATION:

0186   MILLS MARY E                     04/06/1951    F     W      01     011749
       ROUTE 3 BOX 40                       STATUS: EXCUSED
       GAYLESVILLE  AL  35973           OCCUPATION:

0187   MOLOCK MARK A                    05/29/1974    M     W      02     011354
       5504 CO RD 29                        STATUS: OTHER
       PIEDMONT  AL  36272              OCCUPATION:

0188   MORALES BRUCE L                  05/16/1970    M     O      01     008981
       ROUTE 2 BOX 76A                      STATUS: UNDELIVERED
       CEDAR BLUFF  AL  35959           OCCUPATION:

0189   MORRISON DAISY W                 04/19/1941    F     W      01     014066
       ROUTE 2 BOX 322                      STATUS: OTHER
       LEESBURG  AL  35983              OCCUPATION:

0190   MORRISON IRBY R                  02/12/1933    M     W      02     005365
       7601 CO RD 19                        STATUS: OTHER
       PIEDMONT  AL  36272              OCCUPATION:

0191   MOSELEY JESSE RONNIE             10/29/1948    M     W      01     009941
       ROUTE 1 BOX 337                      STATUS: OTHER
       GAYLESVILLE  AL  35973           OCCUPATION:

0192   MOSELEY KENNITH H                04/22/1952    M     W      01     002708
       11851 CO RD 41                       STATUS: OTHER
       GAYLESVILLE  AL  35973           OCCUPATION:

0193   MUSKETT GARY KEVIN               03/02/1964    M     W      01     001974
       ROUTE 1 BOX 152                      STATUS: OTHER
       CENTRE  AL  35960                OCCUPATION:

0194   NAUGHER JAMES S                  03/05/1945    M     W      01     016156
       ROUTE 2 BOX 300                      STATUS: DISQUALIFIED
       LEESBURG  AL  35983              OCCUPATION:

0195   NEYMAN EVELYN R                  06/11/1915    F     W      01     000450
       394 NORTYWOOD DRIVE                  STATUS: UNDELIVERED
       CENTRE  AL  35960                OCCUPATION:

0196   NORRIS LELA H                    09/29/1935    F     W      01     015252
       ROUTE 2 BOX 334A                     STATUS: EXCUSED
       CEDAR BLUFF  AL  35959           OCCUPATION:

```
JUR220                  ALABAMA JUDICIAL INFORMATION SYSTEM          PAGE:   15
OPER: CAS                         CHEROKEE COUNTY            RUN DATE: 05/30/2000
                           JUROR VENIRE BY STRIKE#           RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0197 | OLIVER LARRY C<br>ROUTE 2 BOX 260B<br>COLLINSVILLE AL 35961<br>STATUS: UNDELIVERED<br>OCCUPATION: | 08/22/1979 | M | W | 01 | 015026 |
| 0198 | PARKER JERRY R<br>1530 CO RD 79<br>CENTRE AL 35960<br>STATUS: EXCUSED<br>OCCUPATION: | 01/01/1950 | M | W | 01 | 002369 |
| 0199 | PHILLIPS GARRY L<br>P O BOX 362<br>LEESBURG AL 35983<br>STATUS: EXCUSED<br>OCCUPATION: | 09/30/1948 | M | W | 01 | 009999 |
| 0200 | PITTS PHILLIP D<br>875 CO RD 146<br>LEESBURG AL 35983<br>STATUS: EXCUSED<br>OCCUPATION: | 04/16/1952 | M | W | 01 | 000844 |
| 0201 | PLUMMER EDGAR W<br>ROUTE 3 BOX 36B<br>CEDAR BLUFF AL 35959<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | 01/22/1962 | M | W | 01 | 016721 |
| 0202 | POPE SUE B<br>1028 ALEXIS ROAD<br>CENTRE AL 35960<br>STATUS: OTHER<br>OCCUPATION: | 09/05/1943 | F | W | 03 | 005252 |
| 0203 | POWELL RACHEL A<br>1130 CO RD 108<br>GAYLESVILLE AL 35973<br>STATUS: EXCUSED<br>OCCUPATION: | 04/11/1964 | F | W | 01 | 005647 |
| 0204 | PRATER REBA B<br>RT 1 BOX 26<br>LEESBURG AL 35983<br>STATUS: EXCUSED<br>OCCUPATION: | 01/06/1929 | F | W | 01 | 009602 |
| 0205 | PRICE RUBY R<br>ROUTE 3 BOX 396<br>CENTRE AL 35960<br>STATUS: UNDELIVERED<br>OCCUPATION: | 10/11/1929 | F | B | 01 | 000338 |
| 0206 | PRUETT MARTHA J<br>17400 COUNTY ROAD 31<br>CENTRE AL 35960<br>STATUS: EXCUSED<br>OCCUPATION: | 08/17/1922 | F | W | 01 | 007060 |
| 0207 | PRUETT NORA E<br>P O BOX 308<br>CENTRE AL 35960<br>STATUS: OTHER<br>OCCUPATION: | 04/30/1957 | F | W | 01 | 000732 |
| 0208 | PRUETT RACHEL R<br>ROUTE 2 BOX 301<br>CENTRE AL 35960<br>STATUS: UNDELIVERED<br>OCCUPATION: | 12/27/1946 | F | W | 01 | 001126 |
| 0209 | PRUITT CANDY J<br>ROUTE 1 BOX 215<br>LEESBURG AL 35983<br>STATUS: UNDELIVERED<br>OCCUPATION: | 02/12/1970 | F | W | 01 | 004235 |
| 0210 | PRUITT GARY K<br>425 FRANCIS CIR<br>LEESBURG AL 35983<br>STATUS: EXCUSED<br>OCCUPATION: | 11/06/1975 | M | W | 01 | 015196 |

```
JUR220                  ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:    16
OPER: CAS                         CHEROKEE COUNTY              RUN DATE: 05/30/2000
                             JUROR VENIRE BY STRIKE#           RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS        BIRTH DATE   SEX  RACE   PANEL    JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0211 | RAMSAY HARRY D<br>P O BOX 1098<br>GROVE HILL  AL  36451 | 12/15/1959<br>STATUS: DISQUALIFIED<br>OCCUPATION: | M | W | 01 | 013331 |
| 0212 | RANSUM JONATHAN LEE<br>108 PARK ST<br>CENTRE  AL  35960 | 06/03/1971<br>STATUS: OTHER<br>OCCUPATION: | M | W | 01 | 008698 |
| 0213 | RATLIFF HOWARD GRANT<br>708 CHEROKEE PLAZA<br>CENTRE  AL  35960 | 11/26/1947<br>STATUS: OTHER<br>OCCUPATION: | M | W | 01 | 002821 |
| 0214 | RAY JENNIFER E<br>P O BOX 1052<br>CEDAR BLUFF  AL  35959 | 08/13/1978<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | F | W | 01 | 006269 |
| 0215 | RAY MATTHEW S<br>1713 A DEAN RD NE<br>FORT PAYNE  AL  35967 | 07/26/1965<br>STATUS: DISQUALIFIED<br>OCCUPATION: | M | W | 01 | 011693 |
| 0216 | RAY SHERRI F<br>3364 CO RD 22<br>CENTRE  AL  35960 | 04/10/1957<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 008811 |
| 0217 | REYNOLDS NELLIE M<br>ROUTE 4 BOX 535<br>CENTRE  AL  35960 | 06/03/1936<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 012145 |
| 0218 | RICHARDSON JERRY M<br>ROUTE 1 BOX 262<br>CENTRE  AL  35960 | 09/07/1950<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 009094 |
| 0219 | RICHARDSON TERRY C<br>ROUTE 1 BOX 224<br>CEDAR BLUFF  AL  35959 | 02/10/1962<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | M | W | 01 | 009659 |
| 0220 | RICHARDSON VIVIAN GAYLE<br>13845 ALABAMA HWY 9 NORTH<br>CEDAR BLUFF  AL  35959 | 06/24/1963<br>STATUS: OTHER<br>OCCUPATION: | F | W | 01 | 004687 |
| 0221 | RICHEY DARREN D<br>ROUTE 3 BOX 57 J<br>CENTRE  AL  35960 | 03/26/1974<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 001296 |
| 0222 | RICKMAN LORI A<br>5800 COUNTY ROAD 16<br>CENTRE  AL  35960 | 08/25/1970<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 011806 |
| 0223 | ROBBINS LINDSEY C<br>40 CO RD 112<br>CENTRE  AL  35960 | 11/07/1946<br>STATUS: OTHER<br>OCCUPATION: | M | W | 01 | 015817 |
| 0224 | ROBERTS GARY F<br>277 CO RD 144<br>CEDAR BLUFF  AL  35959 | 10/21/1951<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | M | W | 01 | 015309 |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:    17
OPER: CAS                         CHEROKEE COUNTY              RUN DATE: 05/30/2000
                             JUROR VENIRE BY STRIKE#           RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL    STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS          BIRTH DATE   SEX  RACE    PANEL    JUROR#
```

0225  ROBERTSON JOSHUA A        07/03/1976   M    W     02    000506
      ROUTE 2 BOX 391                  STATUS: OTHER
      CEDAR BLUFF  AL  35959    OCCUPATION:

0226  ROBINSON JEAN D           11/28/1966   F    W     02    001635
      PO BOX 304                       STATUS: OTHER
      LEESBURG  AL  35983       OCCUPATION:

0227  ROCHESTER CHADWICK W      04/09/1968   M    W     01    003386
      ROUTE 1 BOX 454                  STATUS: EXCUSED
      LEESBURG  AL  35983       OCCUPATION:

0228  ROCHESTER JAMIE L         03/17/1979   F    W     01    014744
      885 CO RD 167                    STATUS: EXCUSED
      LEESBURG  AL  35983       OCCUPATION:

0229  ROCHESTER JEREMY D        06/17/1973   M    W     02    000618
      5845 COUNTY ROAD 5               STATUS: OTHER
      LEESBURG  AL  35983       OCCUPATION:

0230  ROGERS SHERRY V           05/08/1958   F    W     01    010564
      ROUTE 3 BOX 472                  STATUS: UNDELIVERED
      CENTRE  AL  35960         OCCUPATION:

0231  ROSSER JEFFREY S          03/14/1964   M    W     01    005421
      RT 2 BOX 470                     STATUS: UNDELIVERED
      CENTRE  AL  35960         OCCUPATION:

0232  ROSZELL WILMA G           02/23/1927   F    W     02    015761
      1201 EAST MAIN STREET            STATUS: OTHER
      CENTRE  AL  35960         OCCUPATION:

0233  ROWE JOYCE K              03/05/1951   F    W     01    012710
      ROUTE 1 BOX 183 J                STATUS: OTHER
      LEESBURG  AL  35983       OCCUPATION:

0234  SALTER DORIS G            08/15/1943   F    W     01    006721
      602 GARRETT DRIVE                STATUS: OTHER
      CENTRE  AL  35960         OCCUPATION:

0235  SANDERS MARILYN C         06/24/1949   F    W     02    002934
      13 PINEVIEW COURT                STATUS: OTHER
      CENTRE  AL  35960         OCCUPATION:

0236  SANFORD LARRY R           05/31/1957   M    W     03    016779
      1150 BIG NOSE DRIVE              STATUS: OTHER
      CENTRE  AL  35960         OCCUPATION:

0237  SANFORD MARY L            05/30/1947   F    W     01    004574
      ROUTE 2 BOX 397S                 STATUS: EXCUSED
      CEDAR BLUFF  AL  35959    OCCUPATION:

0238  SCHWAB DAN B              09/23/1954   M    W     01    013105
      P O BOX 832                      STATUS: UNDELIVERED
      CEDAR BLUFF  AL  35959    OCCUPATION:

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM         PAGE:    18
OPER: CAS                          CHEROKEE COUNTY            RUN DATE: 05/30/2000
                              JUROR VENIRE BY STRIKE#         RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL   STATUS: ALL
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0239 | SCOTT GREGORY D<br>6720 CO RD 71<br>CENTRE AL 35960 | 08/06/1972<br>STATUS: OTHER<br>OCCUPATION: | M | W | 02 | 005478 |
| 0240 | SCROGGIN CAROL A<br>ROUTE 2 BOX 486<br>CENTRE AL 35960 | 02/05/1957<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 009320 |
| 0241 | SHAW ERNIE A<br>P O BOX 35<br>CENTRE AL 35960 | 06/11/1955<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 000170 |
| 0242 | SIMS STACEY R<br>10265 ROCKY FORD ROAD<br>PIEDMONT AL 36272 | 10/08/1966<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | F | W | 01 | 008359 |
| 0243 | SLONE JOHN B<br>1006 2ND AVENUE<br>CENTRE AL 35960 | 09/12/1944<br>STATUS: OTHER<br>OCCUPATION: | M | W | 01 | 012484 |
| 0244 | SMITH GAINES W<br>ROUTE 6 BOX 316<br>FORT PAYNE AL 35967 | 02/10/1942<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 011920 |
| 0245 | SMITH JAMIE R<br>4385 CO RD 34<br>CENTRE AL 35960 | 07/26/1978<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | M | W | 01 | 012540 |
| 0246 | SMITH LOVIE L<br>ROUTE 1 BOX 195<br>CEDAR BLUFF AL 35959 | 07/11/1939<br>STATUS: OTHER<br>OCCUPATION: | F | B | 03 | 004913 |
| 0247 | SMITH STEVEN D<br>2440 COUNTY ROAD 102<br>CEDAR BLUFF AL 35959 | 07/30/1970<br>STATUS: POSTPONED<br>OCCUPATION: | M | W | 01 | 010055 |
| 0248 | SNEAD TERRY N<br>ROUTE 1 BOX 572<br>CENTRE AL 35960 | 09/07/1951<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 010620 |
| 0249 | SPEARS JERRY D<br>ROUTE 4 BOX 486<br>CENTRE AL 35960 | 09/10/1969<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 001013 |
| 0250 | SPRAYBERRY LARRY B<br>ROUTE 1 BOX 421<br>CENTRE AL 35960 | 06/29/1964<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | M | W | 01 | 008077 |
| 0251 | STAFFORD JOHNNIE D<br>PO BOX 143<br>GAYLESVILLE AL 35973 | 11/15/1956<br>STATUS: OTHER<br>OCCUPATION: | M | W | 02 | 007625 |
| 0252 | STARGELL ANGELA M<br>ROUTE 3 BOX 405<br>CENTRE AL 35960 | 01/15/1965<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 009150 |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM        PAGE:     19
OPER: CAS                         CHEROKEE COUNTY               RUN DATE: 05/30/2000
                              JUROR VENIRE BY STRIKE#           RUN TIME: 12:24:37

TERM DATE: 11/01/1999    PANEL: ALL    STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS         BIRTH DATE    SEX  RACE    PANEL    JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0253 | STEED MARY A<br>ROUTE 1 BOX 724<br>CENTRE  AL  35960<br>OCCUPATION: | 11/03/1933<br>STATUS: FAILED TO APPEAR | F | W | 01 | 000788 |
| 0254 | STEFFS ARLENE M<br>ROUTE 3 BOX 190C<br>PIEDMONT  AL  36272<br>OCCUPATION: | 05/03/1943<br>STATUS: UNDELIVERED | F | W | 01 | 000058 |
| 0255 | STITTS YVONNIA H<br>P O BOX 631<br>CENTRE  AL  35960<br>OCCUPATION: | 02/10/1955<br>STATUS: FAILED TO APPEAR | M | B | 01 | 014405 |
| 0256 | STOREY JAMES D<br>1653 CO RD 82<br>CEDAR BLUFF  AL  35959<br>OCCUPATION: | 08/02/1971<br>STATUS: OTHER | M | W | 02 | 012371 |
| 0257 | STRAWBRIDGE MYRTIS W<br>701 NORTHWOOD DRIVE<br>CENTRE  AL  35960<br>OCCUPATION: | 10/10/1964<br>STATUS: OTHER | F | W | 01 | 006156 |
| 0258 | STREETT SANDRA G<br>ROUTE 2 BOX 265 O<br>COLLINSVILLE  AL  35961<br>OCCUPATION: | 01/24/1955<br>STATUS: UNDELIVERED | F | W | 01 | 008529 |
| 0259 | STROHL CATHERINE L<br>365 LITTLE NOSE ROAD<br>CENTRE  AL  35960<br>OCCUPATION: | 12/25/1930<br>STATUS: DISQUALIFIED | F | W | 01 | 010225 |
| 0260 | STUBBS LOLA F<br>ROUTE 2 BOX 256<br>CENTRE  AL  35960<br>OCCUPATION: | 04/02/1928<br>STATUS: UNDELIVERED | F | B | 01 | 000226 |
| 0261 | TAYLOR CHARLES J<br>P O BOX 725<br>CENTRE  AL  35960<br>OCCUPATION: | 01/26/1975<br>STATUS: FAILED TO APPEAR | M | W | 01 | 007342 |
| 0262 | THOMAS LINDA E<br>460 CO RD 83<br>CENTRE  AL  35960<br>OCCUPATION: | 04/27/1942<br>STATUS: EXCUSED | F | W | 01 | 010789 |
| 0263 | THOMPSON FLORA A<br>810 CO RD 194<br>CEDAR BLUFF  AL  35959<br>OCCUPATION: | 02/07/1940<br>STATUS: OTHER | F | W | 02 | 007794 |
| 0264 | THOMPSON KIMBERLY J<br>ROUTE 2 BOX 331<br>LEESBURG  AL  35983<br>OCCUPATION: | 02/26/1961<br>STATUS: EXCUSED | F | W | 01 | 003104 |
| 0265 | THOMPSON RONALD L<br>4445 CO RD 29<br>PIEDMONT  AL  36272<br>OCCUPATION: | 05/02/1952<br>STATUS: OTHER | M | W | 04 | 004461 |
| 0266 | TIERCE DENNIS R<br>ROUTE 1 BOX 159C<br>PIEDMONT  AL  36272<br>OCCUPATION: | 09/08/1952<br>STATUS: OTHER | M | W | 01 | 012314 |

```
JUR220                    ALABAMA JUDICIAL INFORMATION SYSTEM          PAGE:    20
OPER: CAS                        CHEROKEE COUNTY              RUN DATE: 05/30/2000
                             JUROR VENIRE BY STRIKE#          RUN TIME: 12:24:37

TERM DATE: 11/01/1999    PANEL: ALL    STATUS: ALL

STRIKE   JUROR'S NAME / ADDRESS          BIRTH DATE   SEX  RACE   PANEL   JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|---|---|---|---|---|---|---|
| 0267 | TUCKER CHARLIE E<br>123 CO RD 834<br>GAYLESVILLE AL 35973 | 01/04/1951<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 006325 |
| 0268 | TYNDALL DARBY S<br>PO BOX 132<br>CENTRE AL 35960 | 04/25/1974<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 011241 |
| 0269 | ULRICH FRED JR<br>4713 CROSS STREET<br>CEDAR BLUFF AL 35959 | 08/17/1928<br>STATUS: DISQUALIFIED<br>OCCUPATION: | M | W | 01 | 011297 |
| 0270 | USRY GWENDOLYN B<br>ROUTE 6 BOX 445<br>GADSDEN AL 35901 | 05/25/1931<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 010506 |
| 0271 | VANPELT RODNEY D<br>P O BOX 95<br>GAYLESVILLE AL 35973 | 11/23/1966<br>STATUS: OTHER<br>OCCUPATION: | M | W | 03 | 010337 |
| 0272 | VAUGHN ANN B<br>1150 COUNTY ROAD 167<br>LEESBURG AL 35983 | 07/24/1930<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 009828 |
| 0273 | VENABLE WILLIAM L<br>15626 CO RD 29<br>CENTRE AL 35960 | 05/02/1946<br>STATUS: OTHER<br>OCCUPATION: | M | W | 02 | 000394 |
| 0274 | VESTAL WOODROW W III<br>P O BOX 321<br>CEDAR BLUFF AL 35959 | 07/02/1972<br>STATUS: OTHER<br>OCCUPATION: | M | W | 02 | 012823 |
| 0275 | WADE ANGELA S<br>ROUTE 1 BOX 361A<br>GAYLESVILLE AL 35973 | 10/27/1964<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 014235 |
| 0276 | WADE LINDA F<br>ROUTE 2 BOX 276A<br>CEDAR BLUFF AL 35959 | 02/08/1971<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 003160 |
| 0277 | WADE SAM<br>190 CO RD 541<br>CENTRE AL 35960 | 01/23/1910<br>STATUS: DISQUALIFIED<br>OCCUPATION: | M | W | 01 | 012653 |
| 0278 | WALKER SHELBY J<br>NO 1 NORTHWOOD AVENUE<br>CENTRE AL 35960 | 09/11/1943<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | F | W | 01 | 007173 |
| 0279 | WALKER SHERRY A<br>1021 LINDSEY DR<br>CENTRE AL 35960 | 01/16/1962<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | F | W | 01 | 008472 |
| 0280 | WASHINGTON DANNY T<br>3050 CO RD 239<br>CENTRE AL 35960 | 10/29/1957<br>STATUS: EXCUSED<br>OCCUPATION: | M | B | 01 | 003612 |

```
JUR220                  ALABAMA JUDICIAL INFORMATION SYSTEM            PAGE:    81
OPER: CAS                      -M-    CHEROKEE COUNTY   -E-     RUN DATE: 05/26/2000
                               JUROR VENIRE BY STRIKE#          RUN TIME: 12:24:37

TERM DATE: 11/01/1999    PANEL: ALL   STATUS: ALL

STRIKE  JUROR'S NAME / ADDRESS          BIRTH DATE   SEX  RACE   PANEL    JUROR#
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|---|---|---|---|---|---|---|
| 0281 | WATKINS GLADYS W<br>2615 CO RD 81<br>GAYLESVILLE AL 35973 | 09/16/1924<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 002030 |
| 0282 | WEBB PATRICIA FAYE<br>PO BOX 23<br>CENTRE  AL 35960 | 06/17/1947<br>STATUS: OTHER<br>OCCUPATION: | F | W | 01 | 013614 |
| 0283 | WELLS AMANDA G<br>ROUTE 3 BOX 468<br>CENTRE  AL 35960 | 11/27/1975<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 015535 |
| 0284 | WEST JAMES L<br>1008 SADDLE CLUB DRIVE<br>CENTRE  AL 35960 | 07/05/1944<br>STATUS: OTHER<br>OCCUPATION: | M | W | 01 | 011523 |
| 0285 | WILLIAMS BOBBY J<br>PO BOX 625<br>CENTRE  AL 35960 | 04/04/1971<br>STATUS: EXCUSED<br>OCCUPATION: | M | B | 01 | 011134 |
| 0286 | WILLIAMS DAVID W<br>ROUTE 1 BOX 255B<br>CEDAR BLUFF AL 35959 | 03/07/1966<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 002010 |
| 0287 | WILLIAMS JACE D<br>10010 HWY 9 NORTH<br>CEDAR BLUFF AL 35959 | 01/10/1938<br>STATUS: OTHER<br>OCCUPATION: | M | W | 02 | 004717 |
| 0288 | WILLIAMS L J<br>7925 CO RD 6<br>PIEDMONT  AL 36272 | 09/26/1934<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 014831 |
| 0289 | WILLIAMS MARION A<br>P O BOX 6<br>LEESBURG AL 35983 | 04/22/1922<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 015100 |
| 0290 | WINKLES CONNIE W<br>4490 CORNWALL DRIVE<br>CEDAR BLUFF AL 35959 | 06/28/1973<br>STATUS: OTHER<br>OCCUPATION: | F | W | 02 | 001070 |
| 0291 | WOOD KATHERINE W<br>14790 US HIGHWAY 411 NORT<br>CENTRE  AL 35960 | 08/13/1926<br>STATUS: OTHER<br>OCCUPATION: | F | W | 01 | 015139 |
| 0292 | WOODS JOE D<br>PO BOX 279 CHATTOOGA DRIV<br>CEDAR BLUFF AL 35959 | 12/02/1936<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | M | W | 01 | 007568 |
| 0293 | WOODS MICHELLE V<br>ROUTE 4 BOX 401<br>CENTRE  AL 35960 | 02/14/1973<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | W | 01 | 002087 |
| 0294 | WOODY MICHELLE R<br>402 PEARL STREET<br>GADSDEN  AL 35904 | 09/06/1971<br>STATUS: DISQUALIFIED<br>OCCUPATION: | F | B | 01 | 014687 |

```
JUR220                        ALABAMA JUDICIAL INFORMATION SYSTEM           PAGE:   55
OPER: CAS                            CHEROKEE COUNTY          RUN DATE: 05/30/2000
                                 JUROR VENIRE BY STRIKE#      RUN TIME: 12:24:37

TERM DATE: 11/01/1999   PANEL: ALL    STATUS: ALL
```

| STRIKE | JUROR'S NAME / ADDRESS | BIRTH DATE | SEX | RACE | PANEL | JUROR# |
|--------|------------------------|------------|-----|------|-------|--------|
| 0295 | WOOTEN TERRY L<br>5915 CO RD 43<br>FORT PAYNE  AL  35967 | 01/20/1948<br>STATUS: EXCUSED<br>OCCUPATION: | M | W | 01 | 004065 |
| 0296 | WRIGHT DONNA L<br>3925 BOUNDARY STREET<br>CEDAR BLUFF  AL  35959 | 03/04/1965<br>STATUS: UNDELIVERED<br>OCCUPATION: | F | B | 01 | 002452 |
| 0297 | WRIGHT LARRY E<br>ROUTE 1 BOX 256<br>COLLINSVILLE  AL  35961 | 03/09/1949<br>STATUS: UNDELIVERED<br>OCCUPATION: | M | W | 01 | 004517 |
| 0298 | YOUNG ARLEE G<br>ROUTE 1 BOX 580<br>CENTRE  AL  35960 | 02/10/1942<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 009376 |
| 0299 | YOUNG FRANCINE C<br>1405 CO RD 76<br>CENTRE  AL  35960 | 01/18/1954<br>STATUS: EXCUSED<br>OCCUPATION: | F | W | 01 | 005786 |
| 0300 | YOUNG SHERRY L<br>ROUTE 3 BOX 390<br>HEFLIN  AL  36264 | 10/10/1967<br>STATUS: FAILED TO APPEAR<br>OCCUPATION: | F | W | 01 | 012877 |

```
              * * *   P R O G R A M   T O T A L S * * *

   RECORDS WRITTEN:   300
```

DEFENDANT'S EXHIBIT # 4
(5-30-2000)

1990 Census Lookup (1.4a)                                    http://venus.census.gov/cdrom/lookup/959679922

(URL reload)



**1990 US Census Data**
Database: C90STF3A
Summary Level: State--County

# Cherokee County: FIPS.STATE=01, FIPS.COUNTY90=019

RACE BY SEX BY AGE
*Universe: Black males*
Under 1 year...........................................................11
1 and 2 years..........................................................24
3 and 4 years..........................................................16
5 years.................................................................4
6 years.................................................................4
7 to 9 years...........................................................37
10 and 11 years........................................................37
12 and 13 years........................................................23
14 years...............................................................11
15 years................................................................2
16 years................................................................5
17 years................................................................4
18 years...............................................................14
19 years...............................................................23
20 years................................................................4
21 years...............................................................10
22 to 24 years.........................................................30
25 to 29 years.........................................................37
30 to 34 years.........................................................62
35 to 39 years.........................................................47
40 to 44 years.........................................................51
45 to 49 years.........................................................51
50 to 54 years.........................................................30
55 to 59 years.........................................................31
60 and 61 years.........................................................8
62 to 64 years..........................................................3
65 to 69 years.........................................................17
70 to 74 years..........................................................3
75 to 79 years..........................................................7
80 to 84 years.........................................................13
85 years and over.......................................................4
RACE BY SEX BY AGE
*Universe: Black females*
Under 1 year............................................................5
1 and 2 years..........................................................10
3 and 4 years..........................................................16
5 years.................................................................0
6 years................................................................14
7 to 9 years...........................................................20
10 and 11 years........................................................31
12 and 13 years........................................................17
14 years...............................................................23
15 years...............................................................12
16 years...............................................................15
17 years................................................................9
18 years...............................................................23
19 years...............................................................17

```
20 years..........................................................15
21 years...........................................................7
22 to 24 years....................................................26
25 to 29 years....................................................35
30 to 34 years....................................................33
35 to 39 years....................................................51
40 to 44 years....................................................61
45 to 49 years....................................................27
50 to 54 years....................................................44
55 to 59 years....................................................16
60 and 61 years....................................................2
62 to 64 years....................................................27
65 to 69 years....................................................24
70 to 74 years....................................................23
75 to 79 years....................................................15
80 to 84 years....................................................15
85 years and over.................................................21
```

# In the Circuit Court of Cherokee County, Alabama

## Criminal Division

| | | |
|---|---|---|
| STATE OF ALABAMA | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NOS.  CC-98-61 |
| | ) | CC-98-62 |
| KEITH EDMUND GAVIN | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MEMORANDUM
## SUPPORTING MOTION FOR NEW TRIAL

# FILED

MAY 3 0 2000

*Carolyn M. Smith*
CIRCUIT CLERK
CHEROKEE COUNTY, ALA.

STATEMENT OF THE CASE ........................................................ 4

STATEMENT OF FACTS ........................................................... 5

ARGUMENT ........................................................................ 7

CAPITAL INDICTMENTS ARE RETURNED IN AN ARBITRARY AND CAPRICIOUS MANNER IN THE NINTH JUDICIAL CIRCUIT ........................... 7

FACTS UNIQUE TO THIS ISSUE ............................................. 7

ARGUMENT ...................................................................... 11

THE ALABAMA CAPITAL MURDER STATUTES OPERATE AUTOMATICALLY TO MAKE A MURDER CAPITAL-ELIGIBLE ........................................... 13

A GRAND JURY HAS AN AFFIRMATIVE DUTY TO INDICT WHEN PRESENTED WITH PROBABLE CAUSE OF THE ELEMENTS ................................... 19

THE ARBITRARY AND CAPRICIOUS RETURN OF CAPITAL INDICTMENTS VIOLATES A DEFENDANT'S CONSTITUTIONAL RIGHTS ................................ 24

THE RETURN OF CAPITAL INDICTMENTS IN THE NINTH CIRCUIT IS MADE IN A RACIALLY DISCRIMINATORY MANNER .................................... 28

CONCLUSION OF SECTION ................................................. 37

THE SENTENCE OF DEATH BY ELECTROCUTION UNNECESSARILY EXPOSES DEFENDANT TO A CONSTITUTIONALLY IMPERMISSIBLE RISK OF CRUEL AND UNUSUAL PUNISHMENT .......................................................... 41

THE CONVICTION OF THE DEFENDANT OF CAPITAL MURDER BASED ON HIS PRIOR ILLINOIS CONVICTION VIOLATES HIS CONSTITUTIONAL RIGHTS TO EQUAL PROTECTION OF THE LAWS, DUE PROCESS OF LAW AND FREEDOM FROM CRUEL AND UNUSUAL PUNISHMENTS ...................................... 47

THE COURT ERRED BY REFUSING TO DISMISS APPOINTED COUNSEL AND OFFERING THE DEFENDANT THE OPTION OF PROCEEDING PRO SE .......... 53

THE DEFENDANT'S RIGHTS WERE VIOLATED BY THE METHODS OF CONVENING THE GRAND AND PETIT JURIES .................................... 56

THE COURT ERRED BY FAILING TO REQUIRE THE STATE TO PROVIDE RACE NEUTRAL REASONS FOR ITS PEREMPTORY JURY CHALLENGES ............... 60

THE DEFENDANT IS ENTITLED TO A NEW TRIAL BECAUSE THE COURT ERRONEOUSLY ADMITTED EVIDENCE OVER TIMELY AND WELL TAKEN OBJECTIONS .......................................................................... 63

REGARDLESS OF THE SUFFICIENCY OF ANY ONE ERROR THEREFOR. THE DOCTRINE OF CUMULATIVE ERROR MANDATES A NEW TRIAL ...................... 63

*THE COURT ERRONEOUSLY ADMITTED COPIES OF PURPORTED PRIOR CONVICTIONS OF THE DEFENDANT* ................................................................................................ 64

*THE COURT ERRONEOUSLY ADMITTED A PURPORTED COPY OF AN "OFFICIAL STATEMENT OF FACTS" FROM THE ILLINOIS STATE'S ATTORNEY INTO EVIDENCE* ...... 65

*THE COURT ERRONEOUSLY ADMITTED EYEWITNESS IDENTIFICATION OF THE DEFENDANT THAT CONSISTED OF, OR WAS TAINTED BY, IMPERMISSIBLY SUGGESTIVE SHOWUP PROCEDURES* .................................................................................................. 66

*THE COURT ERRONEOUSLY ADMITTED THE DEFENDANT'S ILLINOIS MUG SHOT INTO EVIDENCE* ......................................................................................................................... 67

**CONCLUSION** ...................................................................................................... **70**

**CERTIFICATE OF SERVICE** ............................................................................. **75**

## STATEMENT OF THE CASE

The Defendant, Keith Edmund Gavin, was charged with the offense of capital murder in two counts in case number CC-98-61 and robbery in the first degree in case number CC-98-62, on the complaint of Larry Wilson on 8 March 1998.  He was subsequently indicted by the April 1998 term of the Cherokee County grand jury for these offenses on 14 April 1998.

The Defendant was arraigned with his appointed counsel, Harmon Bayne Smith, Esq. and John H. Ufford, II, Esq., on 23 April 1998, and entered a plea of not guilty.

Following the filing and disposition of numerous motions, which are further described in the Statement of Facts, and the granting of several continuances, these cases were called for trial on 3 November 1999.  On 6 November 1999, the jury returned a verdict of guilty in both cases.  On 8 November 1999, the jury returned a recommendation of death in case number CC-98-61.

The Sentencing hearing in these cases was held on 6 December 1998.  On 5 January 2000, the Court pronounced a sentence of death on the Defendant.  On 5 January, 2000, the Court entered an order relieving attorneys Smith and Ufford of further responsibility in these cases, and appointed undersigned counsel to represent the Defendant in remaining proceedings in this Court and on appeal.

On 5 February, 2000, undersigned counsel filed a Motion for New Trial.  By written consent of the parties in conformity with Ala.R.Crim.P. 24.4, consideration of this motion was extended until 30 May 2000.

## STATEMENT OF FACTS

The Defendant in this case is a 40-year old African-American male, originally from the Chicago area. He was raised there in a housing project, along with several siblings. Each of his siblings has suffered the ravages of drug and alcohol abuse, although several of them have overcome this to attain productive places in society. The Defendant also suffered from sexual abuse while a child. He had serious problems, both academic and behavioral, while in school, and never finished high school. He was previously convicted of murder in Illinois in 1981. This conviction arose from a dispute at a party, in which one disputant was shot and killed. The Defendant served seventeen years in confinement for that offense, and successfully completed a transitional program for early release. He had a good disciplinary record while in prison. He met an area native, Dewayne Meeks, in Chicago, and moved to Alabama at his instance after his release.

The facts of the offense may be summarized as follows, based on the testimony offered in the case. On or about 6 March 1998, someone approached William Clayton, Jr., a bank courier employed by Corporate Express Delivery Systems, Inc, as he was parked outside First Alabama Bank[1] in Centre. According to witnesses, this person, described as a black male, shot Mr. Clayton once with a handgun, pushed him to the back of the van, and drove off in the vehicle. Based on photographs entered into evidence, such as State's Exhibit 12, it appears that the initial shot was aimed at Clayton's arm, as that is the location of the outermost entry wound.

After a report was made to the police, the vehicle was sighted headed west from Leesburg on Alabama Highway 68 by Investigator Danny Smith of the Ninth Circuit District Attorney's Office. Smith pursued the van for a short distance. The

---

[1]   Now RegionsBank.

308

driver abandoned it, and fled into a nearby wood.   After an extensive search by numerous law enforcement officers, including a bloodhound team from the Alabama Department of Corrections, the Defendant was arrested and charged with the murder of the courier.

## ARGUMENT

### I

### CAPITAL INDICTMENTS ARE RETURNED IN AN ARBITRARY AND CAPRICIOUS MANNER IN THE NINTH JUDICIAL CIRCUIT

### FACTS UNIQUE TO THIS ISSUE

As indicated in part by the certified copies of court records submitted along with this memorandum, and as is expected to be brought out in testimony at hearing on this matter, there have been, in a period of several years next preceding the institution of this case, several homicides in the Ninth Circuit which are relevant to the instant motion. They are so relevant to the extent that they clearly reflect murders (or were so indicted) which clearly include, in their surrounding circumstances, one or more of the circumstances which, under Ala. Code § 13A-5-39 *et seq.*, constitute a murder as a capital offense. These cases will be briefly summarized as follows:

***State v. Jason Fleming***[2] Mr. Fleming was indicted in May 1998 for non-capital murder in the stabbing death of his grandfather, Charles Smith. Investigation indicates that Fleming was on property owned by the victim, and had been instructed to leave by the victim. Hence, he was "remaining unlawfully", Ala. Code § 13A-7-1(4) on those premises to commit one or more crimes, including trespass, murder, and possibly theft, and was therefore committing the murder in the course of a burglary, making it capital-eligible under Ala. Code § 13A-5-40(4). There are some indications that the murder might also have been occasioned by a robbery, making it capital-eligible under Ala. Code § 13A-5-40(2).

---

[2]      Case No. CC-98-96. Cases cited in this section in notes will be DeKalb County cases unless otherwise indicated.

**State v. Wilson Floyd**[3] Mr. Floyd was indicted for non-capital murder in 1995, in violation of Ala. Code § 13A-6-2. The record in this case reflects that the victim was following the rock group The Grateful Dead, and became stranded in Fort Payne when his vehicle was disabled. He was befriended by Floyd. While Floyd and the victim were both under the influence of drugs, Floyd repeatedly stabbed and killed the victim in the course of robbing him of $300.00 the victim's father had sent to repair the vehicle. Thus, the murder was capital-eligible under Ala. Code § 13A-5-40(a)(2). On his plea of guilty to murder in September of 1997, Floyd was sentenced to a term of 30 years imprisonment. Both Floyd and his victim were white.

**State v. Charlie Berdell Kerley**[4] Mr. Kerley was indicted for one count of noncapital murder in violation of Ala. Code § 13A-6-2(a)(1), and plead guilty in August of 1994. The record in this case reflects that Mr. Kerley entered the home of his pregnant girlfriend's mother and repeatedly shot the girlfriend to death.[5] As Kerley entered the home as a trespasser, he entered or remained unlawfully to commit the crime of murder, and, as one committing burglary in the first degree (Ala. Code § 13A-7-1 and 5) would have committed a capital murder under Ala. Code § 13A-5-40(a)(4). Both the defendant and the victim in this case were African-American. Kerley received a sentence of 40 years in prison.

**State v. Nell Rae Long**[6] Ms. Long was indicted for two counts of murder in violation of Ala. Code § 13A-6-2, and convicted following a trial in May of 1997. The record in those cases indicates that Ms. Long, in an encounter with her husband and her husband's lover, followed them from the Long house. She shot and killed them both in

---

[3]     Case No. CC-95-388
[4]     Case No. CC-93-560
[5]     The record indicates the fetus also died. However, this would not be a murder of two persons qualifying under Ala. Code § 13A-5-40(a)(10), as murder must be of a "person", defined as "a human being who had been born and was alive at the time of the homicidal act." Ala. Code § 13A-6-1(2).
[6]     Case Nos. CC-95-80 and CC-95-254.

8

the driveway of the Long home, within a matter of seconds of each other.   Forensic evidence indicated that Long emptied the pistol into the back of her husband's lover. Ms. Long is white, as were both victims.   The murders, under these circumstances, were capital murders pursuant to Ala. Code § 13A-5-40(a)(10).   Long received a sentence of 30 years in prison.

*State v. Angela Mendenhall* [7] Ms. Mendenhall was indicted for non-capital murder in violation of Ala. Code § 13A-6-2 in 1996.  She was indicted on a theory of accessory liability with respect to her husband, David Mendenhall, *infra*.  In August of 1997, the murder count against her was dismissed on her plea of guilty to felony child abuse in violation of Ala. Code § 26-15-3.  She received a sentence of 10 years in prison.

*State v. David Mendenhall* [8] Mr. Mendenhall was indicted for one count of intentional murder in violation of Ala. Code § 13A-6-2 in 1996.  The record in this case indicates that Mendenhall attacked his infant child, which was less than one year of age at the time, willfully inflicting blunt force trauma to the child's head, body and extremities, resulting in the child's death.  Autopsy reports indicate that the child had been subjected to extreme blunt force trauma on repeated occasions over an extended period of time.  The murder was therefore capital-eligible under Ala. Code § 13A-5-40(a)(15). *cf., Ex parte Woodard*, 631 So.2d 1065 (Ala.Crim.App. 1993) Both Mendenhall and his child were white.  Mendenhall plead guilty in August of 1997 and received a sentence of 20 years imprisonment.

*State v. John Allen Stephens* [9] Mr. Stephens was indicted for murder in violation of Ala. Code § 13A-6-2.  The record in this case indicates that Stephens shot and killed the victim while the defendant was inside a motor vehicle.  The murder was therefore capital-eligible under Ala. Code § 13A-5-40(a)(18).  Stephens was acquitted at

---

[7]     Case No. CC-96-493 (A related charge of Willful Abuse was Case No. CC-96-462).

[8]     Case No. CC-96-464 (A related charge of Willful Abuse was Case No. CC-96-463).

[9]     Case No. CC-94-398.

9

trial on the apparent basis of evidence asserting self-defense. While the acquittal might make this case seem inappropriate for consideration in the instant motion, it must be kept in mind that the instant motion is focused on the indictment phase of capital proceedings. The grand jury found probable cause for the murder indictment, and it does not appear that the petit jury's finding was in any way based on the absence of a capital-qualifying fact.

*State v. Michelle Teems* [10] Ms. Teems was indicted for murder in violation of Ala. Code § 13A-6-2, and entered a plea of guilty to vehicular homicide in violation of Ala. Code § 32-5A-192 in November 1995. The record in this case indicates that her son, Myles Teems, who was under the age of fourteen years at the time, was killed when she intentionally drove her automobile while materially under the influence of alcohol. Thus, her offense was capital-eligible under Ala. Code § 13A-5-40(a)(15).

*At the hearing on 9-4-2000 the D conceded that this case is not capital eligible*

*State v. Michael Wayne Thompson* [11] Mr. Thompson was indicted for murder in violation of Ala. Code § 13A-6-2, and convicted after a trial in March of 1996. The record in this case indicates that the victim was forcibly restrained and asported from the scene where he was first brutally beaten and then shot by Thompson. He was abandoned later under circumstances calculated to result in his death, which in fact resulted. Thus, the victim was clearly subjected to kidnapping in the first degree within the meaning of Ala. Code § 13A-6-43. Further, the record reflects that the victim was killed as a result of the defendant's concern that the victim had informed authorities about his narcotics dealings. Thus, the victim was killed in his capacity as an informing participant in a criminal proceeding. Under these circumstances, the murder was capital under both Ala. Code § 13A-5-40(a)(1) and (14). Both the victim and defendant were

---

[10]     Case No. CC-95-69 (Cherokee County).
[11]     Case No. CC-94-27.

white. Thompson received a sentence of life imprisonment, with the possibility of parole.[12]

*State v. Johnny Young* [13] Mr. Young was a co-defendant of Michael Wayne Thompson, *supra*. Thus, his murder was a capital murder under both Ala. Code § 13A-5-40(a)(1) and (14). The discovery record reflects that, although Thompson shot the victim, and conducted most of the beating, Young did assist in asportating the victim and leaving him to die. There are some indications that Young assisted the State in prosecuting Thompson. The charges against Young were dismissed with leave to reindict. Young is white.

The computer records in the offices of the Circuit Clerks indicate that, since the initiation of computer records in 1992, there have been 42 murder indictments returned in the Ninth Circuit. Of those, 15 were indicted capitally. Of those indicted capitally, six (40%) have been African-American. The survey of records undertaken by counsel, and reflected in the narratives above, indicate 25 cases where some capital-qualifying circumstance was present. Of those cases, the 15 that were indicted capitally represent 30% of the total. Of the seven cases in which an African-American defendant was indicted for murder, in a case where a capital-qualifying circumstance was present, six – including the instant Defendant and his co-defendant – or 86% of the total, were indicted capitally.[14]

## ARGUMENT

The issues raised by the Defendant in the instant motion implicate a number of his constitutional rights. These include his right to due process of law, as established by

---

[12]   Thompson escaped while being transported for sentencing in this case, and is now awaiting execution on capital murder charges in another state resulting from that escape.
[13]   Case No. CC-94-18.
[14]   A list of the cases considered is appended to this section as an appendix.

U.S. Const., Amends. V and XIV and Ala. Const., Art. I § 6; equal protection of the laws, as established by U.S. Const., Amend. XIV and freedom from cruel and unusual punishment, as established by U.S. Const., Amends. VIII and XIV and Ala. Const., Art. I § 15. It will be shown that the actions of the collective grand juries in returning capital indictments in such an arbitrary and capricious manner violate these rights of the Defendant. It will be seen that these grand juries do so in derogation of an affirmative duty to indict all capital-eligible murders as capital under Ala. Code § 12-16-202 and Ala.R.Crim.P. 12, the common law, and the applicable substantive provisions of Title 13A of the Code. The arbitrary refusal of grand juries to do so has created an unconstitutional regime of capital indictments and proceedings in the Ninth Circuit as a matter of *de facto* law. Finally, and in the alternative to the preceding argument, it will be shown that there is a shocking statistical disparity in the rates in which capital indictments are returned against eligible African-American and white defendants. This disparity gives rise to an inference of institutionalized prejudice, and convincingly establishes a violation of the Defendant's right to be free from discrimination on account of his race, as guaranteed by the equal protection clause of U.S. Const., Amend. XIV.

A

## THE ALABAMA CAPITAL MURDER STATUTES OPERATE AUTOMATICALLY TO MAKE A MURDER CAPITAL-ELIGIBLE

In order to understand the issues involved in this case, it is necessary to first have a firm grasp of the capital murder statutory scheme. The first statute in this edifice is the operative language of the murder statute proper, Ala. Code § 13A-6-2(a), which states:

(a) A person commits the crime of murder if:

(1) With intent to cause the death of another person, he causes the death of that person or of another person; or

(2) Under circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person; or

(3) He commits or attempts to commit arson in the first degree, burglary in the first or second degree, escape in the first degree, kidnapping in the first degree, rape in the first degree, robbery in any degree, sodomy in the first degree or any other felony clearly dangerous to human life and, in the course of and in furtherance of the crime that he is committing or attempting to commit, or in immediate flight therefrom, he, or another participant if there be any, causes the death of any person.

The next statute in the regime is that which sets forth the capital-qualifying offenses, Ala. Code § 13A-5-40(a), which sets out those additional elements which make a murder a capital offense. [15] It provides that:

(a) The following are capital offenses:

---

[15]     Under the provisions of Ala. Code § 13A-5-40(b), only "specific intent" murder under Ala. Code § 13A-6-2(a)(1) can qualify as capital under the provisions of this subsection; neither "extreme indifference" murder under Ala. Code § 13A-6-2(a)(2) nor "felony murder" under Ala. Code § 13A-6-2(a)(2) can become a capital offense.

13

(1) Murder by the defendant during a kidnapping in the first degree or an attempt thereof committed by the defendant.

(2) Murder by the defendant during a robbery in the first degree or an attempt thereof committed by the defendant.

(3) Murder by the defendant during a rape in the first or second degree or an attempt thereof committed by the defendant; or murder by the defendant during sodomy in the first or second degree or an attempt thereof committed by the defendant.

(4) Murder by the defendant during a burglary in the first or second degree or an attempt thereof committed by the defendant.

(5) Murder of any police officer, sheriff, deputy, state trooper, federal law enforcement officer, or any other state or federal peace officer of any kind, or prison or jail guard, while such officer or guard is on duty, regardless of whether the defendant knew or should have known the victim was an officer or guard on duty, or because of some official or job-related act or performance of such officer or guard.

(6) Murder committed while the defendant is under sentence of life imprisonment.

(7) Murder done for a pecuniary or other valuable consideration or pursuant to a contract or for hire.

(8) Murder by the defendant during sexual abuse in the first or second degree or an attempt thereof committed by the defendant.

(9) Murder by the defendant during arson in the first or second degree committed by the defendant; or murder by the defendant by means of explosives or explosion.

(10) Murder wherein two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct.

(11) Murder by the defendant when the victim is a state or federal public official or former public official and the murder stems from or is caused by or is related to his official position, act, or capacity.

(12) Murder by the defendant during the act of unlawfully assuming control of any aircraft by use of threats or force with intent to obtain any valuable consideration for the release of said aircraft or any passenger or

crewmen thereon or to direct the route or movement of said aircraft, or otherwise exert control over said aircraft.

(13) Murder by a defendant who has been convicted of any other murder in the 20 years preceding the crime; provided that the murder which constitutes the capital crime shall be murder as defined in subsection (b) of this section; and provided further that the prior murder conviction referred to shall include murder in any degree as defined at the time and place of the prior conviction.

(14) Murder when the victim is subpoenaed, or has been subpoenaed, to testify, or the victim had testified, in any preliminary hearing, grand jury proceeding, criminal trial or criminal proceeding of whatever nature, or civil trial or civil proceeding of whatever nature, in any municipal, state, or federal court, when the murder stems from, is caused by, or is related to the capacity or role of the victim as a witness.

(15) Murder when the victim is less than fourteen years of age.

(16) Murder committed by or through the use of a deadly weapon fired or otherwise used from outside a dwelling while the victim is in a dwelling.

(17) Murder committed by or through the use of a deadly weapon while the victim is in a vehicle.

(18) Murder committed by or through the use of a deadly weapon fired or otherwise used within or from a vehicle.

The Defendant, in the instant cause, is under capital indictment for having committed an intentional murder, in violation of Ala. Code § 13A-6-2(a)(1), in connection with a robbery, making the offense capital under Ala. Code § 13A-5-40(2), and with committing a murder within 20 years of a prior murder conviction, making the offense capital under Ala. Code § 13A-5-40(a)(13).

Alabama's statutory scheme is thus somewhat (perhaps regrettably) mechanical in its application. Under its terms, if the facts fit the terms of the statute, the offense is a capital offense, and no election by a prosecuting authority is required, or, conversely, permitted. This construction of the interaction of these statutes is apparent on their

face. It is further reinforced by the construction given them in the case of *Holladay v. State*, 549 So.2d 122 (Ala.Crim.App. 1988). In that case, Holladay was convicted at trial of the capital murders of his former wife, her boyfriend, and a friend of theirs. As multiple murders, they were made capital under Ala. Code § 13A-5-40(a)(10). Holladay contended at trial that he should have been given a jury charge of non-capital murder as a lesser included offense. In affirming the trial court's refusal to give this charge, the appellate court made it clear that the statute mandates a capital charge in the presence of a capital-qualifying fact or circumstance. In so holding, the court stated:

> ... A lesser-included offense instruction should only be refused in a death case when the evidence adduced at trial could only support a conviction on the crime charged in the indictment. Thus, the ultimate question before this court is whether there is a reasonable theory from the evidence in this case, which would support a charge on the lesser-included offense of intentional murder. We are of the opinion that there is not.
>
> The evidence which makes this crime a capital offense (the murder of two or more persons) is undisputed. At least two of the victims were killed by the same gun. The appellant's defense was alibi. There was absolutely no evidence presented by the defense or the State that appellant killed only one of the victims but not the other two victims. There was absolutely no evidence presented that someone accompanied the appellant to the trailer on the night in question.
>
> The crime of intentional murder is ***automatically elevated to capital murder*** when two or more persons are murdered by the defendant by one act or pursuant to one scheme or course of conduct. Therefore, if the evidence in this case showed that the appellant killed two or more of the victims (which it does), then the jury ***had to convict the appellant of capital murder.*** 549 So.2d at 129-30. (emphasis added).

Thus, both the text and the rationale of *Holladay* preclude any election by a grand jury to refuse to indict a qualifying murder as capital.

The mandatory nature of our capital statute is to be contrasted with – and becomes clearer when compared to – the laws of some of our sister states, where a

specific election by the prosecutor is required to invoke the capital charging provisions of their codes. One such example is N.Y. Crim. Proc. Law § 250.40, which provides:

> § 250.40 Notice of intent to seek death penalty.
> 1.  A sentence of death may not be imposed upon a defendant convicted of murder in the first degree unless, pursuant to subdivision two of this section, the people file with the court and serve upon the defendant a notice of intent to seek the death penalty.

Tenn.R.Crim.P 12.3(b) provides another example. :

> Where a capital offense is charged in the indictment or presentment and the district attorney intends to ask for the death penalty, written notice thereof shall be filed not less than 30 days prior to trial. If the notice is filed later than this time, the trial judge shall grant the defendant upon his motion a reasonable continuance of the trial. The notice shall specify that the State intends to seek the death penalty and the notice shall specify those aggravating circumstances the State intends to rely upon at a sentencing hearing. Specification may be complied with by a reference to the citation of the circumstance.

Each of these examples illustrates an instance where the prosecuting authorities are required to make a positive election to possibly impose a capital sentence, and both have been held to vest in the prosecuting attorney considerable – and valid – authority to exercise discretion in this election. *Johnson v. Pataki*, 91 N.Y.2d 214, 691 N.E.2d 1002, 668 N.Y.S.2d 978 (1997)[16] *State v. Pendergrass*, 1997 WL 83777 (Tenn. Crim. App. 1997)[17].

---

[16]   The opinion states:
> The death penalty statute is, in many respects, unique. Adopted after decades of emotional debate, this statute has many singular attributes, including the unparalleled discretion it affords the prosecutor with respect to the choice of punishment. While every other Penal Law provision identifying a crime is associated with a prescribed sentencing range for the court to consider, the first-degree murder statute gives the People the power to decide in the first instance whether to prosecute an otherwise qualifying homicide as a death penalty matter (see, CPL 250.40) (Titone, J., dissenting)

[17]   The opinion states:
> Justice Anderson in *State v. Superior Oil, Inc.* 875 S.W.2d 658 (Tenn. 1994) at page 660 stated:

320

The Alabama statutes are to be contrasted with these "election" and "notice" types of statutes. The provisions of Ala. Code § 13A-5-40 operate, by their own terms, on any murder under Ala. Code § 13A-6-2(a)(1) without reference to any election or notice.

Such discretion is manifestly lacking from the Alabama schemes for both capital indictments, and grand jury rights and responsibilities. Alabama has elected to provide for considerable discretion in its death penalty scheme, but it has placed that discretion elsewhere than in the grand jury. For instance, in addition to the narrowing requirements of Ala. Code § 13A-5-40, a jury is required to find at least one of the aggravating circumstances enumerated in Ala. Code § 13A-5-49, and to weigh them in a sentencing phase under Ala. Code § 13A-5-46 against those mitigating circumstances enumerated by Ala. Code § 13A-5-51, or any other evidence in mitigation a defendant may offer. The presiding judge then determines the sentence under Ala. Code § 13A-5-47, and an automatic appeal follows under Ala. Code § 13A-5-53. In taking these steps, the jury and judge are, within the constraints of the statute, vested with considerable discretion to tailor the punishment to the particular circumstances of the crime and the perpetrator. *Knotts v. State*, 686 So.2d 431 (Ala.Crim.App. 1995).

---

"Although there are various statutes which assign duties to the elected constitutional office of district attorney general, there are no statutory criteria governing the exercise of the prosecutorial discretion traditionally vested in the officer in determining whether, when, and against whom to institute criminal proceedings. Indeed it has been often recognized that 'prosecutorial discretion in the charging process is very broad.' Citing *Cooper v. State*, 847 S.W.2d 521 (Tenn. Crim. App. 1992)."

The sole discretion whether to seek a sentence of death under the appropriate circumstances is vested in the prosecutor. *State v. Cazes*, 875 S.W.2d 253 (Tenn. 1994); *State v. Brimmer*, 876 S.W.2d 75, 86 (Tenn. 1994).

B

## A GRAND JURY HAS AN AFFIRMATIVE DUTY TO INDICT WHEN PRESENTED WITH PROBABLE CAUSE OF THE ELEMENTS

A grand jury, by contrast, is an entity of limited discretion under the law of Alabama.  In general, when it is presented with evidence establishing mere probable cause an offense has occurred, it comes under an affirmative duty to return an appropriate indictment.  This rationale, as will be shown below, attaches eventually to the duty to indict a capital-eligible murder as a capital murder.  A beginning of an analysis of this issue is to be found in Ala. Code § 12-15-202, which provides:

Charging of grand jury.

(a) The judges of the several courts in this state in which grand juries are organized and empaneled shall give a special charge to the grand jury relative to the criminal laws of this state against the following offenses: laws regulating the ownership, registration and carrying of weapons, violations of election laws, the manufacturing or selling of intoxicating liquors in violation of law, violating the game and fish laws or violating the law prohibiting corporations from contributing to campaign funds.

(b) It shall likewise be the duty of the judges to charge the grand jury as to all other matters which may be required by law and to instruct the grand juries that *it is their duty to indict* for the above named offenses, if, in the opinion of the grand jury, the evidence justifies the indictment. (emphasis added)

While the text of the statute makes the antecedent reference unclear as to whether the duty to indict attaches to all criminal laws, or only to those enumerated, the only two cases citing this statute have clarified this ambiguity.  Both cases have cited and applied the affirmative duty to indict with respect to laws not enumerated in Ala. Code § 12-15-202(a).  *State ex rel. Baxley v. Strawbridge*, 52 Ala. App. 685, 296 So.2d 779 (Ala.Crim.App. 1974) (larceny); *Allen v. State*, 380 So.2d 313 (Ala.Crim.App. 1979) (Ala. Acts 75-130; State Treasurer commits a felony if deposits made in a bank for her personal gain).

Thus, this statute clearly establishes an affirmative duty to indict for whatever offenses the evidence establishes probable cause.

In the case of felonies, this conclusion is made stronger by the provisions of Ala. Code § 12-15-203, which provides a different rule for misdemeanors:

> The grand jury shall not be bound to find an indictment for any misdemeanor, where no prosecutor appears, unless 12 of their number think it necessary for the public good.

Clearly, if the grand jury was assumed as a matter of common law to have discretion as to whether to indict, this provision granting it some leeway with respect to misdemeanors would have been unnecessary. It is a fundamental principle of law in our state that the legislature does not use statutory language without any meaning or application. *Robinson v. State*, 361 So.2d 1113 (Ala. 1978). If a grand jury had general discretion as to whether to indict, this statute would be unnecessary. It should be noted in passing that the above statute should not be construed to imply such general discretion beyond misdemeanors. Legislative acts are not construed to intend any alteration in the law beyond what they declare expressly or by unmistakable implication. *Beasley v. MacDonald Engineering Co.*, 287 Ala. 189, 249 So.2d 844 (1971). Also, statutes that change the common law are not to be construed as changing the common law beyond the express scope of their language. 82 C.J.S. *Statutes* § 363.

The affirmative duty of a grand jury to indict draws further support from the applicable provisions of Ala.R.Crim.P. 12.3, as well as their accompanying official commentary. First among these are the oaths administered to the foreman and other members of the grand jury:

> Rule 12.3. Oath, instructions, duties, and powers of the grand jury.
>
> (a) OATH. The foreman of the grand jury shall take the following oath: "You, as foreman of the grand jury of ___ County, do solemnly swear (or affirm) that you will diligently inquire, and *true*

20

presentment[18] make, of *all indictable offenses* given you in charge, as well as those brought to your knowledge, committed or triable within the county; the state's counsel, your fellows' and your own you shall keep secret; you shall present no person from envy, hatred,- or malice, not leave any one unpresented from fear, affection, reward, or the hope thereof; but **you shall present all things** truly as they come to your knowledge, to the best of your understanding, so help you God?"

After the above oath (or affirmation) has been administered to the foreman, the following oath (or affirmation) shall be administered to the other grand jurors:

"The same oath (or affirmation) which your foreman has taken, on his part, you and each of you, on your respective parts, shall well and truly observe and keep, so help you God." (emphasis added)

This duty is also reflected in the commentary provided by the drafting committee:

Rule 12.3(b) substantially changes past practice.  Ala. Code § 12-16-202, requires the court specifically to charge such things as the laws regulating the operation of automobiles, carrying concealed weapons, dealing in county claims by county officers, failure of tax assessor to administer oath to taxpayer, forming pools to regulate quantity or price of products, combination to control corporation with such intent, violation of election laws, laws relating to convicts and prisoners, adulterating and selling candies, gaming, selling liquors in violation of law, betting on any election, violating the game and fish law, and violating the law prohibiting corporations from contributing to campaign funds.  The rule merely directs the judges of the courts in which grand juries relative to the criminal laws against certain offenses;  [*sic*] to charge the grand jury as to all other matters which may be required by law; and to instruct the grand jury that *it is their __duty__ to indict for offenses if,* in their opinion, *the evidence justifies the indictment.* (emphasis added).

There is one case in Alabama from which an inference as to the issue of grand jury discretion to indict can be drawn.  That case, *Carr v. State*, 28 Ala.App. 466, 187 So.

---

[18]    The term "presentment", although somewhat archaic and not consistently used through history, is here obviously used synonymously with the term "indictment".  Ala.R.Crim.P. 13.1(a).  *see also*, Black's Law Dictionary at 1184 (6th Rev. ed. 1990) (definition of "presentment"; first paragraph)

252 (1939), leans heavily toward the conclusion that the grand jury is under an affirmative duty to indict. In it, the Court of Appeals stated:

> The Grand Jury is the inquisitorial body of the County, drawn and summoned from among its best citizens who, under the direction of the Presiding Judge, *must* make investigations of all violations of law, *making presentments[19] in accordance with such investigation to the court.* 187 So. at 253 (emphasis added)

A review of the history of the institution of the grand jury provides further and ample support for the affirmative duty of a grand jury to indict for the offense presented to it. Under historic English practice, not only were grand jurors presumed to be under a duty to indict if presented with evidence establishing probable cause of an offense, they could actually be fined for failing to do so. *Rex v. Windham*, 2 Keb. 180, 84 Eng. Rep. 113 (K.B. 1667); *Shaftesbury's Case*, 33 Car. 2, 8 How.St.Tr. 770 (1681); Mark Kadish, *Behind the Locked Doors of an American Grand Jury*, 24 Fla. St. L. Rev. 1 (1996)[20] Helene Schwartz, *Demythologizing the Historic Role of the Grand Jury*, 10 Am. Crim. L. Rev. 701 (1972).[21]

Further, cases throughout American history have recognized that it is improper for a grand jury to refuse to return an appropriate indictment. In the case of *United States v. Wells*, 163 F. 313 (D. Idaho 1908), it was held:

> .. when a grand jury *improperly* refuses to return a bill, courts have power, and will upon proper representation of the district attorney, at once call another jury to investigate the matter. (emphasis added) *cited with approval, The Federal Grand Jury*, 22 F.R.D. 343 (1959).

The court's use of the term "improperly" necessarily implies a lack of discretion to refuse to indict when presented with appropriate evidence.

---

[19]   *cf.*, note 15, *supra*, concerning definition of "presentment".

[20]   Professor Kadish also notes that the practice of fining grand jurors for failing to honor the duty to indict continued into Revolutionary-era Connecticut. *Ibid.*, n. 34.

Additional support for the concept of an affirmative duty to indict comes from the line of cases that criticize, and award relief for, the naming of an "unindicted co-conspirator" by a grand jury. Generally, this relief takes the form of expunging the public record of the name of the unindicted co-conspirator. One premise of these decisions, although not always articulated, is that a grand jury, if it sees a conspirator, is under a duty to indict him. In the case of *In re: Jordan*, 439 F.Supp. 199 (S.D. W.V. 1977), the court stated:

> After a close study of the legal precedents, this Court must follow the lead of the Fifth Circuit and holds that it is beyond the power of the federal grand jury to accuse an individual, by name, of criminal misconduct in an indictment and then fail to return an indictment against him. In specifically identifying an individual as an unindicted co-conspirator, the grand jury violates its duty to serve as protector of all those whom it investigates but chooses not to put to trial.

Further, the court included in its opinion the following language from its charge to the grand jury in question:

> You are to consider these presentments and you should indict if you find from the evidence presented to you, unopposed by any other evidence, that probable cause exists. If you find probable cause that a person should be put upon his or her trial upon any charge, then you should return an indictment as a true bill in such a case.

Thus, the line of cases affording relief to the "unindicted co-conspirator" are at least tacitly relying upon a duty of the grand jury to indict in the face of evidence establishing probable cause.

In a word, the law in Alabama may be summarized by example. If a grand jury has probable cause to believe a subject has knowingly obtained, in a trespassory taking, a

---

[21]    This fact is particularly relevant in light of the fact that the common law of England, as of the time of the Revolution, is deemed to be in effect in Alabama in the absence of a statute or other

motor vehicle belonging to another, Ala. Code § 13A-8-1(7), 13A-8-2 and 13A-8-3(b) operate together to create a duty on the part of the grand jury to indict the subject for theft in the first degree. The elements create the duty. If the grand jury is presented with probable cause that a subject has, with intent to cause the death of a person, caused the death of that person, it is then under a duty to indict that subject for murder under Ala. Code § 13A-6-2. It only follows that, if there is probable cause to believe that murder was committed, for instance, under a contract for hire, the grand jury is under no less duty to return that indictment as capital.

## C

## THE ARBITRARY AND CAPRICIOUS RETURN OF CAPITAL INDICTMENTS VIOLATES A DEFENDANT'S CONSTITUTIONAL RIGHTS

Given the duty of the grand jury to indict, when presented with a case that clearly calls for a capital indictment, it quickly becomes apparent that the random return of capital indictments by the grand juries in this Circuit implicates a number of the Defendant's rights. It has been firmly established for over two decades now that the imposition of the death penalty proper must not be done in an arbitrary and capricious manner. The court in *Gregg v. Georgia*, 428 U.S. 153 (1976), summarized its standard in that case, and in the earlier landmark case of *Furman v. Georgia*, 408 U.S. 238 (1972), as follows:

> The basic concern of *Furman* centered on those defendants who were being condemned to death capriciously and arbitrarily. Under the procedures before the Court in that case, sentencing authorities were not directed to give attention to the nature or circumstances of the crime committed or to the character or record of the defendant. Left unguided, juries imposed the death sentence in a way that could only be called freakish. 428 U.S. at 206.

---

positive provision to the contrary. Ala. Code § 1-3-1.

24

This holding is reached, jointly and severally, on grounds of due process, equal protection, and prohibition of cruel and unusual punishment. As a concurring opinion in that case stated:

> There is increasing recognition of the fact that the basic theme of equal protection is implicit in "cruel and unusual" punishments. "A penalty . . . should be considered 'unusually' imposed if it is administered arbitrarily or discriminatorily." 408 U.S. at 249 (Douglas, J., concurring) (footnotes omitted)

Further, *Furman* and *Gregg*, by their own clear terms, apply their principles to cases other than those in which the death penalty is actually imposed. They recognize that punishments other than the actual imposition of death are subject to scrutiny for indicia of cruelty or unusualness. Indeed, one concurring Justice cited several instances where the cruel and unusual clause had been applied to lesser punishments. *Weems v. United States*, 217 U.S. 349 (1910) (12 years in chains at hard and painful labor); *Trop v. Dulles*, 356 U.S. 86 (1958) (expatriation); *Robinson v. California*, 370 U.S. 660 (1962) (imprisonment for narcotics addiction) [cited, 408 U.S. at 282 (Brennan, J., concurring)]. see also, *Novak v. Beto*, 453 F.2d 661 (5th Cir. 1971)(solitary confinement as cruel and unusual).

More importantly, both *Furman* and *Gregg* recognize that any penalty, if imposed in an arbitrary and capricious manner, violates the equal protection and cruel and unusual punishment provisions of the Constitution. As was stated in *Furman*:

> Any penalty, a fine, imprisonment or the death penalty could be unfairly or unjustly applied. The vice in this case is not in the penalty but in the process by which it is inflicted. It is unfair to inflict unequal penalties on equally guilty parties, or on any innocent parties, regardless of what the penalty is. 408 U.S. at 247-48. (Douglas, J., concurring)(citations omitted)

Thus, the analysis of whether capital indictments are returned in an arbitrary and capricious manner in the Ninth Circuit is due to be applied regardless of whether the death penalty is actually imposed or sought.[22]  Under the applicable provisions of the Code, when the grand jury returned a capital indictment, the applicable range of sentencing increased (over a non-capital murder) from not less than 20 years[23] or life imprisonment (with the possibility of parole) to a minimum sentence of life imprisonment without the possibility of parole.[24]  Ala. Code §§ 13A-5-6(a)(4), 13A-5-39(1).

Even if the Defendant, at the end of the day, is sentenced to a lesser term, it is clear that he has suffered real and substantial harm by any arbitrary and capricious return of a capital indictment.  Common sense declares that, in any plea-bargaining negotiations that may occur, the State's option to allow the case to go to trial, knowing it can do no worse on conviction than "life without parole", manifestly enhances the bargaining position of the State.  The presence of the capital count also impairs the Defendant in both trial and plea-bargaining by allowing the prosecutor to get – or brandish the prospect of – a "death-qualified" jury.  *see*, *Whisenhant v. State*, 555 So.2d 235 (Ala.Crim.App. 1988)  As one analyst noted:

> [a Georgia prosecutor] conceded that he seeks the death penalty so that strong opponents of it will automatically be excluded from the jury, thereby increasing his likelihood of securing a conviction.
>
> ***
>
> Other defendants have not been so fortunate, and have become, instead, fatalities of prosecutors' use of the death penalty as a tactic in plea-bargaining.  Ronald J. Tabak, *The Death of Fairness: The Arbitrary and Capricious Imposition of the Death Penalty in the 1980's*, 14 N.Y.U. Rev. L. & Soc. Change 797 (1993) (citations omitted)

---

[22]   Further, it must be noted that this reasoning also prevents the State from mooting the instant motion by any effort to stipulate that the death penalty will not be sought upon any retrial.

[23]   This minimum, rather than that of 10 years, is based on the presumption that the State proved that the murder was committed with a firearm.  *cf.*, Ala. Code § 13A-5-6(a)(1).

[24]   Conviction on such an indictment would also disqualify the Defendant from the potential benefits of such statutory rights as are created in ameliatory laws such as the work release program, Ala. Code § 14-8-1 *et seq.*, or the Alabama Correctional Incentive Time Act, Ala. Code § 14-9-40 *et seq.*

Having expended so much analytical effort to set forth the applicable standards, it seems almost anticlimactic to point out the obvious: that grand juries in the Ninth Circuit return capital indictments, among the universe of capital-eligible murders, in quite an arbitrary and capricious fashion. The evidence adduced in support of this motion will show that a number of murders have been eligible for capital indictment, as set forth in the Statement of Facts, *supra*. This Defendant has been subjected to the real prejudice of a capital indictment, and a resulting death sentence; Nell Rae Long always had the prospect of eventual freedom. Nothing could be more arbitrary and capricious.

This is fully consistent with the rationale of both *Furman* and *Gregg*. These two cases are based as much on the unfairness of the "deserving" killer being given a break on some arbitrary basis as upon the unfairness of a "vulnerable" defendant being singled out for especially harsh treatment. As two noted experts on death penalty law have observed:

> The collapsing of the channeling requirement into the narrowing function fundamentally ignores a crucial concern of *Furman*. As argued above, it is undoubtedly true that narrowing the class of the death-eligible was a central goal of *Furman* because it addressed the problem of overinclusion – imposition of the death penalty in a particular case in which the defendant did not deserve death in light of general community standards. But *Furman* was at least equally concerned with *under*inclusion – the failure of juries to impose death in cases in which it is truly deserved. Indeed, underinclusion, rather than overinclusion, was the principal target of the NAACP's pre-*Furman* efforts to subject state capital punishment statutes to constitutional scrutiny. Carol Steiker and Jordan Steiker, *Sober Second Thoughts: Reflections on Two Decades of Constitutional Regulation of Capital Punishment*, 109 Harv. L. Rev. 355, 381 (1995) (notes omitted, emphasis in original).

Intuitively, one suspects that the grand juries may have assumed for themselves the weighing of aggravating and mitigating factors which are delegated to the petit jury

330

and trial judge under Ala. Code § 13A-5-47 through 52.  Perhaps the grand juries, for example, felt some sympathy for Ms. Long in light of her husband's infidelity.  However understandable their motives, the grand juries are nonetheless acting in a role that the law proscribes.  In light of the affirmative duty of a grand jury to return an indictment, it is clear that the rights of the Defendant to equal protection of the laws, due process of law[25], and freedom from cruel and unusual punishment have been violated by this capricious return of capital indictments, in violation of U.S. Const., Amends. V, VIII and XIV, and Ala. Const., Art. I §§ 1, 6, 15 and 22.  For this reason, the conviction and sentence must be vacated and the indictment in this cause must be dismissed.

D

THE RETURN OF CAPITAL INDICTMENTS IN THE NINTH CIRCUIT IS
MADE IN A RACIALLY DISCRIMINATORY MANNER

Having referred to the finding of capital indictments as arbitrary and capricious, the Defendant will now show that an actual pattern may be discernible.  Unfortunately, this pattern likewise mandates dismissal of the indictment.  It is painfully apparent, upon a review of the cases surveyed above, that the proportion of African-American defendants who are capitally indicted for their capital-eligible murders far exceeds that of corresponding white defendants.

In cases implicating the equal protection clause of U.S. Const., Amend. XIV as it relates to the imposition of the death penalty, the applicable standard is that established in the case of *McCleskey v. Kemp*, 481 U.S. 279 (1987).  In that case, the defendant relied on the Baldus Study, an exhaustive statistical study of over 2,000 murder cases throughout the state of Georgia, to establish racial discrimination in the imposition of

---

25   Our state's appellate courts have repeatedly made it clear that the reach of the due process provisions of Ala. Const., Art. I § 6 is far greater than that of the corresponding due process provisions of U.S. Const., Amends. V and XIV. *see, Pike v. Southern Bell Tel. & Tel. Co.*, 263 Ala. 59, 81 So.2d 254

the death penalty. The Baldus Study indicated some moderate statistical deviation in the numbers of African-American defendants who were sentenced to death. In affirming the decisions of the lower courts that denied the defendant's claims of denial of equal protection, the court stated:

> Thus, to prevail under the Equal Protection Clause, McCleskey must prove that the decisionmakers in his case acted with discriminatory purpose. He offers no evidence specific to his own case that would support an inference that racial considerations played a part in his sentence. Instead, he relies solely on the Baldus study. 481 U.S. at 292-93.

Having established this standard, the cour[t]  .  .  .  he Baldus Study did not show sufficiently pa[  ]  of the specific decisionmakers in the case t[  ]  the *McCleskey* rule, the record in the instant [  ]  ient evidence of discriminatory intent to v[  ]  ntence and dismissal of the indictment.

First and foremost, the s[  ]  on in the instant case is far more pronoun[  ]  ults of a comparison of these statistics can p[  ]



**Baldus Study**

■ Percent of Total Murderers Sentenced to Death

(African / White)

---

(1955); *cf.*, *Armstrong v. Roger's Outdoor Sports, Inc.*, 581 So.2d 414 (Ala. 1991); *Grantham v. Denke*, 359 So.2d 785 (Ala. 1978).

26  General population and race-breakdown census data is available for DeKalb County at http://govinfo.library.orst.edu/cgi-bin/buildit?1a-049.alc (Oregon State University census database). The data used are from the 1990 census. The raw numbers are a total population of 54,651, and an African (black) population of 1,028.

**Alabama Ninth Judicial Circuit**



**Alabama Ninth Judicial Circuit**



Thus, two glaring differences become readily apparent. First, in *McCleskey*, there was actually a marginal "reverse" discrimination when the investigated variable was the race of the offender; whites were marginally more likely than African-Americans to receive the death penalty. 481 U.S. at 286. The court in *McCleskey* relied heavily on the ambiguous extent of the statistical evidence of the Baldus Study. As the court stated:

> Viewed broadly, it would seem that the statistical evidence presented here, assuming its validity, confirms rather than condemns the

30

333

> system. The marginal disparity based on the race of the victim tends to support the state's contention that the system is working far differently from the one which *Furman v. Georgia*, 408 U.S. 238 (1972) condemned. 481 U.S. at 290. *quoting, McCleskey v. Zant*, 753 F.2d 877, 898 (11ᵗʰ Cir. 1985)(lower court opinion)

Certainly, where the baseline figures indicate that whites are more likely to be sentenced to death, as in *McCleskey*, "exceptionally clear proof" (see the quote *infra*) can be said to be lacking. In the instant case, not only is the discriminatory evidence affirmative, it is overwhelmingly so. A capital-eligible African-American defendant in the Ninth Circuit is almost twice as likely to be indicted capitally as a capital-eligible white defendant. More tellingly, the percentage of capitally-indicted defendants who are African-American is 28 times their percentage in the general population. Such a difference is so quantitative as to be qualitative. Thus, *McCleskey* can be distinguished from the instant case on this point alone.

Secondly, the court in *McCleskey* relied heavily on the discretionary nature of sentencing decisions in general, and of the decision to impose the death penalty in particular. As the court itself put it:

> Because discretion is essential to the criminal justice process, we would demand ***exceptionally clear proof*** before we would infer that the discretion has been abused. The unique nature of the decisions at issue in this case also counsels against adopting such an inference from the disparities indicated by the Baldus study. Accordingly, we hold that the Baldus study is clearly insufficient to support an inference that any of the decisionmakers in McCleskey's case acted with discriminatory purpose. 481 U.S. at 297. (emphasis added)

Of course, in the instant case, we are not dealing, as shown *supra*, with a discretionary decision. Rather, the statistical evidence infers that a deliberate disregard of the charges and duties of grand juries is being undertaken. This provides a second, and independent, basis for distinguishing the holding in *McCleskey* from the case at bar.

31

334

A third basis for distinguishing *McCleskey* is found in that opinion's focus on the statewide nature of the Baldus Study. Although something of a corollary of the court's refusal to accept the statistical inference of particularized bias from the data, the statewide base of data was emphasized by that court:

> The Court has accepted statistics as proof of intent to discriminate in certain limited contexts. First, this Court has accepted statistical disparities as proof of an equal protection violation in the selection of the jury venire *in a particular district*. Although statistical proof normally must present a "stark" pattern to be accepted as the sole proof of discriminatory intent under the Constitution, *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252 (1977), "[b]ecause of the nature of the jury-selection task, . . . we have permitted a finding of constitutional violation even when the statistical pattern does not approach [such] extremes." *Id.*, at 266, n. 13.   481 U.S. at 293-294 (emphasis added)

The instant case provides as discrete an evaluation as circumstances permit; this court is being asked to subject the outcomes of the grand juries of this circuit alone to constitutional scrutiny. In the light of such a particularized evaluation, even *McCleskey* would permit an inference of discriminatory intent. The instant case is not unlike that in *Locke v. State*, 631 So.2d 1062 (Ala.Crim.App. 1993), which dealt with grand jury composition issues in a particular county, and in which statistical disparities alone were deemed sufficient to meet the criminal defendant's burden of proof.

Nor should the opinion in *McCleskey* be taken without regard for the criticism it has received – even from its author. As one commentator noted:

> In a 5-to-4 opinion written by Justice Lewis Powell, the Court accepted the compelling data documenting racial bias in Georgia's death penalty but nonetheless upheld McCleskey's death sentence. Justice Powell concluded that certain disparities based on race in the administration of capital punishment were "inevitable" and more properly an issue for the legislature to address. Powell later stated after retiring from the Court that if he could change one vote during his tenure it would be *McCleskey*. However, in the grim world of capital litigation

there are no second chances. Warren McCleskey was executed and the doctrine of race bias inevitability lives on.  Bryan Stevenson, *The Hanging Judges* The Nation, Oct. 14, 1996.[27]

In normal circumstances, a compelling statistical showing of the kind shown here would make a *prima facie* case of discriminatory intent, and the burden would then shift to the "discriminator" to explain the statistical discrepancy on nondiscriminatory grounds. *Batson v. Kentucky*, 476 U.S. 79 (1986); *Locke v. State*, 631 So.2d 1062 (Ala.Crim.App. 1993). *cf.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (Upon plaintiff's showing of *prima facie* case of discriminatory impact violating employment discrimination ban of 42 U.S.C. § 2000e-2(a)(1), burden shifts to employer to articulate legitimate and lawful explanation of result)  The tripartite basis for distinguishing *McCleskey* is more than sufficient to make this the applicable rule in the case at bar.

This principle has been recognized by the Professors Steiker in their criticism of equal protection violations in cases where the evidence is, as it clearly is here, stronger than that presented by the facts in *McCleskey*:

> Nonetheless, it is one thing to recognize, as the Court did, that some inevitable unpredictability remains in capital sentencing as a result of the individualization requirement, it is quite another thing to hold that whatever level of arbitrariness thereby results must be constitutionally tolerable because otherwise the death penalty could not be administered at all.  Steiker and Steiker, *supra*, 109 Harv. L. Rev. at 419 (1995)

Given the lack of discretion of a grand jury to determine the capital nature of an indictment for murder, the task at hand for the State under either standard is truly Sisyphean.  In fact, without begrudging the State its right to be heard, it is virtually impossible to conceive a set of facts that would constitute grounds for a finding of a nondiscriminatory intent in this context.  It is abundantly clear, therefore, that the rights of the Defendant to equal protection of the laws under U.S. Const., Amend. XIV and

---

[27]     Also available at http://www.thenation.com/issue/961014/1014stev.htm .

Ala. Const., Art. I § 1, 6 and 22, have been violated by this invidious pattern of throwing the full weight of the law on the Ninth Circuit's small, and politically powerless, African-American community, while generously dispensing with the threat of capital punishment for many arguably deserving whites.

This court should also give due regard for the way in which this obvious disparate impact fits into larger national and historic trends. It remains a fundamental fact of capital litigation that African-Americans are more likely to face capital punishment. As statistics compiled by the Bureau of Justice Statistics of the U.S. Department of Justice show:

**Persons Under Sentence of Death**



Thus, African-Americans are materially over-represented on death rows, and have been for a persistently long time following the "reforms" inspired by *Furman* and *Gregg*.

This statistical disparity is even more pronounced at the statewide level in Alabama, as shown:[28]

---

[28]    The Alabama death row statistics are from the U.S. Bureau of Justice Statistics, and are available at http://www.albany.edu/sourcebook/1995/pdf/t661.pdf . The statewide census data are from the Oregon State University census database, *supra*, at http://govinfo.library.orst.edu/cgi-bin/buildit?1a-state.als . Census data are rounded to the nearest whole integer.

**Alabama**



This data shows that, as in the Baldus Study, statewide racial disparities exist in Alabama with respect to capital charging and sentencing. In fact, the disparities revealed here are more marked than those of the Baldus Study at the statewide level, providing further basis for distinguishing the instant case from *McCleskey*.

These disparities have been both recognized and condemned by the American Bar Association:

> Be It Resolved, That the American Bar Association opposes discrimination in capital sentencing on the basis of the race of either the victim or the defendant.

> Be It Further Resolved, That the American Bar Association supports the enactment of federal and state legislation which strives to eliminate any racial discrimination in capital sentencing which may exist. (Resolution, A.B.A. House of Delegates, adopted Aug. 1988[29])

This racial disparity has lead the A.B.A. to call for a moratorium on the death penalty pending resolution of, *inter alia*, reform of the racial element in capital charging and sentencing.

---

29       Available at http://www.abanet.org/irr/aug88.html .

RESOLVED, That the American Bar Association calls upon each jurisdiction that imposes capital punishment not to carry out the death penalty until the jurisdiction implements policies and procedures that are consistent with the following longstanding American Bar Association policies intended to (1) ensure that death penalty cases are administered fairly and impartially, in accordance with due process, and (2) minimize the risk that innocent persons may be executed:

* * *

(iii) Striving to eliminate discrimination in capital sentencing on the basis of the race of either the victim or the defendant (adopted Aug. 1988, Aug. 1991) (Resolution, A.B.A. House of Delegates, adopted Feb. 1997[30]).

It is fitting and proper that this court should consider the national and state disparities in capital charging and sentencing. They are significant for their own effect, as well as for comparison of the even more marked disparities present in the data from DeKalb and Cherokee Counties. Further the court is entitled – even obligated – to consider other evidence of local prejudicial history and culture as may be presented. For example, Alabama went from 1913 until 1997 without executing a prisoner for a crime involving a white perpetrator and a black victim. Amnesty International website[31]. In taking this information in its entirety, the inescapable result is a finding of an impermissible racial bias in the return of capital indictments in the Ninth Circuit. For this reason, the conviction and sentence of the Defendant must be vacated, and the capital indictment against him must be dismissed.

---

[30]     Available at http://www.abanet.org/irr/rec107.html .
[31]     http://www.derechos.net/amnesty/dp/97/henrhays.html

E

## CONCLUSION OF SECTION

As has been shown, the rights of the Defendant have been clearly violated on two independent, if interrelated, bases of constitutional law.  It is submitted that the capital indictment against this defendant is accordingly due to be dismissed.  Further, as the pattern and practice of discriminatory indictment has risen to the level of a rule of *de facto* substantive law in this circuit, it would violate the right of the Defendant to freedom from *ex post facto* laws under U.S. Const., Art. I, § 10 and Ala. Const., Art. I § 7 to permit the State to seek a capital indictment on re-presentment.  Thus, such dismissal must be with prejudice to the right of the State to seek a capital indictment on resubmission to a subsequent grand jury.  It is for this relief Defendant prays.

340

# APPENDIX

## MURDER PROSECUTIONS INCLUDED IN REVIEW

| DEFENDANT | COUNTY | CASE NO | RACE | CAPITAL ELIGIBLE | CAPITAL INDICTED |
|---|---|---|---|---|---|
| Allen, Michael | DeKalb | CC-98-528 | W | yes | yes |
| Bentley, James | DeKalb | CC-96-95 | W | yes | yes |
| Betton, Jonathan | DeKalb | CC-98-193 | AA | yes | yes |
| Bryant. William | DeKalb | CC-97-591 | W | no | N/A |
| Butler, Louis | Cherokee | CC-94-01 | W | no | no |
| Conkle, Kevin Dion | Cherokee | CC-00-55 | W | yes | yes |
| Dupree, Timothy | DeKalb | CC-97-792 | AA | yes | yes |
| Fleming, Jason | DeKalb | CC-98-96 | W | yes | no |
| Floyd, Wilson | DeKalb | CC-95-388 | W | yes | no |
| Ford, Reynard | DeKalb | CC-97-796 | AA | yes | yes |
| Gavin, Keith Edmund | Cherokee | CC-98-61 | AA | alleged | yes |
| Guzman, Pastor | DeKalb | CC-94-185 | H | no | N/A |
| Headrick, Waylon | DeKalb | CC-98-760 | W | yes | yes |
| Headrick, William | DeKalb | CC-98-653 | W | yes | yes |
| Higginson, Scott | DeKalb | CC-98-001 | W | yes | yes |
| Hudgins, Timothy | Cherokee | CC-98-60 | W | no | no |
| Jelks, Charles | DeKalb | CC-90-304 | AA | no | N/A |

341

| | | | | | |
|---|---|---|---|---|---|
| Kerley, Charlie | DeKalb | CC-93-560 | AA | yes | no |
| Kuykendall, Mary | DeKalb | CC-92-423 | W | no | N/A |
| Lawrence, Ronald | DeKalb | CC-95-92 | AA | yes | yes |
| Long, Nell Rae | DeKalb | CC-95-80 CC-95-294 | W | yes | no |
| Mabry, Charles | DeKalb | CC-99-803 | W | no | N/A |
| Manning, Tammy | DeKalb | CC-94-379 | W | no | N/A |
| Meeks, Dewayne | Cherokee | CC-98-69 | AA | yes | yes |
| Mendenhall, Angela | DeKalb | CC-96-493 | W | yes | no |
| Mendenhall, David | DeKalb | CC-96-464 | W | yes | no |
| Midkiff, Early | DeKalb | CC-94-626 | W | no | N/A |
| Miller, Lewis | DeKalb | CC-93-687 | W | no | N/A |
| Morton, Charles Michael | DeKalb | CC-98-003 | W | yes | yes |
| Naylor, Stevie | DeKalb | CC-98-683 | W | no | N/A |
| Nunnery, Terry | DeKalb | CC-91-461 | W | no | N/A |
| Phillips, Johnathan | DeKalb | CC-97-793 | W | yes | yes |
| Ramon, Juan | DeKalb | CC-95-182 | H | no | N/A |
| Rhoden, Gary | DeKalb | CC-93-501 | W | no | N/A |
| Smith, Kenneth | DeKalb | CC-99-393 | W | no | N/A |
| Stephens, John | DeKalb | CC-94-398 | W | yes | no |
| Spaulding, Robert | DeKalb | CC-98-327 | W | no | N/A |
| Teems, Michelle | Cherokee | CC-95-69 | W | yes | no |

| Thompson, Michael | DeKalb | CC-94-27 | W | yes | no |
|---|---|---|---|---|---|
| Vartanian, John | DeKalb | CC-96-746 | W | no | N/A |
| Wells, Jerry Wayne | Cherokee | CC-00-54 | W | yes | yes |
| Williams, Roy C. | DeKalb | CC-99-525 | W | no | N/A |
| Young, Johnny | DeKalb | CC-94-18 | W | yes | no |

II

## THE SENTENCE OF DEATH BY ELECTROCUTION UNNECESSARILY EXPOSES DEFENDANT TO A CONSTITUTIONALLY IMPERMISSIBLE RISK OF CRUEL AND UNUSUAL PUNISHMENT

The Defendant is secured from the imposition of cruel and unusual punishments by the provisions of U.S. Const., Amend. VIII and Ala. Const., Art. I § 15.

Electrocution as a method of execution was originally upheld in the case of *In re Kemmler*, 136 U.S. 436 (1890), the case which reviewed the constitutionality[32] of the then-novel method after New York became the first state to adopt it. In upholding the constitutionality of the new method, the Supreme Court approvingly quoted the opinion of the New York Court of Appeals, *Kemmler v. Durston*, 119 N.Y. 569, 24 N.E. 6 (N.Y. 1890):

> 'We have examined this testimony and can find but little in it to warrant the belief that this new mode of execution is cruel, within the meaning of the constitution, though it is certainly unusual. On the contrary, we agree with the court below that it removes every reasonable doubt that the application of electricity to the vital parts of the human body, under such conditions and in the manner contemplated by the statute, must result in instantaneous, and consequently in painless, death.' 136 U.S. at 443-444.

*Kemmler* has become a basis upon which courts have, over the following century, robotically affirmed the constitutionality of electrocution. The courts of Alabama are among these. *Jackson v. State*, 1999 WL 339263, *40 (Ala.Crim.App. 1999). However, as often happens, advances in knowledge knock the underpinnings from beneath outdated precedent. A recent survey of competent technical

---

[32]   *Kemmler* was litigated at the Supreme Court on the privileges and immunities clause of U.S. Const., Amend. XIV. The provisions of the punishments clause of U.S. Const., Amend. VIII were not held applicable to the states until later. *Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459 (1947)

information has scored the presumptions relied on by *Kemmler* and its progeny. Lonny J. Hoffman, *The Madness of the Method: The Use of Electrocution and the Death Penalty*, 70 Tex. L. Rev. 1039 (1992). As it states:

> The first and possibly strongest argument against electrocution is that the factual assumptions of the early cases have been thoroughly discredited by more recent evidence. In *Kemmler*, two critical findings of the lower courts-that electrocution results in an "instantaneous" and "painless" death-were the basis of the Supreme Court's decision. These two findings are no longer supportable, if they ever were. If the factual basis behind the Court's decision to uphold New York's Electrical Execution Law has been undermined, then future courts are not bound to follow *Kemmler* in upholding electrocution.
>
> Electrocution procedures vary from state to state. One common technique is to use an initial voltage of 2000 to 2200 at seven to twelve amperes for 60 to 90 seconds. The voltage and amperage may be lowered and reapplied at various intervals until the prisoner is dead. Another common procedure is to employ 700 to 1000 volts of electric current at six amperes for one minute. After a brief pause, a second jolt of approximately 2000 volts is applied for another minute.
>
> But electrocution almost never results in instantaneous death. Prisoners have different levels of body resistance, complicating the electrocutioner's job enormously. Physical size and apparent strength are not reliable indicators of physiological resistance. One early executioner lamented the administrative difficulties of the method: "I gave him two full shocks of the full current and kept it on for two minutes. The doctors were so sure he was dead I didn't bother with a third one. I wish now I had." The need for recurrent shocks is so commonplace, in fact, that execution by electrocution has been infamously dubbed "death by installments." When John Louis Evans was electrocuted on April 22, 1983, three jolts of electricity and fourteen minutes were required to kill him. At Jesse Tafero's execution in early 1990, numerous power surges were required to complete the electrocution. Five minutes and three jolts of electric current were necessary before John Spinkelink died in May 1979. Indiana's seventy-two year old electric chair took seventeen minutes and five jolts of electricity to extinguish William Vandiver's life in 1985.
>
> The evidence supporting the contention that death is painless is no longer beyond "every reasonable doubt" as the New York Court of

Appeals and the United States Supreme Court thought in 1890.  Today, there is credible evidence that prisoners do suffer pain during an electrocution.  As one French scientist explained, " in every case of electrocution, ... death inevitably supervenes but it may be very long, and above all, excruciatingly painful.... This method of execution is a form of torture." 70 Tex. L. Rev. at 1055-57

In addition, the Defendant expects shortly to submit the affidavits of Drs. Leuchter and Bernstein to the effect that electrocution is by necessity a more painful and barbaric method of execution than other methods.

*At the hearing on 8-4-2000 the D had authoritative testimony from the Tarver case admitted D Ex #1*

Even assuming that an execution carried out in perfect fashion is not painful and barbaric, assuming that an execution carried out in Alabama will be carried out in a competent manner calls for an act of saintly faith.  As Hoffman further points out, when Alabama electrocuted John Louis Evans on April 22, 1983, three jolts of electricity and fourteen minutes were required to kill him.  70 Tex. L. Rev. at 1056. The two staffers of the Department of Corrections who connected the electric chair to the generating system for the execution of Horace Dunkins by Alabama in 1989 admitted they connected the cables from the chair to the wrong wall receptacles. *Ibid.*, at 1057.  Although the court in *Thomas v. Jones*, 742 F.Supp. 598 (S.D. Ala. 1990), engaged in jurisprudential acrobatics to uphold a death sentence, it noted that:

Some of the documentary evidence and live testimony tended to show that corpses of prisoners executed in Alabama's electric chair bear unexplained burns.  (Richardson Autopsy Report, Dunkins Autopsy Report.) 742 F.Supp. at 606

It should be noted, in evaluating the opinion in *Thomas v. Jones*, that it relies heavily on the judge's conclusions of fact regarding the technical and medical aspects of electrocution, specifically its finding that:

The Court finds that in a properly performed judicial electrocution the initial application of electricity is *meant* to cause

instant brain death.  Cardiac arrest is secondary.  742 F.Supp. at 606 (emphasis added)

As the affidavits of Drs. Leuchter and Bernstein are expected to show, this is simply not a medically tenable position.  The skull, being a largely nonconductive insulator, deflects the current from the vicinity of the brain.  Thus, the current reaches other parts of the victim's body prior to brain death, causing pain and suffering.  This pain and suffering would be more serious if the current were of insufficient voltage or amperage to bring prompt unconsciousness.

The Defendant further expects to produce affidavits that will establish that the design and structure of the electric chair currently in use by the Department of Corrections is faulty and poses a substantial risk of malfunction.  Also, Defendant expects to adduce affidavits and other evidence, which establish that the Alabama Department of Corrections has a history of human error in the use of its electric chair.  These errors have resulted in pain and suffering to prisoners being executed, and have frequently resulted in mutilation and burning of the prisoners' bodies during and at the conclusion of these executions.

Hoffman summarizes the empirical evidence as follows:

The historical record on electrocution is replete with evidence of the method's unreliability.  Mechanical failures, technical mishaps, and other problems plague its administration. Many of the difficulties stem from the complexity of administration.  While too much current can cause blistering and burning, too little may be insufficient to kill the prisoner.

* * *

Witnesses customarily report that when the first charge of electricity hits the prisoner, the body lurches forward abruptly against the straps. The skin may turn bright red, and smoke, sparks, and even flames may leap out from the prisoner's body.  The prisoner may vomit blood,

defecate, and urinate.  The smell of burning flesh is often nauseating. For this reason, nearly all electrocution chambers come equipped with sickness bags. 70 Tex. L. Rev. at 1057.

Any person doubting the inherent barbarity of electrocution need only look to the Florida execution of Allen Lee Davis on 8 July 1999.  As described in the *Miami Herald*, 8 July 1999:

> Blood poured from the chest and mouth of convicted killer Allen Lee Davis as he was electrocuted early Thursday in Florida's first use of its new electric chair. Davis let out two muffled screams from behind a chin mask after four guards strapped him into the electric chair. As the 2,300 volts of electricity began to surge through the metal cap on his head, Davis jerked back against the oak chair, his fists clenched.
>
> A tiny trickle of blood began to stain his white long-sleeved dress shirt as witnesses watching the execution behind glass gasped in horror. Corrections officers in the death chamber looked at each other in alarm, their eyes wide. None of them moved, but watched as the blood thickened.
>
> The black-hooded executioner flipped the switch at 7:05 and power was shut off at 7:07, corrections officials said. Davis' chest convulsed at least twice before two prison medical officials declared him dead at 7:15 a.m.[33]



This photograph of the aftermath, later ordered released by the Florida Supreme Court, reflects the gruesome and inhumane demise of Davis.  Earlier, in the Florida execution of Pedro Medina, on 25 March 1997, orange and blue flames shot from the top of the victim's head and thick white smoke filled the execution chamber. *Amnesty International website*, http://www.derechos.net/amnesty/dp/97/pedrmedi.html. Hoffman summarizes the issue of risk of error as follows:

---

[33]      Available online at http://www.agitator.com/dp/99/adbotch.html.

These incidents can, of course, be characterized as isolated. No doubt they are, if *what is meant* by isolated is that no multistate conspiracy to botch electrocutions exists. But taken together, the innumerable episodes of mechanical failure and human error evidence the reality that the problems with electrocution are inherent in the method and are not limited to the particular equipment or the personnel employed. 70 Tex. L. Rev. at 1059.

This Court may, and indeed must, take into account that electrocution is coming to be seen as an unreliable and barbaric method of execution. In the face of the granting of a writ of certiorari in the case of *Bryan v. Moore*, 120 S.Ct. 394 (1999), the state of Florida abandoned electrocution in favor of lethal injection.[34] 2000 Fla. Laws ch. 2000-1, amending Fla. Stat. Ann. § 922.10.

Justice Brennan, in dissenting from a denial of certiorari, correctly stated the applicable law:

This is because the Eighth Amendment requires that, as much as humanly possible, a chosen method of execution minimize the risk of unnecessary pain, violence, and mutilation. If a method of execution does not satisfy these criteria--if it causes "torture or a lingering death" in a significant number of cases, *In re Kemmler*, 136 U.S. at 447, 10 S.Ct., at 933 – then unnecessary cruelty inheres in that method of execution and the method violates the Cruel and Unusual Punishments Clause. *Glass v. Louisiana*, 471 U.S. 1080, 1086 (1985)

The arguments for electrocution are no longer defensible. To protect the rights of the Defendant under U.S. Const., Amend. VIII and Ala. Const., Art. I § 15 to be free from cruel and unusual punishments, the sentence of death in the instant case *must* be vacated.

---

[34]    The writ of certiorari was later quashed as moot after Florida amended its statute. *Bryan v. Moore*, 120 S.Ct. 1003 (2000)

III

THE CONVICTION OF THE DEFENDANT OF CAPITAL MURDER BASED
ON HIS PRIOR ILLINOIS CONVICTION VIOLATES HIS
CONSTITUTIONAL RIGHTS TO EQUAL PROTECTION OF THE LAWS,
DUE PROCESS OF LAW AND FREEDOM FROM CRUEL AND UNUSUAL
PUNISHMENTS

The Defendant in this case was indicted and convicted on a count of the indictment which charged him with committing a murder described in Ala. Code § 13A-5-40(a)(13), which makes a capital offense any:

> (13) Murder by a defendant who has been convicted of any other murder in the 20 years preceding the crime; provided that the murder which constitutes the capital crime shall be murder as defined in subsection (b) of this section; and provided further that the prior murder conviction referred to shall include murder in any degree *as defined at the time and place of the prior conviction*. (emphasis added)

The provisions of this subsection have been subjected to a number of constitutional attacks. It has been attacked as creating a cruel and unusual punishment, as violating due process by virtue of its arbitrariness in imposing the 20-year limit, and as violating the constitutional guarantee of equal protection of the laws by virtue of the disparate treatment of those whose predicate murders occurred 20 and 21 years before the immediate prosecution. The courts of this state have turned down these attacks. *Hubbard v. State*, 382 So.2d 577 (Ala.Crim.App. 1979). The Defendant submits that *Hubbard* and the cases following it are in error, and preserves this issue for further appeal. However, there is an equally serious constitutional violation which was not addressed in Hubbard, and which clearly requires that the Court find that the provisions of Ala. Code § 13A-5-40(a)(13) are invalid.

47

The fatal flaws in this provision of the Code arise from its deference to the criminal codes of other jurisdictions. Under the operation of this paragraph, the determining factor in qualifying a murder as capital is not the conduct of the party, but the statutory nomenclature of the jurisdiction in which the predicate murder conviction was obtained. This creates insurmountable constitutional problems because the statute acts to create materially different outcomes for identical behaviors.

To appreciate this, it is necessary to review how different states treat the taking of human life under more intense provocation. In Alabama, the statute on manslaughter, Ala. Code § 13A-6-3 governs such a homicide:

(a) A person commits the crime of manslaughter if:
(1) He recklessly causes the death of another person, or
(2) He causes the death of another person under circumstances that would constitute murder under Section 13A-6-2; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to reassert itself.

The laws of New York, N.Y. Penal Law § 125.20, take a similar approach:

Manslaughter in the first degree.
A person is guilty of manslaughter in the first degree when:
1. With intent to cause serious physical injury to another person, he causes the death of such person or of a third person; or
2. With intent to cause the death of another person, he causes the death of such person or of a third person under circumstances which do not constitute murder because he acts under the influence of extreme emotional disturbance, as defined in paragraph (a) of subdivision one of section 125.25. The fact that homicide was committed under the influence of extreme emotional disturbance constitutes a mitigating circumstance reducing murder to manslaughter in the first degree and need not be proved in any prosecution initiated under this subdivision.

48

In contrast, the laws of several states classify such a homicide as a form of "murder," which classification would make it an adequate predicate for capital qualification under Ala. Code § 13A-5-40(a)(13).  One of these is Texas:

Tex. Penal Code § 19.02.  Murder.

(a) In this section:

(1) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

(2) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

(b) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual …

(c) Except as provided by Subsection (d), an offense under this section is a felony of the first degree.

(d) At the punishment stage of a trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause.  If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

Another such jurisdiction is Illinois, which is the home jurisdiction of the predicate conviction in the case at bar.[35]   Under the statute of that state, 720 Ill. Comp. Stat. § 5/9-2:

> Second Degree Murder.  (a) A person commits the offense of second degree murder when he commits the offense of first degree murder as defined in paragraphs (1) or (2) of subsection (a) of Section 9-1 of this Code and either of the following mitigating factors are present:
>
> (1) At the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he negligently or accidentally causes the death of the individual killed; or
>
> (2) At the time of the killing he believes the circumstances to be such that, if they existed, would justify or exonerate the killing under the principles stated in Article 7 of this Code, but his belief is unreasonable.
>
> (b) Serious provocation is conduct sufficient to excite an intense passion in a reasonable person.

Our courts have set out the basic framework of equal protection analysis as follows:

> "The general rule is that '[e]qual protection of the laws is not denied by a statute prescribing the punishment to be inflicted on a person convicted of crime, *unless it prescribes different punishments for the same acts committed under the same circumstances by persons in like situations*.'   16A C.J.S. Constitutional Law, § 564. *Hardy v. State*, 576 So.2d 685, 686 (Ala.Crim.App. 1991) (emphasis added)

The application of this rule to the prior-murder capital qualifying provision could not be clearer.  Our code states that "the prior murder conviction referred to shall include

---

[35]   Illinois had a different statute in effect at the time of the predicate offense in the case at bar. There was a separate offense proscribing homicide caused by provocation, which was known as manslaughter. Ill.Rev.Stat., ch. 38, §§ 361 (1981)

50

murder in any degree as defined at the time and place of the prior conviction." Thus, if a person is charged with murder in Alabama after being convicted of a homicide following provocation in Texas, that person can and will be charged capitally in Alabama. If that person is fortunate enough to have suffered the prior conviction in New York, the Alabama case will be non-capital in the absence of another qualifying circumstance. This is just the sort of freakish and irrational difference in sentencing that the equal protection provisions of U.S. Const., Amend. XIV and Ala. Const., Art. I § 22 prohibit.

A similar analysis obtains under the prohibitions of cruel and unusual punishment of U.S. Const., Amend. VIII and Ala. Const., Art. I § 15. These provisions act to keep the death penalty from being imposed in an arbitrary and capricious manner. *Furman v. Georgia*, 408 U.S. 238 (1972). Thus, this disparate treatment of identically situated actors serves to violate these restrictions, as well.

A further fault with this paragraph of the criminal code arises from its effect of delegating authority to the legislatures of other states. Ala. Const., Art. IV § 44 provides that "The legislative power of this state shall be vested in a legislature, which shall consist of a senate and a house of representatives." As our Supreme Court has observed:

> The general proposition is everywhere recognized that the Legislature cannot delegate its legislative powers, save as authorized by the Constitution itself. *Opinions of the Justices*, 232 Ala. 56, 166 So. 706, 708 (Ala. 1936)

In that case, the court ruled that legislative power could not be delegated to the electorate. No less can it be delegated to the legislative bodies of our sister states. Yet, by deferring to the (contradictory) definitions of "murder" in each of those jurisdictions, that is exactly what the legislature has done. Therefore, for this independent ground, the count charging successive murders, and the conviction thereon, cannot stand.

51

Finally, it should be noted that the failure of this count also irreparably damaged the remaining count and the conviction thereon.  It is axiomatic in our state that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. Ala.R.Evid. 404(b)

*See also, Ex parte Killough*, 438 So.2d 333 (Ala. 1983).  As the Defendant did not take the stand in the guilt phase of the instant proceeding, his prior murder conviction was not admissible to impeach him.  Ala.R.Evid. 404(a)(3), 609.  Thus, this improper evidence tainted the verdict with respect to the remaining count of the indictment against the Defendant.

On these bases, the sentence and conviction of the Defendant must be vacated, the count based on Ala. Code § 13A-5-40(a)(13) dismissed, and a new trial obtained on the remaining count.

IV

## THE COURT ERRED BY REFUSING TO DISMISS APPOINTED COUNSEL AND OFFERING THE DEFENDANT THE OPTION OF PROCEEDING *PRO SE*

Immediately prior to the beginning of jury selection, the Court denied a motion of the Defendant, made on his on behalf, to remove his appointed counsel. (R. 302). In so doing, the Court clearly violated the right of the Defendant to represent himself, as guaranteed by U.S. Const., Amend. VI and Ala. Const., Art. I § 6. The fact pattern involved in the instant case virtually identical to that in *Faretta v. California*, 422 U.S. 806 (1975). This error of the Court is fundamentally different from that which will later be addressed concerning earlier requests for new counsel. There, the Court was dealing with requests for replacement of appointed counsel. There, the Court is vested with a degree of discretion, and some deference would be presumed accorded thereto. With respect to the Defendant's request to simply dismiss his appointed counsel, his express right to self-representation is implicated.

The facts of *Faretta* are fairly simple. Faretta was charged with grand theft, and was appointed a public defender at arraignment. Before the trial, he asked the trial judge to dismiss his appointed counsel, and allow him to proceed representing himself. To this point, *Faretta* is on all fours with the case at bar. The trial judge in *Faretta*, unlike this Court, engaged in a lengthy colloquy with the defendant to inform him of his right to counsel, and to attempt to dissuade him from proceeding *pro se*. Finally, the trial court in *Faretta* refused to relieve the public defender, and the case proceeded to trial with the public defender representing Faretta. He was convicted, and the appeal ensued. The California Court of Appeal affirmed, and the California Supreme Court denied review. The United States Supreme Court granted certiorari, and reversed. In so doing, it noted:

53

It is undeniable that in most criminal prosecutions defendants could better defend with counsel's guidance than by their own unskilled efforts.   But where the defendant will not voluntarily accept representation by counsel, the potential advantage of a lawyer's training and experience can be realized, if at all, only imperfectly.   To force a lawyer on a defendant can only lead him to believe that the law contrives against him.   Moreover, it is not inconceivable that in some rare instances, the defendant might in fact present his case more effectively by conducting his own defense.   Personal liberties are not rooted in the law of averages.   The right to defend is personal.   The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction.   It is the defendant, therefore, who must be free personally to decide whether in his particular case counsel is to his advantage.   And although he may conduct his own defense ultimately to his own detriment, his choice must be honored out of 'that respect for the individual which is the lifeblood of the law.' *Illinois v. Allen*, 397 U.S. 337, 350-51 (1970) (Brennan, J., concurring). 422 U.S. at 834.

Thus, this Court plainly violated the clear mandate of *Faretta* by denying the Defendant the opportunity to represent himself.

The state courts in Alabama have recognized the rule in *Faretta* as well:

The Supreme Court of the United States has interpreted these words to afford a criminal defendant the right to be represented by an attorney, see *Gideon v. Wainwright*, 372 U.S. 335 (1963), and the right to represent himself without the assistance of counsel, see *Faretta v. California*, 422 U.S. 806 (1975).   'Because these rights are basic to our adversary system of criminal justice, they are part of the "due process of law" that is guaranteed by the Fourteenth Amendment to defendants in the criminal courts of the States.' *Faretta*, 422 U.S. at 818 and n. 14,

"On the one hand, the Constitution guarantees an accused the right to assistance of counsel in his defense.   On the other hand, it guarantees him the right to abandon the assistance of counsel and to present his own defense.   Such an abandonment must be accompanied by a showing in the record that the accused made a knowing and intelligent decision to forgo counsel.   Faretta, 422 U.S. at 835." *Drinkard v. State*, 1998 WL 881165 (Ala.Crim.App. 1998) at *61

The right to self-representation has further been held to apply even in capital cases. *Ford v. State*, 515 So.2d 34 (Ala.Crim.App. 1986)  The facts of *Ford* make it clear how pervasive this right is.  There was substantial evidence of mental illness on the part of Ford, and there was an IQ test indicating his IQ was 80.  Further, he had not finished the ninth grade.  515 So.2d 37-39.  Mr. Gavin, on the other hand, has attained a GED certificate.  Despite the troubling facts[36] of *Ford*, he was permitted to represent himself and is scheduled to be executed on 2 June 2000.  Associated Press, 28 May 2000.

Under these circumstances, it is clear that the rights of the Defendant were violated, and that the conviction and ensuing sentence must be vacated and a new trial afforded.

---

[36]   As noted in a subsequent federal habeas corpus proceeding:

> *Ford understood the consequences of dismissing the habeas petition, as well as his options.* Thereafter, Ford's counsel elicited testimony from Ford about his ability to "translate" to places outside prison.  Ford stated that he had many wives, concubines, and children whom he had visited in various parts of the world, that he had been to church with one of his prison guards, and that he had once "visited Heaven." Ford also testified that he has millions of dollars in a Swiss bank account and that after death he will sit at the left hand of God and be a member of the Holy Trinity. *Ford v. Haley*, 195 F.3d 603 (11th Cir. 1999)

V

## THE DEFENDANT'S RIGHTS WERE VIOLATED BY THE METHODS OF CONVENING THE GRAND AND PETIT JURIES

There are two specific constitutional rights implicated in the composition of grand jury and petit jury selection pools. The first of these is the right to be indicted and tried by juries that are fair and representative cross-sections of the community, based on U.S. Const., Amend. VI and Ala. Const., Art. I § 11. See also, Ala.R.Crim.P. 18.1. The second is the right of the defendant to equal protection of the laws, as established by U.S. Const., Amend. XIV and Ala. Const., Art. I §§ 1, 6 and 22.[37]

Discriminatory selection of a jury venire may be challenged under the Sixth Amendment's requirement that the venire reflect a fair cross-section of the community. *Duren v. Missouri*, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979). To establish a prima facie violation of the fair cross-section requirement, a petitioner must show (1) that the group underrepresented is a distinctive group in the community, (2) that the underrepresentation in the venire is not fair and reasonable in relation to the group's number in the community, and (3) that this underrepresentation is due to systematic exclusion of the group from the selection process. *Duren*, 439 U.S. at 364, 99 S.Ct. at 668. Cunningham has met the first element of the prima facie case for a fair cross-section challenge. Women and African-Americans are distinctive community groups within the meaning of *Duren*. See *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965); *Taylor v. Louisiana*, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). *Cunningham v. Zant*, 928 F.2d 1006 (11th Cir. 1991)

The state courts in Alabama recognize and apply this standard as to the cross-section requirement. *Minor v. State*, 1999 WL 982402 (Ala.Crim.App. 1999)

The following statistical analysis of the venire from which the petit jury was drawn will be illuminating:

---

[37]   Although the Alabama Constitution contains no explicit equal protection clause, these provisions have been held, taken together, to afford a guarantee of equal protection of the laws. *James v. Alabama Coalition For Equity, Inc.*, 713 So.2d 937 (Ala. 1997); *Peddy v. Montgomery*, 345 So.2d 631 (Ala. 1977).

| | WHITE | % WHITE | AFRICAN | % AFRICAN | OTHER | TOTAL |
|---|---|---|---|---|---|---|
| SUMMONED | 284 | 95.0% | 15 | 5.0% | 1 | 300 |
| EXCUSED OR POSTPONED | 90 | 96.8% | 3 | 3.2% | 0 | 94 |
| UNDELIVERED | 83 | 97.6% | 2 | 2.4% | 1 | 87 |
| DISQUALIFIED | 11 | 84.6% | 2 | 15.4% | 0 | 14 |
| FAILED TO APPEAR | 25 | 92.6% | 2 | 7.4% | 0 | 28 |
| SERVED ON STRIKE PANEL | 76 | 92.7% | 6 | 7.3% | 0 | 83 |
| SAT ON JURY (inc. alternates) | 11 | 78.6% | 3 | 21.4% | 0 | 15 |
| STRUCK BY STATE | 17 | 85.0% | 3 | 15.0% | | 20 |
| STRUCK BY DEFENDANT | 20 | 100% | 0 | NA | 0 | 20 |
| PERCENT GENERAL POPULATION | 93.4% | | 6.6% | | | 100.0% |

More troubling is the composition of the petit jury venire from which the grand jury that indicted the Defendant was drawn. The relevant statistics concerning that venire are shown in the following table:

| | WHITE | % WHITE | AFRICAN | % AFRICAN | OTHER | TOTAL |
|---|---|---|---|---|---|---|
| SUMMONED | 153 | 96.2% | 6 | 3.8% | 1 | 160 |
| PANELED | 45 | 97.8% | 1 | 2.2% | | 46 |
| EXCUSED | 71 | 94.7% | 4 | 5.3% | | 75 |
| UNDELIVERED | 20 | 95.2% | 1 | 4.8% | 1 | 22 |
| % EXCUSED | 46.4% | | 66.7% | | | |

57

| % TOTAL POPULATION | 93.4% | | 6.6% | | | |
|---|---|---|---|---|---|---|
| SERVED ON GRAND JURY | 18 | 100.0% | | 0% | | 18 |

In the instant case, the Defendant was confronted with both grand and petit jury venires in which African-Americans – his own racial group – were materially underrepresented. This satisfies the first element of the test, as African-Americans are recognized as a distinctive community group as a matter of law. *Cunningham, supra.* Further, as the more detailed census data concerning race and age cohorts for Africans establishes, the "overrepresentation" of Africans on the petit jury venire camouflages a serious statistical deviation. Although there were several Africans in that venire, and on the petit jury, these Africans were skewered to older age cohorts which could, based on historical trends, be reasonably expected to be more

The second element of the test is likewise satisfied. The underrepresentation of African-Americans in the venire is not fair and reasonable in relation to the group's number in the community. Approximately 6.6% of the population of Cherokee County are African-American, according to the 1990 census.[38] However, it may be presumed that this figure misstates the African-American population of Cherokee County. As the United States Supreme Court recognized in *Wisconsin v. City of New York*, 517 U.S. 1 (1996):

> The undercount is not thought to be spread consistently across the population: Some segments of the population are "undercounted" to a greater degree than are others, resulting in a phenomenon termed the "differential undercount." Since at least 1940, the Census Bureau has thought that the undercount affects some racial and ethnic minority groups to a greater extent than it does whites. In 1940, for example, when the undercount for the entire population was 5.4%, the

---

[38] The underlying values are n(total) = 19,543; n(African-American) = 1,291. The data are archived at http://venus.census.gov/cdrom/lookup/949589124.

58

undercount for blacks was estimated at 8.4% (and the undercount for whites at 5.0%). *Ibid.* The problem of the differential undercount has persisted even as the census has come to provide a more numerically accurate count of the population. In the 1980 census, for example, the overall undercount was estimated at 1.2%, and the undercount of blacks was estimated at 4.9%. 517 U.S. at 7.

Finally, it is clear that this underrepresentation is due to systematic exclusion of the group from the selection process. The traditional means for collecting names for jury selection, such as drivers' licenses and voter registration, are merely statistical surrogates for the census undercount of minorities and other underprivileged groups. Any selection process that does not affirmatively seek to remedy this invidious problem must willfully embrace it.

> Discriminatory selection of a jury venire may also be challenged under the Equal Protection Clause of the Fourteenth Amendment. *Castaneda v. Partida,* 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). To establish a prima facie claim for an equal protection violation, a petitioner must show (1) that he or she is a member of a group capable of being singled out for discriminatory treatment, (2) that members of this group were substantially underrepresented on the venire, and (3) that the venire was selected under a practice providing an opportunity for discrimination. *Castaneda,* 430 U.S. at 494, 97 S.Ct. at 1280. *Cunningham v. Zant,* 928 F.2d 1006, 1013 (11th Cir. 1991)

Alabama courts dealing with equal protection issues also apply this standard. *Minor v. State, supra.* For the same reasons established in the first test, this alternate test is also satisfied. The use of indicia inferring some wealth and social status – voter lists, drivers' licenses, or utility lists – is the use of statistical surrogates for race. The result is an impermissible underrepresentation of African Americans on both grand and petit jury venires, including those which rendered the indictment and verdict in the case at bar. For this reason, the conviction of the Defendant and the resulting condemnation must be vacated, and the indictments quashed.

VI

## THE COURT ERRED BY FAILING TO REQUIRE THE STATE TO PROVIDE RACE NEUTRAL REASONS FOR ITS PEREMPTORY JURY CHALLENGES

The Court disposed of the Defendant's challenge under *Batson v. Kentucky*, 476 U.S. 79 (1986), by ruling that it was untimely. (R. 481). However, the Court was in error in doing so. At the time of this objection, there remained time to remedy any problem which appropriate Batson proceedings might uncover. There had been no testimony taken, and the jury was sworn prior to voir dire, which is a traditional "signal" to a party to exercise objections to the voir dire or strike. Our courts have stated:

A proper objection to an alleged *Batson* violation must be raised after the peremptory strikes have been made but prior to the jury's being sworn. *Thornton v. State*, 513 So.2d 83 (Ala.Crim.App. 1987). In a situation such as the one at bar, it would appear that there would be no way to make a proper *Batson* objection since the jury is sworn before the jury is struck. However, since there is no opportunity to object before the jury is sworn under these circumstances, *a Batson objection will be deemed timely made if it is "made early enough to give the trial court sufficient time to take corrective action without causing delay if it deemed action necessary." Williams v. State*, 530 So.2d 881, 884 (Ala.Crim.App. 1988), cert. denied, (Ala.1988). In *Williams*, this court held that a *Batson* objection was not timely when it was not made until after the jury had been sworn, and placed in the box and the trial judge had given some preliminary instructions to the jury. In this case, the appellant did not object to the jury panel until after the jury had been struck and placed in the box and the trial judge had made some preliminary instruction to the jury. It does not appear from the record that the appellant was prevented from making a timely objection. Thus, this issue is not preserved for our review. White v. State, 549 So.2d 524 (Ala.Crim.App. 1989) 549 So.2d 525-549 So.2d 526.

Thus, the challenge was in fact timely.

The standard for determining whether a prima facie case has been made, requiring the State to provide race-neutral reasons for its actions, was set out in *Batson* itself:

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. *Batson v. Kentucky*, 476 U.S. 79, 96-97 (1986)

In addition, it has been observed that "a single instance of purposeful racial discrimination in the use of peremptory strikes can establish a prima facie case under *Batson*." *Ex parte Carter*, 627 So.2d 1030, 1033 (Ala. 1993)

With these foundations in mind, it is necessary to look at the cold numbers involved in the selection of the trial jury in this case, as compared with other relevant statistics. Once again, graphic display of the figures is beneficial:

**Gavin Petit Jury Selection**



The numbers do not lie. The percentage of the State's peremptory strikes employed against Africans was over twice their percentage in the venire panel, and over two and one-quarter times their percentage in the general population. Whatever "benefit" the Defendant gained from a minor overrepresentation of his ethnic group

in the venire was eliminated by the radically disproportionate use of strikes against Africans in the selection of the jury. It is important to remember that, under Batson, the final numbers of group members on *a jury is not the issue.* Rather, it is whether a party has impermissibly used race (or another protected category) in a discriminatory manner. It may be arguable that the statistics above do not prove that any offered race-neutral rationale is pretextual. It is not arguable that discrepancies of this magnitude do not mandate the State to offer an explanation of the obvious disparity. The Court erred by failing to require the State to do this, and a new trial is required to vindicate the right of the Defendant to a fair and impartial trial.

Finally, in arguing this issue, the Defendant wishes to point out the inevitable result if the Court persists in its position that the *Batson* challenge was waived by its allegedly untimely interposition by Mr. Bayne Smith:

> We adopt the dissenting opinion of Judge Bowen and hold that the failure of trial counsel to make a timely *Batson* objection to a prima facie case of purposeful discrimination by the State in the jury selection process through its use of peremptory challenges is ***presumptively prejudicial to a defendant.*** *Ex parte Yelder*, 575 So.2d 137, 139 (Ala. 1991)(emphasis added)

365

VII

THE DEFENDANT IS ENTITLED TO A NEW TRIAL
BECAUSE THE COURT ERRONEOUSLY ADMITTED
EVIDENCE OVER TIMELY AND WELL TAKEN OBJECTIONS

A

REGARDLESS OF THE SUFFICIENCY OF ANY ONE ERROR THEREFOR,
THE DOCTRINE OF CUMULATIVE ERROR MANDATES A NEW TRIAL

Alabama has recognized, and frequently applied, the doctrine of cumulative error. Under this doctrine, a court is permitted – even required – to weigh the cumulative effect of numerous errors or prejudicial acts. The doctrine was lucidly stated in the case of *Blue v. State*, 246 Ala. 73, 19 So.2d 11 (Ala. 1944) as follows:

> "Reverting to the various arguments and statements which the appellant assigns as showing a general course of prejudicial appeal to the jury, and as creating a general atmosphere of illegal presentation of facts, etc., it is not necessary to consider whether any one or more of these occurrences, if standing alone, would require a reversal. We content ourselves with stating that, as to several of these a serious question would be presented on the single occurrence, even if it were not accompanied by many other such occurrences throughout the trial. While, in most of the instances, the court sustained the defendant's objections and granted his motions to exclude, these occurrences were so numerous, and in many instances evidenced such persistence of effort to present to the jury facts held illegal by the court, that they could not have failed to prejudice the defendant." *Pointer v. State*, 24 Ala.App. 23, 129 So. 787 at 787, 789-90 (Ala.App. 1930) 19 So.2d at 17

Further, the doctrine has continued to be recognized and applied robustly. It was recently cited and accepted in the case of *Minor v. State*, 1999 WL 982402 (Ala.Crim.App. 1999):

63

Minor correctly notes that the Alabama Supreme Court has held that the cumulative effect of errors may warrant reversal when the individual errors alone would not. *See Ex parte Tomlin*, 540 So.2d 668 (Ala. 1988). 1999 WL 982402 at *77

Thus, as this court weighs the motion for new trial, it may not admit that errors occurred, and then dismiss each error piecemeal as not warranting a new trial. It must recognize that these errors, these deprivations of the Defendant's rights, have acted together to deny him the fundamental right of a fair trial. Further, the Court must consider the effect of any error it finds to have been waived, such as by failure to object, on the issue of effective assistance of counsel, to be discussed later.

B

## THE COURT ERRONEOUSLY ADMITTED COPIES OF PURPORTED PRIOR CONVICTIONS OF THE DEFENDANT

During the guilt phase of the Defendant's trial, the State entered exhibits into evidence which purport to be a 1979 burglary conviction and 1981 murder conviction of the Defendant, both from the Circuit Court of Cook County, Illinois.

That is necessary in order for the document to be used to show a *valid* prior conviction. Consequently, the record of conviction should show or the state must otherwise prove, among other things, that the defendant had counsel or waived the right to counsel, because uncounseled prior convictions cannot be used either to support a finding of guilt or to enhance punishment for another offense, *Burgett v. Texas*, 389 U.S. 109 (1967); *Palmer v. State*, 401 So.2d 266 (Ala.Crim.App.1981), and presuming waiver of the right to counsel from a silent record is impermissible. *Burgett, supra. Sargent v. State*, 515 So.2d 729 (Ala. 1987)

In order for a conviction to be validly used to impeach a defendant, or to enhance his punishment, he must have been afforded counsel at all material phases of

64

the underlying proceedings.  The necessity for counsel in all phases of a proceeding has been defined as follows:

> After a defendant's Sixth Amendment right to counsel attaches, he has a right to the advice of counsel "at any stage of the prosecution, formal or informal, in court or out, where counsel's absence might derogate from the accused's right to a fair trial." *United States v. Wade*, 388 U.S. 218 (1967).  The Supreme Court has referred to such a stage as a "critical stage" of a criminal proceeding.  *Michigan v. Jackson*, 475 U.S. 625 (1986); *see also Maine v. Moulton*, 474 U.S. 159 (1985). *United States v. Hidalgo*, 7 F.3d 1566, 1569 (11th Cir. 1993)

Under these circumstances, it appears that the conviction should not have been admitted.

## C

## THE COURT ERRONEOUSLY ADMITTED A PURPORTED COPY OF AN "OFFICIAL STATEMENT OF FACTS" FROM THE ILLINOIS STATE'S ATTORNEY INTO EVIDENCE

State's exhibit 42 consists of what purports to be a document submitted by the district attorney to the Illinois court; it has no ready analog in Alabama practice.  It purports to set out details of the Defendant's Illinois charge.  It is over the purported signature of an assistant state's attorney.  It is clearly "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ala.R.Evid. 801(c).  Thus, it is hearsay, and inadmissible under Ala.R.Evid. 802.  The closest hearsay exception under which it might be admissible states that an exception exists for:

> (8) Public Records and Reports.  Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, ***excluding, however, when offered against the defendant***

65

*in criminal cases, matters observed by police officers and other law enforcement personnel* Ala.R.Evid. 803(8). (emphasis added)

First, the State's Attorney is clearly "law enforcement personnel" within the meaning of the exclusionary clause. Even if she is not, there is clearly a tacit hearsay-within-hearsay declarant, the police official providing her information. Ala.R.Evid. 805. Further, the document is not properly authenticated under Ala.R.Evid. 902. Its admission was prejudicial error.


D


## THE COURT ERRONEOUSLY ADMITTED EYEWITNESS IDENTIFICATION OF THE DEFENDANT THAT CONSISTED OF, OR WAS TAINTED BY, IMPERMISSIBLY SUGGESTIVE SHOWUP PROCEDURES

In the guilt phase of the trial in this case, the State introduced two eyewitness identifications of the Defendant. One of these was by Danny Smith, investigator for the District Attorney's office. The other was by Larry Twilley, an eyewitness to the shooting. The Smith identification took the form of a showup, that is, an identification in which the Defendant was the only individual presented to the identifier and the identifier was asked to confirm or deny the identity of the subject. Such procedures are universally and justifiably condemned as unreliable. It is the normal nature of mankind to assume that one is being shown the proper person. Also, if the subject of the showup resembles the intended object of the identification, the prospect of an honest misidentification is all too real. A very recent case of the Supreme Court of Alabama recognized these problems, and reversed a conviction based on a showup identification. In so doing, it held:

> The danger inherent in a one-man showup, where a witness is shown a single suspect and asked, "Is that the man?" is twofold. First, a one-man showup conveys a clear message that "the police suspect *this* man." *Williams v. State*, 546 So.2d 705 (Ala.Crim.App. 1989) (quoting

*Biggers v. Tennessee*, 390 U.S. 404 (1968) (Douglas, J., dissenting) (emphasis in original)). Second, a one-man showup does not give the witness a choice of identifying any other person as being the perpetrator of the crime charged. *See Brazell v. State*, 369 So.2d 25 (Ala.Crim.App. 1978), cert. denied, 369 So.2d 31 (Ala. 1979). Consequently, when a one-man showup is used to identify the perpetrator of a crime, the reliability of the witness's identification is not put to an objective test, such as a live or photographic lineup, in which a single suspect must be chosen from a group of persons possessing similar physical characteristics. *Ex parte Frazier*, 729 So.2d 253, 255 (Ala. 1998)

In the instant case, both Smith and Twilley saw the perpetrator at significant distances, and for only a few seconds each. These factors have long been held to produce unreliable identification, even in the absence of a suggestive showup. E. Loftus, *Eyewitness Testimony* 23 (Harvard 1996). Further, the events surrounding both initial observations were violent and stressful, including gunfire. These are also factors tending to degrade the reliability of identification. *ibid.*, at 31. Under these circumstances, the Court should have granted the Defendant's motion to suppress the in-court identification of the Defendant. Twilley's identification likewise fails to meet the parameters set out in the consensus of modern literature for producing a reliable identification. In the alternative, any waiver of this objection by trial counsel must weigh heavily in favor of a finding that trial counsel were ineffective, as argued later.

E

THE COURT ERRONEOUSLY ADMITTED THE DEFENDANT'S ILLINOIS
MUG SHOT INTO EVIDENCE

The State admitted a photograph of the Defendant, which appears to have been taken by the Illinois Department of Corrections. State's Exhibit 40. This photograph, in addition to being clearly formatted in a "mug shot" style, also bears the clear indicia of its provenance from the penal system, including an identifying placard in both views.

The admission of *mug shots* is highly prejudicial, and has been subjected to strict scrutiny by our appellate courts.

Mug shots are generally inadmissible in a criminal trial because the jury may infer from them that the defendant has a criminal history.... *Tyson v. State*, 2000 WL 127199 (Ala.Crim.App. 2000) at *20

A three-element analysis was adopted by the Supreme Court of Alabama in *Ex parte Long*, 600 So.2d 982 (Ala. 1992) as follows:

The three requirements set out in [*United States v. Harrington*, 490 F.2d 487 (2nd Cir. 1973)]are:

"1. The Government must have a demonstrable need to introduce the photographs; and

"2. The photographs themselves, if shown to the jury, must not imply that the defendant has a prior criminal record; and

"3. The manner of introduction at trial must be such that it does not draw particular attention to the source or implications of the photographs."

*Harrington*, 490 F.2d at 494.   We conclude that these three inquiries are appropriate criteria to consider when determining the admissibility of a mug shot; however, the failure to meet one or more of these criteria would not necessarily result in reversible error.   We shall still apply Rule 45, Ala.R.App.P., when deciding whether to reverse or set aside a judgment for error.   600 So.2d at 989

It was not shown by the State that this photograph was necessary for its case. While the Defendant's identity was at issue as the perpetrator, other photographs could easily have done the job.   Further, Defendant's identity and appearance at the time of his Illinois incarceration were not at issue.   In addition to failing to meet the first element of the *Long* test, the mug shot fails the more liberal basic relevancy test of Ala.R.Evid. 402.

The second and third elements of this analysis were likewise clearly misweighed to the Defendant's prejudice.[39]   No effort was made to redact the prejudicial information on the exhibit.   This is to be compared to the approved method which held a photograph admissible in *Jones v. State*, 451 So.2d 389 (Ala.Crim.App. 1984):

> The manner of introduction at the trial did not, in our opinion, "draw particular attention to the source or implications of the photographs." The trial judge did as much as a trial judge could have reasonably and prudently done to prevent any "particular attention to the source or implications of the photographs" by assiduously placing white paper over markings or numbers on the photographs so as to leave nothing thereon of any significance other than the photography of the persons photographed.   451 So.2d at 393

Under these circumstances, the mug shot had little effect other than to accentuate the State's prejudicial, and improper, effort to portray the Defendant as a "bad" or "dangerous" person.   This error calls for vacation of the conviction and a new trial.

---

[39]      see also, Ala.R.Evid. 403:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

69

## CONCLUSION

Ala.R.Crim.P. 21.1 provides that:

(c) GROUNDS. The court may grant a new trial:
    (1) For the reason that the verdict is contrary to law or to the weight of the evidence; or
    (2) If for any other reason the defendant has not received a fair and impartial trial.

The reasons the Defendant did not receive a fair and impartial trial vary from the serious, irrefutable and shocking to the relatively minor and debatable. However, taken in sum and perspective, the irresistible weight of the evidence, and the law which applies to it, leave room for no other conclusion. The trial of the Defendant, and his sentencing, were neither fair nor impartial. For these reasons, this Court should vacate both the sentence and conviction of the Defendant and grant him a new trial.

Respectfully submitted,

Steven G. Noles
Attorney for Defendant
P.O. Box 680883
Fort Payne, AL 35968
256.845.0716
email: noleslaw@aol.com

FILED

MAY 3 0 2000

Carolyn M. Smith
CIRCUIT CLERK
CHEROKEE COUNTY ALA.

Stephen P. Bussman
Attorney for Defendant
P.O. Box 680925
Fort Payne, AL 35968
256.845.7900

70

# TABLE OF AUTHORITIES

**CASES**

Allen v. State, 380 So.2d 313 (Ala.Crim.App. 1979) .............................................................. 19
Arlington Heights v. Metropolitan Housing Dev. Corp., 429 U.S. 252 (1977) .......................... 32
Armstrong v. Roger's Outdoor Sports, Inc., 581 So.2d 414 (Ala. 1991) ................................ 29
Batson v. Kentucky, 476 U.S. 79 (1986) ............................................................................ 33, 61
Beasley v. MacDonald Engineering Co., 287 Ala. 189, 249 So.2d 844 (1971) ...................... 20
Biggers v. Tennessee, 390 U.S. 404 (1968) .......................................................................... 67
Blue v. State, 246 Ala. 73, 19 So.2d 11 (Ala. 1944) .............................................................. 63
Brazell v. State, 369 So.2d 25 (Ala.Crim.App. 1978) ............................................................ 67
Bryan v. Moore, 120 S.Ct. 1003 (2000) .............................................................................. 46
Bryan v. Moore, 120 S.Ct. 394 (1999) ................................................................................ 46
Burgett v. Texas, 389 U.S. 109 (1967) ................................................................................ 22
Carr v. State, 28 Ala.App. 466, 187 So. 252 (1939) ............................................................ 29
Castaneda v. Partida, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977) .......................... 59
Cooper v. State, 847 S.W.2d 521 (Tenn. Crim. App. 1992) .................................................. 18
Cunningham v. Zant, 928 F.2d 1006, 1013 (11th Cir. 1991) ............................................ 56, 59
Drinkard v. State, 1998 WL 881165 (Ala.Crim.App. 1998) .................................................. 54
Duren v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979) ................................ 56
Ex parte Carter, 627 So.2d 1030 (Ala. 1993) ...................................................................... 61
Ex parte Frazier, 729 So.2d 253 (Ala. 1998) ........................................................................ 67
Ex parte Killough, 438 So.2d 333 (Ala. 1983) ...................................................................... 52
Ex parte Long, 600 So.2d 982 (Ala. 1992) .......................................................................... 68
Ex parte Tomlin, 540 So.2d 668 (Ala. 1988) ........................................................................ 64
Ex parte Woodard, 631 So.2d 1065 (Ala.Crim.App. 1993) .................................................... 9
Ex parte Yelder, 575 So.2d 137 (Ala. 1991) ........................................................................ 62
Ford v. Haley, 195 F.3d 603, 613 (11th Cir. 1999) .............................................................. 55
Ford v. State, 515 So.2d 34 (Ala.Crim.App. 1986) .............................................................. 55
Furman v. Georgia, 408 U.S. 238 (1972) .................................................................. 24, 31, 51
Gideon v. Wainwright, 372 U.S. 335 (1963) ........................................................................ 54
Glass v. Louisiana, 471 U.S. 1080 (1985) ............................................................................ 46
Grantham v. Denke, 359 So.2d 785 (Ala. 1978) .................................................................. 29
Gregg v. Georgia, 428 U.S. 153 (1976) .............................................................................. 50
Hardy v. State, 576 So.2d 685 (Ala.Crim.App. 1991) .......................................................... 16
Holladay v. State, 549 So.2d 122 (Ala.Crim.App. 1988) ...................................................... 16
Hubbard v. State, 382 So.2d 577 (Ala.Crim.App. 1979) ...................................................... 47
Illinois v. Allen, 397 U.S. 337 (1970) .................................................................................. 54
In re Kemmler, 136 U.S. 436 (1890) ............................................................................ 41, 46
In re: Jordan, 439 F.Supp. 199 (S.D. W.V. 1977) ................................................................ 23
Jackson v. State, 1999 WL 339263 (Ala.Crim.App. 1999) .................................................... 41
James v. Alabama Coalition For Equity, Inc., 713 So.2d 937 (Ala. 1997) .............................. 56
Johnson v. Pataki, 91 N.Y.2d 214, 691 N.E.2d 1002, 668 N.Y.S.2d 978 (1997) .................... 17
Jones v. State, 451 So.2d 389 (Ala.Crim.App. 1984) ............................................................ 69
Kemmler v. Durston, 119 N.Y. 569, 24 N.E. 6 (N.Y. 1890) .................................................. 41
Knotts v. State, 686 So.2d 431 (Ala.Crim.App. 1995) .......................................................... 41
Locke v. State, 631 So.2d 1062 (Ala.Crim.App. 1993) ...................................................... 32, 33
Louisiana ex rel. Francis v. Resweber, 329 U.S. 459 (1947) ................................................ 41
Maine v. Moulton, 474 U.S. 159 (1985) .............................................................................. 65
McCleskey v. Kemp, 481 U.S. 279 (1987) .............................................. 28, 29, 30, 31, 32, 35
McCleskey v. Zant, 753 F.2d 877 (11th Cir. 1985) .............................................................. 31
McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) .................................................... 33
Michigan v. Jackson, 475 U.S. 625 (1986) .......................................................................... 65
Minor v. State, 1999 WL 982402 (Ala.Crim.App. 1999) .................................................. 56, 63
Opinions of the Justices, 232 Ala. 56, 166 So. 706 (Ala. 1936) ............................................ 51

Palmer v. State, 401 So.2d 266 (Ala.Crim.App.1981) .................................................. 64
Peddy v. Montgomery, 345 So.2d 631 (Ala.1977) ...................................................... 56
Pike v. Southern Bell Tel. & Tel. Co., 263 Ala. 59, 81 So.2d 254 (1955) ....................... 29
Pointer v. State, 24 Ala.App. 23, 129 So. 787 (Ala.App. 1930) .................................... 63
Rex v. Windham, 2 Keb. 180, 84 Eng. Rep. 113 (K.B. 1667) ...................................... 22
Robinson v. State, 361 So.2d 1113 (Ala. 1978) ........................................................ 20
Sargent v. State, 515 So.2d 729 (Ala. 1987) ........................................................... 64
Shaftesbury's Case, 33 Car. 2, 8 How.St.Tr. 770 (1681) ............................................ 22
State ex rel. Baxley v. Strawbridge, 52 Ala. App. 685, 296 So.2d 779 (Ala.Crim.App. 1974) ... 19
State v. Brimmer, 876 S.W.2d 75, 86 (Tenn. 1994) .................................................. 18
State v. Cazes, 875 S.W.2d 253 (Tenn. 1994) ......................................................... 18
State v. Pendergrass, 1997 WL 83777 (Tenn. Crim. App. 1997) ................................... 17
State v. Superior Oil, Inc. 875 S.W.2d 658 (Tenn. 1994) ........................................... 17
Swain v. Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965) ........................ 56
Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) ...................... 56
Thomas v. Jones, 742 F.Supp. 598 (S.D. Ala. 1990) ................................................. 43
Thornton v. State, 513 So.2d 83 (Ala.Crim.App. 1987) ............................................. 60
Trop v. Dulles, 356 U.S. 86 (1958) ...................................................................... 25
Tyson v. State, 2000 WL 127199 (Ala.Crim.App. 2000) ............................................ 68
United States v. Harrington, 490 F.2d 487 (2nd Cir. 1973) ........................................ 68
United States v. Hidalgo, 7 F.3d 1566 (11th Cir. 1993) ............................................. 65
United States v. Wade, 388 U.S. 218 (1967) ........................................................... 65
United States v. Wells, 163 F. 313 (D. Idaho 1908) .................................................. 22
Weems v. United States, 217 U.S. 349 (1910) ......................................................... 25
Whisenhant v. State, 555 So.2d 235 (Ala.Crim.App. 1988) ....................................... 26
White v. State, 549 So.2d 524 (Ala.Crim.App. 1989) ............................................... 60
Williams v. State, 530 So.2d 881 (Ala.Crim.App. 1988) ........................................... 60
Williams v. State, 546 So.2d 705 (Ala.Crim.App. 1989) ........................................... 66
Wisconsin v. City of New York, 517 U.S. 1 (1996) .................................................. 58

## STATUTES

2000 Fla. Laws ch. 2000-1 ................................................................................ 46
42 U.S.C. § 2000e-2 ....................................................................................... 33
720 Ill. Comp. Stat. § 5/9-2 .............................................................................. 50
Ala. Acts 75-130 ........................................................................................... 19
Ala. Code § 12-15-202 .................................................................................... 19
Ala. Code § 12-15-203 .................................................................................... 20
Ala. Code § 12-16-202 ................................................................................. 12, 21
Ala. Code § 1-3-1 .......................................................................................... 24
Ala. Code § 13A-5-40 ..................................................................................... 18
Ala. Code § 13A-5-40(a)(1) .............................................................................. 10
Ala. Code § 13A-5-40(a)(10) ............................................................................ 16
Ala. Code § 13A-5-40(a)(13) ......................................................................... 47, 52
Ala. Code § 13A-5-40(a)(14) ............................................................................ 11
Ala. Code § 13A-5-40(a)(15) .......................................................................... 9, 10
Ala. Code § 13A-5-40(a)(18) ............................................................................. 9
Ala. Code § 13A-5-40(a)(2) .............................................................................. 8
Ala. Code § 13A-5-40(b) ................................................................................. 13
Ala. Code § 13A-5-46 ..................................................................................... 18
Ala. Code § 13A-5-47 .................................................................................. 18, 28
Ala. Code § 13A-5-51 ..................................................................................... 18
Ala. Code § 13A-5-53 ..................................................................................... 18
Ala. Code § 13A-5-6(a)(1) ............................................................................... 26
Ala. Code § 13A-6-1(2) .................................................................................... 8
Ala. Code § 13A-6-2(a) ................................................................................... 13
Ala. Code § 13A-6-2(a)(1) ............................................................................ 13, 18
Ala. Code § 13A-6-2(a)(2) ............................................................................... 13

Ala. Code § 13A-6-3 ........................................................................................... 48
Ala. Code § 13A-6-43 .......................................................................................... 7
Ala. Code § 13A-7-1(4) ....................................................................................... 24
Ala. Code § 13A-8-1(7) ....................................................................................... 24
Ala. Code § 14-9-40 ............................................................................................ 26
Ala. Code § 26-15-3 ............................................................................................ 9
Fla. Stat. Ann. § 922.10 ...................................................................................... 46
Ill.Rev.Stat., ch. 38, §§ 361 (1981) ..................................................................... 50
N.Y. Crim. Proc. Law § 250.40 ......................................................................... 17
N.Y. Penal Law § 125.20 .................................................................................... 48
Tex. Penal Code § 19.02 ..................................................................................... 49

## OTHER AUTHORITIES

Amnesty International website, http://www.derechos.net/amnesty/dp/97/henrhays.html ............... 36
Amnesty International website, http://www.derechos.net/amnesty/dp/97/pedrmedi.html ............... 45
Black's Law Dictionary at 1184 (6th Rev. ed. 1990) .......................................... 21
Hoffman, The Madness of the Method: The Use of Electrocution and the Death Penalty, 70 Tex. L. Rev. 1039
    (1992) .......................................................................................................... 42
Kadish, Behind the Locked Doors of an American Grand Jury, 24 Fla. St. L. Rev. 1 (1996) .............. 22
Miami Herald, 8 July 1999 ................................................................................. 45
Resolution, A.B.A. House of Delegates, adopted Aug. 1988 ............................... 35
Resolution, A.B.A. House of Delegates, adopted Feb. 1997 ............................... 36
Schwartz, Demythologizing the Historic Role of the Grand Jury, 10 Am. Crim. L. Rev. 701 (1972) ...... 22
Steiker and Steiker, Sober Second Thoughts: Reflections on Two Decades of Constitutional Regulation of
    Capital Punishment, 109 Harv. L. Rev. 355, 381 (1995) ............................ 27
Stevenson, The Hanging Judges The Nation, Oct. 14, 1996 .............................. 33
Tabak, The Death of Fairness: The Arbitrary and Capricious Imposition of the Death Penalty in the 1980's, 14
    N.Y.U. Rev. L. & Soc. Change 797 (1993) .................................................. 26
The Federal Grand Jury, 22 F.R.D. 343 (1959) .................................................. 22

## RULES

Ala.R.Crim.P. 12 ................................................................................................ 12
Ala.R.Crim.P. 12.3 ............................................................................................. 20
Ala.R.Crim.P. 13.1(a) ........................................................................................ 21
Ala.R.Crim.P. 18.1 ............................................................................................. 56
Ala.R.Crim.P. 21.1 ............................................................................................. 70
Ala.R.Crim.P. 24.4 ............................................................................................. 4
Ala.R.Evid. 402 .................................................................................................. 68
Ala.R.Evid. 403 .................................................................................................. 69
Ala.R.Evid. 404(a)(3) ......................................................................................... 52
Ala.R.Evid. 404(b) ............................................................................................. 52
Ala.R.Evid. 609 .................................................................................................. 52
Ala.R.Evid. 801(c) ............................................................................................. 65
Ala.R.Evid. 802 .................................................................................................. 65
Ala.R.Evid. 803(8) ............................................................................................. 66
Ala.R.Evid. 805 .................................................................................................. 66
Ala.R.Evid. 902 .................................................................................................. 66
Tenn.R.Crim.P. 12.3(b) ...................................................................................... 17

## TREATISES

16A C.J.S. Constitutional Law, § 564 ................................................................. 50
82 C.J.S. Statutes § 363 ...................................................................................... 20
E. Loftus, Eyewitness Testimony 23 (Harvard 1996) ........................................ 67

## CONSTITUTIONAL PROVISIONS

Ala. Const., Art. I § 1 .................................................................................................... 34, 56
Ala. Const., Art. I § 6 .............................................................................................. 28, 53, 56
Ala. Const., Art. I § 7 .......................................................................................................... 37
Ala. Const., Art. I § 11 ........................................................................................................ 56
Ala. Const., Art. I § 15 ............................................................................................. 12, 41, 51
Ala. Const., Art. I § 22 ................................................................................................. 51, 56
U.S. Const., Amend. V ........................................................................................................ 12
U.S. Const., Amend. VIII ............................................................................................. 41, 51
U.S. Const., Amend. XIV ...................................................................................... 12, 33, 41, 51
U.S. Const., Art. I, § 10 ...................................................................................................... 37

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing Request on Hon. Michael O'Dell, District Attorney, by delivering a copy of the same to his box in the Circuit Clerk's Office at the Cherokee County Courthouse in Centre, Alabama, or in open court, this _22_ day of May, 2000.

Steven G. Noles

**FILED**

MAY 3 0 2000

_Carolyn M. Smith_
CIRCUIT CLERK
CHEROKEE COUNTY, ALA.

378

```
STATE OF ALABAMA,              *    IN THE CIRCUIT COURT FOR

      PLAINTIFF               *
                              *
VS.                           *    CHEROKEE COUNTY, ALABAMA
                              *
KEITH EDMUND GAVIN,           *
                              *
      DEFENDANT               *    CASE NO:  CC-98-61 and
                              *              CC-98-62
```

## O R D E R

The Defendant's MOTION FOR NEW TRIAL was set for hearing on May 30, 2000, at which time the Defendant and his attorneys appeared and argued some of the issues raised in said Motion. The Defendant's attorneys have requested leave to file an additional or supplemental brief, and in consideration of the scheduling needs of this Court it is,

ORDERED, ADJUDGED AND DECREED as follows:

1. On or before June 30, 2000, the State shall file a brief in response to the Defendant's brief and argument presented on May 30, 2000.

2. On or before June 30, 2000, the Defendant shall file any additional or supplemental briefs in support of the MOTION FOR NEW TRIAL.

3. The Defendant and State shall file any further responses on or before July 24, 2000.

The Defendant's MOTION FOR NEW TRIAL shall come for further hearing on Friday, August 4, 2000, at 9:00 a.m. The Defendant has consented for said hearing to be conducted at the third floor courtroom of the DeKalb County Courthouse, in Fort Payne, Alabama. At the hearing hereby scheduled the Sheriff of Cherokee County, for

ORDER
CC-98-61 and CC-98-62
CHEROKEE COUNTY
PAGE 2


providing security and transportation, and same shall be coordinated by and with the Sheriff of DeKalb County, Alabama.

The deadline of September 1, 2000, for the Court's ruling on the Defendant's MOTION FOR NEW TRIAL, remains unchanged, and if no ruling is issued on or before that date said Motion shall be deemed denied by operation of law thereafter.

Done this _____1_____ day of June, 2000.

DAVID A. RAINS, CIRCUIT JUDGE

Copies to:                              Attorney for:
Mr. Michael E. O'Dell                   State of Alabama
Mr. Robert F. Johnston

Mr. Stephen P. Bussman                  Keith Edmund Gavin
Mr. Steven G. Noles

Hon. Cecil Reed,
Sheriff, DeKalb County

Hon. Roy Wynn,
Sheriff, Cherokee County

Officer Richard Woods
Security, Cherokee County

Officer Stanley Hollingsworth
Security, DeKalb County

Mr. Cecil Atchison,
Transfer Agent
Alabama Department of Corrections

GAVIN.8

**FILED**

JUN 0 2 2000

Carolyn M. Lcourt
CIRCUIT CLERK
CHEROKEE COUNTY, AL

## IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

### CRIMINAL DIVISION

| | | |
|---|---|---|
| STATE OF ALABAMA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NOS.  CC-~~99-631~~ 98-61 |
| | ) | CC-~~99-704~~ 98-62 |
| KEITH EDMUND GAVIN | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER SEEKING THE AID OF ILLINOIS COURTS
### IN OBTAINING DEFENDANTS' RECORDS

This cause is before the Court on the Defendant's Motion for Order Seeking the Aid of Illinois Courts In Obtaining Defendants' Records.  The Court has considered the same and finds and certifies as follows:

1.   There is a criminal prosecution pending in this court, as styled above.

2.   A person being within Illinois, to-wit: any custodian of records of the Illinois Department of Corrections, is a material witness in such prosecution.

3.   The laws of Alabama, and of any other state through which the witness or any records produced hereto may be required to pass by ordinary course of travel, will give to said witness protection from arrest and the service of civil and criminal process.

ORDER
State v. Keith Edmund Gavin
CC-98-61 and 62
23 June, 2000
Page 2 of 4

4.   The Defendant has sought, through letters from counsel accompanied by written authority from the Defendant, to obtain his records from the Illinois Department of Corrections.

5.   The Illinois Department of Corrections has refused to provide said records without a subpoena from the courts of Illinois.

6.   Defense counsel has consulted with Illinois counsel, who advised him that an order of this Court seeking the aid of the courts of Illinois will be necessary to obtain such subpoena.

7.   The provision of such records is necessary to vindicate the rights of the Defendant to his rights to due process of law, equal protection of the laws, effective assistance of counsel, freedom from cruel and unusual punishment, compulsory process for evidence, confrontation of adverse witnesses, court access, and a fair trial, as such rights are established by U.S. Const., Amends. IV, V, VI, VIII and XIV and Ala. Const., Art. I §§ 1, 5, 6, 15 and 22.

8.   The Hon. Michael O'Dell, District Attorney, has consented to the granting of this motion.

9.   That, on consideration thereof, the Motion is due to be granted.   It is therefore:

**ORDERED, ADJUDGED and DECREED** that this Court hereby makes known to any court of the State of Illinois having lawful jurisdiction thereof, that its assistance is sought, by comity, by authority of 725 Ill.Rev.Stat. § 5/115-17, or any

ORDER
State v. Keith Edmund Gavin
CC-98-61 and 62
23 June, 2000
Page 3 of 4

other law of the State of Illinois applicable in the premises, to issue a subpoena or subpoena duces tecum to any custodian of the records described as follows:

Any and all records of the Illinois Department of Corrections of or pertaining to the Defendant, Keith Edmund Gavin, being further identified as having social security number 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, having a date of birth of 30 March 1960, (it being made further known that the Court believes his identification number in the Illinois Department of Corrections to be N-23865, but that the identifying information preceding this clause should take precedence over the information herein) at the Illinois Department of Corrections, including, but not limited to:

(a) All disciplinary records of the Defendant, Keith Edmund Gavin;

(b) All segregation records of the Defendant, Keith Edmund Gavin;

(c) All "Form 402"s of the Defendant, Keith Edmund Gavin;

(d) All Disciplinary Cards, however otherwise named, of the Defendant, Keith Edmund Gavin;

(e) All records of any psychiatrist or psychologist attending the Defendant, Keith Edmund Gavin, at Stateville Correctional Center;

(f) All records of any psychiatrist or psychologist attending the Defendant, Keith Edmund Gavin, at any other facility of the Illinois Department of Corrections;

(g) All records pertaining to any evaluation performed on Keith Edmund Gavin at the Mental Health Clinical Service, Illinois River Correctional Center, by Dr. Iwashita or any other staff member, on or about 18 March 1993.

(h) All "behind the door" records of the Defendant, Keith Edmund Gavin;

ORDER
State v. Keith Edmund Gavin
CC-98-61 and 62
23 June, 2000
Page 4 of 4

    (i)    All "steel door" records of the Defendant, Keith Edmund Gavin;

    (j)    All "mesh door" records of the Defendant, Keith Edmund Gavin;

    (k)    All "bar door" records of the Defendant, Keith Edmund Gavin;

    (l)    Any other documents, records, writings, or other matter pertaining to the Defendant, Keith Edmund Gavin.  For purposes of this subparagraph, "documents" includes any written, recorded or graphic matter, however produced or reproduced, including correspondence, telegrams, contracts, agreements, notes, memoranda, analyses, projections, work papers, working papers, diaries, calendars, minutes of meetings, drawings, photographs, slides, graphs, charts, records, tapes, and other writings, including data processing material, film and copies.

    This Court would further ask that return of such documents, or legible, true and correct copies thereof, be made to the Counsel for Defendant, Steven G. Noles, P.O. Box 680883, Fort Payne, Alabama, 35968.

    Enter this _23_ day of June 2000.

<br>

FILED

JUN 2 3 2000

David A. Rains
Circuit Judge

CIRCUIT CLERK
CHEROKEE COUNTY, AL

cc:    Hon. Michael O'Dell
        Stephen P. Bussman, Esq.
        Steven G. Noles, Esq.

IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,          )
                           )
          PLAINTIFF         )
                           )
VS.                        )    CASE NO. CC-98-61 & CC-98-62
                           )
KEITH GAVIN,               )
                           )
          DEFENDANT        )


## ORDER


On May 25, 2000, the Court ORDERED that Defendant's post trial attorneys, John Ufford and Bayne Smith, to produce all matters and things sought by said subpoenas except for such matters which the respective attorneys contend are not subject to discovery as work-product. The Court authorized, on the record, that Attorney John Ufford shall be reimbursed by the State of Alabama for copying expenses up to .10 cents per copy.


Done this _23_ day of June, 2000.

FILED
JUN 23 2000
JIMMY LINDSEY
CLERK

_____
DAVID A. RAINS, CIRCUIT JUDGE

FILED

JUN 2 6 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

Copy to:  District Attorney

          John Ufford
          Bayne Smith

          Stephen Bussman
          Steven Noles

| State of Alabama<br>Unified Judicial System<br><br>Form C-62A  Rev. 6/25/99 | ATTORNEY'S FEE DECLARATION<br>(Adult)<br>[For Work Performed On or After 6/10/99] | County<br>Code<br>ID | Case Number<br>CC 98 967<br>Jurisdiction  Year  Card  Suffix |
|---|---|---|---|

**Mark Appropriate Court:**

☑ Circuit Court of _Cherokee_ County
☐ District Court of _____ County
☐ Municipal Court of _____
☐ Alabama Court of Criminal Appeals
☐ Alabama Court of Civil Appeals
☐ Supreme Court of Alabama

Indicate if Original Charge is: | Limits
Capital Case (or charge carrying sentence of life without parole) | ☑ (No Limit) CC
Class A Felony | ☐ ($3,500) FA
Class B Felony | ☐ ($2,500) FB
Class C Felony | ☐ ($1,500) FC
Other | ☐ ($1,000) OT
Appeal | ☐ ($2,000) AP
Petition for Writ of Certiorari | ☐ ($2,000) WC
Post-Conviction/Habeas Corpus | ☐ ($1,000) PC

**Attorney Name (Please type or print)**
H. Bayne Smith
H22-64-042299
Social Security Number or FEIN

**STYLE OF CASE:** ☑ STATE OF ALABAMA
☐ MUNICIPALITY OF _____ v. _Keith Edmund Gavin_
Defendant

**CHARGE:** _Capital Murder + attempted murder_

Companion case numbers and charges or convictions: _____

The undersigned attorney declares that on (date) _3/10/98_ the Honorable _John C. Kelsey_
_____, Judge, appointed the undersigned to represent the above-named defendant or appellant, and on (date) _Nov 1-8, 99 + 1/26, 99, 11-7-00_
the case was heard by the Honorable _David A Rains_ _____, Judge. The case was disposed of by _Conviction after trial_
(Plea of guilty, conviction, acquittal, affirmance, reversal, cert. denied)

| | | | | | |
|---|---|---|---|---|---|
| (1) In-Court Appearance (Trial Level or Post-Conviction Proceeding) | Total Hours _____ x $ 50.00 per hour = _____ |
| (2) Out-of-Court Preparation (Trial Level or Post-Conviction Proceeding) | Total Hours _____ x $ 30.00 per hour = _____ |
| (3) Preparation (Appellate Level) | Total Hours _____ x $ 50.00 per hour = _____ |
| (4) Extraordinary Expenses (If approved in advance by court) _AL Prison Project -mitigation_ | = _1285.55_ |
| (5) Overhead Expenses (If approved in advance by court) | Total Hours _____ x $ _____ Per hour = _____ |
| | TOTAL CLAIM OF ATTORNEY |

**NOTICE TO ATTORNEY:** Complete this form. Attach a copy of a complete itemization of (1) in-court appearances; (2) out-of-court preparation; (3) preparation for appeals; (4) extraordinary expenses; and/or (5) overhead expenses reflecting the date of actions and amount of time involved in each activity. Make a copy of same for the court's record and a copy for your records.

The undersigned attorney further declares that the above claim is true and correct and represents the services actually rendered by him/her as an attorney and the amount is due and payable. I further declare that the above claim is not a duplication of charges and expenses in any case (companion or otherwise)

Signature of Attorney
Attorney Code _SMI197_

Sworn to and subscribed before me this _22nd_
day of _June_ _2000_
_Cynthia D. Faulkner_
Notary Public MY COMMISSION EXPIRES 3-18-2001

Mailing Address of Attorney
(please type or print) (including city, state, and zip code)
_108 Park Forest Terrace,_
_Montevallo AL 35115_
Telephone Number _22-447-1122_  Fax Number _220-447-6086_

I, the undersigned judge, hereby certify that the foregoing claim has been presented to me, and I have reviewed the same and believe the same to be true and correct. I am further of the opinion that said attorney is not duplicating said charges and expenses in any case (companion or otherwise).

Based on the above, I hereby approve the declaration and claim in the amount of $ _$1285.55_

Done this _26_ day of _June_ _2000_
Judge's Signature

**NOTICE TO ATTORNEY AND JUDGE:** Sections 15-12-21 through 15-12-23, Code of Alabama 1975, provide for the payment of attorney fees and extraordinary expenses incurred by counsel appointed to represent indigent defendants at the trial level, on appeal (including petition for writ of certiorari to the Alabama Supreme Court) and in post-conviction proceedings.

THIS FORM MUST CONTAIN ORIGINAL SIGNATURES OF THE ATTORNEY AND THE JUDGE. THIS FORM **FILED** IZATION MUST BE SUBMITTED TO THE TRIAL COURT JUDGE OR PRESIDING JUDGE OR CHIEF JUSTICE OF THE APPELLATE COURT FOR APPROVAL. AFTER APPROVAL, FILE WITH THE CLERK, WHO SHALL SUBMIT THE ORIGINAL DECLARATION TO THE STATE COMPTROLLER (EXCEPT IN MUNICIPAL CASES) FOR AUDIT.

Filed in the Clerk's Office at _____, Alabama, on _____
date                                    JUN 27 2000

EXCEPT IN MUNICIPAL CASES, MAIL TO: State Comptroller, Indigent Defense Section, P. O. BOX 302602, Montgomery, Alabama 36130-2602

STATE OF ALABAMA,              \*    IN THE CIRCUIT COURT FOR

      PLAINTIFF              \*

VS.                           \*    CHEROKEE COUNTY, ALABAMA

KEITH GAVIN,                \*

      DEFENDANT            \*    CASE NO: CC-98-61 and
                                             CC-98-62

## O R D E R

This Court hereby authorizes the expenditure of $2,500.00 for additional expenses set out in the ExParte Application filed June 9, 1999.

The Defendant's ExParte Application shall be placed under seal.

Done this _____2_____ day of July, 1999.

_____
DAVID A. RAINS, CIRCUIT JUDGE


COPIES TO:             ATTORNEY FOR:

Mr. Bert Latham        State of Alabama
Mr. Michael E. O'Dell

Mr. H. Bayne Smith      Keith Gavin
Mr. John H. Ufford

387

Alabama Prison Project
Mitigation Program
215 Clayton Street
Montgomery, AL36104

# MITIGATION INVOICE

| DATE |
|---|
| 11/19/99 |

# FILE COPY

| BILL TO |
|---|

Cherokee Cty. Cir. Ct/K. Gavin
Bayne Smith,Esq.
105 Seaboard Avenue
Piedmont, AL 36272

| AMOUNT DUE | AMOUNT ENC. |
|---|---|
| $1,285.55 | |

| DATE | ITEM | DESCRIPTION | BILLED | AMOUNT | BALANCE |
|---|---|---|---|---|---|
| 12/31/98 | | Balance forward | | | 0.00 |
| 04/28/99 | milege | To Piedmont/Centre & Return | 308 | 80.08 | 80.08 |
| 04/28/99 | Atty./Client | Meeting with atty and client | 10 | 400.00 | 480.08 |
| 09/20/99 | Telephone 'ch | Telephone Toll charge | 1 | 0.10 | 480.18 |
| 09/20/99 | Telephone 'ch | Telephone Toll Charge | 1 | 0.59 | 480.77 |
| 09/20/99 | Telephone 'ch | Telephone Toll Charges | 3 | 0.18 | 480.95 |
| 10/05/99 | Expert Consul | John David Sturman & Associates | 1 | 778.85 | 1,259.80 |
| 10/05/99 | Postage | Overnight Postage | 1 | 15.75 | 1,275.55 |
| 10/26/99 | Telephone 'ch | Final Telephone Toll Charges | 3 | 7.50 | 1,283.05 |
| 10/26/99 | Postage | Priority Mail to Atty. | 1 | 2.50 | 1,285.55 |

# FILED

JUN 2 7 2000

*Carolyn M. David*
CIRCUIT CLERK
CHEROKEE COUNTY, AL

| CURRENT | 1-30 DAYS PAST DUE | 31-60 DAYS PAST DUE | 61-90 DAYS PAST DUE | OVER 90 DAYS PAST DUE | AMOUNT DUE |
|---|---|---|---|---|---|
| 1,285.55 | 0.00 | 0.00 | 0.00 | 0.00 | $1,285.55 |

# In the Circuit Court of Cherokee County, Alabama
## Criminal Division

| | | |
|---|---|---|
| STATE OF ALABAMA | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CASE NOS. CC-98-61 |
| | ) | CC-98-62 |
| KEITH EDMUND GAVIN | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S MOTION FOR ORDER
## SEEKING THE AID OF ILLINOIS COURTS
## IN OBTAINING DEFENDANTS' RECORDS

Comes now the Defendant, by and through undersigned counsel, and moves this Court for an order requesting the aid of the courts of the State of Illiniois in obtaining the Defendant's records from the Illinois Department of Corrections, and in support thereof would show as follows:

1. The Defendant has sought, through letters from counsel accompanied by written authority from the Defendant, to obtain such records from the Illinois Department of Corrections.

2. The Illinois Department of Corrections has refused to provide said records without a subpoena from the courts of Illinois.

3. Undersigned has consulted with Illinois counsel, who has advised the undersigned that an order of this Court seeking the aid of the courts of Illinois will be necessary to obtain such subpoena.

4.   A proposed order is submitted contemporaneously herewith.   It is respectfully suggested that such order seek a subpoena for any and all records of the Defendant, Keith Edmund Gavin at the Illinois Department of Corrections, including, but not limited to:

(a)   All disciplinary records, of the Defendant, Keith Edmund Gavin;

(b)   All segregation records, of the Defendant, Keith Edmund Gavin;

(c)   All "Form 402"s, of the Defendant, Keith Edmund Gavin;

(d)   All Disciplinary Cards, however otherwise named, of the Defendant, Keith Edmund Gavin;

(e)   All records of any psychiatrist or psychologist attending the Defendant, Keith Edmund Gavin, at Stateville Correctional Center;

(f)   All records of any psychiatrist or psychologist attending the Defendant, Keith Edmund Gavin, at any other facility of the Illinois Department of Corrections;

(g)   All records pertaining to any evaluation performed on Keith Edmund Gavin at the Mental Health Clinical Service, Illinois River Correctional Center, by Dr. Iwashita or any other staff member, on or about 18 March 1993.

(h)   All "behind the door" records of the Defendant, Keith Edmund Gavin;

(i)   All "steel door" records of the Defendant, Keith Edmund Gavin;

(j)   All "mesh door" records of the Defendant, Keith Edmund Gavin;

(k)   All "bar door" records of the Defendant, Keith Edmund Gavin;

(l)   Any other documents, records, writings, or other matter pertaining to the Defendant, Keith Edmund Gavin.   For purposes of this subparagraph, "documents" includes any written, recorded or graphic matter, however produced or reproduced, including correspondence, telegrams, contracts, agreements, notes, memoranda, analyses, projections, work papers, working papers, diaries, calendars, minutes of meetings, drawings, photographs, slides, graphs, charts, records, tapes, and other writings, including data processing material, film and copies.

2

5.    The provision of such records is necessary to vindicate the rights of the Defendant to his rights to due process of law, equal protection of the laws, effective assistance of counsel, freedom from cruel and unusual punishment, compulsory process for evidence, confrontation of adverse witnesses, court access, and a fair trial, as such rights are established by U.S. Const., Amends. IV, V, VI, VIII and XIV and Ala. Const., Art. I §§ 1, 5, 6, 15 and 22.

6.    The Hon. Michael O'Dell, District Attorney, has consented to the granting of this motion.

Respectfully submitted,

**FILED**

JUN 2 3 2000

*Evelyn M. Word*
CIRCUIT CLERK
CHEROKEE COUNTY, AL

Steven G. Noles
Attorney for Defendant
P.O. Box 680883
Fort Payne, AL 35968
256.845.0716
email: noleslaw@aol.com

### Certificate of Service

I hereby certify that I have served a copy of the foregoing Motion on Hon. Michael O'Dell, District Attorney, by delivering a copy of the same to his box in the Circuit Clerk's Office at the DeKalb County Courthouse in Fort Payne, Alabama, this __23__ day of June 2000.

Steven G. Noles

3

**FILED**

JUN 2 3 2000

*Evelyn M. Word*
CIRCUIT CLERK
CHEROKEE COUNTY AL

IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

STATE OF ALABAMA,            *

                               *

VS.                        *     CASE NO.: CC-98-61

                               *              CC-98-62

KEITH EDMUND GAVIN.    *

## RESPONSE TO ORDER- SUBPOENA DUCES TECUM

      COMES NOW the undersigned in response to the Court's Order of May 26, 2000, and represents to the Court as follows:

      1. All non-work product material contained in the files of the undersigned attorney was provided to the attorney(s) of the appellant on the 25th day of February, 2000.

      2. Work product material was not previously provided because the undersigned was not previously advised of the waiver of attorney-client privilege by the Defendant nor provided with documentation thereof. In accordance with the Court's Order of May 26, 2000, any material not previously provided in response to the Subpoena Duces Tecum will be submitted to Defendant's appellate attorneys on or before the 9th day of June at 4:00 p.m, or in the alternative, a brief in opposition thereto will be filed.

Respectfully Submitted,

H. BAYNE SMITH
105 Seaboard Avenue
Piedmont, AL 36272
(256) 447-0022

FILED

JUN 0 5 2000

CIRCUIT CLERK
CHEROKEE COUNTY, AL

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing has been served upon Mr. Michael E. O'Dell Mr. Robert F. Johnson, Mr. Stephen P. Bussman, Mr. Steven G. Noles, and Mr. John Ufford through the United States mail with prepaid postage on this 2nd day of June, 2000.

# FILED

JUN 0 5 2000

*Carolyn M. David*
CIRCUIT CLERK
CHEROKEE COUNTY, AL

H. BAYNE SMITH

**COURT OF CRIMINAL APPEALS**
STATE OF ALABAMA
JUDICIAL BUILDING, 300 DEXTER AVENUE
P.O. BOX 301555
MONTGOMERY, AL 36130-1555

| | |
|---|---|
| *FRANCIS ALLEN LONG, SR.* | *Lane W. Mann* |
| Presiding Judge | Clerk |
| *H. WARD McMILLAN* | *Wanda K. Ivey* |
| *SUE BELL COBB* | Assistant Clerk |
| *PAMELA W. BASCHAB* | (334) 242-4590 |
| *JAMES H. FRY* | FAX (334) 242-4689 |
| Judges | |

<u>ORDER</u>

CR-99-1127    *(DEATH PENALTY)*

Keith Edmund Gavin v. State of Alabama (Appeal from Cherokee Circuit
Court: CC98-61).

This Court has not yet been advised of the disposition of
the post judgment motion in the above referenced cause.  Neither has
this Court been advised that said motion has been further continued
by agreement to a date certain since being continued by agreement to
May 30th, 2000.

As such, it appears that the motion was denied by operation
of law on May 30th, 2000.  See Rule 24.4 of the Alabama Rules of
Criminal Procedure.  Thus, unless this Court's information is
incomplete or incorrect, it appears that the transcript of the
proceedings on appeal is due to be completed and filed with the
clerk of the trial court on or before July 25th, 2000.

Upon consideration of the above, the Court of Criminal
Appeals hereby ORDERS that the transcript of the proceedings on
appeal in the above referenced cause shall be completed and filed
with the clerk of the trial court by July 25th, 2000, unless the
post-trial motion has been continued in accordance with Rule 24.4.
In the event the post-trial motion has been continued in accordance
with Rule 24.4, the Court hereby ORDERS the clerk of the trial court
to file a copy of the trial court's entry of record reflecting said
continuance.

*6/9/00 Called Dorothy
She was to fax
correct order +
mail one to Ct
of Crim. Appeals
since file stays in
Ft Payne*

Done this the 7th day of June, 2000.

*Francis A. Long Sr.*
_____
FRANCIS A. LONG, SR., PRESIDING JUDGE

cc: Honorable David A. Rains, Circuit Judge
    Honorable Carolyn M. Smith, Circuit Clerk
    Trina Higgins, Court Reporter
    Honorable Stephen P. Bussman, Attorney, Appellant
    Honorable Steven G. Noles, Attorney, Appellant
    Office of Attorney General

**FILED**

JUN 0 9 2000

*Sheila M. Reed*
CIRCUIT CLERK
CHEROKEE COUNTY, AL

STATE OF ALABAMA

IN THE CIRCUIT COURT FOR THE COUNTY OF CHEROKEE

NINTH JUDICIAL CIRCUIT

STATE OF ALABAMA,              )

      PLAINTIFF              )          CASE NO. CC-98-61

VS.                           )          AND CC-98-62

KEITH EDMUND GAVIN,           )

      DEFENDANT              )

## ORDER

Upon request of the defense counsel in this case, the official court reporter for the Ninth Judicial Circuit of Alabama, Lisa D. Hall, is hereby ordered and directed to prepare a transcript of proceedings had before the court on April 13, 1998, and April 23, 1998.

The court having found the defendant indigent, all of the foregoing shall be without expense to him.

This the _25th_ day of _May_, 2000.

                              _____
                                    CIRCUIT JUDGE

Copy to:

District Attorney's Office
Steven G. Noles, Esquire

**FILED**

JUN 0 2 2000

*Carolyn M. ...*
CIRCUIT CLERK
CHEROKEE COUNTY, AL



FILED
MAR 5 2000
JIMMY LINDER
CLERK

| State of Alabama<br>Unified Judicial System<br><br>Form C-62C     Rev. 7/97 | **COURT REPORTER**<br>**FEE DECLARATION** | Case<br>Type<br>CR | County<br>Code<br>2 8 | Case-Number(s) |
|---|---|---|---|---|

Case-Number(s):
C C  98  ____ 61 __
C C  98  ____ 62 __
__  __  _____ __

Jurisdiction  Year  Case  Suffix

APPEAL TO THE: ☒ Court of Criminal Appeals   ☐ Court of Civil Appeals
☐ Supreme Court of Alabama

STYLE OF
CASE(S):   STATE OF ALABAMA

v.   KEITH EDMUND GAVIN

TYPE OF CASE:  ☐ Civil  ☒ Criminal  ☐ Felony  ☐ Capital  ☐ Other _____

NOTE:  If case(s) consolidated for trial, please include all trial court case numbers.

---

### Transcript(s) Fee Claim

| | | Number of Pages | | |
|---|---|---|---|---|
| _1_ | Original Impression | 30 | @ $ 2.25 per page | = $ 67.50 |
| _3_ | Copies of Original Impression (*criminal only*) | | @ $ .50 per page | = $ 45.00 |
| _1_ | Copy of Original Impression (*civil only*) | | @ $ .50 per page | = $ |
| | | | Total | = $ 112.50 |

The undersigned court reporter declares that the above claim is true and correct according to law and rule for submission on appeal.

*Lisa D. Hall*
Court Reporter's Signature
Lisa D. Hall
Name of Court Reporter (*please print*)  ☐ Official  ☐ Special Roving  ☐ Special
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
Social Security Number /or/ Tax ID Number
P. O. Box 681502
Work Address (*including city, state, and zip code*)
Fort Payne, AL   35968
(256) 845-8540
Work Telephone Number

Sworn to and subscribed before me this 25th
day of _Nov_, 19 2000

*Randall Cole*
Notary Public   Judge

---

I, the undersigned judge, hereby certify that the foregoing claim has been presented to me, and I have reviewed the same and believe the same to be true and correct.

Done this 25 day of _May_, 19 2001

FILED
JUN 0 2 2000
CIRCUIT CLERK
CHEROKEE COUNTY, AL

*Carolyn M. Christ*
CIRCUIT CLERK

Judge's Signature

---

**NOTICE TO COURT REPORTER AND JUDGE:**   **Rule 29, ARJA, describes the proper manner in which transcripts should be prepared and establishes the fee for transcripts.**

This form must contain original signatures of the court reporter and the judge.  This form (with attachments) must be submitted by the court reporter to the trial court judge for approval.  After approval by the trial court judge, the court reporter must submit the original Declaration to the State Comptroller.  **Mail to: State Comptroller, Indigent Defense Section, P. O. Box 302602, Montgomery, Alabama  36130-2602**

FILED
JUN 0 2 2000

## IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

| | | |
|---|---|---|
| STATE OF ALABAMA, | * | |
| Plaintiff, | * | |
| Vs. | * | CASE NOS. CC-98-61 |
| | | CC-98-62 |
| KEITH EDMUND GAVIN, | * | |
| Defendant. | * | |

### STATE'S MEMORANDUM SUPPORTING
### STATE'S OBJECTION TO DEFENDANT'S
### MOTION FOR NEW TRIAL

*Filed 6-29-2000 [signature]*

### STATEMENT OF FACTS

William Clinton Clayton, Jr. was a contract courier for Corporate Express Delivery Systems, Incorporated. Although his routine typically involved the use of his private automobile to provide courier services, on March 6, 1998, he drove a Corporate Express van because his personal vehicle was having mechanical problems.

As Mr. Clayton sat in the driver's seat of this marked van at the curb near the entrance to Region's Bank in Centre, Cherokee County, Alabama, the Defendant approached him from the street, opened the driver's door, and shot Mr. Clayton twice. One of the bullets passed through his heart and both lungs. The other through his hip. He died of these multiple gunshot wounds.

The reason for the Defendant's presence at that place and at that time was recounted by the Defendant's companion on this occasion, Mr. Dwayne Meeks. Meeks and the Defendant are cousins and both were residing in the Chicago, Illinois area in early 1998. Meeks worked for the Illinois Department of Corrections, and the Defendant had been recently paroled after serving approximately seventeen years of a thirty-four year sentence imposed by the Circuit Court of Cook County, Illinois, for Murder.

Meeks grew up in Fort Payne, Alabama, and had other relatives and friends residing in this area. Meeks brought the Defendant to Fort Payne in February 1998, for a "change of scenery" and to go "whoring." Following the February visit to Alabama, the Defendant wanted to return in March to find a woman whom he had met the previous month. Meeks agreed to drive the Defendant to Chattanooga, Tennessee, where Meeks charged two motel rooms on his credit card, and from which said location Meeks and the Defendant were to conduct the search for the woman. If she was located, the Defendant

intended to remain in this area, and Meeks planned to return to Chicago after being reimbursed by the woman for the motel and other expenses.

In addition to the Defendant, Meeks was accompanied to Chattanooga by his wife and child, where they remained while the efforts to locate the woman proceeded. Meeks and the Defendant went to Fort Payne, and from there to Centre, Alabama, at the corner where Mr. Clayton sat in his courier van.

There was tension between Meeks and the Defendant because of the expenses which Meeks had incurred for this trip, and because of Meeks' concern that he would not be reimbursed if the woman could not be located. Nevertheless, when the Defendant exited the car at the intersection by Region's Bank, Meeks thought the Defendant was going to ask for directions. Instead, the Defendant shot and killed William Clinton Clayton, Jr.

Meeks fled from the scene in his car. The Defendant pushed the mortally wounded courier aside and followed Meeks in the Corporate Express van. When the Defendant stopped in response to a blue light, he exited the van. When Investigator Danny Smith exited his pursuit vehicle, the Defendant took aim at short range and attempted to kill Smith by firing two shots at him. The Defendant fled into the nearby woods.

Following a four hour manhunt the Defendant was apprehended standing waist deep in a creek where he was detected by search dogs.

ISSUES

I. **WHETHER THE GRAND JURY IN THE NINTH JUDICIAL CIRCUIT RETURNS INDICTMENTS IN AN ARBITRARY AND CAPRICIOUS MANNER?**

II. **WHETHER THE SENTENCE OF DEATH BY ELECTROCUTION VIOLATES THE CONSTITUTIONAL CLAUSE PROHIBITTING CRUEL AND UNUSUAL PUNISHMENT?**

III. **WHETHER THE DEFENDANT'S CONVICTION FOR CAPITAL MURDER MADE POSSIBLE BY 13A-5-40(a)(13) VIOLATED HIS CONSTITUTIONAL RIGHTS TO EQUAL PROTECTION, DUE PROCESS OF LAW, AND FREEDOM FROM CRUEL AND UNUSUAL PUNISHMENT?**

IV. **WHETHER THE COURT ERRED BY REFUSING TO DISMISS APPOINTED COUNSEL AND REQUIRING THE DEFENDANT TO PROCEED *PRO SE*?**

**V. WHETHER THE DEFENDANT'S RIGHTS WERE VIOLATED BY THE METHODS OF CONVENING THE GRAND AND PETIT JURIES?**

**VI. WHETHER THE COURT ERRED IN FINDING THAT THE DEFENDANT DID NOT MAKE A PRIMA FACIE SHOWING FOR A <u>BATSON</u> VIOLATION?**

**VII. WHETHER THE COURT ERRONEOUSLY ADMITTED EVIDENCE OVER TIMELY AND WELL TAKEN OBJECTIONS?**

ARGUMENT

I.   It is the role and function of the grand jury that "[o]nce the grand jury is empanelled and sworn as provided by statute, 'it becomes the supreme inquisitorial body of the county[.]'" *Committee Comments to Rule 12.3, Alabama Rules of Criminal Procedure.* In the case at bar, and in all cases referenced by the Defendant in brief, the grand juries of the Ninth Judicial Circuit have fulfilled their duty to "indict . . . *if, in the opinion of the grand jury, the evidence justifies the indictment.*" *Section 12-15-202, Code of Alabama, (1975)(superceded)(emphasis added).*

    A.   Grand juries are not comprised of automatons which function as robots without common sense or understanding of human behavior. They are charged with the duty to indict *when the evidence justifies the indictment.*

        1.   "It shall likewise be the duty of the judges to charge the grand jury as *to all other matters which may be required by law and to instruct the grand juries that it is their duty to indict for the above named offenses, if, in the opinion of the grand jury, the evidence justifies the indictment.*" *Section 12-15-202(b), Code of Alabama (1975)(superceded)(emphasis added);*

        2.   "It shall be the duty of the grand jury to:
           (1) Inquire into all *indictable offenses* committed or triable within the county.*" Rule 12.3( c ), Alabama Rules of Criminal Procedure (emphasis added)(see Appendix D, D-1);*

        3.   "The rule merely directs the judges of the courts in which grand juries relative to the criminal laws against certain offenses; [*sic*] to charge the grand jury as to all other matters which may be required by law; and to instruct the grand jury that it is their duty to indict of *offenses if, in their opinion, the evidence justifies the indictment.*" *Committee Comments, Rule 12.3(b), Alabama Rules of Criminal Procedure (emphasis added);*

4. It is clear from this case, and in all cases discussed in brief, that the grand juries of the Ninth Judicial Circuit have thoroughly sifted through the facts and have returned capital murder indictments, *if, in their opinion, the evidence justified the indictments.*

B. The grand juries of the Ninth Judicial Circuit have clearly not acted "with discriminatory purpose" in violation of the Equal Protections Clause. *McCleskey v. Kemp,* 481 U.S. 279 (1987).

1. According to the information submitted in brief by the Defendant, the grand juries of the Ninth Circuit have returned true bills of indictment for capital murder against nine Caucasians and six Afro-Americans in recent years;

2. It is interesting to note that five of the six Afro-Americans against whom grand juries have returned indictments involve just two cases of homicide. Timothy Dupree, Reynard Ford, and Jonathan Betton were indicted along with Jonathan Phillips (white male) for murder during a robbery in DeKalb County, Alabama. Dewayne Meeks and the Defendant were each indicted for the car-jacking homicide of William Clinton Clayton, Jr. *(See Defendant's Brief Appendix, Murder Prosecutions Included in Review);*

3. In each of the above cases the grand juries have returned indictments because, *in their opinion, the evidence justified the indictments;*

4. Only two defendants have been sentenced to death in the Ninth Judicial Circuit since the death penalty was reinstituted: Keith Edmund Gavin (Afro-American) and Judith Ann Neeley (Caucasian). They represent the only two defendants brought to trial in this circuit who intentionally murdered victims who were completely unknown to them, directly or indirectly. They killed at random without pity and have committed just the sort of heartless crimes that *justify* the gravest sanction.

C. Counsel for the Defendant is grossly misinformed about the cases he refers to as "capital-eligible." The facts and circumstances surrounding each case reveal that the grand juries failed to return indictments for capital murder in those cases because, *in their opinion, the evidence did not justify an indictment.*

1. *State v. Jason Fleming,* CC-98-96 (DeKalb County). There was insufficient evidence from which the grand jury could have inferred that the murder was committed in the course of a burglary or robbery. *(see Appendix A, A-1);*

2. *State v. Wilson Floyd,* CC-95-388 (DeKalb County). There was insufficient evidence from which the grand jury could have inferred that the murder was committed during the course of a robbery. (*see Appendix A, A-2*);

3. *State v. Charlie Berdell Kerley,* CC-93-560 (DeKalb County). There was insufficient evidence from which the grand jury could have inferred that the murder was committed during the course of a burglary. (*see Appendix A, A-3*);

4. *State v. Nell Rae Long,* CC-95-80 and CC-95-254 (DeKalb County). Although there was some evidence from which the grand jury could have inferred that the murders were committed pursuant to one course of conduct, it is apparent that *the grand jury felt, in their opinion, an indictment for capital murder was not justified by the evidence.* (*The trial court is well aware of the surrounding facts and circumstances from which a grand jury could render an opinion that an indictment for capital murder was not justified.*);

5. *State v. Angela Mendenhall,* CC-96-493 and *State v. David Mendenhall,* CC-96-464 (DeKalb County). There was insufficient evidence from which the grand jury could have inferred that the death of Sarah Mendenhall was intentionally caused. Each Defendant was indicted for causing the infant's death in the course of committing child abuse. (*felony murder*)(*see Appendix A, A-4 and A-5*):

6. *State v. John Allen Stephens,* CC-94-398 (DeKalb County). There was insufficient evidence from which the grand jury could have inferred that the murder was committed while the defendant was in his vehicle. (*see Appendix A, A-6*);

7. *State v. Michelle Teems,* CC-95-69 (Cherokee County). There was no evidence from which the grand jury could have inferred that the death was intentionally caused. The Defendant was not indicted for intentional murder under 13A-6-2(a)(1), but for "reckless murder" under 13A-6-2(a)(2). (*see Appendix A, A-7*);

8. *State v. Michael Wayne Thompson,* CC-94-27 and *State v. Johnny Young,* CC-94-18 (DeKalb County). There was insufficient evidence from which the grand jury could have inferred that the murder was committed during the course of a kidnapping. (*see Appendix A, A-8*).