FILED

2020 Aug-18  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA



**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

KEITH EDMUND GAVIN,      )
         )
     Petitioner,          )
         )
v.          )    Case No.   4:16-cv-00273-KOB
         )
JEFFERSON S. DUNN,      )
Commissioner of the Alabama      )
Department of Corrections,      )
         )
     Respondent.          )

# VOLUME 29

# State Court – Collateral Appeal Transcript

LUTHER STRANGE
ALABAMA ATTORNEY GENERAL

AND

BETH JACKSON HUGHES
ALABAMA ASSISTANT ATTORNEY GENERAL

ADDRESS OF COUNSEL:

Office of the Alabama Attorney General
Capital Litigation Division
501 Washington Avenue
Montgomery, AL  36130
(334) 242-7392

VOL. 11 of 22

**COURT OF CRIMINAL APPEALS NO.** _____  CR-10-1313

# APPEAL TO ALABAMA COURT OF CRIMINAL APPEALS

**FROM**

**CIRCUIT COURT OF** _____ CHEROKEE _____ **COUNTY, ALABAMA**

**CIRCUIT COURT NO** ___ CC-98-61.60 & CC-98-62.60

**CIRCUIT JUDGE** _____ David A. Rains

Type of Conviction/ Order Appealed From: _____ Rule 32

Sentence Imposed: _____

Defendant Indigent: ☑ YES ☐ NO

## KEITH EDMUND GAVIN

**NAME OF APPELLANT**

Stephen C. Jackson      205-254-1037
(Appellant's Attorney)          (Telephone No.)

1901 Sixth Avenue North, Suite 2400
(Address)

Birmingham    Alabama    35203
(City)        (State)        (Zip Code)

**v.**

## STATE OF ALABAMA

**NAME OF APPELLEE**

(State represented by Attorney General)

NOTE: If municipal appeal, indicate above, and enter

name and address of municipal attorney below.

df

_____

_____

(For Court of Criminal Appeals Use Only)

2001

## FREEDOM COURT REPORTING

Page 160

1   regarding the fact that y'all did not arrest

2   him at the end of the interview.

3        A.    That's correct.

4        Q.    Your feelings don't equal probable

5   cause, do they?

6        A.    No, sir, does not.

7        Q.    You can't arrest based on your

8   feelings, can you?

9        A.    No, sir.

10       Q.    You must have probable cause?

11       A.    Absolutely.

12       Q.    And probable cause must be based on

13  evidence?

14       A.    That's correct.

15       Q.    Did you have any evidence that would

16  establish probable cause at the end of the

17  interview sufficient to arrest Meeks?

18       A.    No, sir.

19       Q.    In the course of investigations in

20  your circuit, it is actually the DA who looks

21  at evidence and decides whether or not to

22  charge someone -- who decides whether or not

23  to drop charges against someone; is that

2002

# FREEDOM COURT REPORTING

Page 161

1    correct?

2        A.    That's correct; yes, sir.

3        Q.    You were asked a number of questions

4    regarding why Tom Arambasich -- I just can't

5    say that name.

6        A.    Arambasich.

7        Q.    Arambasich came down here, whether

8    it was in his official capacity or whether it

9    was in his personal capacity or what he was

10   doing.  You don't know what Tom thinks, do

11   you?

12       A.    No, sir.

13       Q.    You don't know why he does anything,

14   do you?

15       A.    No, sir.

16       Q.    You also don't know what DeWayne

17   Meeks thinks in his mind?

18       A.    No, sir.

19       Q.    You don't know why he does anything?

20       A.    No, sir.

21       Q.    You were present when the gun was

22   recovered or not?  I can't remember.

23       A.    When the gun was actually recovered,

**FREEDOM COURT REPORTING**

Page 162

1  after the photographs were made and the gun

2  was picked up from the ground and placed into

3  the evidence bag, I was present when that

4  happened is my recollection.  I was not there

5  when it was discovered and we were notified

6  that they had found the weapon.

7      Q.    Based on the information you have,

8  was there one or multiple law enforcement

9  officers there when the gun was discovered?

10     A.    I don't know.

11     Q.    Now, the van which was part of the

12 crime scene was secured and tested by the

13 Department of Forensic Science?

14     A.    That's correct; yes, sir.

15     Q.    After the van was tested, at some

16 point it was returned to the owners?

17     A.    Yes, sir; yes, sir, it was.

18     Q.    Have you investigated other types of

19 crimes?

20     A.    Yes, sir.

21     Q.    Have you investigated a gas station

22 robbery?

23     A.    Yes, sir.

# FREEDOM COURT REPORTING

Page 163

1    Q.   Do you normally keep the gas station

2  closed off until the trial of the robbery of

3  the gas station?

4    A.   No, sir, once you finish processing

5  the scene collecting whatever evidence is

6  there and documenting the scene as it is, then

7  it's usually surrendered or turned back over

8  to the victim unless it's a firearm or

9  something like that.  Then of course it's

10  retained.  As far as vehicles and structures,

11  once you finish your search and you secure

12  your evidence, then it's -- in a reasonable

13  time it's turned back over to the owner.

14    Q.   You've made a number of arrests over

15  the years, have you not?

16    A.   Thousands.

17    Q.   Thousands of arrests.  In some of

18  those arrests at least, the arrestee has

19  attacked you physically, taken swings at you?

20    A.   Yes, sir.

21    Q.   After that arrestee takes a swing at

22  you, do you continue to investigate the case?

23    A.   Yes, sir.

2005

## FREEDOM COURT REPORTING

Page 164

1    Q.    In law enforcement, have you heard

2   of other officers who have been attacked by

3   arrestees?

4    A.    Yes, sir.

5    Q.    Are you aware of whether or not they

6   continue to -- this is general.

7    A.    As far as an investigator, yes, sir.

8   If it's a uniformed officer, then normally an

9   investigator would come back and do a follow-

10  up investigation but if you've got somebody

11  resisting arrest of the investigator, for the

12  most part I may charge them with resisting

13  arrest.  I've never charged one with assault

14  or nothing.  Again, that's just one of the

15  hazards of doing the job.  I've never been

16  physically injured so.

17    Q.    You didn't know DeWayne Meeks before

18  this crime --

19    A.    No.

20    Q.    -- or before the crime?  .

21    A.    Not to my knowledge, no, sir.

22    Q.    You didn't -- you didn't plant the

23  pistol in the woods?

# FREEDOM COURT REPORTING

Page 165

1        A.   No, sir.

2        Q.   You haven't altered any evidence?

3        A.   No, sir.

4        Q.   You haven't framed Keith Gavin?

5        A.   No, sir.

6        Q.   You testified truthfully at trial?

7        A.   Yes, sir.

8        Q.   You didn't review your file in this

9   case before testifying here today?

10       A.   No, sir, I don't -- our files are in

11  y'all's office in Montgomery.  We don't have

12  any files there at our office.

13       Q.   So if this was to be tried again,

14  you would review your file -- we would return

15  them and you would review your file?

16       A.   Yes, sir.

17       Q.   And you would testify at a new trial

18  as you did in the first one?

19       A.   Yes, sir.

20            MR. ROBERTS:  No further questions.

21

22  EXAMINATION BY MR. LYON:

23       Q.   I just have a couple of questions --

2007

# FREEDOM COURT REPORTING

Page 166

1  follow-up on his -- Mr. Roberts' questions.

2  You testified that you are -- investigate a

3  lot of cases; right?

4       A.   Yes, sir.

5       Q.   And you're a witness in a lot of

6  cases?

7       A.   Yes, sir.

8       Q.   As a percentage of -- well, I'm not

9  going to ask that.  Although you are a witness

10  in a lot of cases, are you an eyewitness to a

11  lot of those cases?

12       A.   I have been, yes, especially doing

13  narcotics investigations on hand-to-hand buys

14  and stuff that I obviously would be the one

15  that was there doing the buy, so yes, I would

16  be an eyewitness.  Not as much on violent

17  crimes, that's something that probably won't

18  happen many times in anybody's career that

19  you'll be at that place at the right time.

20       Q.   It's uncommon you would say?

21       A.   It's uncommon, yeah, I would say it

22  was uncommon.

23       Q.   If someone were to take a swing at

## 367 VALLEY AVENUE

2008

## FREEDOM COURT REPORTING

Page 167

1    you, you said -- while you were arresting

2    them, you said you might charge them with

3    resisting arrest?

4         A.   I can't -- in my career, I can only

5    recall maybe one occasion of ever charging

6    anybody with resisting arrest.  I've had

7    numerous people to resist arrest over the

8    years but usually I've got a felony charge and

9    resisting is a misdemeanor and I just -- you

10   just go on.  I mean, it's not personal, so

11   yeah, I've had several over the years to

12   resist.

13        Q.   At any time in your career do you

14   recall an individual being charged with

15   attempted murder where you were the victim?

16        A.   No, sir.

17        Q.   Other than Mr. Gavin?

18        A.   No, sir.

19        Q.   After you interviewed Mr. Meeks in

20   Chicago, did you and Mr. Wilson have a

21   discussion in which you discussed whether you

22   thought that you had collected evidence

23   sufficient to establish probable cause against

2009

## FREEDOM COURT REPORTING

                                                    Page 168

1    Mr. Meeks?

2        A.   Against Mr. Meeks, we never had any

3    reason to believe that there was any physical

4    evidence in the vehicle so there was no other

5    evidence associated with Mr. Meeks other than

6    the firearm that was recovered at the

7    secondary crime scene.

8        Q.   I'm asking -- I'm sorry, I must not

9    have made clear my question.  What I'm asking

10   is: You discussed with Mr. Roberts the

11   probable cause required to arrest a suspect?

12       A.   Right.

13       Q.   Did you and Mr. Wilson discuss -- we

14   determined before that Mr. Meeks was not

15   arrested?

16       A.   Right, he was not.

17       Q.   Did you discuss whether you had

18   evidence sufficient to establish probable

19   cause to arrest him?

20       A.   No, sir.

21       Q.   Mr. Roberts asked you about the

22   eyewitness testimony establishing that someone

23   got out of the -- Mr. Meeks' vehicle and shot

## FREEDOM COURT REPORTING

Page 169

1  the individual in the van -- the Corporate

2  Express van and got into it and drove off, the

3  eyewitness testimony stating that; is that

4  correct?

5  A.  Yes, sir, that's my understanding,

6  yes, sir.

7  Q.  Do you know for certain that --

8  well, let me ask you this: Do you recall where

9  you encountered the van that evening, the

10 location where you encountered it?  I believe

11 it was going the other direction and you

12 passed it.

13 A.  Yeah, I was coming off -- I was

14 close to what's called Bristow Gap on Alabama

15 Highway 68 about two and a half miles west of

16 Leesburg.  I was coming off the mountain and

17 the van was going up the mountain.

18 Q.  How far is that from where the

19 shooting occurred in Centre?

20 A.  Six miles.

21 Q.  Do you know whether the van stopped

22 at any time between the shooting in Centre and

23 the time that you encountered it?

# FREEDOM COURT REPORTING

Page 170

1    A.    We had -- do I know that, no.    The

2    information that I did have was that people

3    were calling in and had spotted the van and

4    was telling us where it was at, which

5    direction it turned, and based on the time

6    that the shooting was given out and the time

7    that I met the van would have been consistent

8    with the driving time to have traveled the

9    distance that he traveled.    But no, I

10   personally do not know whether the van stopped

11   or not but I don't have any information to

12   suggest that it did.

13   Q.    Do you know for certain that the

14   person who got into the van -- who the

15   eyewitnesses saw get into the van in Centre

16   after the shooting is the same person that you

17   saw get out of the van at -- when the van

18   stopped on I believe it was route 48?

19   A.    Do I know, no, sir, but I don't have

20   any reason to believe that it was anyone else.

21   The guy that got in the van had a gun and was

22   shooting and the guy that got out had a gun

23   and was shooting.    My experience and training

# FREEDOM COURT REPORTING

1 would suggest to me that it was one and the

2 same.

3     Q.   But you don't know for certain?

4     A.   No, sir, I wasn't in the van.  I

5 didn't know.

6     Q.   Did you know at the time -- did you

7 know for certain at the time that the

8 investigation was taking place that it was the

9 same person who had gotten into the van?

10     A.   I had no reason to believe that it

11 was not the same person.

12     Q.   But did you know for certain?

13     A.   No.

14     Q.   About the van and the testing of the

15 van, if anything -- did you inventory the

16 items that were in the van, not connected to

17 the van but any items that were within the

18 van, any loose items in the van?

19     A.   I did not, no.

20     Q.   Did someone on your investigatory

21 team do that?

22     A.   The van would have been locked and

23 secured.  Forensic Sciences would have been

# FREEDOM COURT REPORTING

Page 172

1    the one -- they and Investigator Buttram would

2    have been the ones that dealt with the van.  I

3    never had any other contact with it after it

4    left the scene.

5        Q.    But to your understanding, did

6    someone either in the DA's office or with the

7    Cherokee County Sheriff's Department do an

8    inventory of the items that were in that

9    van -- the loose items in the van?

10       A.    Yes; yes, sir.

11       Q.    If there was anything missing out of

12   that van that hadn't -- if there was anything

13   in the van -- let me put it this way: If there

14   were anything that was not in the van that

15   Corporate Express company -- when you returned

16   the van to the Corporate Express company, did

17   you return the items that were also loose in

18   the van -- that had been loose in the van?

19       A.    The property receipt you showed me

20   indicates that the keys and the vehicles were

21   returned on that particular date.  No mention

22   on that receipt about any other items so I

23   can't answer that question, not based on what

**FREEDOM COURT REPORTING**

Page 173

1   you're -- what you've --

2        Q.   Does that receipt, which is

3   exhibit --

4        A.   If the other items were returned,

5   there would have been a separate receipt for

6   those.

7        Q.   Right.

8        A.   So I can't tell you I didn't do it,

9   I don't know.

10       Q.   So Exhibit 3 indicates to you that

11   the other items, if there were such items,

12   were not returned on that date, March 10?

13       A.   They were not returned under that

14   property receipt, that's right.

15            MR. LYON:   That's all.

16

17   EXAMINATION BY MR. ROBERTS:

18       Q.   You're familiar with -- you've lived

19   in Cherokee County your whole life?

20       A.   Yes, sir.

21       Q.   You're familiar with where the

22   shooting took place?

23       A.   Yes, sir.

# FREEDOM COURT REPORTING

Page 174

1    Q.   And you're familiar with --

2    obviously familiar with where you apprehended

3    Gavin?

4         A.   Yes, sir.

5         Q.   You're familiar with the drive time

6    it takes to get from the place of the shooting

7    to where Gavin was apprehended; is that

8    correct?

9         A.   Yes, sir.

10        Q.   What time did -- according to

11   Exhibit 1, what time did the dispatch call in

12   that a shooting had just occurred, what time

13   was that?

14        A.   18:45 which would be 6:45 p.m.

15        Q.   And how many seconds?

16        A.   22.

17        Q.   Okay.   What time does it have you

18   calling in that you're behind him or that you

19   see him?

20        A.   18:50 and nine seconds.   .

21        Q.   All right.   Now, that gives how many

22   minutes?

23        A.   Less than five.

## FREEDOM COURT REPORTING

Page 175

1    Q.   Less than five minutes.  In your
2  opinion, would a person have time to leave the
3  bank, stop, swap vehicles, and swap possession
4  of a gun and then drive off and you meet the
5  person within that five minutes at the point
6  where you found them?
7         MR. LYON:  Objection as to form.
8    A.   The time -- from the time the
9  original radio transmission was given out
10 until the time I met the van going up the
11 mountain on Alabama 68, the travel time is
12 consistent with the time it would take to
13 drive that distance the way he was operating
14 the vehicle on that occasion.
15   Q.   So it would be your opinion that he
16 would not have time stop the van?
17   A.   That's correct.
18   Q.   And change drivers?
19   A.   That's correct.
20   Q.   Okay.  You were asked about law
21 enforcements are witnesses but not always
22 eyewitnesses; isn't that correct?
23   A.   That's correct.

**FREEDOM COURT REPORTING**

Page 176

1    Q.   That's not always true though.

2   State troopers are often eyewitnesses to what

3   they see; is that not correct?

4    A.   That's correct.  My understanding

5   was he was asking about me particularly.

6    Q.   But within the --

7    A.   Generally any -- any officer that's

8   doing traffic or whatever, yeah, they're an

9   eyewitness to whatever offense they've stopped

10   that person for.

11    Q.   Patrolmen are also eyewitnesses?

12    A.   Patrolmen absolutely.

13    Q.   You've also been asked a number of

14   questions about the return of this van and you

15   referenced the return receipt?

16    A.   Property receipt, yes, sir.

17    Q.   You don't work with the -- you are

18   not a member of the sheriff's department, are

19   you?

20    A.   No, sir, I am not.

21    Q.   And you didn't return this van, did

22   you?

23    A.   No, sir.

## FREEDOM COURT REPORTING

Page 177

1    Q.   Other than what's on this receipt,

2   you don't know anything about the returning of

3   this van, do you?

4    A.   No, sir.

5    Q.   It is your testimony that after the

6   van was processed, you don't know anything

7   about the van; is that correct?

8    A.   That's correct.

9    Q.   So you can't tell for certain

10  whether or not there were items in the van

11  that were returned separately or with the

12  van --

13   A.   This property receipt.

14   Q.   -- to your recollection?

15   A.   Right; no, my recollection, no.

16  This receipt does not indicate anything was

17  returned as far as contents other than the

18  keys and the vehicle.

19   Q.   I have -- I should have covered this

20  a second ago.  Does -- do the times on Exhibit

21  1, the time of the initial call-out and the

22  time indicated on here that you first saw the

23  van or met the van, does that accurately

# FREEDOM COURT REPORTING

Page 178

1  reflect what you remember those times being?

2      A.    It was, yeah, approximately five

3  minutes from the time the call was given out

4  until I met the van and that log also

5  indicates if you will notice the van passed

6  Fairview on 411, you've got another one saying

7  that -- well, I thought that was 272 -- County

8  Road 272 but it's not.  But anyway, this is --

9  Fairview Church is approximately three and a

10 half, four miles from the courthouse, so about

11 three miles I guess.  You've got a minute and

12 19 seconds after it left -- after dispatch was

13 give out, a minute and 19 seconds later the

14 van was passing Fairview Church which is about

15 three miles from the courthouse.

16     Q.    So he made it three miles in a

17 minute and 19 seconds?

18     A.    Yeah, if the times are accurate.

19     Q.    One more thing, they pointed --

20 opposing counsel pointed out that your log

21 says that you switched stations and contacted

22 Collinsville and the log here says, will

23 contact Collinsville -- the 911 dispatch log.

Page 179

1    Wouldn't the 911 dispatcher know that to

2    contact Collinsville you would have to change

3    stations -- you have to change channels on

4    your radio?

5         A.    Uh-huh, he would.

6         Q.    So he probably wouldn't write that

7    down?

8         A.    Right.

9         Q.    Most law enforcement officers around

10   that area would know what station they're on;

11   is that correct?

12        A.    Right, yes, sir, and they're --

13   Collinsville is in a different county so

14   they're not on our frequency but their patrol

15   cars have the capability to switch over.

16             MR. ROBERTS:   I have no further

17   questions.

18

19   EXAMINATION BY MR. LYON:

20        Q.    Just a couple of more things to

21   clarify, I'm sorry.  The dispatch time on

22   Exhibit 1 on the log -- well, first of all,

23   you've already testified that you're not

# FREEDOM COURT REPORTING

Page 180

1  certain that this is a complete and accurate

2  log?

3      A.   Well, it's not complete.

4      Q.   You believe that it's not complete?

5      A.   I believe that it's not complete,

6  yes, sir.

7      Q.   The dispatch time of 18:45:22, the

8  BOLO that went out, when did that happen?  Do

9  you know when that happened relative to when

10  the shooting occurred?

11      A.   No, sir.

12      Q.   You have no idea when the shooting

13  actually took place?

14      A.   Not exactly, no, sir.

15      Q.   So to state that the van made it to

16  route 84 past Fairview on Highway 411 -- first

17  I'll ask is it safe to say the shooting did

18  not take place at the exact minute and second

19  that the BOLO went out?

20      A.   Prior to that, immediately prior to

21  it.

22      Q.   So to state that the van made it to

23  Highway 84 past Fairview on Highway 411 in a

## FREEDOM COURT REPORTING

Page 181

1   minute and 19 seconds is not accurate?

2       A.   What I said was based on the times

3   listed here, he traveled that distance in less

4   than -- say less than a minute and a half.

5       Q.   The time that's a minute and 19

6   seconds is the time between the BOLO, the

7   B-O-L-O going out --

8       A.   Right.

9       Q.   -- and the dispatch stating that

10  someone had reported that the van passed 84,

11  passed Fairview at Highway 411?

12      A.   Right; right.

13      Q.   Both of those events preceded the

14  dispatch message going out?

15      A.   Right.

16      Q.   The shooting occurred prior to the

17  dispatch?

18      A.   Correct.

19      Q.   And somebody reporting the van

20  passing --

21           MR. ROBERTS:  Object to form.

22      Q.   -- 84 past Fairview on Highway

23  411 --

## FREEDOM COURT REPORTING

Page 182

1    A.    Right.

2          MR. ROBERTS:  Objection to form.

3    Object to form.

4    Q.    -- occurred prior to the

5    announcement going out?

6          MR. ROBERTS:  Object to form.

7    Q.    But you don't know what the time

8    delay was for either of those events?

9          MR. ROBERTS:  Object to form.

10   A.    No.

11   Q.    Mr. Roberts asked you if a patrolman

12   is often eyewitness to a violent crime and you

13   said, yes, that happens all the time; correct?

14   A.    He didn't say a violent crime.  He

15   said if they're witness to a crime I believe

16   was -- that's the way I understood.

17   Q.    He said patrolmen are often

18   eyewitnesses to crimes?

19   A.    Right, and I responded yes to that,

20   not to violent crimes but to crimes in

21   general.

22   Q.    Are there patrolmen that are part of

23   the Cherokee County Sheriff's Department?

# FREEDOM COURT REPORTING

Page 183

1      A.    They have deputies that do patrol,

2  yes.

3      Q.    Have you ever known a patrolman in

4  the Cherokee County Sheriff's Department to

5  lead a homicide investigation?

6      A.    No.

7           MR. LYON:  Okay.  That's all I have.

8           MR. ROBERTS:  I have nothing

9  further.

10

11      (Whereupon, the deposition was

12      concluded at 12:28 p.m.)

13

14      FURTHER DEPONENT SAITH NOT

15

16

17

18

19

20

21

22

23

# FREEDOM COURT REPORTING

## A

abbreviated 56:11

ABI 37:3,5

ability 106:7

able 27:3 88:9 124:5

absolutely 8:12 29:7 97:22 99:4 145:7 154:6 160:11 176:12

abuse 15:13

academies 19:3

Academy 12:17 20:7

accessory 97:10

accident 43:9

accompanied 82:22 115:4 132:12

accompaniment 134:8

accumulated 19:16

accurate 178:18 180:1 181:1

accurately 177:23

acknowledged 53:11

acquaintances 106:19

acting 5:2

ACTION 1:4

actions 27:5

activity 3:13 51:19 54:9 144:12,14,21 144:23

actual 25:10 31:6 56:19 88:20 110:9

add 9:9

addition 14:10 14:18 16:6

additional 11:18

address 23:17 86:21

adjacent 77:2

administrative 76:19,20

advised 55:19

advising 56:7

agencies 14:2 16:3 27:21 30:23 31:5 37:20 62:15 90:10,12 102:7

agency 13:22 15:11 36:10,11 36:14 38:4,16 44:19 60:3,4,6 69:9 72:7 94:9 98:9 100:15

agent 52:10,15

ago 115:13 149:20 177:20

agreed 1:17 2:2 2:9,18 96:8,10 96:14

ahead 11:6 39:17 41:1 63:19 98:2 99:10 147:9

Alabama 1:2,8 1:23 4:16,18 5:2,4,9 6:1,2 6:17 12:7 23:8 23:11 30:21 37:5 59:2 87:12 93:8 111:22 115:4 115:11 124:18 126:10 127:10 132:3,4,7,11 132:18 143:19 169:14 175:11

allow 24:19 77:12,17 79:16 80:2,10 106:1 107:9,14,19 154:7 156:20

allowed 80:14 95:10 106:6 120:3

altered 165:2

amended 10:4

amendments 10:1

AmSouth/Har... 1:22 5:8

annex 76:21

announcement 182:5

answer 9:11 10:21 11:6,11 11:14,19 12:1 29:21 34:17 43:22 44:22 51:5 54:3 61:23 79:21 87:5 120:23 172:23

answering 131:1

answers 10:10 10:16 149:14

anybody 34:5 36:7 49:6,6,10 59:21 74:13 167:6

anybody's 166:18

anyway 71:3 178:8

appeal 8:16

appeals 7:4

APPEARAN... 4:1

appearing 8:10

appears 48:7 50:19 54:5

56:17 57:3 114:6 119:23

apply 23:23

appoint 32:2,6

appointed 31:21

appreciate 139:5

apprehend 68:2 110:14,23 112:13,14

apprehended 46:10,18 58:14 61:15 62:4,7 62:13 63:10,18 64:5,18 67:15 67:23 69:23 72:4 74:3 75:3 75:5,14 81:21 82:7 151:13,17 159:7 174:2,7

apprehending 68:2

apprehension 40:18

approach 25:12

appropriate 90:12

approximately 61:16 178:2,9

April 113:23 114:7 118:16 120:2,11 121:12

Arambasich 92:13 93:10,17 95:12 101:21 102:14 104:11 107:10 108:2 121:3 131:10 147:17 161:4,6 161:7

area 14:6 15:23 27:14,15,22 28:4 31:13

40:17 41:5 49:8 58:11,17 59:7,8,9,10 60:11,19,22 61:20 62:10,20 63:14,17 65:1 69:21 71:2 74:15 76:5 94:23 100:14 146:15 179:10

armed 67:11

arrangements 136:11

arrest 97:17,19 97:20 110:4 112:12,13,14 127:9 128:13 128:22 129:4 160:1,7,17 164:11,13 167:3,6,7 168:11,19

arrested 81:2 127:6 128:18 168:15

arrestee 163:18 163:21

arrestees 164:3

arresting 167:1

arrests 163:14 163:17,18

arrive 64:4

arrived 42:1 60:17 63:22 64:3 67:5 94:8

arson 19:9

asked 9:4,23 32:18 35:17 53:6 77:4 108:15 120:5 135:12 137:15 139:7 154:1 159:18,23 161:3 168:21

FREEDOM COURT REPORTING

175:20 176:13 182:11
**asking** 32:11 58:9 79:6 80:15 99:6 100:3 115:16 168:8,9 176:5
**aspects** 127:15
**assault** 15:14 164:13
**assaults** 45:20
**assign** 2:14 34:5 38:23
**assigned** 13:19 17:3 35:15 36:5 42:10,22 43:1,15 44:2 133:7
**assigning** 36:7
**assigns** 41:7
**assist** 15:11 28:17 32:18,19 36:14,20 38:9 38:10 55:21 64:23 65:3 68:2 74:20 144:1
**assistance** 15:12 38:1,13 40:16
**assistant** 4:14 136:16,21
**assistants** 39:5
**assisted** 21:3 52:23 66:10 83:12,14
**assisting** 65:8 66:7 136:17
**associated** 168:5
**assume** 121:19
**assumed** 34:13 37:9,13 41:4 45:13,14 46:4
**assumption** 121:23 149:3

**assured** 95:21
**Atlanta** 20:7
**attached** 47:13 85:17 103:12 113:11 139:15
**attacked** 163:19 164:2
**attempt** 62:10
**attempted** 7:3 25:22 26:2 77:20 78:2 167:15
**attempts** 62:17
**attend** 19:20
**attendance** 136:7
**attended** 12:17 12:19 19:2,18
**attending** 20:6
**attorney** 4:14,15 6:6,10,13 8:15 31:20 33:3 34:9 45:15 46:6,20 47:1 111:4,4 112:20 129:22 130:3,6 130:8,11,12 135:2 136:21
**attorney's** 6:15 13:1,2,21 14:12 16:8 17:6 25:4 36:13 42:18 114:1
**August** 1:13 2:1
**Austin** 4:5 6:7
**automotive** 18:19
**available** 9:10 94:6 95:22
**Avenue** 1:23 5:8
**average** 19:13
**avoid** 24:15 153:2

**aware** 33:18 34:19,22 35:1 45:5 46:23 164:5
**a.m** 1:14 5:10 73:16,16 86:18 139:2,2

**B**

**B** 4:12
**back** 30:16 35:2 40:15 43:10 49:21 62:15,19 63:11,13,15,17 64:1,6,11,12 64:13,20 65:16 66:4,17 70:1 70:16 71:6,17 73:18 75:2,6 75:19 76:3,4,8 82:19 89:12 110:14 118:2 126:9 131:17 131:17 141:1,2 147:3 149:1 151:21 163:7 163:13 164:9
**background** 12:5,15
**backup** 57:3
**bad** 16:21 69:7
**bag** 162:3
**bagged** 138:15
**bagging** 68:13
**bailed** 40:12
**bank** 28:5 40:1 175:3
**based** 25:9 61:3 110:23 122:13 124:11,15 141:11 142:14 151:20 152:5 153:13,16 157:4 158:14

160:7,12 162:7 170:5 172:23 181:2
**basic** 116:22 155:2
**basically** 9:4 15:4 27:4 40:23 41:2 94:1 102:9 158:4
**began** 53:12 60:22
**beginning** 5:9 39:13
**behalf** 37:17
**belief** 73:1 115:9 132:19 133:2 134:5 152:6
**believe** 26:17 54:6 56:5 67:4 85:8 91:11 92:23 103:22 106:17,21 118:12 123:18 131:21 138:4 138:13 147:15 153:6 168:3 169:10 170:18 170:20 171:10 180:4,5 182:15
**believed** 73:22 96:21
**belonged** 116:20
**best** 39:23 50:12 54:19 62:11,16 80:22 117:14 149:15
**better** 47:2 76:21 149:20
**beyond** 13:16 59:3 101:19
**be-on-the** 49:1
**be-on-the-loo...** 39:11

**Birch** 91:10 94:12 95:3,9 103:7 104:11 106:1,6,10,17 121:6
**Birmingham** 1:23 5:2,9 13:20 22:15 31:12 99:9,15
**bit** 25:17 26:10
**black** 132:15
**Blazer** 150:4 151:22,22 152:2,7 153:9
**Blazer's** 152:10
**BOLO** 48:19 53:6 180:8,19 181:6
**bond** 128:23 129:6
**bottom** 53:2
**box** 52:12 146:9
**break** 11:8,9,12 73:13 138:22
**breaks** 11:9
**brief** 73:15 139:1
**briefly** 6:20 122:22
**bring** 81:22 110:14
**bringing** 80:19 82:2 108:19
**Bristow** 169:14
**brought** 47:17 59:12 80:3,11 86:15 100:16
**building** 76:13 76:20 157:2
**Bureau** 37:5
**business** 18:18 131:4
**Buttram** 87:17 87:18,23 88:18

367 VALLEY AVENUE

# FREEDOM COURT REPORTING

88:19 172:1
**buy** 166:15
**buys** 166:13
**B-O-L-O** 48:20
181:7

---

## C

**call** 28:21 33:23
36:17,17,18,19
37:22,23 39:11
63:13 67:7
75:11 92:17,20
92:20,23 133:5
147:13 174:11
178:3
**called** 31:6,8
37:4 40:15,19
93:3 102:6
149:1 169:14
**calling** 131:17
170:3 174:18
**calls** 38:20 154:5
**call-out** 177:21
**capability**
179:15
**capacity** 107:4
132:20 133:16
161:8,9
**capital** 7:2 15:14
22:2,5,14,16
128:22 129:3
136:3
**caption** 86:19
**car** 66:20 123:1
123:5,17
150:14,22
**career** 7:21 19:3
166:18 167:4
167:13
**careful** 41:2
**carjacking** 34:2
40:22
**carried** 140:20
**carrying** 76:10

**cars** 179:15
**car-jacking** 53:8
53:19
**case** 8:17 9:6,8
22:2,14,16
23:7 24:10,12
25:10,15,18
27:3 28:11
30:2 32:7
33:15 34:4,7
34:11,15,21
35:22 39:7,14
40:3,5,14 41:9
46:5,21 52:10
52:15,17,21
54:16,20 55:8
56:6 80:22
85:4 86:13
108:4 111:20
123:10 124:14
129:3 130:7,10
132:5 133:7
134:4,12 135:5
136:2,17
142:20 144:1,3
144:5,10,14
145:5,17 153:4
154:12,13,15
154:16,18
155:22 156:1,5
156:7,10 157:2
157:17,18,19
158:4,9 163:22
165:9
**cases** 7:20 15:14
15:14 20:16
22:5 28:11
37:2 41:6 43:8
43:21 55:11
112:17 130:23
131:2 136:3
155:12,15,18
155:20 166:3,6
166:10,11

**casual** 134:10
**caught** 55:18
**cause** 5:11 160:5
160:10,12,16
167:23 168:11
168:19
**CC** 1:4,4
**cell** 63:15
**central** 50:22
**Centre** 12:7
27:10,13,23
28:13,14,21
50:6 63:12,23
64:8,12 66:18
70:2 76:1,9,12
76:23 78:4
84:18 96:18
110:15 124:4
125:11 169:19
169:22 170:15
**certain** 29:5,6
45:2,12 60:3,4
69:3 74:4
80:13 169:7
170:13 171:3,7
171:12 177:9
180:1
**certainly** 9:10
81:2 156:19
157:10
**certainty** 103:1
124:20
**certificates**
19:15
**certify** 5:3
**CE-10** 51:9
**chain** 3:17,19
26:23 139:23
140:3 141:23
142:7,23
145:23 146:4,5
152:5 155:4
**chance** 113:14
**change** 175:18

179:2,3
**changed** 14:23
**channels** 179:3
**characterizati...**
126:14
**characterize**
143:21
**charge** 66:22
67:19,22 68:6
68:6 71:6
160:22 164:12
167:2,8
**charged** 25:21
127:2 164:13
167:14
**charges** 129:12
129:18,20
160:23
**charging** 167:5
**Chattanooga**
115:15
**check** 16:21,21
16:23 49:22
**checks** 16:13
88:7
**CHEROKE** 1:2
**Cherokee** 7:3,7
8:1 9:17 13:4
15:5 16:16,17
16:22 17:12,19
18:20 19:21
21:1 26:16
27:8,18 28:23
30:18 31:2,17
32:12,16 33:4
33:6 35:9 36:4
36:5,10,23
41:11 42:14
43:8 44:12,15
44:16 45:8
48:10 49:4
60:5 66:17,18
90:8 93:1,8
94:4 114:2

128:15 129:7
130:15 172:7
173:19 182:23
183:4
**Cherokee/Dek...**
47:23
**Chicago** 4:7
91:3,6,8 92:2
92:10,15 94:5
94:8,16 96:7
96:11 97:12
100:21 101:7
101:11,23
102:15 103:23
106:2 108:20
113:2 114:5
115:19 116:14
118:4,19 122:1
124:16 126:9
131:9,20
132:14 139:9
144:18 148:19
148:23 167:20
**chief** 18:11 26:6
26:13 31:22,23
46:21 52:19
112:16 130:13
**child** 16:19
115:14
**children** 12:10
**choice** 32:17,21
**choose** 128:3
**Church** 178:9
178:14
**circuit** 1:1 6:16
7:7 13:3,17
14:13 21:15
22:20 30:18
33:5 35:18,20
41:12 47:22
160:20
**circumstance**
159:2
**circumstances**

# FREEDOM COURT REPORTING

25:11 55:10
80:13,17 92:19
113:1 129:8
132:16 133:15
154:10,23
city 14:2 27:12
27:13,23 28:13
28:13,20 36:9
Civil 1:4 5:4 6:3
civilian 81:14,16
clarify 11:21
120:18 139:6
179:21
classes 19:18
Clayton 82:17
153:8
clear 29:2 168:9
cleared 62:9
clearly 10:17
client 7:2
close 53:13
55:18 59:19
60:20,22
169:14
closed 163:2
closer 145:21
clothes 124:17
152:10
clothing 125:23
137:17
clue 21:7 61:18
63:1 106:23
143:7
Coker 4:13 6:12
6:12 11:3
collaboration
112:19
collected 24:1
26:23 167:22
collecting 68:13
156:23 163:5
college 12:16
Collins 42:7
47:3,6

Collinsville
27:18 55:21
56:2,9 57:19
178:22,23
179:2,13
color 49:19
column 53:1
columns 47:19
come 14:21
29:18 30:11
40:3 43:21
44:5 64:12
69:13 84:9
99:10,20
116:20 133:10
141:17 143:18
164:9
comes 157:9
comfortable
95:5 106:9,15
159:14
coming 8:23 9:3
68:16 76:3
96:11 107:16
169:13,16
Commissioner
1:21 2:20 5:3
committed
23:19 158:19
committing 97:9
common 7:21
9:5 77:12,17
79:15 80:9
97:23 98:10
105:6 107:13
107:18 148:20
communicated
93:5 131:19,22
communication
69:3
communicatio...
89:19 111:2
company 88:18
89:13 172:15

172:16
complete 11:19
54:6 56:14
58:2 89:23
143:12 145:23
146:4,5 180:1
180:3,4,5
completed 30:1
89:14,20
141:20 143:8
143:10,11
completely
11:15
compliance 2:6
complicit 126:12
complicity
110:10 159:21
computer 140:2
141:18
computerized
57:10
concern 88:8
concluded
183:12
conclusion
112:8
conduct 25:1,5
41:8 98:19
153:12 154:5
conducted 23:5
97:18 108:13
118:18 127:8
154:22 156:22
conducting
23:14 90:10
confused 77:23
142:9
conjunction
37:3,20
connect 142:23
connected 142:7
171:16
connection
44:12

CONNELLY
1:20 5:1
consensus 29:19
consider 77:19
78:6,17 96:17
97:1,3 110:8
consideration
127:17
considered
126:11
consisted 62:19
consistent 155:5
170:7 175:12
consists 13:3
constantly 73:7
consult 29:15
130:13
consulting
130:20
contact 56:2
57:18 90:12
100:8,15 172:3
178:23 179:2
contacted 93:13
93:15,21,22
94:20 99:23
147:16,21,23
148:2 178:21
contacting 94:1
100:6
contained 59:10
59:14,15
120:12 123:20
153:9
contains 144:17
144:20
contents 177:17
continue 15:15
16:5 156:4
163:22 164:6
continued 55:16
continuing
19:19
contract 16:14

control 67:6
68:16
controls 156:18
convenience
84:10
conversation
54:11 88:2
91:1 92:9,12
96:2,6 98:4
101:21 108:7
121:3,6 134:11
conversations
54:12 130:18
133:19 134:6
convicted 7:2
25:22
conviction 23:20
26:20
Cooper 1:22 5:7
cooperate 45:6
45:14,16,19
cooperating
110:16
cooperative
30:16
coordinate
136:7,12
coordinated
27:4 88:21
94:5 95:13,13
98:7,16
coordinating
70:20
coordination
15:11,18 27:8
130:22
copies 9:7
copy 47:13,17
85:17 103:12
113:11 139:15
140:11 146:21
corner 52:12
corners 120:13
corporate 86:21

87:13 88:6
89:1,13 150:5
169:1 172:15
172:16
correct 25:19,23
26:2,4 42:16
44:13 51:6
53:7,11,18
55:22 61:21
64:7 70:5
77:15 101:11
101:15 102:19
105:7 120:4
126:20 134:22
149:17,22
150:6,16
151:19 152:4,7
152:8,12,13,20
153:17,20,23
155:10,11
159:1 160:3,14
161:1,2 162:14
169:4 174:8
175:17,19,22
175:23 176:3,4
177:7,8 179:11
181:18 182:13
correctly 146:10
counsel 1:19
2:11,13 5:6
8:13,18 178:20
counties 13:4
14:4 16:20
17:18 18:1
38:16 43:20
47:23 148:10
county 1:2 7:3,7
8:1 9:17 13:4
14:2 15:5,7
16:16,17,22,23
17:10,12,17,19
17:21 18:20
19:21 21:1
26:16 27:9

29:1 30:18
31:2,17 32:13
32:16 33:6,7
34:16 35:9,9
36:4,6,9,10,23
37:9,11 38:5,6
38:17 41:11
42:14 43:9
44:12,16,16
45:8 48:10
49:4,9 59:2,4
60:5 66:18,18
90:8 92:13
93:2,8,11 94:4
102:17 104:1
113:22 114:2
128:15 129:7
130:16 172:7
173:19 178:7
179:13 182:23
183:4
couple 55:5
81:22 139:4,18
165:23 179:20
courier 125:18
125:21
course 7:19 9:15
19:3 21:13
29:14 72:2,14
86:9 131:3
160:19 163:9
courses 12:17
19:2,12
court 1:1 2:7 5:1
5:18 7:7 8:8
9:16 10:10,17
12:7 15:21
22:15 30:3
78:14 116:10
130:23 136:15
141:23 142:6
146:6 157:2
courtesy 95:8
98:11,21 99:1

99:19 100:11
100:15,20
107:15
courthouse
27:13 48:19
63:12 70:15
71:7 76:18
77:2 178:10,15
courtroom 8:11
23:21 143:3
covered 177:19
covers 31:13
create 121:10
154:17
created 140:2
creek 74:13,17
crime 14:17 19:8
23:15,18,20,23
24:4,5 27:15
28:12 32:3,11
36:22 38:10
43:7,15 44:15
44:17,20 45:7
58:10,10 60:7
60:8,12 66:23
68:4,4,9,17,21
73:4 77:14,18
79:9,12,17
81:1 93:12
97:9,9 99:7,7,8
101:6 123:21
126:13,17
127:1 129:17
130:15 147:19
152:16 155:2
157:20 158:19
159:21 162:12
164:18,20
168:7 182:12
182:14,15
crimes 14:18
15:13,23 16:5
43:18 44:2,4
45:2,13,20

61:4 162:19
166:17 182:18
182:20,20
criminal 6:2
7:20 9:6 13:11
15:10 16:19
19:10 23:6,10
23:12,13 32:15
33:9 35:4,12
35:21 36:1,4
36:12 41:10
44:23 127:19
crossing 59:21
cruiser 65:16,21
75:19
current 12:22
23:6 55:11
114:4 119:8,9
119:9
currently 7:6
12:5 15:9 17:2
119:15
custody 46:11
80:3,7,8 82:23
140:1,3 145:23
155:4 159:10
customary
88:12 89:21
111:18
Customs 13:23

**D**

D 87:17,18
DA 32:20 36:18
36:19 37:23
38:20,22 39:4
39:19 40:19
63:13 135:10
136:16 160:20
dangerous 67:11
158:15,22
Danny 1:12,19
5:10,14 6:14
32:2 33:14

34:10 38:23
39:20 52:10
104:11 114:1
darkness 62:11
67:13
Darryl 42:7
date 5:3 48:11
50:4,5,17 52:8
54:23 55:13
86:18 91:6,14
91:19 113:18
113:23 118:4,5
118:6,7,12,13
118:16,20
122:18 140:18
143:6 145:2
172:21 173:12
dated 88:6
daughter 12:13
daughters 12:12
day 2:1 14:21
55:13 74:10
84:8 87:8 92:3
103:21 119:19
120:1,11 133:6
136:8 144:22
daylight 72:22
73:3,7,10 74:2
74:6,7
days 55:5,8 89:6
92:2 133:6
DA's 8:4 15:3
17:13 26:6
30:17 33:22
37:2 41:13
43:14 45:3,6
60:4 66:18
76:13 90:7
172:6
dealing 61:4
dealt 172:2
Dean 88:18
Dearborn 4:6
death 7:4 21:17

FREEDOM COURT REPORTING

21:22 28:19
DeBerry 67:3
70:21 140:18
146:11
DeBerry's 147:7
decide 24:6
38:22
decided 32:1
100:6
decides 31:21
160:21,22
deciding 29:9
decision 25:1
31:15 32:13
33:13,13 34:18
35:19 39:4
60:12,15 61:3
62:5,7 89:11
89:22 101:10
105:4,15 106:1
107:9 110:23
112:11,11,14
112:15 127:12
127:21 128:5
129:11,21,23
130:4,6,9,10
decisions 29:5,6
29:13
Defendant 1:9
4:11
defendants
24:22
Defendant's
3:22,23
define 97:7
Dekalb 13:4
15:6 16:16,22
17:16,20 21:1
27:17 32:12
33:7 34:16
35:9 36:10,23
37:9,11 43:8
45:1
delay 182:8

delayed 92:1
delivery 48:19
denied 117:12
department
26:16 27:9,10
28:1,14 29:1
30:19 31:2,10
37:1 38:17
51:12 56:9
60:6 76:23
77:1 82:19,21
84:4,18,20
85:23 87:21
90:8 91:11
92:14,22 93:11
93:15,22,23
96:13 102:16
102:18 104:2
113:23 133:13
147:14,16
148:1 162:13
172:7 176:18
182:23 183:4
depends 24:10
113:1 154:8,10
DEPONENT
183:14
deposed 7:10
10:11
deposition 1:11
1:19 2:4,5,16
2:19 5:23 6:23
7:8 183:11
depositions 2:8
7:20 9:6
deputies 67:4
183:1
deputy 70:22
133:16
describe 6:21
19:5 43:12
62:16 76:22
122:21,22
described 25:3

26:10 42:23
50:8 117:5
119:3,14
146:11
describing 73:23
description
97:13 125:15
125:22 126:5
137:18
detail 19:6
detectors 74:11
determination
39:19 61:1
123:16 124:10
125:5 127:18
129:17,18
determine 53:12
determined
37:15 39:13
168:14
determining
35:2 55:17
DeWayne 90:21
91:4 103:20
113:20 118:17
148:3,11,18,22
149:7 161:16
164:17
died 18:10
difference 43:12
43:16 144:13
154:23
different 27:20
27:21 44:10
74:21 90:18
108:4 134:11
154:12,13,15
154:16 155:1
179:13
differently
158:9
direct 36:17
37:23
direction 69:20

169:11 170:5
directly 36:19
97:9
director 13:13
14:8 15:16
disbanded 44:10
discovered
74:16 138:17
162:5,9
discovery 131:1
136:1,3
discrepancy
146:19
discuss 135:2,13
135:20 168:13
168:17
discussed 10:2
52:22 105:21
108:7 112:3
120:19 130:21
131:4 133:23
135:4 167:21
168:10
discussing 73:21
104:3 116:14
134:14
discussion 46:19
110:3 123:14
131:6 167:21
discussions
114:16 116:7
116:18 119:14
134:7
dispatch 3:12
48:8,9 50:16
50:23 53:5,11
55:19,21 56:9
57:6,7 77:1
174:11 178:12
178:23 179:21
180:7 181:9,14
181:17
dispatched
50:22

dispatcher
179:1
dissipated 46:11
distance 170:9
175:13 181:3
distribute
103:14 113:13
district 6:15
13:1,2 14:11
16:8 17:5 25:4
31:20 33:3
34:9 36:13
42:18 45:15
46:6,20 47:1
111:3 112:20
114:1 129:22
130:3,6,8,11
130:12 135:1
136:20
document 48:3
48:4,15 50:13
50:15 51:14,15
51:16 53:15
54:15 85:21
86:2,2,4,17
104:6 107:6
113:19 120:1,4
120:9,13
122:14,15
140:2,5 143:1
144:6,7
documented
89:17 120:8
documenting
155:4 163:6
documents 48:3
88:9 139:18,20
143:5 144:15
dog 59:11,12
63:21 64:2,3,4
64:7 66:3 67:5
67:14,16 69:8
69:14
dogs 66:3,13

367 VALLEY AVENUE
(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660

# FREEDOM COURT REPORTING

| | | | | |
|---|---|---|---|---|
| 67:8 | **E** | encountered | 3:17,19 23:17 | 56:15 85:15,20 |
| **Dogtown** 59:6 | E 1:12,19 5:10 | 169:9,10,23 | 24:1 26:19,22 | 103:10,15 |
| **doing** 15:13,22 | 5:14 | **ended** 71:18,22 | 26:23 29:12,13 | 113:9,14 118:2 |
| 16:18 43:4 | **earlier** 42:23 | **ends** 27:2 | 68:13,13 84:1 | 118:15,19 |
| 106:4 122:2,23 | 44:11 46:1 | **enforcement** | 89:17 124:13 | 119:3 121:11 |
| 142:19,19 | 56:3 58:6 | 27:17 76:21 | 127:14,22 | 140:5,13,13 |
| 144:3 156:15 | 75:17 106:4 | 78:21 81:14 | 130:1 138:16 | 141:4,6,10,11 |
| 161:10 164:15 | 138:1 | 98:8,9,17 | 140:4 142:8 | 141:11 143:3 |
| 166:12,15 | **earliest** 84:10 | 99:17,23 100:5 | 143:1,23 152:2 | 144:6,23 |
| 176:8 | **early** 22:14 | 100:9 133:4 | 152:11,23 | 145:14,20 |
| **door** 68:15 | **Econoline** 87:11 | 150:3 155:10 | 153:7 155:1 | 146:8,13 173:3 |
| 87:11 124:1 | **education** 19:19 | 156:11 158:18 | 157:1 160:13 | 173:10 174:11 |
| 125:19 | **educational** | 159:12 162:8 | 160:15,21 | 177:20 179:22 |
| **double** 16:4 | 12:14 | 164:1 179:9 | 162:3 163:5,12 | **exhibits** 3:10,11 |
| **drafted** 104:5 | **effect** 2:5 112:7 | **enforcements** | 165:2 167:22 | 3:22,23 47:11 |
| 118:3 | **effort** 124:16 | 175:21 | 168:4,5,18 | 47:17 139:13 |
| **drive** 70:15 | **efforts** 63:6 | **entailed** 26:11 | **evidentiary** | **exigent** 159:2 |
| 174:5 175:4,13 | **eight** 149:20 | **enter** 83:7,15 | 123:19 | **exist** 22:18 44:8 |
| **driver** 53:8,9 | **either** 30:12 | **entered** 69:21 | **exact** 52:8 54:23 | 121:16,19 |
| 59:8 89:7 | 37:22 38:17 | 121:11 | 57:20,22 91:14 | **exit** 59:9 |
| 102:1 124:1 | 60:4 74:17 | **entire** 13:9 | 91:19 134:6 | **exited** 123:22 |
| 125:19 150:22 | 90:7 93:15,21 | 43:10 63:8 | 145:2 180:18 | 125:1,16 |
| 151:6,8 152:6 | 93:22 97:9 | **entries** 143:17 | **exactly** 26:9,11 | **expected** 71:9 |
| 152:10 | 100:16,17 | **equal** 160:4 | 57:20 111:7 | **expedition** 153:3 |
| **drivers** 175:18 | 108:23 109:7 | **escape** 59:9 | 126:23 180:14 | **experience** |
| **driving** 40:1 | 111:10 112:22 | **escaping** 59:22 | **examination** 3:3 | 25:10 28:10 |
| 125:20 170:8 | 112:23 114:22 | **especially** 88:5 | 5:11 6:19 | 61:4,6 66:12 |
| **drop** 129:12,18 | 115:19 116:6 | 166:12 | 88:22 89:15 | 68:3 71:11 |
| 160:23 | 116:13 122:1 | **establish** 160:16 | 122:5 124:8 | 77:11 82:1 |
| **dropped** 129:20 | 136:16 147:14 | 167:23 168:18 | 149:13 165:22 | 86:6 96:16 |
| **drove** 124:2 | 151:17 152:21 | **establishing** | 173:17 179:19 | 97:23 107:14 |
| 150:12,14 | 172:6 182:8 | 168:22 | **examined** 5:16 | 124:11 129:15 |
| 169:2 | **elements** 23:15 | **estimate** 7:17 | 89:16 | 156:18 157:6 |
| **drug** 21:19 44:6 | 23:18,22 | 20:10,18 22:4 | **example** 24:3 | 157:13 159:11 |
| 71:1 | **employed** 15:2 | **evening** 64:14 | 29:10 39:23 | 170:23 |
| **duly** 5:15 | 18:14 | 65:14 71:16 | 45:15 69:8 | **experienced** |
| **duties** 13:8 15:8 | **employment** | 73:3 82:13 | 80:23 | 16:2 69:5 |
| 15:15 26:10 | 14:15 15:1 | 83:8 169:9 | **excuse** 23:11 | **experiences** |
| 43:5,13,19 | **EMS** 82:17 | **events** 152:6 | 116:12  · | 153:13,16 |
| 71:14 132:23 | 83:12 | 181:13 182:8 | **exhibit** 3:12,13 | **explain** 48:2 |
| **duty** 16:4 | **en** 75:6 | **eventual** 89:10 | 3:14,15,16,17 | 93:14 111:19 |
| **dying** 61:8 | **encircle** 60:22 | **eventually** | 3:19 47:20,21 | **explanation** |
| **D.A** 29:5 | **encompassed** | 126:16,17 | 48:1 53:14 | 117:4 |
| | 14:14 145:6 | **evidence** 2:16 | 54:5,16 56:1 | **Express** 86:21 |

FREEDOM COURT REPORTING

87:14 89:1,13
150:5,7,10,18
150:20,23
169:2 172:15
172:16
extend 107:14
107:18
extends 99:1
extension 55:9
extent 101:4,20
122:22
exterior 123:11
eyewitness
147:18 166:10
166:16 168:22
169:3 176:9
182:12
eyewitnesses
126:6 170:15
175:22 176:2
176:11 182:18

**F**
face 120:1
facilitate 100:16
facilitated 95:20
fact 9:3 14:4,21
21:23 23:19
26:12 53:9
54:10 96:11
100:13 102:2
111:20 115:7
129:4 133:9
147:18 154:3
154:14,14
157:17 158:7
160:1
failed 109:23
fair 121:23
126:13
fairly 143:21
Fairview 178:6
178:9,14
180:16,23

181:11,22
faith 149:4
familiar 10:14
100:14 173:18
173:21 174:1,2
174:5
family 18:18
24:20 148:13
far 24:16 25:11
27:2 30:6,7
31:6 62:9,12
64:10 78:9,20
109:18 119:17
120:16 122:5
122:17 130:19
131:17 134:12
136:13,18
138:16,16
142:1 143:5
155:2,6 156:23
163:10 164:7
169:18 177:17
fatality 40:21
FBI 12:17 20:6
fed 149:2
federal 13:19
22:15 23:9,12
feel 95:5,5 97:12
105:15 106:9
106:15 112:1
156:12
feelings 159:20
160:4,8
felony 40:11
167:8
felt 95:3 106:14
110:10,13
124:8 127:18
fewer 17:8
field 141:18
142:15
file 29:23 30:1
136:3 165:8,14
165:15

filed 9:15 136:2
files 29:22
165:10,12
filing 2:19
filled 86:7,10
final 52:4,4
finalized 142:5
finalizing
141:23
Fine 52:23
finger 30:9
finish 11:11
163:4,11
finished 88:11
89:11 90:3,14
149:9
firearm 163:8
168:6
fired 27:16 40:6
78:11 79:4
firing 125:19
first 5:15 14:22
26:14 46:2
47:18 48:3,5
48:17,17 50:10
52:14 53:14,23
54:4 56:1
70:22 77:13,19
90:20 91:1,17
91:21 92:4
102:13 104:9
113:18 114:23
118:1,3 119:1
119:5 120:6
122:9,11
141:17 142:13
146:9 165:18
177:22 179:22
180:16
fishing 153:2
five 7:19 16:12
16:12 32:5
174:23 175:1,5
178:2

five-minute
138:22
flashlight 65:6
flashlights 62:20
73:9
fled 31:4
Florida 20:3
flushed 59:13
folks 40:2
follow 55:16
156:23 164:9
followed 46:3
154:18
following 5:12
73:20 89:6
follows 5:16
follow-up 28:9
38:11 166:1
force 2:5 13:12
13:14,19 14:3
14:8,16,20
15:16,17 16:2
27:19 42:22
44:8 47:23
Ford 87:10,10
87:11
foregoing 5:5
forensic 31:8,11
83:23 84:4,20
85:1,9 89:14
90:1,2,3 122:5
123:17 124:7
140:22 152:11
152:22 162:13
171:23
forensically
152:2,14
forensics 88:22
form 2:12 26:3
29:20 32:8
33:17 39:16
41:16,19 42:3
42:15 44:9,21
46:15 47:8

48:22 49:5
53:20 56:17
61:22 69:16
70:6 79:20
80:4,21 86:8
87:3,4,7 88:1
90:9,17 95:17
96:20 100:2
101:8,16 115:6
119:4,11
126:19 154:19
175:7 181:21
182:2,3,6,9
formal 22:18
33:13 34:18
153:11
formally 94:9
format 122:16
formed 13:12
Fort 42:8 91:10
92:22 93:3,15
93:21 94:13,22
147:14,15,22
148:1,8,14,23
forth 30:16
131:18
fortunate
157:11
forward 130:17
found 73:5 75:3
75:5,9 91:22
99:8 100:4,8
146:23 162:6
175:6
four 7:19,22
16:12 32:4
104:10,14
120:13 178:10
fourth 86:17
framed 165:4
Freeman 86:20
frequencies
55:20 56:8
frequency 49:7

# FREEDOM COURT REPORTING

49:10,11 51:1
51:2,7 58:3
75:12,13
179:14
**friend** 133:3
**friends** 106:18
106:22
**front** 134:1
**full** 2:6 16:14
**fully** 119:13
**further** 2:2,9,18
49:13 165:20
179:16 183:9
183:14

---

**G**

**G** 1:20 5:1
**Gale** 1:22 5:7
**gangs** 132:15
**Gap** 169:14
**gas** 65:15,20
66:1,19 75:18
75:21 77:7
158:11 162:21
163:1,3
**gather** 7:9 23:16
**gathering** 150:2
**Gavin** 1:5 6:8
7:2 8:17 25:15
25:21 26:7,12
33:15 39:7
46:10,18 58:7
58:13 62:4,6
63:9 64:4,9,17
65:15,20 66:20
67:15 75:2,18
77:5,14 81:15
81:17 82:1,6
115:3,11 117:1
117:2,7,10,17
117:20 125:2,9
126:2 127:2
128:9 137:2,5
137:6 151:8,11

151:13 158:11
158:15 165:4
167:17 174:3,7
**Gavin's** 6:22
117:18 134:21
**geared** 19:10
**general** 4:14,15
17:1 61:10
79:12 102:12
112:7 121:8
137:18 164:6
182:21
**generally** 85:22
102:11 121:14
129:15 176:7
**general's** 6:10
6:13 8:16
**Georgia** 20:7
**getting** 131:2
142:5
**give** 6:21 11:14
40:1 54:4,15
80:23 85:19
103:15 112:8
113:14 128:4
136:4 178:13
**given** 10:16 34:1
49:3 54:13
86:21 137:18
170:6 175:9
178:3
**gives** 174:21
**go** 10:8 11:6
15:20 23:22
38:2,10 39:17
41:1 50:23
63:19 64:8,13
65:13,23 69:10
69:12 71:6
75:12 88:10
94:19 95:10
98:1,3,22
100:7,17,20
101:1,10 106:7

130:17 131:2
136:14 142:6
159:12 167:10
**going** 24:3 25:13
31:21 32:2,6
32:14 33:14,20
33:21 34:10,14
38:22 45:14
46:20 47:16
49:21 51:5
54:2 58:9 63:6
63:22 64:20
66:22 67:7
75:20,21 89:9
92:1,10,14
98:1,3 99:10
99:20 100:22
103:14 105:17
106:12 108:7
111:12 112:12
129:12 130:16
135:6,8 136:13
136:18,21
154:22 166:9
169:11,17
175:10 181:7
181:14 182:5
**good** 5:21,22
63:15 73:12
95:4
**Gornati** 86:20
**gotten** 64:2
125:10 171:9
**grand** 27:3
111:19,21
112:1,6 126:22
127:4,16,17,22
128:3
**grew** 148:7
**ground** 162:2
**grounds** 2:14
**grow** 18:20
**guess** 14:3 16:14
18:8 20:14

23:7 32:20
39:12,23 41:3
44:6 69:2
76:20 89:19
100:3 124:9
130:2 133:11
178:11
**guide** 22:20 24:9
**guidelines** 23:5
23:21 29:2
154:17,21
**guides** 154:2
**guiding** 34:23
**gun** 65:6 71:18
74:6 117:5,10
137:22 138:3,7
138:9 161:21
161:23 162:1,9
170:21,22
175:4
**guy** 170:21,22
**guys** 55:7
**G-O-R-N-A-T-I**
86:20

---

**H**

**H** 87:17,18
**half** 169:15
178:10 181:4
**halfway** 76:1
**hand** 100:23
**handed** 126:21
**handled** 88:19
**handler** 64:7
**handlers** 64:2
66:3 67:5,14
67:16 69:8,15
**handling** 8:16
**handwriting**
141:15
**handwritten**
3:18 56:19,22
57:2,5,7
140:11,14,15

141:7,16 142:3
142:4,10,12,20
145:20 146:8
146:12
**hand-to-hand**
166:13
**happen** 112:22
112:23 156:17
166:18 180:8
**happened** 40:20
43:10 54:10,20
54:22 72:17
81:20 89:5
93:1 102:6,10
108:2,9 122:8
128:6 162:4
180:9
**happens** 11:20
41:7 152:16
182:13
**hat** 147:7
**hazards** 157:9
164:15
**head** 10:18,18
85:6
**headed** 48:20
63:16
**heading** 47:22
**hear** 10:17
**heard** 90:20
147:17 148:5
148:10 164:1
**height** 137:17
**held** 128:12,21
128:23 129:6,7
**help** 22:20 36:15
36:15 38:21
48:2 53:13
135:14 149:23
**hereto** 47:14
85:17 103:12
113:11 139:16
**hey** 32:1 69:11
**High** 12:16

highway 58:11
  59:2 75:7
  143:19 146:15
  169:15 180:16
  180:23,23
  181:11,22
hired 18:9,15
hold 15:9
holding 129:16
home 117:11
homicide 19:7
  20:11,23 21:22
  21:23 24:12,16
  25:6 28:20
  30:19 31:7,16
  32:12 35:17
  36:15 37:8
  38:2,15,21
  41:15,18 45:16
  68:4 129:17
  183:5
homicides 19:8
honestly 148:12
hour 74:10
hours 72:17,20
  72:22 73:3,7
  73:10 74:2,6,7
  81:22 133:6
house 15:4
Huh-uh 116:9
hypothetically
  80:16 81:12
  129:2

I

ID 49:16 51:11
  51:12
idea 19:14,17
  47:2 62:2
  109:15 180:12
identification
  47:12 85:16
  103:11 113:10
  126:1 137:4

139:14
identified 91:22
  124:23 125:2
  125:17 148:17
  158:11
identify 26:21
  81:6 82:6
  137:3,15 159:3
identifying
  125:9
ignition 87:10
III 87:18
Illinois 4:7
  92:14 133:16
immediate
  46:12
immediately
  65:23 96:23
  180:20
impact 156:21
  158:7
impossible
  154:20
impounded
  86:15
incident 72:17
  90:19 91:18,21
  120:8
include 21:19
included 85:3
including 137:2
  137:5,6
independent
  114:9 115:16
  120:16
independently
  120:18
INDEX 3:1
indicate 52:16
  104:14 153:5
  177:16
indicated 177:22
indicates 90:17
  172:20 173:10

178:5
indicted 111:22
  112:5 126:17
  128:8,9
indictment
  126:21 127:4
  127:13,20
  129:5
individual 17:16
  41:14,17 57:6
  66:21 81:13
  93:10 125:10
  167:14 169:1
individuals 32:4
  51:2 65:8
  104:21,22
  137:7
individual's
  42:5
information 7:9
  11:18 24:21
  30:11 86:22
  92:4 93:6 94:3
  95:10 96:22
  101:4,17,20
  102:3,8,12
  120:15 125:21
  144:18 149:1,2
  150:2 151:20
  152:21 158:14
  162:7 170:2,11
initial 62:18
  74:12 177:21
initially 27:11
  128:23 129:6
  137:16
injured 164:16
inside 123:13
instance 22:22
  69:7
instructed 32:19
  138:9
Insurance 18:17
insure 82:10

158:21
intended 49:12
interest 116:19
interior 123:4,8
interrupted 51:4
intersects 59:3
interview 24:4,8
  24:14,15,20
  29:10 30:5
  81:7 91:4 94:7
  95:6,19,21
  96:9 97:16,18
  98:3,7 99:11
  100:7 102:21
  103:2,20,23
  104:1,10
  105:10,12,18
  106:4 107:8,17
  107:20 108:10
  108:14,17
  109:1,1 110:3
  110:5,7 112:9
  113:4,20 118:7
  118:17 119:2
  121:9,11,12,13
  121:18,20
  122:17 131:9
  139:10 154:2,5
  154:8 159:12
  159:19,20
  160:2,17
interviewed
  24:23 79:10
  96:7 98:12
  105:7 107:11
  114:6 126:10
  167:19
interviewer
  113:18,23
interviewing
  106:5 157:1
interviews 25:2
  30:4,12 98:19
  115:2 117:22

144:19
intimidated
  105:15
intimidation
  24:15
introduce 47:16
  143:3
introduced
  47:20
introduction
  122:17
inventoried
  86:12,14
inventory
  171:15 172:8
investigate
  32:14 33:15
  34:10 35:22
  44:17 69:4
  155:12 156:4
  163:22 166:2
investigated
  162:18,21
investigating
  23:16 24:22
  44:20 78:8
  98:14
investigation
  13:20,23 15:10
  15:12 19:7,8,9
  21:4 23:14
  24:16 25:6
  26:7,12,14,15
  27:6 28:1,9,15
  28:19 29:3,4,9
  29:15 30:1,19
  31:1,7 32:19
  33:21 36:16,21
  37:11,17 38:4
  38:11 41:8,18
  45:7 47:7 52:3
  68:6 79:9
  82:14 86:10
  89:3 90:11

# FREEDOM COURT REPORTING

93:12 94:10,17
96:4 99:3
101:18 106:11
111:11,16
112:2,3 122:2
122:23 123:21
127:14,15
128:1 130:14
134:13 137:10
144:4,16
154:22 156:21
158:8 164:10
171:8 183:5
**investigations**
13:11 17:1
19:11 20:12
21:17 22:20
23:3,4 28:17
28:18 31:17
37:6 41:15
45:1,17 61:5
153:12,15
160:19 166:13
**investigative**
36:11
**investigator**
6:15 8:4 12:23
14:11 15:9
16:7,18,20,22
16:23 17:11,20
18:1,4,7,9,11
18:12 25:19
26:5,6,13,17
26:18 28:7
29:4 31:22,23
32:3,7,16
33:16 34:14,15
35:19 36:1,5
36:12 37:16
38:23 39:14,21
43:14 46:21
52:20 77:12
87:20 88:19
91:9 103:3

112:16 114:1,3
130:13 164:7,9
164:11 172:1
**investigators**
16:1,3,13 17:2
17:5 27:5 32:6
32:23 33:2,4
33:10 35:4,12
35:21 37:10
39:3 41:5,11
42:13,14,17
**investigatory**
171:20
**involved** 20:11
28:1,15 34:21
40:2,4 45:4
79:8 93:11
94:10,17 96:3
99:2 101:14
102:2 106:11
134:2,4 135:17
**involvement**
97:15 101:5
120:14
**involving** 116:8
**in-person**
137:11
**irregardless**
36:18
**issued** 117:9
**items** 87:14
117:4 171:16
171:17,18
172:8,9,17,22
173:4,11,11
177:10

_____
**J**
_____
**Jacksonville**
31:14
**jail** 76:10,12,18
76:22 128:14
128:15,21
151:17

**January** 6:4
**Jasper** 4:12 6:9
**Jimmy** 67:3
70:21,23 71:1
71:6 140:18
146:11,22
147:1
**job** 10:21 12:19
31:23 36:12
38:3,9 43:17
71:9,13 117:10
130:22 156:15
157:8,15
164:15
**join** 106:2
**joint** 26:15
**Jr** 4:12
**jroberts@ago....**
4:20
**Judge** 6:3 7:7
**Judicial** 6:16
13:16 14:12
22:19 30:17
33:5 35:18,20
41:12 47:22
**jumped** 40:6
77:10 79:4
124:1
**Junior** 87:17
**jurisdiction**
30:20 36:8
38:5,8 98:22
99:2,21 100:12
107:16,17
**jurisdictions**
60:1
**jury** 27:3 111:19
111:21 112:1,6
126:22 127:4
127:16,17,22
128:3

_____
**K**
_____
**keep** 29:22

163:1
**Keith** 1:5 6:8,22
7:2 125:2
151:8 165:4
**key** 87:10,11
**keys** 87:10
172:20 177:18
**killed** 89:8
**kind** 24:10
156:20
**knew** 71:8 95:8
97:15 101:4,4
101:17,23
106:14 107:1
117:17 135:11
148:11,12
**know** 7:1 10:23
11:10,20 20:23
20:23 21:5
22:6 26:9 30:8
31:23 32:10
34:17 43:22
46:1,7,12
48:13 49:9
51:9 52:2,3,8
54:7,8,14,14
55:1,3,12,13
56:14,21 57:16
57:19,20,21
58:2 61:16
62:22 63:2,7
63:19 66:12,16
69:1,9 70:12
71:10 72:1,6
72:11,12,13
75:19,20 80:15
81:22 83:2,18
83:22,22 84:3
84:5,7,19
87:19 89:10
90:5 92:2,8
93:14,23 94:23
96:2,13 97:14
98:2 99:9,13

99:16,18,20,22
101:13 102:10
103:4 104:5
105:1,15 107:1
109:18 112:4
115:23 116:2
117:11,20
119:6 120:23
121:5 122:13
122:21 123:10
127:8,12 129:2
129:11 131:23
132:15 133:12
133:14,21
134:11 135:7
137:14 139:6
146:18 147:9
148:3,13,15,16
148:20 161:10
161:13,16,19
162:10 164:17
169:7,21 170:1
170:10,13,19
171:3,5,6,7,12
173:9 177:2,6
179:1,10 180:9
182:7
**knowledge**
69:19 106:12
120:7,15
125:12 164:21
**known** 183:3

_____
**L**
_____
**lab** 140:21
144:20
**lack** 76:21
**large** 81:5
**larger** 61:20
**Larry** 30:6 53:1
67:2 96:5
104:7,11 105:1
114:2 138:13
140:19 141:1

## FREEDOM COURT REPORTING

143:19 146:16
146:21,22
147:9,11,21
**Las** 20:4
**law** 1:21 5:6
23:7 27:17
76:20 78:21
81:14 98:8,9
98:16 99:17,23
100:5,8 133:4
150:2 155:9
156:11 158:17
159:11 162:8
164:1 175:20
179:9
**laws** 2:7
**laying** 61:7
**lead** 13:22 26:5
33:21 36:11
37:11,16 68:7
80:17 100:23
152:20 183:5
**leading** 2:12
**leap** 149:4
**learned** 101:20
110:5
**learning** 157:12
**leave** 27:1 175:2
**leaving** 66:1
70:14 111:10
**Leesburg** 48:20
75:23 76:1
169:16
**left** 63:21 64:8
64:11 70:13,14
96:15 97:18
111:13 126:9
172:4 178:12
**left-hand** 53:1
**legal** 19:19
**length** 70:14
**letting** 99:19
**let's** 12:4 24:12
69:6

**liaison** 106:13
**Liberty** 18:16
**life** 18:22 173:19
**limit** 24:13
105:11,18
**limiting** 105:23
**limits** 27:12
28:13
**line** 86:17
116:22
**lineup** 137:2,6,7
137:9,11,20
**list** 49:13
**listed** 10:2 87:12
87:13 181:3
**listening** 49:6
**little** 19:5 59:6
**live** 148:23
**lived** 18:22 99:9
148:23 173:18
**lives** 148:18
**LLP** 4:5 6:7
**local** 38:16
**locate** 26:20
62:21 68:1
74:16 124:17
**located** 15:6
31:11,14 75:18
76:12,13,18
77:2 138:9
147:2
**location** 113:18
113:22 119:8
122:18 169:10
**locked** 171:22
**locker** 140:21,23
**lodging** 136:11
**log** 3:12 50:15
54:13 55:23
56:14,19,22,23
57:5,11,12
58:2,2 178:4
178:20,22,23
179:22 180:2

**logistics** 95:18
**logo** 87:14
**logs** 56:15 57:2
**long** 13:5 61:13
62:22 65:10
108:10 129:1
**longer** 62:6,8
72:3
**look** 23:15 29:12
74:6 80:6 81:8
103:16 104:8
113:14 123:4
**looked** 67:9 74:7
115:13,17
122:4,6 123:2
**looking** 34:2
50:13,17 51:14
53:14 64:22
65:6 66:10
74:11,15 86:16
118:1 122:15
138:7,8
**lookout** 48:21
49:2
**looks** 160:20
**loose** 27:2
158:22 171:18
172:9,17,18
**lot** 14:4 21:16
28:17,17 36:16
36:17 37:3
38:9 69:2
100:20 155:8
155:14 166:3,5
166:10,11
**Lyon** 3:4,6,8 4:4
5:19,21,23 6:6
6:19 29:21
42:15 44:22
61:23 73:12,18
78:16 79:21
87:5 104:20
116:13 138:21
139:4 149:9

154:19 165:22
173:15 175:7
179:19 183:7

---

## M

**main** 43:15
**maintain** 68:15
82:23
**maintaining**
62:12 68:7
**major** 14:17,18
15:13,23 16:5
36:22 43:7,18
44:2,4
**majority** 108:16
**making** 105:4
107:9 110:22
124:16 142:22
**man** 61:7,8
125:1
**manual** 24:2,2
153:21
**manually** 155:6
**manuals** 22:21
34:23 153:11
**March** 20:15
48:11 50:3
52:6 86:18
87:8,15 90:19
103:21 118:6
119:2,18,18,20
119:21 140:16
144:22 146:10
146:14 173:12
**marital** 12:8
**mark** 143:2
**marked** 47:12
85:16 103:11
113:10 139:14
**marking** 85:19
**married** 12:9
**material** 88:6
**Matt** 6:6
**matter** 25:14

30:9 69:6
**Matthew** 4:4
**Maynard** 1:21
5:7
**ma'am** 5:19
**mean** 9:19 13:16
60:4 72:20
78:5 80:8
86:14 93:10
131:15 133:14
135:21 148:15
167:10
**meaning** 40:8
52:19 60:9
93:17 117:1,2
119:9 147:22
**means** 100:5
**Meeks** 3:15,16
90:21 91:1,4
92:10,23 93:6
93:17 94:2,3,6
94:21,22 95:2
95:5,22 96:7
96:17,21 97:12
98:5 100:4,11
101:5,23
102:14,21
103:4,20 105:1
105:16 106:8
106:15,17,21
108:1,4 109:2
109:10 110:4,7
110:8 111:4,10
111:13 112:4
113:4,20 115:1
115:3,5,10,14
115:21 116:8
117:3,6,9,12
117:14 118:9
118:17 119:1,7
119:15 120:2
120:19 121:12
122:3 123:1,17
124:17 125:2,6

# FREEDOM COURT REPORTING

125:17 126:10
126:16 127:6
127:13,23
128:8,11
129:13 130:7
130:10,17
131:9 132:12
132:17 133:3
133:10 134:8,9
134:19 139:10
144:19 147:17
147:18 148:3
148:10,11,13
148:18,22
149:7 159:19
160:17 161:17
164:17 167:19
168:1,2,5,14
168:23
meet 76:7 96:12
102:14 135:1
175:4
meeting 76:4
116:4
member 176:18
members 24:20
27:19
memorialized
25:3 85:10
memory 11:17
149:19
mental 78:19
mention 108:23
172:21
mentioned 19:1
32:4 94:12
105:5 110:20
mentioning
110:18
merely 144:21
message 47:19
48:6 49:2,11
53:16 56:5
57:14 181:14

messages 50:23
met 34:3 49:20
97:13 135:4
170:7 175:10
177:23 178:4
Metal 74:11
methods 25:2
metropolitan
41:5
middle 11:10
miles 169:15,20
178:10,11,15
178:16
mind 51:8
161:17
mind-set 78:9
minute 178:11
178:13,17
180:18 181:1,4
181:5
minutes 70:16
174:22 175:1,5
178:3
mischaracteri...
105:8
misdemeanor
167:9
missing 172:11
Mississippi 20:8
mistaken 67:1
misunderstan...
35:16
mobile 40:5
model 49:20,21
monitoring
49:11
Montgomery
4:18 165:11
months 14:22,23
20:5 111:7
morning 5:21,22
72:9
motion 9:15,19
motions 136:2

mountain 49:22
76:2,4 169:16
169:17 175:11
move 138:9
moving 40:5,8
mrlyon@sidle...
4:9
multiagency
13:14 14:1
multijurisdicti...
13:14,15,18
14:3
multiple 60:1
162:8
municipal 38:8
municipalities
36:22 38:7
municipality
37:1 38:18
murder 7:3,3
20:16 22:2,5
22:14 25:22
26:2 36:7 43:8
77:20 78:2,3
110:9 126:18
128:22 129:3
149:21 167:15
murders 14:17

_____

## N

name 6:5,6,9
42:6 47:3
86:19 87:16
90:20 148:5,11
148:13,13,20
149:7 161:5
names 30:10
104:10
narcotics 13:12
14:19 15:17
16:1,6 17:3
19:9 35:15
42:10,22 44:5
47:22 49:17

166:13
National 12:17
18:17
natural 21:18
nature 126:4
131:6
necessarily
28:16 136:9
necessary 2:1
26:20 100:8
123:16 124:9
need 10:15 11:8
11:9 18:2
29:10,11,12
60:20 68:19,20
89:16 97:20
101:1 110:13
125:6 135:13
136:7 153:21
needed 27:2
60:13 61:2
62:8 88:10
91:23 110:4
146:5 159:7,8
needs 30:8 61:11
neither 70:17
Nevada 20:4
never 34:19 51:8
66:15,15 67:9
98:4 124:2
151:21 157:15
164:13,15
168:2 172:3
new 49:20
165:17
newer 49:20
night 41:20
57:21 62:17,18
69:23 70:10
71:19 73:9
74:2,12 75:2
79:11,13 83:20
84:8,9 89:5
137:13 144:17

nine 14:22,22
149:20 174:20
Ninth 6:16 13:3
13:16 14:12
22:19 30:17
33:4 35:18,20
41:12 47:22
nod 10:18
nonverbal 69:2
71:8 89:19
normally 34:7
38:2 129:3
142:21 163:1
164:8
north 1:23 5:9
30:21
notebook 30:2
135:23
notes 57:7
notice 2:19
178:5
notified 93:2
138:11 162:5
notify 98:22
notifying 107:15
number 1:4 3:3
3:10 17:4
24:13 47:19
48:5,14 49:14
49:15,16 50:21
51:9,15 59:5
87:12,13
105:11,19,23
146:9 159:23
161:3 163:14
176:13
numbers 21:20
numerous 19:17
19:18 167:7

_____

## O

oath 8:9
Object 26:3
29:20 32:8

33:17 39:16
41:16,19 42:3
42:15 44:21
46:15 47:8
48:22 49:5
53:20 61:22
69:16 70:6
79:20 80:4,21
86:8 88:1 90:9
95:17 96:20
100:2 101:8,16
115:6 119:4,11
126:19 154:19
181:21 182:3,6
182:9
**objected** 108:5
**Objection** 175:7
182:2
**objections** 2:11
2:14
**objects** 11:4
**obtain** 23:20
26:20
**obtained** 26:19
**obviously** 52:6
68:10 73:8
96:2 100:21
114:13 141:16
156:13 166:14
174:2
**occasion** 7:14
20:5 82:20
120:7 167:5
175:14
**occasions** 20:4
37:4 79:18,22
81:11 89:6
131:16
**occur** 21:5 96:9
**occurred** 21:1
27:11 28:5
38:5 39:6
48:18 50:5,18
73:4 79:12

90:19 91:18,21
92:20 93:7
94:4 96:18
122:13 124:4
137:19 144:21
149:21 169:19
174:12 180:10
181:16 182:4
**occurs** 28:20
30:20 36:8,23
38:7,15 45:8
**October** 13:7
**offday** 133:14
**offense** 127:2
176:9
**offered** 2:16
**office** 4:15 6:11
6:13,16 8:5,16
13:1,2,22
14:12,21 15:3
15:6,21 16:8
17:6,14,19,21
25:5 26:6,15
29:5 30:17
31:1,10,13,21
32:14,17 33:6
33:22 34:16
35:20 36:13
37:2,10,17
41:13 42:9,18
43:14 44:17
45:3,3,6,10,14
45:16 46:22
60:5 63:16,23
66:19 76:13
90:7,7 114:3
165:11,12
172:6
**officer** 28:23
29:2 36:14
51:11 53:1
68:5,8 70:5,19
70:20,22 75:22
77:5 78:8,22

81:14 82:22
83:5,6 84:12
94:13 98:8
99:18 107:23
107:23 132:21
133:4 155:10
156:11 164:8
176:7
**officers** 27:18,21
51:1,7 59:15
59:17,23 60:10
60:17,22 61:13
61:17 62:3,19
63:2 72:6,13
72:16 73:2,22
98:17 107:16
138:8 150:3
162:9 164:2
179:9
**offices** 1:21 5:7
**official** 161:8
**Oh** 21:9 134:10
137:8
**okay** 7:15 9:22
12:14 22:18
25:13,16 28:22
47:16 49:13
58:6,15 71:16
77:4 78:2,20
82:13 101:3
105:9 113:16
113:17,21
138:19,21
140:9 142:9
144:8,13 146:7
149:9 152:14
152:19 159:11
174:17 175:20
183:7
**older** 49:20
**once** 46:11 62:4
62:13 67:4
89:16,20 91:22
94:7 129:3

163:4,11
**ones** 67:18 172:2
**one-on** 81:7
**ongoing** 111:15
**open** 136:3
159:15
**opened** 123:23
**opening** 125:18
**operated** 13:21
**operating**
175:3
**operation** 78:19
132:23
**opinion** 157:7
175:2,15
**opportunity**
95:4
**opposing** 178:20
**oral** 5:11 119:23
**orally** 10:16
**order** 6:3 59:21
69:4 128:4
144:1
**original** 9:15,19
44:9 53:9
137:16 141:3
150:14 151:22
175:9
**originally** 94:22
**outside** 48:18
**out-of** 107:15
**out-of-state** 98:9
**overdoses** 21:19
**owned** 18:18
**owner** 86:19
87:8 88:5,13
163:13
**owners** 89:13
162:16  ·
**ownership**
117:5
**O'Dell** 34:9

**P**

**page** 3:3,10
50:17 51:8
52:14 53:4
54:9 55:15,23
57:18 104:9
**paid** 15:2 133:12
**paper** 114:10
**paragraph**
48:17 50:10
55:14
**parallel** 13:23
**parentheses**
87:13
**parked** 59:15
61:13
**part** 16:12 22:14
43:17,17 63:7
82:13 89:2
128:1 130:21
157:8 162:11
164:12 182:22
**partial** 54:5
**participate** 28:9
**participated**
16:4 111:5
**participating**
31:6
**particular** 27:6
29:11,13 31:22
40:4,13 47:7
52:21 55:6
60:6 63:14,17
67:10 71:13
77:6,21 80:22
82:20 86:4
95:11 135:11
136:8,8 137:9
137:13 140:3
142:7 143:1
154:4,9 172:21
**particularly**
176:5
**parties** 1:18
2:13

## FREEDOM COURT REPORTING

passed 109:22
110:1 169:12
178:5 181:10
181:11
passenger
123:22
passing 178:14
181:20
patience 139:5
patrol 179:14
183:1
patrolman
91:10 103:6
182:11 183:3
patrolmen
176:11,12
182:17,22
Payne 42:8
91:10 92:22
93:4,15,21
94:13,23
147:14,15,22
148:1,8,14,23
PC 1:22 5:7
PD 55:21
pending 7:6
people 14:5
24:13 62:14
68:11 69:5
74:14 89:4
102:23 105:11
105:17,19,23
138:7 146:5
154:8 167:7
170:2
percentage
166:8
perform 153:15
perimeter 59:1
59:18 60:20
62:9,12 67:6
72:3
period 13:9 15:1
69:22 70:18

79:12 113:3
128:21 132:3
permissible
79:19,23
permission
87:23
person 23:19
24:19 34:15
81:4 82:11
87:16 105:14
148:18 150:3,7
150:14 158:15
158:19,22
159:4,9,14
170:14,16
171:9,11 175:2
175:5 176:10
personal 69:19
161:9 167:10
personally
157:14,15
170:10
personnel 82:18
83:12
petition 10:4
petitioner 6:7
Petitioner's
47:20 48:1
85:20 103:14
phone 131:22
photo 137:20
photographed
123:12
photographer
68:18,19
photographing
68:14
photographs
68:12 138:12
162:1
physical 125:22
126:5 153:7
168:3
physically

163:19 164:16
pick 100:18
128:3 138:10
picked 162:2
picture 140:8
141:13 142:17
143:16,22
144:2 145:15
146:14
pictures 68:20
122:7 123:2,7
123:11
piece 29:11,13
140:4 142:7
pistol 164:23
place 6:1 7:23
8:3 22:21
28:12 32:12
35:18 37:8
38:21 78:4,5
82:15 94:7,7
95:20,21 96:9
100:19 104:1
119:2 121:18
130:15 166:19
171:8 173:22
174:6 180:13
180:18
placed 162:2
Plaintiff 1:6 4:3
Plaintiff's 3:11
47:11 85:15
103:10 113:9
139:13
planning 134:18
plant 164:22
Plaza 1:22 5:8
please 19:6
105:7
point 21:2 33:19
34:2,4,8 40:13
52:2 53:4
59:20 65:14
70:10 77:22

83:16 87:2
91:5 117:22
120:3 131:3
153:18 162:16
175:5
pointed 178:19
178:20
police 27:10,18
27:23 28:14
56:9 59:15,17
59:23 65:16,21
66:20 75:12
77:1,7 91:11
92:14,22 93:15
93:22 94:13
99:15 132:20
147:14,15,22
148:1
policies 22:19
153:11
polygraph 109:3
109:11,13,16
109:23 110:19
111:1,3
position 8:4
12:22 13:6,8
14:10,11 15:9
18:14 26:11
67:10 156:16
possession
116:21 117:6,7
117:18 138:14
175:3
possibility 109:2
possible 66:13
82:7 159:4,14
possibly 126:12
postconviction
6:23 7:5 9:19
potential 24:5
97:3 100:1,1
111:15 148:19
potentially 7:9
practical 155:7

practice 23:2
24:9 25:8
79:16 80:9
105:6 107:14
121:9 124:12
preceded 181:13
preceding
114:17
predated 141:9
preferable
159:13
prep 136:18
preparation
135:18
prepare 56:23
135:14 136:14
145:8
prepared 52:9
54:8 137:20
143:4,5
preparing
130:22 145:22
146:22
presence 134:17
147:1,8
present 6:5 24:7
27:3 102:20
104:9,13,15
107:7 122:18
127:21 137:22
138:2,5 161:21
162:3
presented
111:21 112:6
127:16 128:2
pretty 13:10
14:6 55:11
73:6 102:5
144:15
prevent 59:21
previous 11:19
previously 31:4
98:13 107:2
primarily 15:13

# FREEDOM COURT REPORTING

**prior** 2:16 18:15
18:17 20:15
22:1,5,10,11
64:3,4 80:19
82:2 92:10,14
95:15 96:8
111:10 132:7
135:2 139:9
147:13 148:2
180:20,20
181:16 182:4
**prison** 59:12
128:12,14
151:17
**probable** 160:4
160:10,12,16
167:23 168:11
168:18
**probably** 7:22
10:14 21:3,15
27:14 70:21
88:21 102:4
107:21,23
110:11 122:6
138:2,4 141:17
141:22 142:4
142:21 166:17
179:6
**procedure** 5:5
6:2,3 23:6,9,12
23:13 25:9
79:16 80:2,9
155:2 156:23
157:4
**procedures** 23:2
153:11
**proceeding**
15:21
**proceedings**
5:12 6:23 7:6
7:10 9:20
**process** 31:19
32:1 34:5,18
36:6 38:15

39:6 41:4
78:23 89:8
111:20
**processed** 80:12
88:10 177:6
**processing**
80:20 82:3
88:3,11 89:11
90:14,18 163:4
**producing**
135:22
**professional**
98:11,21
107:15
**proper** 130:20
**property** 3:14
85:22 86:7,11
172:19 173:14
176:16 177:13
**prosecute**
130:17 157:3
**prosecution**
130:2
**prosecutor**
136:15
**prove** 23:19
**provide** 38:13
100:19
**provided** 5:4 9:7
85:4 94:6
117:13,16
**public** 61:10
76:5 158:23
**pull** 16:4
**purpose** 7:8
64:20 68:1
79:1 133:8
**purposes** 137:3
**pursuant** 6:1 7:1
8:3
**pursue** 67:7
130:2
**pursued** 64:10
**pushed** 124:1

**pushing** 125:19
**put** 30:2 35:2
74:13,17 124:5
140:21 142:22
143:2 147:9
156:15 172:13
**putting** 30:9
136:22
**p.m** 49:19,19
50:16,17
174:14 183:12

## Q

**qualified** 41:14
41:17
**Quantico** 20:6
**question** 10:19
10:23 11:6,15
11:16,19,21
32:9 36:3
40:14 53:22
62:1 73:19
80:7 87:6
105:22 146:7
157:18 168:9
172:23
**questions** 2:12
2:13 9:11 10:9
10:9,22 11:4
12:2,5 24:6
25:14 58:9
73:21 108:16
116:23 135:7
135:12 139:5,7
149:11 153:10
155:8 159:23
161:3 165:20
165:23 166:1
176:14 179:17
**quick** 73:19
138:22
**quickly** 159:4

## R

R 4:4

**radio** 49:10
54:13 55:20
56:8,19,22
75:13 175:9
179:4
**radioed** 43:10
53:5 63:17
75:22 76:6
**Rains** 6:3 7:8
**ran** 27:16 40:7
40:15 64:9
78:6 81:18
151:11
**rapes** 14:18
**reaction** 61:11
**read** 55:15 87:3
87:15 120:3
**reading** 2:3
146:10
**ready** 131:2
142:5
**real** 9:9 63:15
102:11
**realize** 108:1
**really** 32:10,17
78:10 148:15
**rear** 87:11
**reask** 80:5
**reason** 10:20
11:23 70:13
95:2 123:18
124:7,23
132:17 147:2,4
152:1,9,22
153:6 168:3
170:20 171:10
**reasonable**
163:12
**reasons** 133:11
**recall** 33:12
48:16 50:14
51:23 54:23
62:16 65:7,10
66:2,9 71:5,18

71:23 75:4,16
77:4 83:17
84:8 85:5 86:5
87:22 88:2
90:13,20,23
91:13,19,20
92:6,9,12,18
93:3,9 101:3
101:19 102:20
102:23 103:8
104:19,20,23
105:3,4,20
107:8 108:6,10
108:13,18,19
109:4,9,10,13
109:17,19,22
110:18 111:9
113:2,6 114:12
114:15,16,23
115:7,22 116:2
116:4,6,7,14
116:17 117:3
117:12 118:5
118:19,22
119:7,15,17
120:20,22
121:2 122:2,8
123:9,12
124:16 125:7
126:4 127:3
128:17,18,20
130:5 131:5,10
131:16 132:8,9
133:18 134:13
135:16 137:1,8
139:8,11
147:20 156:9
167:5,14 169:8
**recalling** 134:6
**receipt** 3:14
85:23 86:7,10
172:19,22
173:2,5,14
176:15,16

# FREEDOM COURT REPORTING

177:1,13,16
receive 49:1
received 87:16
 92:23 95:9
 141:2
receiving 147:13
recess 73:15
 139:1
recognition
 149:6
recognize 48:4
 49:14 51:15
 85:20 139:20
recollection
 54:19 71:3
 84:17 90:16
 92:7 102:5
 104:12,17
 106:20 108:21
 110:1 114:4,9
 115:1,17 117:8
 117:15,19,23
 120:17 127:11
 128:10 132:13
 133:7 138:6,11
 138:20 149:15
 149:16,17,19
 162:4 177:14
 177:15
record 6:5 73:19
 140:12
recorded 10:10
 57:12 108:17
 119:22
recorder 108:20
records 57:14
recover 62:10,17
 82:14
recovered 72:19
 74:4,8 118:20
 118:23 120:21
 120:23 137:23
 138:3,13,18
 139:8 140:18

143:23 146:10
 146:15 147:11
 147:11 161:22
 161:23 168:6
reentered 124:3
refer 18:12
 58:14
reference 56:11
 115:14 143:7
referenced
 176:15
referred 93:4,16
referring 58:11
 58:17 64:14
 138:1 140:12
 141:4
reflect 178:1
reflects 87:7
 104:19
refresh 104:12
 104:17 114:4
refreshed
 114:11
regard 117:9
 126:11,23
regarding 46:20
 93:7 94:3
 95:18 96:22
 111:3 127:22
 147:17 159:20
 160:1 161:4
regards 26:12
relate 60:15
related 12:20
 19:8 152:16
relating 2:7
 92:23 101:18
 153:7 155:9
relationship
 30:15,16 94:21
 95:2 133:9
relative 180:9
relatively 61:20
relaxed 95:6

relayed 102:4,7
release 87:23
 88:12,20 89:21
 129:9
released 62:14
 86:12 87:15,17
 88:5 89:18
 151:16
remained 72:2,7
remember 7:16
 11:17 59:5
 63:12 64:1
 67:2 70:14
 74:12 83:20
 88:7,14,15
 91:6,7,14
 94:21 95:1
 96:4 103:5,5
 111:7,17
 122:10,12,19
 122:23 126:22
 127:1 132:2,6
 132:16 134:16
 137:21 145:2
 156:8 161:22
 178:1
remind 8:7
 126:8
removed 82:17
removing 83:13
repair 18:19
rephrase 11:1
 111:12
reply 75:15
report 3:13 9:8
 30:2 51:18,19
 51:20 52:4
 54:9,17,21
 55:9 56:7 85:4
 85:10 123:10
 142:20 144:1,3
 144:5,10,12,14
 144:14,21,23
 145:5,18

146:22
reported 181:10
reporter 5:2,18
 8:8 10:11,17
 78:14 116:10
reporting 134:8
 181:19
reports 55:7
 85:3 144:20
represent 6:7,11
 7:5
representative
 56:6 90:6
representatives
 8:17 72:7 89:1
represented
 8:13
request 27:20
 55:20 56:8
requested 36:20
 45:9,21,23
requests 15:12
 36:14 45:10
 136:1
require 159:3
required 14:20
 43:21 168:11
requirements
 14:23 43:18
reside 12:6
residence
 100:18
resist 167:7,12
resisting 164:11
 164:12 167:3,6
 167:9
respective 1:18
 62:15
respond 38:2
 46:2 133:5
 156:19
responded 27:19
 36:3 39:10
 41:23 43:11

60:10 182:19
responding
 55:17 135:23
 136:1
response 75:8
 75:10 112:7
 156:18
responsibilities
 111:14
responsibility
 26:18 110:11
 111:23 127:19
 136:5
responsible
 16:15 17:16
 44:20 52:17
 60:7 66:21
 68:11 71:1
 81:4 97:8
 128:6 133:5
 159:9
rest 158:17
result 96:5
 110:4 127:19
 128:13,16
results 84:23
 85:2,8 109:19
 111:1
retained 163:10
retrieved 89:17
 140:22
return 74:19
 165:14 172:17
 176:14,15,21
returned 87:1,8
 87:9 111:22
 114:5 127:20
 162:16 172:15
 172:21 173:4
 173:12,13
 177:11,17
returning 113:2
 177:2
review 165:8,14

## FREEDOM COURT REPORTING

165:15
**revolver** 102:3
117:9
**right** 9:21 11:13
16:11 27:12
33:1 35:10
37:7 38:19
40:9 42:4,4,19
43:3,6 44:6
51:3 53:3
54:18 58:20
68:18,23 70:3
72:5 81:3,19
82:10 96:23
117:2 118:8,11
124:13 135:19
136:23,23
141:5,5,19
143:14,17
145:4 146:1
147:12,23
150:1 151:20
153:1 154:1
158:19 166:3
166:19 168:12
168:16 173:7
173:14 174:21
177:15 179:8
179:12 181:8
181:12,12,15
182:1,19
**right-hand**
52:11
**risks** 156:15
**road** 40:9,10
59:2,4,6,16,22
61:14 76:6
77:3 178:8
**robberies** 14:18
45:22
**robbery** 40:22
162:22 163:2
**Roberts** 3:5,7
4:12 5:20 6:9

6:10 8:22 9:1
11:3 26:3
29:20 32:8
33:17 39:16
41:16,19 42:3
44:21 46:15
47:8 48:22
49:5 53:20
61:22 69:16
70:6 77:23
79:20 80:4,21
86:8 87:2 88:1
90:9 95:17
96:20 100:2
101:8,16
104:16 114:8
115:6 119:4,11
126:19 128:14
149:10,13
165:20 166:1
168:10,21
173:17 179:16
181:21 182:2,6
182:9,11 183:8
**role** 25:17 29:2,3
112:16
**room** 24:14
104:21 105:12
105:18 107:7
107:10
**round** 73:20
**route** 75:6
170:18 180:16
**routine** 98:23
**routinely** 21:17
**Rule** 6:2
**rules** 2:7 5:4 6:1
23:6,8,8,11,12
**run** 7:4 46:7,8
47:6 60:18
61:9 63:22
69:18,20 77:10
79:1,5
**running** 40:3

130:14
**runs** 155:5
**rural** 30:21

------

### S

**s** 29:5
**safe** 15:3 180:17
**SAITH** 183:14
**Sandra** 86:20
88:16
**sat** 55:3 109:14
**saw** 34:6 69:18
79:1 150:3,17
151:6 157:19
170:15,17
177:22
**saying** 22:11
30:10 36:2
78:20 95:14
125:13 178:6
**says** 38:20 47:18
50:21 51:9
52:10,14 53:4
55:15 56:1
86:17 104:9
113:17,19
178:21,22
**scene** 19:8 27:15
38:10 39:12
41:21 42:1
43:11 46:2
58:8,10,10,10
58:14,20,22,23
59:14 60:7,8
60:13,18 61:1
61:14,21 62:6
62:8 64:13,14
64:21 65:19,23
66:4,5,23 67:4
67:5,16,21
68:4,4,5,7,17
68:21 69:10
70:1,18,20,23
71:21 72:1,8

72:14 73:23,23
74:19 75:6
78:11 81:13
83:14,19
123:22 137:23
137:23 138:12
143:18 152:17
155:3 157:20
162:12 163:5,6
168:7 172:4
**scenes** 38:3
68:10
**school** 12:16
95:1
**Science** 162:13
**Sciences** 31:8,11
84:4,20 89:14
90:1,2,3
171:23
**scientist** 140:23
**screens** 41:6
**seal** 40:17
**search** 64:23
65:18 66:7,13
71:18,22 72:18
72:21 73:8
74:20 163:11
**searched** 71:17
**searching** 73:2
74:1
**seats** 125:20
**second** 47:21
51:8 53:4
54:16 55:14,23
57:18 103:15
114:12,13,16
114:17,19
118:15,18
122:9,11,12
140:5 177:20
180:18
**secondary** 27:15
168:7
**seconds** 174:15

174:20 178:12
178:13,17
181:1,6
**secure** 28:4 60:8
62:8 72:2,3,8
163:11
**secured** 27:14
27:17 58:20,23
58:23 60:13
61:2 84:12,14
84:16 89:2
162:12 171:23
**securing** 60:7
61:14,21 71:2
72:15 155:2
**security** 62:13
68:7,16 82:23
133:11
**see** 23:18 26:19
26:22 53:16
54:1,13 59:19
72:23 73:8
74:16 84:23
129:19 136:5
136:10 174:19
176:3
**seeing** 132:6
134:16
**seek** 127:13
130:16
**seen** 9:16 10:5
48:14 50:15
56:13,15 66:15
66:15 86:3
103:16 107:6
**seminars** 12:18
19:17
**send** 30:12
**senior** 17:23
18:3,6,11
**sent** 59:13
**sentenced** 7:4
**separate** 24:23
29:22 173:5

**separately** 177:11
**serial** 87:12
**serology** 140:21
**serve** 14:16
128:11,12
**service** 18:19
63:15 102:2
117:9
**serving** 43:6
**sessions** 20:11
**set** 40:11 87:9
154:21
**sets** 43:4
**setting** 24:16
95:6 98:10
**seven** 133:6
141:13 142:3
**sex** 137:17
**sexual** 15:13,14
19:7 45:20
**shaded** 52:12
**shake** 10:18
**Sharon** 115:5,21
**SHERI** 1:20 5:1
**sheriff's** 26:16
27:9 29:1
30:18 31:2,10
37:1 38:17
44:12,16 45:10
51:12 60:5
67:3 76:23
82:19,21 84:17
85:23 87:21
90:8 93:11,23
96:12 102:16
102:17 104:2
113:22 114:3
172:7 176:18
182:23 183:4
**shoe** 153:19,22
**shooter** 53:9
124:2,23
151:21 152:7

**shooting** 27:11
28:5 34:1
40:12 48:18
50:5,8,18 78:3
78:4,5,7,23
82:15 93:1,7
94:4 96:18,19
96:22 97:1,2,4
116:15 124:3
126:12 137:19
144:17 145:3
152:3,11 153:8
153:8 159:10
169:19,22
170:6,16,22,23
173:22 174:6
174:12 180:10
180:12,17
181:16
**Shortly** 150:17
**shot** 40:20 61:8
81:15,17,18
124:1 150:7
151:4 155:21
156:2,8,12
157:7 158:1,5
168:23
**shots** 27:15 40:7
78:12 79:4
125:19
**shoulder** 59:18
59:18
**show** 21:22 69:8
80:18 139:19
140:3
**showed** 60:18
64:8 81:16
146:21 172:19
**showing** 137:1,8
140:1
**shown** 82:1,5
137:20
**shows** 52:23
68:18 140:16

140:16,17,22
143:18
**show-up** 81:7
**side** 125:18
**Sidley** 4:5 6:6
**sign** 120:5
**signature** 2:3
**signed** 118:9
120:2
**signify** 86:2
**simply** 24:14
69:17 94:20
95:9 100:13
106:7,13 149:4
**sir** 7:12 8:2,6,6
8:15,18,21
10:3 12:3 14:9
16:9 18:23
19:4 25:20
26:8 28:3
29:17 30:21
33:8 34:12
37:12,14 44:14
44:18 45:18
46:23 47:9
48:23 50:1,7,9
50:11,20 51:17
52:1,9,13 54:1
54:22 58:21
60:2 62:3 63:4
63:11 64:16,19
65:9,12,17
66:6 71:20
72:10 74:21
75:1 76:11
77:16,21 78:9
79:14,22 80:14
82:4,8,12,16
83:6,9,21 84:2
84:15,22 85:7
85:11 86:5
90:15,22 91:2
91:16 92:11
94:18 97:5

98:10,15,18
99:4,12 100:10
101:9,12,18
102:19,22
103:17 104:4
104:15 105:21
106:19 108:12
108:18,22
109:4,6,9,21
110:6,20 111:2
112:17 113:5,7
114:18,21
115:8 116:16
117:23 118:21
119:5 120:17
121:4,15 123:6
124:19 125:12
125:22 126:7
126:15 127:5,7
128:10,19
129:14 131:7
131:12 132:22
133:1,20,20
134:13,20,23
135:16 137:12
138:3,18
139:21 144:11
145:10,13,16
145:19 146:17
148:4 149:8,18
149:23 150:9
150:11,13,19
150:21 151:1,3
151:5,7,10,12
151:15,23
152:18 153:14
154:11 155:7
155:11,13,16
155:19,23
156:3,6 157:6
157:15,21,23
158:3,6,10,13
158:16,20
159:5,10,17,22

160:6,9,18
161:2,12,15,18
161:20 162:14
162:17,17,20
162:23 163:4
163:20,23
164:4,7,21
165:1,3,5,7,10
165:16,19
166:4,7 167:16
167:18 168:20
169:5,6 170:19
171:4 172:10
173:20,23
174:4,9 176:16
176:20,23
177:4 179:12
180:6,11,14
**sit** 24:19 95:6
100:19 106:8
106:15 107:19
108:8 115:9
**sitting** 109:17
134:14
**situation** 108:1
111:19 154:4,4
154:9
**Six** 141:14
142:10 143:10
169:20
**Sixth** 1:23 5:8
**sketch** 102:9
**small** 15:23 49:7
**Smith** 1:12,19
5:10,14,21
6:14,20 12:7
32:2 33:14
38:23 48:2
52:11 85:21
103:15 104:11
114:1 118:17
**smoother**
100:21
**somebody** 30:13

**FREEDOM COURT REPORTING**

41:6 56:18
59:22 68:15
71:4 74:10
75:11 80:6
81:18 100:22
137:21 164:10
181:19
**somewhat**
154:16
**son** 12:13
**Sons** 12:12
**soon** 82:7
**sorry** 9:18 23:11
35:16 42:19,19
42:20 43:19,23
47:4,17 50:18
51:4 60:3 62:6
63:20 77:7,18
78:15 80:8
81:17 116:11
117:7 118:16
125:3 126:8
142:9 168:8
179:21
**sort** 19:16 23:2
29:18 34:23
46:4 52:11
61:19 73:20
**South** 4:6,17
**speak** 8:22
80:15 115:21
131:9
**speaking** 81:12
129:2 131:10
**specific** 102:11
**specifically**
111:17
**speculate** 99:6
**spent** 20:5
**spoke** 9:1 92:16
95:15 101:6
102:7 131:15
**spoken** 8:19
**spot** 61:20

**spotted** 170:3
**spring** 113:3
**stack** 29:23
**stand** 111:23
136:22 142:23
**standard** 80:1
**standards** 22:19
**stands** 48:20
51:10 114:3
**start** 12:4
133:10 142:22
**started** 34:2
39:21 40:12
76:4 141:3
142:19
**state** 1:8 4:16
6:5,11,16 14:2
20:2 98:13
117:15,17
176:2 180:15
180:22
**stated** 10:19
149:5,15
**statement** 53:17
53:22 115:12
118:2,4,6
119:3,23
120:10,11
**statements**
26:22 49:23
50:2 58:3
68:12 125:9
136:14,19
137:17 155:3
**statement's**
49:18
**states** 13:21 20:8
98:17 146:9,14
**stating** 169:3
181:9
**station** 18:19
65:15,20 66:1
66:19 75:18,21
77:7,8 80:11

81:23 158:12
162:21 163:1,3
179:10
**stations** 178:21
179:3
**status** 12:8
**stay** 55:11
**stayed** 129:1
**steps** 111:11
**STIPULATED**
1:17 2:2,9,18
**stipulation** 5:5
**stipulations**
5:18
**stm** 3:15,16
**stop** 75:23 76:6
77:6,6,7 79:2
175:3,16
**stopped** 40:12
58:12 150:23
169:21 170:10
170:18 176:9
**stopping** 79:2
**story** 69:11
108:4 115:1
**strategy** 133:22
134:1
**street** 4:17 76:17
**stroke** 18:10
**structures**
163:10
**stuff** 10:15 88:7
166:14
**subject** 67:7
100:16 125:16
**submitted** 3:23
**subpoenaed**
136:6 146:6
**subpoenaing**
135:23
**substance**
119:22 133:18
**successfully**
157:3

**sufficient**
160:17 167:23
168:18
**suggest** 170:12
171:1
**suggestion** 109:5
109:8
**suggests** 107:7
**suicide** 21:18,21
**summary** 52:4
103:19,22
**supervised**
13:13
**support** 16:19
**supposed** 25:5
**sure** 9:9 10:13
10:15 11:22
21:14 23:17
25:16 28:6
46:17 57:15
58:18 70:4,7
70:11 71:12,15
71:15 74:9,14
79:3 81:3
122:19 130:18
131:7,18 132:1
134:10 136:6
142:6,22
145:22 158:18
159:6,8
**surrendered**
127:11 163:7
**surround** 60:20
**surrounded**
59:7
**surrounding**
49:8 58:12
**survive** 157:12
**suspect** 24:18
46:8 67:22
72:4 74:2
77:14 79:17
80:3,10,18
81:1,3 96:17

96:19 97:1,7
97:21 98:1,7
99:5,7,13
100:1,4 105:11
106:5 107:18
110:8 111:15
112:15 121:9
126:11 129:16
129:19 152:22
158:1,4 168:11
**suspects** 98:12
**swap** 175:3,3
**swear** 70:12
**swing** 163:21
166:23
**swings** 163:19
**switch** 56:8
179:15
**switched** 178:21
**switching** 55:20
**sworn** 5:15 8:8
**system** 59:12

————————

**T**

**tag** 87:12
**tagged** 138:15
**take** 11:9,11
19:13 22:21
26:21 28:12
35:17 37:8
38:3 57:7 64:6
94:7 95:4,21
100:23 114:19
123:7 133:14
138:21 157:2
157:14,15
166:23 175:12
180:18
**takedown** 40:11
**taken** 1:20 7:1
7:23 8:3 19:1
62:5 73:15
82:18 83:18
120:10,11

**367 VALLEY AVENUE**
**(205) 397-2397 BIRMINGHAM, ALABAMA 1-877-373-3660**

# FREEDOM COURT REPORTING

121:20 139:1
163:19
**takes** 32:11
163:21 174:6
**talk** 9:2 88:23
92:1 95:7
97:21 98:1
101:11 105:16
106:16 118:23
**talked** 9:13,14
10:6 30:4,14
39:5 46:6 64:7
88:16,17,23
89:4 93:9 94:2
95:3,23 96:1
97:14 98:6
119:13 133:21
**talking** 20:19
88:7,14,15
92:21 93:18
106:5,9 119:7
131:16 132:9
140:6,7
**tangential**
152:16
**tape** 56:19,21
57:2,13 108:19
121:14,22
**taped** 113:19
114:7 118:16
121:10,13
122:16
**tape-recorded**
120:10
**task** 13:12,14,19
14:3,8,16,20
15:16,17 16:1
27:19 42:22
44:8 47:22
**taught** 153:18
**team** 63:22 64:3
64:4 171:21
**telephone** 96:6
**tell** 36:19 40:19

41:3 61:7
86:22 90:3
111:13 121:17
173:8 177:9
**telling** 71:5
90:13 94:2
110:22 120:20
155:6 170:4
**ten** 14:23 21:8
21:10,15
**Tennessee** 20:9
**terminology**
130:21
**test** 29:11 85:2
109:3,11,20,23
110:19 111:1
124:17 125:6
152:1,9,14
**tested** 83:23
162:12,15
**testified** 5:16
46:1 56:3 58:6
58:7,19 98:5
106:3 115:2
134:21 144:11
148:7 153:12
165:6 166:2
179:23
**testify** 134:19
135:6 146:3
165:17
**testifying** 165:9
**testimony** 1:11
8:9,20 39:10
105:6 125:3,7
125:8,13 135:2
135:5,15
141:23 168:22
169:3 177:5
**testing** 84:3,5,13
84:19,20 85:1
85:9 89:23
90:4 123:17
171:14

**tests** 109:14,16
**thereabout**
18:13
**thereto** 2:17
**they'e** 49:9
**thing** 36:21
81:20 96:10
120:9 178:19
**things** 10:2,6
16:6 24:6 35:1
69:3 100:20
131:2 134:12
179:20
**think** 9:14,23
12:1 14:5
22:16 27:11,13
28:6 32:5 41:2
43:1 55:1,6
57:1 59:4,11
61:6,11 63:21
70:21 74:8
77:23 78:18
81:23 82:20
88:21 89:4
96:10 101:22
102:3,19 106:3
107:22 108:6,9
113:13 122:4,6
122:6 127:10
133:7,17
137:12 139:19
141:17 145:17
145:21 148:19
154:20 155:7
156:17
**thinking** 78:9
**thinks** 161:10,17
**thought** 22:9
35:23 47:2
78:22 142:11
144:5,9 167:22
178:7
**Thousands**
163:16,17

**threat** 46:11,12
61:10
**threats** 132:13
**three** 7:19,22
16:11 20:5
22:6 35:14,21
36:2 55:8
91:12 103:4
178:9,11,15,16
**three-day** 55:6
**thumbnail** 102:8
**tie** 153:19,21
**time** 2:15,15
7:16 11:8
14:15,19 15:1
15:19 16:13,14
18:3,10 21:2
24:17 26:18
28:7 32:22,23
33:23 40:13
41:11 42:11
43:5,7 44:1
47:19 48:5
49:16 52:2
53:15 54:10,20
55:6 57:1
60:21 63:7,8
63:14 64:2
67:11 70:9,11
70:15,18 72:17
73:4,12 74:3
74:23 76:23
77:15 78:7,17
79:11 83:21
84:11,13 86:11
86:12,18 87:21
91:4,5 93:5
96:9,14,17,23
97:11 98:2
99:10 101:22
106:18 110:14
110:16 112:11
112:12 118:1
119:8,10

120:21 122:18
125:4 126:17
128:9,11,12,21
131:3,8,20,21
132:10 135:11
136:9 137:18
142:19 143:23
145:2 149:3
163:13 166:15
167:13 169:22
169:23 170:5,6
170:8 171:6,7
174:5,10,11,12
174:17 175:2,8
175:8,10,11,12
175:16 177:21
177:22 178:3
179:21 180:7
181:5,6 182:7
182:13
**times** 7:18,22
36:16,17 37:3
38:9 74:21
131:18 166:18
177:20 178:1
178:18 181:2
**Tina** 4:13 6:12
**title** 31:23 71:13
**toboggan** 140:1
140:17 142:17
143:8
**today** 8:9,14,20
8:23 10:8 12:2
115:10 139:6
149:14,17
165:9
**told** 34:19 40:20
40:22 41:2
60:19 90:2
102:5 108:2,4
115:1 117:21
119:18,21
120:6 137:16
147:6 148:21

148:22 149:7
**Tom** 92:13,16
93:3,10,18,21
96:3 98:6,6
102:4,5,6
103:6 104:10
106:21 109:8
111:10 116:8
121:3 131:10
161:4,10
**Tony** 91:10
94:12 104:11
106:1,6,10
**top** 47:20 48:6
48:17 53:3,16
85:6 86:16
104:9 113:17
113:19
**touch** 138:10
**towns** 49:8
**track** 67:8
**tracked** 46:4
**traffic** 55:19
68:16 176:8
**training** 12:18
19:2 20:11
25:8,10 61:6
153:16 154:3
156:17 157:5,6
170:23
**transcribed**
56:18 57:4
**transcript** 9:7
48:7 53:17
54:5,6 121:10
121:14,16,19
121:21
**transmission**
175:9
**transpired** 94:1
**transporting**
75:23 77:5
**travel** 19:23
20:1,2 91:3

133:13 136:11
175:11
**traveled** 91:14
96:6 97:11
101:7 115:15
127:10 132:11
132:17 138:11
170:8,9 181:3
**traveling** 40:9
40:10 115:10
132:20 133:2
**treat** 158:8
**treatment** 83:14
**trial** 2:15 9:8
15:10,18 22:13
30:2 44:7 58:7
58:19 111:23
115:3 130:22
131:2,15,21
132:5,7,10,11
132:12,18
133:19,22,23
134:19,22
135:4,18,22
145:12,21
149:21 163:2
165:6,17
**triangular** 59:6
**tried** 55:11
112:4 165:13
**triggers** 11:17
**trip** 94:5,16,19
95:11,14,16
96:8 103:23
106:2 113:6
114:12,14,16
114:17,20
115:4 118:3,18
119:1,5 122:9
122:13 139:9
**trips** 114:22
115:19 116:14
122:1 144:18
**troopers** 176:2

**true** 46:14 176:1
**truthfully** 12:2
165:6
**try** 23:15 24:13
136:12 153:2
159:13
**trying** 40:10
53:12 59:4
62:20,20 74:16
**turnaround**
55:7
**turned** 34:3
89:12 140:19
140:20 163:7
163:13 170:5
**Turning** 49:21
**Twenty-one**
20:21,22
**two** 9:12 12:11
13:4 14:4
16:11,12 17:1
17:9 22:6
29:15 32:23
33:2,3 35:3,7,8
38:16 43:16,20
43:20 44:10
47:16 50:17
54:9 90:10
107:9 131:8
143:17 169:15
**type** 30:15
**typed** 3:20 54:8
55:4 56:21
140:10,13
141:10,14
142:10,13
143:15 146:13
146:21
**types** 45:2,13
80:16 84:19
162:18
**typewriter**
142:15
**typical** 30:19

**typing** 141:3

**U**

**Uh-huh** 56:4
78:13 105:13
179:5
**ultimate** 129:23
**unattended**
21:21
**uncommon**
38:12 88:4
166:20,21,22
**undercover**
14:22 15:20
**understand**
10:20,22,23
11:2,5,7 17:22
32:9 38:14
42:20 43:13
50:12 53:22
58:16 62:1
**understanding**
6:22 33:20
39:9 50:14
53:6,18 56:13
97:6 169:5
172:5 176:4
**understood** 53:7
182:16
**uniformed**
70:22 164:8
**Union** 4:17
**unique** 25:17
**unit** 14:17 17:3
42:11 43:7,11
43:15 44:2,6
47:19 48:5
49:17 50:21
51:9 53:15
55:21 56:2,3
56:10 71:1
**United** 13:21
**units** 40:16
44:10 48:18

49:3,4 51:13
53:13 54:12
55:17
**unprofessional**
154:17
**upper** 52:11
**UPS'd** 141:1
**use** 7:9 24:9 25:9
**Usual** 5:18
**usually** 19:20
28:14 112:8
163:7 167:8
**utilize** 74:5
**utilized** 73:7,11
**U.S** 13:22

**V**

**v** 1:7
**value** 108:3
123:19
**van** 31:9 41:22
46:3,4 48:19
49:19,20,21,22
53:8,10 55:16
58:12 59:8
61:8 71:2
77:10 79:4
82:14,16,18
83:7,11,13,15
83:18,23 84:11
84:14 85:9
86:23,23 87:10
87:10,14,23
88:4,6,12,20
88:22 89:2,7
89:12,15,16
90:4 123:23
124:2,5 125:18
125:21 150:5,8
150:10,18,20
150:23 151:2
157:19,22
158:1 162:11
162:15 169:1,2

**FREEDOM COURT REPORTING**

169:9,17,21
170:3,7,10,14
170:15,17,17
170:21 171:4,9
171:14,15,16
171:17,18,18
171:22 172:2,9
172:9,12,13,14
172:16,18,18
175:10,16
176:14,21
177:3,6,7,10
177:12,23,23
178:4,5,14
180:15,22
181:10,19
**variations** 155:1
**varies** 21:11
107:23
**various** 12:18
19:2
**Vegas** 20:4
**vehicle** 34:3
40:6 53:10
82:22 83:1
102:1 122:3,7
123:11,20,23
124:3,8 125:1
125:6,10,14,17
168:4,23
175:14 177:18
**vehicles** 163:10
172:20 175:3
**verify** 53:5 77:9
**versus** 32:3
**vicinity** 76:16
**victim** 25:19
26:1 82:17
83:13 163:8
167:15
**video** 51:11
**view** 77:13
79:17 80:2,10
**violence** 81:1

**violent** 45:19
158:15,22
159:3 166:16
182:12,14,20
**Virginia** 20:6
**visits** 131:8
**visual** 139:23

**W**

**waited** 67:13
**waiting** 54:1
**waived** 2:4,20
**walk** 67:12
150:4
**walked** 123:23
**walking** 62:19
65:5 125:17
**want** 8:7 11:5
18:12 38:21
80:5,17 81:2
105:14 139:18
158:18
**wanted** 6:20
82:10 104:8
105:18 139:6
**warrant** 55:10
97:17,20
**wasn't** 9:9 31:7
40:13 74:9
110:13 121:20
135:13 148:21
171:4
**way** 10:8 35:2
38:14 43:22
59:17 76:3,21
80:6 90:19
93:14 112:22
112:23 156:19
156:21 158:8
172:13 175:13
182:16
**ways** 112:21
**weapon** 62:11
62:17,21 64:22

65:1,19 66:8
66:10,14 72:18
73:2,4 74:1,3,8
74:16 102:2
116:15,20
117:13,16,20
118:20,22
119:9,16 120:7
120:16,19,21
138:13,14
139:8 162:6
**week** 55:2 72:15
74:20 91:17,21
92:5 133:6
**weeks** 111:6
**weigh** 105:23
**weight** 137:17
**went** 22:13
29:23 30:5
39:11 40:16
62:14 63:13
64:11,11 65:15
65:18,19 67:9
67:12 70:1
71:17 75:13,17
82:20 83:10
91:6,7 94:13
94:23 97:16
101:22 105:16
118:23 125:4
131:20 147:3,9
159:19 180:8
180:19
**weren't** 34:23
70:1,4 74:22
112:12
**west** 169:15
**we'll** 11:9,11,11
38:13 138:21
**we're** 6:21 15:23
20:19 23:14,16
24:22 25:14
32:2,6 33:14
34:10 38:22

41:4 73:18
76:17 90:14
100:14 106:5
113:13 139:19
**we've** 9:7 24:1
136:4
**whichever** 86:13
136:20
**white** 48:19
49:21,22
157:19
**whoever's** 36:8
**wife** 115:5,14
**Wilson** 26:17
27:8 28:23
53:1 70:5 91:9
95:15 103:3
104:12 107:8
109:5,7 110:2
114:2 115:20
118:3,18 121:5
123:15 138:13
141:1 143:20
146:16,21
147:6,9,11,21
167:20 168:13
**Wilson's** 29:2
104:7
**witness** 2:4 5:10
5:22 6:14 24:4
24:5,7 25:1,6
29:10 68:12
77:13,18,20
78:7,10,15,17
78:20,21 79:6
79:16 80:2,10
80:18,19 81:5
82:2,6 91:23
97:4,17 98:6
100:1 104:18
105:7,10 106:6
107:11,17
110:17 111:14
116:11 121:10

125:8,16
136:13,22
148:19 155:9
155:14,17
166:5,9 182:15
**witnessed** 78:23
**witnesses** 26:21
30:11 79:10
98:13 123:22
124:6,14 125:8
127:15 134:17
134:18 135:15
135:23 136:6
136:12,18
137:2,14
141:21 142:23
150:3 157:1
175:21
**wondering** 48:1
**wooded** 40:17
59:7,9 60:19
69:21 146:15
**woods** 27:16
31:5 40:7,15
58:13 61:9
64:9,11 65:5
67:9,12,13
69:18 78:6
79:1,5 81:18
81:21 151:11
151:14,18
164:23
**word** 97:7,7
**words** 57:22
**wore** 124:17
**work** 14:19
16:13,19 21:21
34:7,20 37:2
38:7 41:1,3,7
41:15,18 42:8
43:11,18 68:9
69:2 147:3
176:17
**worked** 14:6,22

# FREEDOM COURT REPORTING

15:3,4 17:18
17:19,20 18:1
18:16,16,17
20:15 21:3
22:1,17 27:7
28:12 30:7
33:5,6 34:16
34:21 44:11
70:23 135:9,10
148:9,10
**working** 15:20
17:5 28:22,23
39:22 40:3,14
43:7 46:5 57:6
106:12 130:14
**works** 16:20
37:10,19 38:5
38:15
**worthless** 16:21
**wouldn't** 73:6
88:4 97:20
108:5 110:20
112:3 121:22
133:23 154:16
179:1,6
**wrecker** 82:19
**write** 51:20,22
154:21 179:6
**writing** 25:4
**written** 24:2
57:11 85:10
143:12
**wrote** 54:20
56:6

—————
**Y**
—————
**yeah** 5:20 27:10
46:9 52:7,7
57:8 68:14
93:20 100:19
107:21 112:17
112:23 114:11
116:2 118:14
118:14 122:19

124:9 129:6
131:4,23 132:1
138:2 140:15
141:8 148:9
166:21 167:11
169:13 176:8
178:2,18
**year** 19:13 21:6
21:11
**years** 12:19
19:15,19 20:20
20:21,22 21:14
21:16 25:7
30:7 31:19
61:3 98:14
124:11 135:11
149:20 163:15
167:8,11
**yesterday** 9:1
28:19
**y'all** 150:2
151:13 160:1
**y'all's** 165:11

—————
**1**
—————
**1** 3:12 13:7
47:11,20 53:14
56:1,15 174:11
177:21 179:22
**10** 86:18 87:15
173:12
**10th** 87:7
**10:17** 73:16
**10:26** 73:16,19
**100** 20:22
**103** 3:15
**11** 4:17
**11:38** 139:2
**11:40** 86:18
**11:45** 139:2
**113** 3:16
**12** 12:7
**12:28** 183:12
**149** 3:5

**16** 6:2
**16th** 140:20,22
**165** 3:6
**17** 1:13
**17th** 2:1
**173** 3:7
**179** 3:8
**18:45** 174:14
**18:45:22** 180:7
**18:50** 174:20
**189** 3:18,20
**19** 178:12,13,17
181:1,5
**1901** 1:23 5:8
**1977** 13:7 18:7
18:15 21:2
148:9
**1980** 18:8,13
**1984** 12:18
**1989** 13:11,12
43:1
**1996** 87:11
**1998** 17:6 20:15
22:1,8 32:23
35:4 48:12
50:3 87:15
103:21 113:3
113:23 114:7
120:12 144:22
146:10,14
**1999** 13:13 43:2
44:6

—————
**2**
—————
**2** 3:13 47:12
48:1 51:15
54:16 144:6,23
**20** 41:5 70:16
**2007** 1:13 2:1
6:4
**22** 174:16
**24** 133:5
**2400** 1:22 5:7
**250** 87:11

**26** 20:20
**272** 178:7,8

—————
**3**
—————
**3** 3:14 85:15,20
173:10
**3-9-98** 3:15
**30** 6:3 12:19
19:15 31:19
98:14
**312.853.2101**
4:8
**32** 6:2
**334.353.4848**
4:19
**35203** 2:1 5:9
**36130** 4:18

—————
**4**
—————
**4** 3:15 6:4
103:10,15
118:2 119:3
**4-6-98** 3:16
**4/6** 118:9
**411** 178:6
180:16,23
181:11,23
**47** 3:12,13
**48** 58:11 59:2,2
170:18

—————
**5**
—————
**5** 3:16 113:9,14
118:15,19
121:12

—————
**6**
—————
**6** 3:4,17 48:11
50:3 52:6
90:19 113:23
114:7 118:16
120:11 121:12
139:13,19
140:14 141:6
141:11 142:12

142:14 143:13
145:20 146:8
146:14
**6th** 119:18 120:1
120:11 144:22
**6:45** 50:16 58:4
174:14
**6:49** 49:18
**6:50** 49:19
**6:53** 57:17
**6:58** 50:16 58:4
**60603** 4:7
**68** 59:3 75:7
143:19 146:16
169:15 175:11

—————
**7**
—————
**7** 3:19 139:14,19
140:13,16
141:4,10,11,12
142:10,13,16
143:10,15,21
145:15 146:10
146:13
**7/8** 141:1
**77** 20:19
**7701** 49:14 56:2

—————
**8**
—————
**84** 180:16,23
181:10,22
**85** 3:14

—————
**9**
—————
**9th** 103:21 118:6
119:2,18,20,21
**9:05** 1:14 5:10
**911** 48:8,9 50:16
53:5,10 55:19
57:1,6,13 77:1
178:23 179:1
**98** 20:19 22:5,9
22:10,13,13,17
35:8 86:18
118:10 140:16

# FREEDOM COURT REPORTING

| | | | | |
|---|---|---|---|---|
| 141:1<br>**98-61.60** 1:4<br>**98-62.60** 1:4<br>**99** 22:14,17 | | | | |



PLAINTIFF'S
EXHIBIT
D. Smith
8-17-07

| **TIME** | **UNIT #** | **MESSAGE** |
|----------|-----------|-------------|
| 18:45:22 | DISPATCH | ALL UNITS: SHOOTING JUST OCCURRED OUTSIDE COURTHOUSE. BOLO FOR WHITE DELIVERY VAN HEADED TOWARD LEESBURG. |
| 18:46:41 | DISPATCH | ALL UNITS: VAN IS 84 PAST FAIRVIEW ON HWY 411. IT IS SOME TYPE OF DELIVERY VAN WITH EXPRESS ??? WRITTEN ON SIDE. VICTIM IS INSIDE |
| 18:47:50 | DISPATCH | UNIT 272 ADVISES THAT BLACK MALE CAME FROM COURTHOUSE AND SHOT DRIVER, THEN PUSHED DRIVER INTO VAN AND SHOOTER IS DRIVING THE VAN |
| 18:49:28 | 7701 | WHAT COLOR IS VAN? |
| 18:49:55 | 7701 | IS IT OLDER MODEL OR NEW VAN? |
| 18:50:09 | 7701 | JUST MET NEWER MODEL WHITE VAN |
| 18:50:36 | 7701 | TURNING AROUND GOING BACK UP MTN TO CHECK OUT WHITE VAN |
| 18:51:19 | DISPATCH | SUBJECT IN LEESBURG ADVISES THAT VAN DID TURN ON AL 68 GOING TOWARD MOUNTAIN |
| 18:51:34 | 7701 | ASKING FOR TAG # |
| 18:51:48 | 7701 | ASKING FOR CLARIFICATION |
| 18:52:04 | 7701 | WHITE VAN GOING ABOUT 75 MPH WITH CHEROKEE LIC PLATE; THIS IS THE VAN LIC # 1CP3656, ANYBODY CLOSE ENOUGH FOR 10-39? |

| TIME | UNIT # | MESSAGE |
|------|--------|---------|
| 18:52:47 | 7701 | I AM JUST PAST CHAMBERS FLORIST |
| 18:53:00 | 7701 | WILL CONTACT COLLINSVILLE |
| 18:56:51 | 7701 | WE HAVE 10-00-- SHOTS FIRED AND SUBJECT IS OUT OF VAN |
| 18:58:49 | CE-10 | CALL ALL OFF-DUTY OFFICERS 10-17 |

PLAINTIFF'S EXHIBIT

2  D. Smith
   8-17-07

# *9th JUDICIAL CIRCUIT NARCOTICS TASK FORCE CHEROKEE / Dekalb COUNTIES*

### *STATE OF ALABAMA*

Agents

## Activity *Report*

98

| Date | Cherokee ⊏ | Case Number | Case Agent |
|---|---|---|---|
| 03-06-98 | Dekalb ⊏ | 98 - | Danny Smith |

| Defendants Name | | Offense (s) Charged | |
|---|---|---|---|
| GAVIN, KEITH EDMUND | | (1) CAPTIAL MURDER  (2) ATMPT. MURDER | |

| Officer Assisted | Agency Assisted | Misdemeanor ⊏ | Trafficking ⊏ |
|---|---|---|---|
| Larry Wilson | Cherokee Co. S.O. | Felony ☑ | Investigation ☑ |

### *Summary:*

On the above referenced date at approximately 6:45 p.m., 911 dispatch put out a BOLO for a white delivery van. Dispatch advised that a black male approached the van, shot the driver, pushed him over in the seat and then the shooter jumped in the vehicle and was last seen driving off in the van headed toward Leesburg on 411.

When the bolo was given out, I was returning from Fort Payne and was passing Sand Rock School.. As I listened to the other units on the radio, I sped up attempting to get in position at the top of the mountain on highway # 68 to observe the vehicle in the event that it got past the other units. At the time the bolo was put out, it was raining and visibility was limited.

When I reached the top of the mountain, the Centre units were attempting to catch up with the vehicle and the Leesburg unit was trying to get back to the 4 way stop  to assist.. I went ahead and started off the mountain and I met a white van just as it crossed the bridge at Bristo Springs, but I was unable to see any writing or markings on the vehicle. I radioed dispatch that I had met a van that fit the description and my location. I advised that I was turning around on the vehicle and that I would advise .

I turned around at the gravel pit and caught up with the vehicle as it topped the mountain. I radioed dispatch that I was behind a white utility van that was marked on the back door, **CORPORATE EXPRESS**, Jefferson County License # 1CP3656. Dispatched advised that was the vehicle and advised the other responding units.

At this point I radioed 911 dispatch to verify my understanding of the BOLO, I asked if I was correct in that I understood this was a car-jacking, that the driver of the van **NOW** was in fact the shooter and that the original driver of the van was still in the vehicle. 911 Dispatch acknowledged that was correct, and I then began trying to determine if any of the other units were close enough to help.

I continued to follow the van and after determining that none of the responding units were close , that they were caught up in  traffic, I advised 911 dispatch  that I was switching radio frequencies to request Collinsville PD to dispatch  a unit to assist.

I contacted Collinsville Police Department and advised them what had happened and requested assistance from their unit. The dispatcher advised that he had a unit at Pat's old Handi-Mart on 68 on another call. At this point, I spoke directly over the radio with Patrolman Rex Leath . I advised him what had happened and my location. I requested that he stay at Pat's, that we had other units responding and we could take him down when we got to him.

The driver of the van was operating the van very erratically, traveling between 60 – 70 miles per hour, attempting to pass several vehicles travelling in front of him, he would  speed up, slow down and was weaving from the center line of the road to paved edge. While talking to Ptl; Leath on the radio, the driver of the van apparently became suspicious of me and slowed down turning on the right hand turn signal and pulling off on the shoulder of the road as he slowed down. I advised all units that the vehicle was stopping just past the pull off at the old service station just past Pat's house,  that I was going to have to go ahead and take it down. As I pulled to the side of the road behind the van, he pulled back onto the highway and accelerated began to sped away. I pulled back out behind the vehicle and advised all units of his actions, that he had pulled back onto the road and appeared to be running.

Still headed west toward Collinsville on 68, we ran back up behind  traffic and had to  slow down again, as we approached the Gas Storage Tanks, the driver appeared to attempt to turn onto the cut through road but missed the turn. As we approached the bridge at the intersection of 68 and County Road 48 we met  Ptl. Leath in a marked unit. The driver of the van attempted to pull out to pas but had to pull back because of oncoming traffic. I advised all units that I was going to go ahead and stop the vehicle, that he was going to be a runner. I advised my location and when I turned on my blue lights, the van slammed on the brakes and slid to an immediate stop in the middle of the highway. I advised all units that the subject had stopped in the middle of the road and that we were on foot.

Narrative Continued :

As I stepped out of my vehicle, the driver, a black male, opened the vans drivers door and jumped out of the van, stepping out away from the door out in front of traffic in the east bound lane of highway 68. The traffic in the eastbound lane of 68 had to make a sudden stop to avoid hitting the van and also the driver as he stood in the middle of the road with his back toward them.. He had a pistol in his right hand, he took aim and he fired one ( 1) shot at me as I was stepping out of my vehicle. I took aim to return fire but had to pull up because I didn't feel that I had a clear sight picture.. As I looked at the subject, I could see a headlight on each side of him from a vehicle that had stopped right behind him .

After firing the shot, he then turned and ran in front of the van toward county road 48, stopping and turning toward me and firing another shot as I reached back inside and radioed that we were on foot, shots fired and requested a 00 Zero. I then started to pursue the subject on foot just as the Collinsville Unit pulled across in front of the van toward County Road # 48. The strobe lights from the patrol unit temporarily blinded me and the subject apparently disappeared into a wooded area near the creek.

After Ptl. Leath and myself made an attempt to locate the subject, I advised Ptl Leath that he couldn't have gone far, that he was standing approximately 25 yards from the van just prior to his pulling up in the patrol car. I requested Ptl. Leath ride out the dirt road and make sure he wasn't running up the middle of the road. I advised him that I would return to the van and check on the driver.

I found the driver, a white male who appeared to be in his sixties still partially seated in the driver's seat but laying over on the passenger's seat. After checking the driver, I returned to my vehicle and radioed 911 dispatch and requested an ambulance 10-17 and again gave him my location.

Other units began to arrive on the scene and I advised them what we had and requested that the wooded area be boxed up to contain him and that the K-9 handlers from the Department of Corrections be notified.

I grabbed my medic-bag from my vehicle and returned to the van and began to work with the victim. After checking further, I radioed the responding ambulance and advised them of my assessment and that I had observed what appeared to be at least two separate entry gunshot wounds.

I stayed with and continued to assist the victim until the ambulance arrived. I assisted them in packaging him and the on scene treatment. After he was removed from

**Narrative Continued :**

the van and placed in the ambulance, we observed what appeared to be an exit wound in the right upper chest under his right arm as we finished packaging him for transportation to the ER. I requested one of the Rescue Squad members to relieve me and I returned to assist in the search.

## Defendant Identifying Data

**Name : GAVIN, KEITH EDMUND**

**Phone** ( )

**Address :**
1440 WEST 14th Street
Chicago, IL

| DOB | 03/30/60 | Race B | Sex M |
|---|---|---|---|

**SSN : 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**

**Oln :**   **State : ILLINOIS**

**Copies To :**
File ☐
District Attorney ☑
Other Agency ☐

**Agents Signature**
Danny Smith

4

PLAINTIFF'S
EXHIBIT

# Cherokee County Sheriff's Department
## RECEIPT FOR PROPERTY

3   D. Smith
    8-17-09

NAME: SOTZNATI, SANDRA FREEMAN

ADDRESS: CORPORATE EXPRESS

2032 SHAGBARK RD. B'HAM, AL. 35244

SOCIAL SECURITY #: 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   D.O.B.: 01/22/54

LOCATION WHERE PROPERTY WAS OBTAINED:

CASE NO.: 980030032

OWNERS NAME: CORPORATE EXPRESS

OWNERS ADDRESS:

DATE: 3/10/98   TIME: 11:40   AM

| ITEM NO. | QUANTITY | DESCRIPTION OF PROPERTY (include model, serial number, identifying marks, condition, and value, when appropriate.) |
|---|---|---|
| 01 | 01 | SET OF KEYS - 1-FORD VAN IGNITION KEY, 1-FORD VAN REAR DOOR KEY |
| 01 | 01 | 1996 FORD ECONOLINE 250 SER # 1FTHE24YOTHA49835 AL. TAG # 1CP3656 (CORPORATE EXPRESS LOGO ON VAN) |

NAME AND I.D NUMBER OF OFFICER OBTAINING PROPERTY: H. DEAN BUTTRAM, III

SIGNATURE:

I.D NUMBER: CE-12

## CHAIN OF CUSTODY

| ITEM NO. | DATE | RELINQUISHED BY | RECEIVED BY | PURPOSE OF CHANGE OF CUSTODY |
|---|---|---|---|---|
| | 3/10/98 | | Sand Lomax | RETURN TO OWNER |

EMPIRE PRINTING · CENTRE, AL · (205) 927-8460

## CHAIN OF CUSTODY (Continued)

| ITEM NO. | DATE | RELEASED BY | RECEIVED BY | PURPOSE OF CHANGE OF CUSTODY |
|---|---|---|---|---|
| | | SIGNATURE | SIGNATURE | |
| | | NAME | NAME | |
| | | SIGNATURE | SIGNATURE | |
| | | NAME | NAME | |
| | | SIGNATURE | SIGNATURE | |
| | | NAME | NAME | |
| | | SIGNATURE | SIGNATURE | |
| | | NAME | NAME | |
| | | SIGNATURE | SIGNATURE | |
| | | NAME | NAME | |
| | | SIGNATURE | SIGNATURE | |
| | | NAME | NAME | |
| | | SIGNATURE | SIGNATURE | |
| | | NAME | NAME | |
| | | SIGNATURE | SIGNATURE | |
| | | NAME | NAME | |

## FINAL DISPOSAL ACTION

RELEASE TO OWNER OR OTHER *(NAME/UNIT)* _____

DESTROY _____

OTHER *(SPECIFY)* _____

## FINAL DISPOSAL AUTHORITY

ITEM(S) _____ ON THIS DOCUMENT, PERTAINING TO THE INVESTIGATION INVOLVING _____

*(Grade)*

_____ *(Name)* _____ *(Organization)* _____ (IS) (ARE) NO LONGER

REQUIRED AS EVIDENCE AND MAY BE DISPOSED OF AS INDICATED ABOVE. (If article(s) must be retained, do not sign, but explain in separate correspondence.)

_____ *(Typed/Printed Name)* _____ *(Signature)* _____ *(Date)*

## WITNESS TO DESTRUCTION OF EVIDENCE

THE ARTICLE(S) LISTED AT ITEM NUMBER(S) _____ (WAS) (WERE) DESTROYED BY THE EVIDENCE CUSTODIAN, IN MY PRESENCE, ON THE DATE INDICATED ABOVE

_____ *(Typed/Printed Name, Organization)* _____ *(Signature)*

PLAINTIFF'S
EXHIBIT

4 D. Smith
8-17-07

Interview with:   DeWayne Meeks
                  DOB:  12-28-64
                  SSN:  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
                  423 West 179 Street
                  Country Club Hill, IL
         Date:    3-09-98

Present at Interview:        Tom Arambasich
                             Tony Birch
                             Danny Smith
                             Larry Wilson


STATEMENT OF DEWAYNE MEEKS


On 3-09-98, we talked with DeWayne Meeks about the murder of William Clinton Clayton, Jr.  DeWayne said that Keith Gavin was his cousin and that he had been letting him stay with them since he got our of Prison to try and help him.  DeWayne said Keith had been doing good since he got out.  He said he had let him come to Fort Payne with him back in January to see his family and he didn't have any problems with him.

DeWayne said Keith asked him to take him to see his girlfriend in Chattanooga, Tennessee.  He said he told Keith he didn't have the money to go.  DeWayne said Keith told him that if he would use his credit card that his girlfriend would reimburse him the money, that she had gotten her Income Taxes.  DeWayne said he would take him, but he was going to take his wife and baby.  He said they went to Chattanooga, Tennessee, but she was not there so they got two rooms at the Super 8 Motel.  He said they started up to the rooms and Keith

ked him for the keys to his Blazer.  He said he gave him the keys and
en him and his wife went on up to the room.  He said in a few minutes
ith came on up and went to his room.  DeWayne said they stayed in
oms 113 and 114.

He said Keith asked him to take him to Fort Payne to meet
r.  DeWayne said he told Keith he didn't want to go to Fort Payne
cause if he didn't go by and see his family they would be mad at him
nd he didn't want them to get mad.  DeWayne said finally he told Keith
e would take him but he was not going to ride around all over Fort
yne.  DeWayne said they went to Fort Payne to the bowling alley and
at for an hour and then went to look for her house.  He said Keith
id he thought he could find it.  DeWayne said he told Keith he didn't
ave the money to ride around all over the place looking for her.  He
id Keith said that she would give him the money when they found her.
Wayne said he told Keith that his wife was going to be mad at him if
e didn't live up to his part of the bargain.  He said Keith kept on
til he told him he would take him to see if he could find where she
ved.  He said they rode around looking and wound up in Centre.  He
id they pulled up at the red light between the Courthouse and the
nk.  He said they were still fussing about the money.  He said there
s a van parked next to the bank.  He said Keith said pull up to the
m and he would ask him for directions.  He said he did and Keith got
t and went over to the van and told the guy to get out.  He said he
llered at him and asked him what are you doing?  He said then Keith
ot the guy and he turned and looked at him like he was next and he

door. DeWayne said he turned right toward Leesburg. He said as he started turning he looked back and saw Keith shoot the guy one or two more times and then push the guy over in the seat and get in the van and take off after him. He said Keith tried to get him to stop several time but he wouldn't stop because he knew Keith would kill him. He said they were going toward Collinsville. He said he looked back and saw a patrol car stopping Keith. He said he didn't stop because he was scared for his family's safety. He said all he could think about was getting back to them before he did, because he knew if he beat him back to the motel Keith would kill his family and wait on him. DeWayne said when he got back to the motel he told his wife what had happened. He said they talked about it and decided it would be better to wait until they got back to Illinois to report it for their protection. He said when he got back he called Marty Tutor and Nelson Burris and told them what happened. Then he said had Tom Arambasich to come over to Marty Tutor's house and he told him what had happened. DeWayne said then Tom called his superior officer and told him. Then he said Tom and him called Tony Birch with the Fort Payne Police Department and told him what had happened. DeWayne said then Tom called Cherokee County Sheriff's Department and told them he had a witness to the shooting. Then they had Larry Wilson to call Tom and talk to him and to me. DeWayne said the gun that Keith had was his gun. He said he had come back and reported it stolen. He said he didn't know when Keith took the gun out of his Blazer; at the motel or if he got it from out of his house.

x _DeWayne Meeks_
4-6-98



PLAINTIFF'S EXHIBIT

5   D. Smith
      8-17-07

TAPED INTERVIEW OF DEWAYNE MEEKS

TOPIC:        MURDER DURING THE COURSE OF ROBBERY/
              ATTEMPTED MURDER

LOCATION:     WILL COUNTY SHERIFF'S DEPARTMENT
DATE:         APRIL 6, 1998
INTERVIEWER:  DANNY SMITH, DISTRICT ATTORNEY'S INVESTIGATOR
              LARRY WILSON, CHEROKEE COUNTY S. O. INVESTIGATOR

WILSON:       This will be an interview with Dewayne Meeks in the
              presence of Tom

ARAMABAISCH:  Arambasich

WILSON:       Danny Smith and myself, Larry Wilson.  This will be in
              reference to the death investigation of William Clinton
              Clayton, Jr.  Today's date is 4-06-98 the time is 10:15
              a.m.
              DeWayne if you will tell us what happened back on March
              6.

MEEKS:        Okay, um as far as I remember, my cousin wanted me to
              take him down to Alabama to see a female.  A girl he had
              met a couple months earlier.  Um, so I told him, yea no
              problem I will, but I don't have any cash like that just
              to ride up and down the road.  So he said when we get
              down there the girl will pay for this trip.  What he said
              was hit me and that um, would take care of the expenses
              for me driving all the way down there.  So I said Okay.
              So I told my wife, I said um, go with me, help me drive
              because I know that Keith is not a good driver as far as
              the highway you know he hasn't driven a car in allot of
              years.  So she didn't want to go, so I convinced her, I
              said you ride with me, we'll come back the next day.
              We'll just sleep over and come back in the morning.  Um,
              I told him that.  It was me, him, and my son.  We went
              down there.  Um, I put everything on the credit card and
              so when we got there to Chattanooga.  I was suppose to
              take him to Chattanooga.  So when we got to Chattanooga
              we went to the motel.  I got two rooms, he said that the
              girl may want to stay up there, you know and do their

thing or whatever.  I said we was going to leave in the morning.  So when I went in I noticed, I didn't think nothing of it then; but I um, I told Keith, "You want to go in and use the bathroom before we go?" He said no, no, no, but um, let me see your keys.  But I'm like I thought it was funny.  So I said Okay.  So me and my wife went in and checked in the room and everything and so I used the bathroom or whatever and I told her that I would be right back I'm going to drop him off at the gas station and he is going to call her and tell her we're gonna pick her up or whatever.  So um, when I'm on my way out to take him, he's on his way back in.  I said, "What are you doing man?"  So he said, I gotta go in the room for a minute.  I said alright, I thought that was strange, but I didn't think nothing about that.  Um, so when he finally got out there, um I took him to the gas station.  He stayed there for not long, 30 minutes at the most.  Um, then he said well just take me to Fort Payne then.  I said, "No, no, no!  I done told you I can't go to Fort Payne.  Because me and my baby's mother are in to it about who's going to tax, um, who can draw her on the tax this year."  I said um, we already into it, if I see her coming, um if my little daughter know I been coming there and didn't see her that would be more drama.  I already had a tough time and I know that if I go to Fort Payne, I know so many people there that somebody will pick me up.  So I said lets just go to the motel or something or a little part of town and no body will know you are there.  So I'm going, we go to Fort Payne.  We sit there, went to the bowling alley.  When I came in on the highway we pulled around and he said stop right here.  So we were at a bowling alley.  Um, so I'm kind of sleepy still, mad because I'm already nervous.  I kept saying man, somebody's gonna see me, somebody's gonna see me.  They gonna tell my little daughter I came here without seeing her, you know.  So we talking about, we stayed there for a little while, and he was saying um, that she's gonna hit me, kept reenforcing me.  We kept talking about the money issue.  I'd put everything on the card, and if I were coming back to that motel without any funds for the trip down there.  I said there's going to be some trouble between me and ole girl.  Cause we got a set amount of money that we can use for this and that and she didn't really care to much about Keith so that would have been a big, big fight about that.  So, I'm dozing off, waking back up saying man what's up?  What's up?  And he said well, I know where she lives.  She lives in a place like a, it sounds like an Indian.  I said, "Cherokee County?" He said, "Yeah, yes somewhere like that." I said, "Alright!"  So we take off up 35.  He said, "Yeah, yeah

2063

this is the way." Remembering. So, I'm going all this and that and in the mean time I've been up like 24 hours off and on dozing off. And I'm getting kind of ill. And when I get kind of ill, I get kind of sleepy, even tired, kind of irritable. So I'm really, then feel like I'm being a Yo-Ke Doke. And so we are talking back and forth. So finally, um, we got to kind of like a dead-end, a street with a stop light, he said pull up, I'm going to ask this guy for directions. I said, "Alright man, alright." So he gets out and I noticed on my left at the stop light there's these guys in a pickup truck and they looking at me and I said oh, no. I said to myself, I can remember this quite clearly, these guys are fixing to start something, they look like you know, some good ol' boys or whatever. And Uh, so all of a sudden I keep looking at them and I noticed that they are not looking at me, they are not really looking at me they are looking through me, like this. So I look back and I see Keith telling this guy, I really can't tell you what he said, but I see this guy shaking his head. So I said, "Keith, what are you doing?" I'm screaming and hollering and um all of a sudden a shot rang out and um I guess the car moved up or something and when, it like happened so fast when the first shot rang I floored it, the door was like open and it hit'em like that, bloop, and it close on when I hit'em like that. So I took off and I moved up a little bit to the light, and when I see in the back, I see Keith fire again, you know. And all of a sudden he pushed the guy over and then he follow after me. So I said , "Oh no, the first thing I said was Oh, Sh___, like that." So, I'm taking off I turned right. I'm taking off I'm flying. It's raining and stuff so I'm probably going 55 or 60. All of a sudden he is behind me and he pulled up behind me. Trying to blink at me, trying to get me to pull over. I said, "No, no, no!" Because I was scared to death, I'm scared that he's mad because I took off and left him and um, or I'm a witness or whatever. So all of a sudden, we going and going; I kept saying, "No, no!" I knew I had to get back to the apartment, the hotel, I gotta get Sharon; because if he gets there before I get there I'm in trouble. So, finally I see a blue light, um pulls him over and I take off. I get back to the motel room, and um, I tell her what happened, tell my wife what happened and um, she said okay, that we gonna do something. So I said, "I need to make a statement", like that. She said, "Yeah, you're right." So the baby was hollering and crying, because it was an upsetting moment and she said he ain't ate nothing and said, I said well go carry him to eat or something like that, for a minute to decide what we gonna do. So they

went to McDonald's or somewhere and came back she said, "Sweetie, um I know why you didn't stop and tell the police then, because um, it may be a little racial thing about um, a White guy and a Black man." She said, "Let's go up North and you make your statement in Chicago." I said, "Okay, cool!" So we got in the car and drove back that night real fast. And so when I got there, um I got home I remember about 6:45, I called Marty Tutor, um I remember it was like, um 6:50 or something, cause Marty said, "Man, I'm just fixing to take my wife to the airport, she's going somewhere!" I said I need you to come over real quick, I got something to tell you, and um, its important. And Marty said, um I'll be over there in a minute. Well, he had to take his wife to the airport and he came over afterwards. And so I called Nelson Birch, in Alabama, and told him, "Man I need you to look up and make sure they caught this guy. Something happened in Centre, I need you to tell, make sure they caught this guy. Something happened and I want to make sure my family is safe or whatever. And then, Nelson never did call me back, because he didn't know what's going on. So I think the next person I called was Uncle Tom. You know he wasn't at home, so I left a message on his machine for him to contact me. So finally, me and my wife looked around the house, because I told her I think that gun, I don't know where he got that gun at, it may be mine. So we looked around the house and searching or whatever, and then finally I said, "Oh, no!" I found two clips that was there, but I had three clips to the gun. I said, um I think when I talked to you or Marty, Marty told me I need to make a police report and tell them the gun was stolen. He said don't tell them that you think it was used in a Robbery until you know for sure, just tell them you think whatever. So I said, "Okay." So I called Country Club Hills Police, made the report and then finally Marty come over and said you know you need to get out of here, find a lawyer and make this statement to him. So we went to Joliet, um to Marty's house and we kept trying to call Uncle Tom. Finally Uncle Tom called and I told him you need to come over real quick, I said it's very important. He came right over in less than about 15 or 20 minutes, and I told Uncle Tom what happened. He said, "No problem." He said, "We gonna take care of this." He said, "What we need to do is, um call down to Alabama." So, we um called Tony Birch and told Tony what happened and that's how we got started calling you guys on what happened and everything. I know I'm rambling, but everytime I repeat this it gets me shook.

SMITH:        Of course it's been some time since it happened, nobody
              expects you to remember everything detail by detail. But
              for the benefit of the tape and I know when we talked to
              you before and started to tape and also on one prior
              occasion when we taped it and the tape didn't turn out.
              Um, Keith is a cousin of yours, is that correct?

MEEKS:        He's a First cousin.

SMITH:        Okay, and um Keith is a currently on Parole or was on
              Parole?  And what about, I told Larry that we didn't ask
              you, and I meant to, I don't know why we didn't.  But
              Keith, was he paroled out in anybody's, I don't know how
              they do that here, was he paroled out in anybody's
              custody that he had to have a particular address, a place
              to stay and a job when he come out?

MEEKS:        Okay......

SMITH:        How do they do that?

MEEKS:        Um,....

SMITH:        The main reason I'm asking is was he paroled out in your
              custody?

MEEKS:        No, he was paroled out to his mother or released to his
              mother or whatever.  I know he was staying over there.
              Um, because I thought he was released, I thought he had
              did his whole time.

SMITH:        Okay.

MEEKS:        Um, he was released to his Mom.  He was having problems
              at home off and on.  Because one time he used to call me
              all the time and say these terrible things about the
              murders and everything.  Him and his sister got into it
              one time.  And um, I said man just come over to the house
              and just chill with me, just chill for the weekend and
              get your mind right.  We got television, you can flip it,
              um, we live in like a nice part of town, no gang banging.
              Cause he lives in the gang banging part of town and I
              understand what he was going through.  So I said just
              come over here and chill.  So he was staying with us off
              and on every other weekend, or a week, whatever.

SMITH:        Okay, the trip to Alabama.  When he asked you to take
              him to Chattanooga to his girlfriend's.  Was that trip a
              a spur of the moment thing or did he talk about that for
              several days before he asked you to take him down there.

MEEKS:      Um, that day it was spur of the moment.  Because I know
            he wanted to go back there and see her.  Because he kept
            talking about her.  Because I told him, man you have to
            chill down South if you want to get away from the gangs
            and stuff.  So he said he'd been talking to that female.
            But that day was a surprise to me, that he wanted to go
            that day, you know.

SMITH:      I think before when we talked to you, um we had asked who
            the girl was and you didn't know the name at that
            particular time, but he did go home with you once before
            and you've got some family living there in Fort Payne.
            And on one prior trip back home, he rode home with you
            one weekend or something.  Okay, so he could have known
            or have you since found out the name of the girl.

MEEKS:      Cassandra is all I know.  And I found that out about a
            week or two ago.

SMITH:      Okay.  So all you know is the girl's name is Cassandra?

MEEKS:      Uh-Huh.

SMITH:      Okay.   I've got some pictures of.... I've got three
            photographs of the bank or that intersection there in
            Centre where the bank is.  I'm going to ask you a couple
            of questions, so to clarify in our minds.  You told as
            you were talking about the people that were sitting next
            to you in the truck.  That the guy was sort of turning
            looking back at you.  Which would indicate to me that he
            was park directly in front of you and um, that he was
            looking through you.  So just for clarity, I'm going to
            ask you to show me on the photographs if this in facts
            looks like the intersection to you.

MEEKS:      Uh-Huh..

SMITH:      How were ya'll position as far as the truck or the van
            was concerned over there that day?  I didn't know if
            ya'll had pulled up behind it like you were going to park
            or whether you were still out in the street?  But there
            is three photographs.  This one here is, they are staged,
            this one is coming up to the intersection, this one is
            setting at the intersection, this one makes the turn.  But
            the courthouse is on this side of the street here.

MEEKS:      On the left?

SMITH:      Yeah..  This right here is the corner of one of the
            windows, the basement windows over at the courthouse.

MEEKS:      All right.

SMITH:      Um, but this for the record, this is the Regions Bank and this is the area where the shooting occurred.

MEEKS:      This is where it happened?

SMITH:      Yeah!

MEEKS:      I don't remember...

SMITH:      The photographs are not, is not a wide angle lens so there is going to limited view, but this right here is the turn going toward Leesburg.

MEEKS:      That's the way I went?

SMITH:      Yeah.   This is Main Street right here.

MEEKS:      Okay.   I pulled up, I say the truck was right here (pointing on the photograph) and the van was probably right here somewhere.

SMITH:      Okay.   Was the van pulled up real close to the intersection?

MEEKS:      Uh-uh, no, I thought we were further away to it.

SMITH:      Uh...Don't let me confuse you because I'm not trying to confuse you or trick you up on it, but when you said you heard the first shot fired....

MEEKS:      Uh-huh....

SMITH:      You pulled up the door hit him, and you looked in your mirror......

MEEKS:      Uh-huh.....

SMITH:      And you could see him.....

MEEKS:      Uh-huh.....

SMITH:      So, if you pulled up to the intersection......

MEEKS:      Yeah......

SMITH:      He had to be back a distance.....

MEEKS:       Yeah..

SMITH:       In order for you to see him.

MEEKS:       Yeah, it was back a distance.  I..um..if...the way it
             went I say we were about right here (pointing to the
             photograph) because the truck was pulled up right here
             (pointing to the photograph again) I didn't go all the
             way up, cause I never, when you pull all the way up to a
             car they looking down at you that's when stuff can start.
             So I kind of pulled behind him, so he really wouldn't....

SMITH:       You laid back when you stopped at.......

MEEKS:       Yea......

SMITH:       The intersection?

MEEKS:       Yeah, I laid back.  I never, like I said if there is two
             (2) cars  right  here  (illustrating)  and  a  third  one
             together,  what  I  would  park..um  pull  up  about  in  the
             middle.  Just because me be a security and working in
             security   environment.     I   try   not   to   get   in   a
             confrontation  with  people.    I  figure,  I'm  from  down
             South.  And so, I was like (illustrating again) the truck
             was right here and I was right here, I guess the van was
             right  there  too  parked  next  to  us,  or  whatever.    So  I
             guess  I  was  about  maybe  on  ahh..the  ahh..on  this  side
             right here (pointing at the photograph).

SMITH:       Uh-huh.....

MEEKS:       It was kind of dark.  And so when I pulled up and I
             looked in the mirror.  Yeah....Yeah that's what happened.

SMITH:       Okay.  Let me....I want you to think through it now,
             Because if you are sitting, sitting behind the truck...

MEEKS:       I wasn't behind the truck.....

SMITH:       Okay... Well, alright if you are sitting staged back,
             basically behind the truck.

MEEKS:       Uh-huh...

SMITH:       You take off your door hits him and closes.  Then you had
             to be back behind the vehicle.

MEEKS:       Okay......

SMITH:      So Keith would have been in front of you and the person
            would have been looking across.....

MEEKS:      Because, the truck when it first, the truck jumped, I
            guess it jumped and then it went like that (illustrating)
            for a minute.  And I took off......

SMITH:      The vehicle, that Uh....

MEEKS:      It jumped......

SMITH:      The one that was parked there on the side.

MEEKS:      Yeah......

SMITH:      Okay....

MEEKS:      It jumped......

SMITH:      Alright....

MEEKS:      It jumped and it kind of went up and he was in front of
            me a little bit for a minute.  Like the wild west, for
            the first of I remember I told you, it was like, it was
            like a shoot out at O-K Corral.  And so when he first
            jumped, um....like this (illustrating), I kind of like
            cringe like this (illustrating) and I just....vrooo...and
            it hit like boom like that and it shut my door like that.

SMITH:      Okay.  So, when Keith got out and asked for directions..

MEEKS:      Uh-huh

SMITH:      Are you looking forward, to your right or did you have to
            look over your shoulder......

MEEKS:      Yeah, its about like right here (illustrating)....

SMITH:      Okay....

MEEKS:      Right there....(illustrating)

SMITH:      So, you're parked just a little bit ahead of the
            vehicle.....

MEEKS:      Uh-huh....

SMITH:      You stopped in the lane of traffic?  You didn't pull over
            next to the curb or anything?

MEEKS:      No...Un-huh....No....

SMITH:      We had one witness that said it looked like the vehicle
            had pulled up behind it and parked.  I think another one
            said that it stopped beside it.  I told Larry, I said we
            didn't even ask to clarify that.

MEEKS:      I was next to the pick-up truck.

SMITH:      Okay.  But you did not pull up against the curb behind
            it.

MEEKS:      Nope....

SMITH:      Did you have a...uh...was a head light out on your truck
            on your truck that night?

MEEKS:      Uh-huh.....

SMITH:      Okay.  Do you remember which one?

MEEKS:      Uh.....Right.

SMITH:      Passenger side?

MEEKS:      Right side.....Yeah.

SMITH:      Okay.  Was there a...was there any other vehicles
            around...I mean behind you.  I mean.....

MEEKS:      I don't remember nothing about it....I know it was like
            several vehicles stopped over like maybe like (pointing
            and illustrating) right there, right here and right here.
            I remember two or maybe three vehicles besides myself.

SMITH:      Okay.  For the benefit of the tape, also the vehicle you
            were driving that night was a what?

MEEKS:      Blazer.  A Green Blazer.

SMITH:      Okay.   Is it dark or light green?

MEEKS:      Dark.

SMITH:      Okay.  Its um..I think its a S-10, 2-door, I believe,
            isn't it?

MEEKS:      Uh-huh....

SMITH:      Okay.  That will clear that up on which vehicle was
            which.  The witness described one with a headlight out.
            It was parked or whether they thought it was parked. I
            believe when we talked to you before, um...prior to the
            start of the tape, we provided you with our notes from
            the previous interview.....

MEEKS:      Yes..

SMITH:      And let you look through it.  Um....the ah...other than
            maybe some misspelled words.  The statement that was
            dated 3-09-98, it that pretty much what, anything you
            want to take an issue with, was everything correct in it?

MEEKS:      It looks pretty good....

SMITH:      Okay.  Alright.  The um.....Anything from Keith prior to
            this that would indicated to you that anything like this
            might happen?

MEEKS:      Uh.....No.  But when he kept.  When he called me at his
            house and um....I mean I was at work a couple of times
            when he called me and he said he was about to blow or he
            was going to get a case of something.  Cause he was
            having problems with his family, but I thought that was
            just...um...I ain't never heard of him hurting his family
            or nothing.  But I know he needed to cool off so that why
            I had him hanging around me, because I figured and that
            me and my belief is that if you hang around positive
            folks that something would rub off on you.  And so he was
            doing good.  As a matter of fact he had uh...I got him at
            this Elite, I think its a Day Labor place.  He was
            working there a little bit.  He was doing, which I
            thought was doing pretty good, you know, I know that in
            his neighborhood and everything.  And if you know
            anything about Chicago, some of the rough sides,
            sometimes these guys get to be a part of their
            environment.  So I figured if he hung around some
            different folks, you know.

SMITH:      He, um....for the benefit of the tape also.  Keith had
            just been release in um...I think um...December 27......

MEEKS:      27th...

SMITH:      28th..  Um...from a detention here in Illinois
Penitentiary for Murder?  I think he had been there um.....

MEEKS:      17 straight years.

SMITH:      Okay.  So he hadn't been out long?  He just and um...if I
            gather from what you are saying.  Um....he had a problem
            re-adjusting to society or to civilian life and you were
            trying to help him work through that, by him calling you
            and saying that he was having trouble at home or he
            couldn't get along or whatever.

MEEKS:      Uh-huh.

SMITH:      Okay.  Um....but he hadn't been in any trouble that you
            know of since.....

MEEKS:      Not that I know of...  I mean he stayed with me, plus I
            was at work.  I even took him to the gym a couple of
            times with me.  Um...because that was always a thing for
            me.  Staying in the gym....um...do things feeling better
            about yourself and everything.

SMITH:      Okay.  Um.....how long had he stayed with you, before
            ya'll left to bring him to.....

MEEKS:      I think the weekend before.  He stayed a couple of days.
            Um....one day I tried to get him to stay.  Um....he said
            no take me home.  Lets go on.  I said, I was already back
            out at my house and I had to get up and go all the way
            back out there.  And that was a problem too, because my
            wife always thought I was out there doing something wrong
            because um.....I you know she had her reasons, but.

SMITH:      Yeah.  So it was causing you problems....

MEEKS:      Yeah.

SMITH:      Trying to be nice to him and accommodate him was causing
            you some problems at home too.

MEEKS:      Yeah.

SMITH:      He  um...the  night  before  ya'll  left  to  come  to
            Chattanooga.  Did he spend the night with you that night?
            Or did ya'll....

MEEKS:      He was at my house.  Um....yeah. Um....I think I went to
            get him and I came back and got my wife.

SMITH:      So he wasn't....you had to go pick him up at his
            mother's?

EEKS:       Yeah.

SMITH:      Okay.  So he didn't spend the night there the night
            before you left?  Okay, I believe you told us that you
            worked third shift the night before.

MEEKS:      No.  Um....I worked that morning.

SMITH:      Okay.  You...anyway you had worked that day and after
            work was when ya'll left and come to Alabama?

MEEKS:      Yeah.  It was late at night, because I went to the gym,
            worked out, my usual thing.  Um...had to take care of
            some business or whatever.  I went and packed my stuff
            and told him I'll be there to get you and everything.

SMITH:      Okay.  When ya'll registered at the motel in Chattanooga,
            I think you said you registered in two rooms?

MEEKS:      Uh-huh

SMITH:      Um....because you though maybe that when his girlfriend
            got there that they might want to stay over or use the
            room?

MEEKS:      Uh-huh

ITH:       Um...did you fill out the registration on both of them?

MEEKS:      Yes

SMITH:      Okay.   Did you show two adults in each room?

MEEKS:      Uh...I showed.  They asked who was going to be staying.
            And I said two, because I didn't want any problems with
            them.

SMITH:      Okay.  Well, we've gotten the information from them and
            the registration showed two adults in each room.  That's
            the reason....

MEEKS:      Because, you know I didn't want to have some problems
            later, you know...

SMITH:      What age is your son?

MEEKS:      He is 3.

SMITH:      Okay.  That's the one that went with you down there.
            What um..you called his name a while ago.....

.EKS:       Kent.

SMITH:      Kent.  So it was him and your wife and you and Keith were
            the ones who actually made the trip.

MEEKS:      Uh-huh

SMITH:      The other adult was, so what you figured if she showed up
            that she would be in the room, so you went ahead and told
            them two.

MEEKS:      Uh-huh

SMITH:      Okay.  What time of the night did ya'll leave after the
            shooting happened?  You got back to the motel, do you
            remember about what time you left Chattanooga going back
            home?  Did ya'll stay the night?  Get up and leave the
            next morning?

MEEKS:      No...No...We left that night.  10ish, 10:45 something
            like that.

SMITH:      Okay.  So that put you getting home what....8:00 or 9:00
            in the morning?

MEEKS:      It was really quick.

..ITH:      Okay.  Do you remember anything about the service station
            in Chattanooga?  Where you went to sit and wait on her.

MEEKS:      Un-huh

SMITH:      But, ya'll left the motel, I believe you say in the
            previous interview, that um...you left the motel and you
            waited around at the station around 45 minutes to an hour
            and she didn't show up.  He wanted you to take him over
            to Fort Payne?

MEEKS:      Uh-huh

SMITH:      And um...that you didn't particularly want to, but you
            went ahead, you were that far, that close you just went
            ahead and made the trip.  Now, um...I think also in the
            notes of the other statement that you reviewed..um...you
            talked about the fact that the girlfriend looked like it
            was going to be a wash, looked like probably he was
            pulling your string on that....

MEEKS:      Uh-huh

SMITH:      That ya'll had argued about the money.  Um...how...to
            what extent....I mean....um....you didn't go into allot
            of detail then and you may not be able to now.  But when
            you say you argued, what, just how far did it go?

MEEKS:      Listen...you know...it..it really...to me it was just me
            being irritable and he said don't worry about it, don't
            worry.  I got you, I got you, cuz.  Just like that.  But
            it was an argument, but it was not like a fight.  I would
            never fight him.  Because I know would he _____.  It
            wasn't like I'm hollering or nothing.  But when I get
            irritable, I get sarcastic real bad.

SMITH:      Ya'll were having a serious discussion, to say the least
            about the fact that he promised you he would pay you the
            expenses and he wasn't coming across with his end of it.

MEEKS:      Uh-huh

SMITH:      And...um...did he say that if she didn't take of it, that
            he would?

MEEKS:      No.  He never would, because I knew he didn't have no
            money and I never would have fell for that.

ITH:        I believe before you had said um...that she was going to
            hit you hard on it because she was getting like some
            Income Taxes back or something and that she would pay for
            your expenses.  Um...I'd asked you before if he had
            called from your house, um..um..called the girlfriend or
            anything with a number that we might be able to run down.
            Have you had the opportunity to look or have you found a
            number or something that we might be able..um...do you
            know of any way to contact her.  Mutual friend or
            something.

MEEKS:      Okay.  Um...Charles Carter introduced them...well his
            girl...his girlfriend introduced them.

SMITH:      So, if we get with Charles or his girlfriend, they should
            be able to tell us who the girl is?

MEEKS:      If they really know her like that, yeah.

SMITH:      Okay.  Um....the um...there wasn't um...I know we asked
            this before, but there wasn't any discussion about the
            robbery or anything that he said that might lead you to
            believe that he was going to do anything other than ask

for directions.

MEEKS:      No.

SMITH:      Did it um...did you not...did it not seem a little odd to
            you, of course I realize that you had been up and um....
            that you had worked all day and you had been on the road,
            um...I can relate to that because we did that yesterday,
            so I know how it is.  But did it not seem a little odd to
            you for him to have a girlfriend that was suppose to have
            been in Chattanooga, then Fort Payne and now we're over
            in Centre?   Then he's going to pull up and ask for
            directions and don't even know her name or....just....is
            he just that quite and kept to himself that much?

MEEKS:      Yeah.   He was quite, but..um...I told him I didn't want
            to go to Fort Payne.  So he said take me close.   So I
            said, "Well I'll get you to Chattanooga, everybody knows
            where Chattanooga is at."  "It's straight up the highway
            so it will be easy to find."

SMITH:      Okay.  So the stop in Chattanooga was actually your....

MEEKS:      Uh-huh

SMITH:      Something that you told him you would do to keep from
            going to Fort Payne?  Um.....

MEEKS:      I told my wife, I said um..."We'll go to Chattanooga and
            it will be easier, we get back on the highway and you
            know go back to, you know Illinois."

SMITH:      I think..um...to clarify that...um...I think before that
            you told us that you and your wife had been to court on
            Child Support..or

MEEKS:      No...no...My child in Fort Payne.

SMITH:      Okay..

MEEKS:

SMITH:      Okay.  So you've got a daughter in Fort Payne...

MEEKS:      Uh-huh

SMITH:      You just been back to court or been back through DHR or
            something up here....

MEEKS:      For the....um....Child Support.  And we were getting...I

SMITH:    was going to claim her on taxes and um...we were having a
          thing about that too.
          Okay.  So that was the reason that you just really didn't
          want to drive right back into Downtown Fort Payne, there
          was no other reason than that?  Um..I think that when we
          talked before and when we did I don't think at that
          particular time we hadn't recover a weapon.  But since
          then, we have.

MEEKS:    Yeah.  That was a blessing.

SMITH:    It is going to be the .40 caliber Glock.  The serial
          numbers and everything matches the one you reported here.

MEEKS:    That put the pressure off of me, from him thinking that I
          just snitched on him .

SMITH:    Yeah.  Has he um...had any contact with you since...

MEEKS:    Uh-huh

SMITH:    Since he's been locked up?

MEEKS:    Uh-huh

SMITH:    Anything out of the ordinary...Anything that we need to
          know, or anything that you think we might should know?

MEEKS:    I think I just told you the conversation consist of um..
          when he finally told me...one day he called and um...my
          wife told me don't accept his phone call.  I wanted to
          know what was he thinking, you know as far as um...was he
          going to do something to me for leaving him or whatever?
          So the thing was, the first time it was an alibi from
          Charles.  I said, "No, I can't do that, because Charles
          don't know nothing about this."  "I'm not getting Charles
          involved."  And he don't know that I had already told on
          him.  So, I really didn't say much.  So this last time
          that he called, I said they found the gun.  I asked Mr.
          Wilson, I said um..can ya'll like let him know that the
          gun is found.  --------- So um...he said I really can't
          tell him, but I can tell his lawyer.  So finally that
          Friday he called and I said like Okay.  I'm going to hold
          my breath.  I'm going to tell him, you know they found
          the gun.  And so I told him that and I think um...he just
          like got quite and like he said I'm sorry man and I know
          you didn't know the gun was gone.  I said I know man.
          And um...and so he just said I'll take care of the rest.
          Because I told him, I said man they got me, my wife
          hollering the kid crying.....(end of side one)

SMITH:     Okay.  The tape kicked off and I had to swap sides on the thing.  Just go ahead and finish up.  The um...this call he made to you of course was collect.  I'm sure it had to be considering.

MEEKS:     Uh-huh

SMITH:     Was it recorded?  By chance did you record on a answering machine or anything?

MEEKS:     No. No.

SMITH:     You didn't think about it?

MEEKS:     Should I?

SMITH:     Well, no...I just wondered if you did...um....

MEEKS:     Did ya'll record ya'lls?

SMITH:     Um...I'm assuming no.

MEEKS:     Well they do at Stateville.  So I figured that would have.....when he said that, I was like well.....

SMITH:     Have you received any threats from him or anything like that from him?

MEEKS:     From him?   No, not from him..

SMITH:     Okay.

MEEKS:     Have I received any threats?

SMITH:     Have there been any more generic, have you got um...related to this investigation....um... have there been any threats?

MEEKS:     Uh-huh.

SMITH:     Okay.  Tell me about them.

MEEKS:     Okay, I think I told you and I told Tom....um...first of all the first one was through a mutual friend Marty. Um..um..He told Uncle Tom..um..um...I guess he told ya'll all this stuff about something going on in my house. Um...about a car or something....um...um...he came to my house one day to see if I was alright, because he knew what had happened. And he said that um....that there is a

MEEKS:      From him?

SMITH:      From any of the family. As far as anybody threatening, because um...we'll do whatever we can as far as the threats and the intimidation....

MEEKS:      Well, the other day.....

SMITH:      We'll try to deal with that as much as we can through the Illinois Police and help you on that.

MEEKS:      Well he made me a thing the other day to move out to the _____ house. And um...I said well I can't really pick up like that. I don't have the cash like that to just to pick up...pick up like that. But the last time I talked to him, I really felt in my Spirit that he understands. And I think um...that he's going um...admit everything and take his side of the responsibility.

SMITH:      Well, we had um....I don't think there is anything that would...as I can see that would indicate that um...that he holds any hard feelings toward you on anything that has happened so far. We have had very little conversation with him and what feed back we've got from some of the others has not been anything negative as far as.....

'EEKS:      Nah...

SMITH:      Him blaming it on somebody else...

MEEKS:      Yeah.....

SMITH:      The um...um...he was um....Gosh let's see....is there anything that we need to clear up for the benefit of the tape.....

MEEKS:      Cause you know that day that I called you, ya'll was... I was in disarray then. But I called both of ya'll at the same time. Because, there was a lot of stuff going on. Marty kept putting this stuff in my wife's head about, you gotta watch out, you gotta watch out, you know. You'll never know how he is. But then when I _____ can you kind of let him know that, you have to let the know that, hey you didn't snitch on me cuz, you had to take care of your family. You know...

SMITH:      Now I want to clear of the gang affiliation. Before you had told us that, he was affiliate with a .......

car acting very, very funny around your house.  And I said well you know, before it happend..well...some of the relatives that he told that he didn't do it or whatever, been told that Keith called and told me that you better give him an alibi, threatening and stuff.  I said what do you mean alibi, I told you what happened.  He said that's not what happened, this and that and you better give him an alibi.  And um....another call came.  They all called late at night.  Um...saying that um....what's that friend of yours...that you know that ya'll...that he knows down there named Charles?  I said, "Why?"  They said what's his name?  I said, "Why?"  You know the thing was we'll let the rat bite if you don't this and do that.  It was like different things like...um...one day, I think I told you...um...I went to pick up my son at school and I knew that somebody was looking at me and that I know that for a fact that was a threat.  Um...I don't know if he done it per-say, but I know with his family mad at me, they all think its my fault.  Because they said if you hadn't never took him down there in the first place this wouldn't happened.  Even um....my immediate family, got me to feeling guilty like well....what if I didn't take him to Alabama, and show him my friends and show him how nice it was down there it may not have happened.  And so they...all of them they are not putting the responsibility on who done it, they putting the responsibility on me for taking him down there  You know.

SMITH:      But as far as anybody...any direct threats...um..

MEEKS:      Indirect.....all indirect.

SMITH:      Everything has sort of been indirect.......

MEEKS:      Which I know what they are.....

SMITH:      Some suspicious stuff that um....as far the vehicle around...um... you feel like....

MEEKS:      Hanging up phone calls...hanging up...um...just different things.

SMITH:      Do you happen to have an answering machine?

MEEKS:      Uh-huh.

SMITH:      Um....on your late night calls, where um...you know...if nothing else...you might have it where at the beginning of the calls from them you might kick it on and record it.

EEKS:       The Black Gangsters

SMITH:      The Black Gangsters.  And um....they um...can you get
            some more information on that?  As far as how long or
            what his status was with them, as you know it?

MEEKS:      Black Gangsters um.....20 plus years probably maybe
            longer.  He's 37 I think, maybe 30 years.  I don't know,
            they start young.  Um....he done something for the mob a
            long time ago.   They hold him in great honor.   Its
            because there is a guy up here by the name of Larry
            Hoover, which is um...one of the Fore Fathers of um...one
            of the biggest Black gangs in the country.  Which is the
            GD.  Um....it was a couple of Black Gangsters off the
            street, everybody was a Black Gangsters at one time, they
            started branching off into the _____ when he died
            so everybody was going there separate ways.   Um....the
            GD's, Larry Hoover was telling, everybody from Black
            Gangsters is coming to the GD's.  So this guy named Larry
            Gambrell, which I know him very well also, um...said the
            only person who stood said, "Black Gangsters" and stay
            Black Gangsters was him and Keith and several other ones.
            So the time was when Larry started stabbing and killing
            everybody up in Stateville.  If you we're not going Black
            Gangsters, this happened in '85, that we're killing
            everybody  that's  not  going  to  come  over  to  Black
            Gangsters.  Larry Gambrell, who was the principle Black
            Gangsters; and Keith, my cousin; took up and fought for
            their mob.   And that's held in high standards with them.
            And Keith told me that when he got out that they still
            hadn't repaid him for that debt.  So that's why I've been
            freaking out for the last, you know.

SMITH:      His affiliation with the um....gang related activities or
            any gang affiliation...was that pretty much documented in
            his portfolio with the corrections.

MEEKS:      Yeah.  If you look at this status for the gangs.  He's
            say Black Gangsters.

SMITH:      Okay.  I know...that in the paperwork we've seen so far I
            had seen the notation of that.  And I thought well, maybe
            they don't put it in there, because a lot of states do
            and a lot of them don't.

MEEKS:      Okay.  You have to be a State employee to get that or
            request that.  Because um....every computer...when I look
            up on the computer my code won't give that to me.  But if
            a parole agent look it up it will show his gang status.

SMITH:      Okay. Fine.  We just needed to be able to show that.  Its
            clear what the situation was and why every thing happened
            the way it did.  Thank you.  Do you have anything else?
            Oh yeah, I asked about the vehicle and all.  We didn't
            have a um...well we had a camera the other day but there
            was about a foot of snow on the ground when we were up
            here.  Do you have any objections to us taking a picture
            of your vehicle......

MEEKS:      Not at all, sir.

SMITH:      The um...did we ever get a photograph of Wayne?

UNKNOWN:    Okay.

SMITH:      _____ providing the photograph.  Okay.

MEEKS:      You don't have any objections to that do you?

SMITH:      No.  The purpose of the photograph of you and the vehicle
            is because we have located the people that was in the
            pickup next to you.  Um...I think it had a Florida tag on
            it.

MEEK:       I don't know.

SMITH:      They've been located and um...interviewed and this is for
            identification purposes.  That's all it is.

MEEKS:      Alright.  No problem.

SMITH:      The vehicle they talked about...one headlight out..um...
            there was some between different witnesses, there was
            some deviation as to whether it was Green or Gray or
            Black and um.....all we want it for is for identification
            purposes.  You don't have any objections to that?

MEEKS:      I'm not questioning that.

SMITH:      Um....I guess close it out then Larry.

WILSON:     This concludes the interview with DeWayne Meeks on this
            date 04-06-98.  The time is 10:55 a.m.







IN THE CIRCUIT COURT OF CHEROKEE COUNTY, ALABAMA

KEITH GAVIN,                          )
                                      )
          Petitioner,                 )
                                      )
v.                                    )   CC-98-61.60
                                      )   CC-98-62.60
STATE OF ALABAMA,                     )
                                      )
          Respondent.                 )

# EXHIBITS TO
# STATE'S EVIDENTIARY SUBMISSIONS

## VOLUME 4 of 5

Troy King
*Attorney General*

Jasper B. Roberts, Jr.
*Assistant Attorney General*
Counsel of Record *

State of Alabama
Office of Attorney General
11 South Union Street
Montgomery, AL  36130-0152
(334) 353-4848 *
(334) 353-3637 Fax
jroberts@ago.state.al.us



# LIST OF EXHIBITS

**VOLUME ONE**                                              EXHIBIT NO.

Case Action Summary . . . . . . . . . . . . . . . . 1

Affidavit of Sharon A. Maze . . . . . . . . . . . 2

Crime Scene Investigation:
   A Guide for Law Enforcement  . . . . . . . . . . 3

Deposition of Deputy Thomas Arambasich. . . . . . 4

Deposition of Larry Wilson. . . . . . . . . . . . 5

**VOLUME TWO**

Deposition of Tony Burch . . . . . . . . . . . . 6

**VOLUME THREE**

Deposition of Danny E. Smith  . . . . . . . . . . 7

**VOLUME FOUR**

Gavin's Alabama Prison Records  . . . . . . . . . 8

**VOLUME FIVE**

Gavin's Alabama Prison Records (continued)`. . . . . 8

Glenn King Declaration  . . . . . . . . . . . . . 9

ABI Agent Tucker Affidavit  . . . . . . . . . . . 10

EMERGENCY CONTACT UPDATE   Date *1-12-04*

INMATE NAME AND AIS# *Keith Gavin #Z-665*

NAME   *Mrs. Annette Gavin*

ADDRESS   *1140 N. Lockwood Ave.*

*Chicago, Illinois 60651*

PHONE #   *(773) 626-2752*

NAME   *Mrs. Bobby Jean Johnson*

ADDRESS   *224 Richards Street*

*Joliet, Illinois 60433*

PHONE #   *(815) 726-3767*

NAME   *Mrs. Christine M. Roberts LPN*

ADDRESS   *3939 S. Lake Park Ave. Apt. #706*

*Chicago, Illinois 60653*

PHONE #   *(773) 924-3874*

Date confirmed that these addresses are still valid   _____

JAN 15 ENTD

ALABAMA BOARD OF CORRECTIONS
DIVISION OF PROFESSIONAL SERVICES
INMATE INTERVIEW RECORD

| NAME: Last | First | Middle | Serial No. | Race | Sex | DOB: M/D/Y |
|---|---|---|---|---|---|---|
| Gavin | Keith | Edmund | Z-665 | B | M | 3/30/60 |

E OF FORM: Each interview summary should contain the following material as appropriate: topics discussed; recommendations made by counselor; decisions made by inmate; progress noted or other observations of counselor. All inmates must be advised during the initial interview of the nature and extent of confidentiality in the counseling relationship. Each entry must be dated and signed by the counselor.

.TE:   NO PART OF THIS RECORD IS TO BE DUPLICATED OR EXTRACTED, EITHER IN FACT OR IN SUBSTANCE, WITHOUT THE WRITTEN AUTHORIZATION OF THE INMATE NAMED ABOVE.

| Date of Entry | SUMMARY OF INTERVIEW | Signature of Counselor |
|---|---|---|
| 2/29/2000 | File Reviewed / Received from Cherokee County Crt. to Holman Deathrow on 1-6-2000. Some information rec'd and completed for file. Aware of Deathrow status / Damu Puen Clausign. | |
| 11/10/05 | Image Copies for Attorney General Office when Paulette Called. Completed 11/10/05 AW | |

f C 400                                                                 Page_____

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

## REVIEW OF SEGREGATION INMATES

Date Review Completed: __1 / 90 / 07__   Date Placed in Segregation: __1/6/02__

☐ 30 DAY REVIEW ☒ 90 DAY REVIEW   M.H. Code: __4 H 0__

ADOC Psychologist/Psychological Associate Conducting Review: Richard C. Holbrook LPC

**MENTAL STATUS EXAMINATION:**   Institution: W.C. Holman Correctional Facility

| | |
|---|---|
| **Affect:** ☐ Anxious/nervous ☐ Flat ☒ Appropriate | **Appearance:** ☐ Unkempt ☐ Disorganized ☒ Appropriate |
| **Concentration:** ☒ Focused ☐ Distracted | **Intellectual Functioning:** ☒ Normal ☐ Borderline ☐ Retarded |
| **Mood:** ☐ Depressed ☐ Elevated ☒ Euthymic  ☐ Irritable ☐ Manic | **Speech & Thoughts:** ☒ Normal ☐ Pressured ☐ Slurred ☐ Stuttering ☐ Incoherent ☐ Tangential ☐ Poverty of speech ☐ Flight of Ideas |
| **Orientation:** ☐ Disoriented ☒ Oriented to time, place and person | **Memory:** Short-term ☒ Good ☐ Poor   Long-term ☒ Good ☐ Poor |

**BEHAVIORAL OBSERVATIONS:**

| | | | |
|---|---|---|---|
| ☐ Aggressive | ☐ Irrational | ☐ Passive | ☐ Paranoia |
| ☐ Agitated | ☐ Suicidal ideation | ☒ Rational | ☐ Hyperactivity |
| ☐ Delusional | ☐ Lethargic | ☐ Crying | ☐ Hallucinating |
| ☐ Eye Contact | ☐ Loose Associations | ☐ Withdrawn | ☐ Manipulative |
| ☐ Fearful | ☐ Calm | ☐ Other: | |

**COMMENTS:** _Stable  no concern_

**RECOMMENDATIONS:**

☒ SEGREGATION PLACEMENT NOT IMPACTING INMATE'S MENTAL HEALTH
☐ SEGREGATION PLACEMENT IMPACTING INMATE'S MENTAL HEALTH
☐ REFERRED FOR PSYCHIATRIC EVALUATION
☐ Other: see once or twice a week in segregation.

| Inmate Name: _Teell Crawn_ | AIS # _2663_ |
|---|---|

Disposition: Inmate Medical Record, Institutional Inmate File, Reference:
Central Records File

ADOC AR: 623, 625, 635
ADOC Form MH-039 - November 14, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

## REVIEW OF SEGREGATION INMATES

Date Review Completed: 10/5/06     Date Placed in Segregation: 1/6/02

☐ 30 DAY REVIEW  ☒ 90 DAY REVIEW     M.H. Code: MH-0    542

ADOC Psychologist/Psychological Associate Conducting Review: RICHARD HOLBROOK, LPC

### MENTAL STATUS EXAMINATION:     Institution: W.C. HOLMAN CORRECTIONAL

| _Affect:_ ☐ Anxious/nervous ☐ Flat ☒ Appropriate | _Appearance:_ ☐ Unkempt ☐ Disorganized ☒ Appropriate |
|---|---|
| _Concentration:_ ☒ Focused ☐ Distracted | _Intellectual Functioning:_ ☒ Normal ☐ Borderline ☐ Retarded |
| _Mood:_ ☐ Depressed ☐ Elevated ☒ Euthymic ☐ Irritable ☐ Manic | _Speech & Thoughts:_ ☒ Normal ☐ Pressured ☐ Slurred ☐ Stuttering ☐ Incoherent ☐ Tangential ☐ Poverty of speech ☐ Flight of Ideas |
| _Orientation:_ ☐ Disoriented ☒ Oriented to time, place and person | _Memory:_ Short-term ☒ Good ☐ Poor / Long-term ☒ Good ☐ Poor |

### BEHAVIORAL OBSERVATIONS:

| | | | |
|---|---|---|---|
| ☐ Aggressive | ☐ Irrational | ☐ Passive | ☐ Paranoia |
| ☐ Agitated | ☐ Suicidal ideation | ☒ Rational | ☐ Hyperactivity |
| ☐ Delusional | ☐ Lethargic | ☐ Crying | ☐ Hallucinating |
| ☐ Eye Contact | ☐ Loose Associations | ☐ Withdrawn | ☐ Manipulative |
| ☐ Fearful | ☐ Calm | ☐ Other: | |

### COMMENTS:

Inmate appears stable. No hallucination or delusion present.

### RECOMMENDATIONS:

☒ SEGREGATION PLACEMENT NOT IMPACTING INMATE'S MENTAL HEALTH
☐ SEGREGATION PLACEMENT IMPACTING INMATE'S MENTAL HEALTH
☐ REFERRED FOR PSYCHIATRIC EVALUATION
☐ Other: _____

| Inmate Name: North Gavin | AIS # 7665 |
|---|---|

Disposition: Inmate Medical Record, Institutional Inmate File, Reference:
Central Records File

ADOC AR: 623, 625, 635
ADOC Form MH-039 - November 14, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
MENTAL HEALTH SERVICES

# REVIEW OF SEGREGATION INMATES

Date Review Completed: 4/2/06                    Date Placed in Segregation: 11/6/02

☐ 30 DAY REVIEW  ☑ 90 DAY REVIEW          M.H. Code: MH-0

ADOC Psychologist/Psychological Associate Conducting Review: Richard C. Holbrook

**MENTAL STATUS EXAMINATION:**          Institution: W.C. Holman Correctional Facility

| *Affect:* ☐ Anxious/nervous  ☐ Flat  ☑ Appropriate | *Appearance:* ☐ Unkempt ☐ Disorganized ☑ Appropriate |
|---|---|
| *Concentration:* ☑ Focused  ☐ Distracted | *Intellectual Functioning:* ☑ Normal ☐ Borderline ☐ Retarded |
| *Mood:* ☐ Depressed ☐ Elevated ☑ Euthymic  ☐ Irritable  ☐ Manic | *Speech & Thoughts:* ☑ Normal ☐ Pressured ☐ Slurred ☐ Stuttering ☐ Incoherent ☐ Tangential ☐ Poverty of speech ☐ Flight of Ideas |
| *Orientation:* ☐ Disoriented ☑ Oriented to time, place and person | *Memory:* Short-term ☑ Good ☐ Poor  Long-term ☑ Good ☐ Poor |

## BEHAVIORAL OBSERVATIONS:

| | | | |
|---|---|---|---|
| ☐ Aggressive | ☐ Irrational | ☐ Passive | ☐ Paranoia |
| ☐ Agitated | ☐ Suicidal ideation | ☑ Rational | ☐ Hyperactivity |
| ☐ Delusional | ☐ Lethargic | ☐ Crying | ☐ Hallucinating |
| ☐ Eye Contact | ☐ Loose Associations | ☐ Withdrawn | ☐ Manipulative |
| ☐ Fearful | ☐ Calm | ☐ Other: | |

**COMMENTS:**
Stable

**RECOMMENDATIONS:**

☑ SEGREGATION PLACEMENT NOT IMPACTING INMATE'S MENTAL HEALTH
☐ SEGREGATION PLACEMENT IMPACTING INMATE'S MENTAL HEALTH
☐ REFERRED FOR PSYCHIATRIC EVALUATION
☐ Other: _____

| Inmate Name: Hurst Gary | AIS # 665. |
|---|---|

Disposition: Inmate Medical Record, Institutional Inmate File, Reference:
Central Records File

ADOC AR: 623, 625, 635
ADOC Form MH-039 - November 14, 2005

2093

7/1/10
Nolve

# ALABAMA DEPARTMENT OF CORRECTIONS
## MENTAL HEALTH SERVICES
### MENTAL HEALTH 30/90 DAY SEGREGATION REVIEW

Inmate Name: Keith Gavin   AIS#: 2665   Institution: HOLMAN

Date Review Completed: 8/1/02   Date Placed in Segregation: 01-06-2000

☐ **30 DAY REVIEW**   ☑ **90 DAY REVIEW**

ADOC Psychologist/Psychological Associate Conducting Review: RICHARD C. HOLBROOK M.S.L.P.C.

Psychological Associate II

## MENTAL STATUS EXAMINATION

| | |
|---|---|
| **Affect:** Appropriate, Inappropriate, Flat, Blunted, Labile | **Appearance:** Appropriate, Unkept |
| **Concentration:** Confused, distorted, prejudiced, normal | **Intellectual Functioning:** normal, slow, mentally retarded |
| **Mood:** Euthymic, Dysphoric, appropriate | **Memory:** short term- normal, poor  long term normal, poor |
| **Orientation:** Time ✓ Place ✓ Reason for being ✓ | **Speech:** Normal, pressured, slurred, incoherent, poverty of speech, halting |

**Other:** Attitude: Cooperative, Friendly, comfortable, calm, nervous, stiff, scared, indifferent, Uncooperative, unresponsive, billigerent, hostile, threatening

Thought Processes: Normal, Slow, Fast, Intact, Rambling, Flight of ideas, Tangential

## BEHAVIORAL OBSERVATIONS

☐ Aggressive        ☐ Irrational              ☑ Passive
☐ Agitated          ☐ Labile                  ☐ Rational
☐ Delusional        ☐ Lethargic               ☐ Terrified/Crying
☐ Eye Contact       ☐ Loose Associations      ☐ Withdrawn
☐ Hallucinating     ☐ Manipulative            ☐ Suicidal
☐ Hyperactivity     ☐ Paranoia                ☐ Other:_____

Obsession              Compulsion

**COMMENTS:**

Sleep or conduct stable

Energy: low normal high
Appetite: low normal high
Sleep: interrupted normal poor

## RECOMMENDATIONS:

☐ SEGREGATION PLACEMENT NOT IMPACTING INMATE'S MENTAL HEALTH
☐ SEGREGATION PLACEMENT IMPACTING INMATE'S MENTAL HEALTH
☐ REFERRED FOR PSYCHIATRIC EVALUATION
☐ Other:
Continue monitoring

| Inmate Name  Keith Gavin | AIS # 2665 |
|---|---|

## PSYCHOLOGICAL UPDATE

Name: _GAVIN, KEITH_    AIS#: _2-665_    R/S: _B_

Date: _04 / 19 / 02_    Date of Birth: _3 / 30 / 60_    Age: _____

Inmate _GAVIN_ was last evaluated by ADOC psychology staff member

_____ on _____ / _____ / _____.

A diagnosis of _____ was made and the inmate was

recommended for participation in _____

_____

_____

_____

The following observations and recommendations are made as a result of the current interview:

I.  Educational Needs
    ____a. ABE    ____b. Special Education    ____c. Trade School    ____d. Junior College

II.  Mental Health Needs

_____ A. Refer to psychiatrist    _____ E. Sexual adjustment    _____ I. Self-concept enhancement

_____ B. Substance abuse counseling    _____ F. Reality therapy    _____ J. Healthy use of leisure

_____ C. Depression    _____ G. Anger-induced acting out    _____ K. Personal development

_____ D. Stress management    _____ H. Values clarification

        Date referred to psychiatrist    _____ / _____ / _____

III. RECOMMENDATIONS/REMARKS:_____

_No history of mental health treatment_

MENTAL HEALTH CODE:    SMI    HARM    HIST .    NONE

Evaluation Completed by: _Richard C Holbrook CPC_    Date: _04/19/02_

N-259 A (2/2001)
White to Central Records
Yellow to Institutional File
Pink to Data Entry and forwarding to Medical Record

2095

## ALABAMA DEPARTMENT OF CORRECTIONS
## MENTAL HEALTH SERVICES
## MENTAL HEALTH 30/90 DAY SEGREGATION REVIEW

Inmate Name: _Keith Gavin_ AIS#: _2665_ Institution: HOLMAN

Date Review Completed: _12/19/00_ Date Placed in Segregation: _01-06-2000_

☐ **30 DAY REVIEW**       ☐ **90 DAY REVIEW**

ADOC Psychologist/Psychological Associate Conducting Review: RICHARD C. HOLBROOK M.S.L.P.C

### MENTAL STATUS EXAMINATION          Psychological Associate II

| | |
|---|---|
| **Affect:** Appropriate, Inappropriate, Flat, Blunted, Labile | **Appearance:** Appropriate, Unkept |
| **Concentration:** Confused, distorted, prejudiced, normal | **Intellectual Functioning:** normal, slow, mentally retarded |
| **Mood:** Euthymic, Dysphoric, appropriate | **Memory:** short term— normal, poor / long term normal, poor |
| **Orientation:** Time ✓ Place ✓ Reason for being ✓ | **Speech:** Normal, pressured, slurred, incoherent, poverty of speech, halting |

**Other:** Attitude: Cooperative, Friendly, Comfortable, calm, nervous, stiff, scared, indifferent, Uncooperative, unresponsive, billigerent, hostile, threatening

Thought Processes: Normal, Slow, Fast, Intact, Rambling, Flight of ideas, Tangential

### BEHAVIORAL OBSERVATIONS

| | | |
|---|---|---|
| ☐ Aggressive | ☐ Irrational | ☑ Passive |
| ☐ Agitated | ☐ Labile | ☐ Rational |
| ☐ Delusional | ☐ Lethargic | ☐ Terrified/Crying |
| ☐ Eye Contact | ☐ Loose Associations | ☐ Withdrawn |
| ☐ Hallucinating | ☐ Manipulative | ☐ Suicidal |
| ☐ Hyperactivity | ☐ Paranoia | ☐ Other:_____ |
| Obsession | Compulsion | |

**COMMENTS:**

Energy: low normal high
Appetite: low normal hi
Sleep: interrupted normal poor

### RECOMMENDATIONS:

☑ SEGREGATION PLACEMENT NOT IMPACTING INMATE'S MENTAL HEALTH
☐ SEGREGATION PLACEMENT IMPACTING INMATE'S MENTAL HEALTH
☐ REFERRED FOR PSYCHIATRIC EVALUATION
☐ Other:_____
Continue monitor

| Inmate Name | AIS # |
|---|---|
| Keith Gavin | 2665 |

ALABAMA BOARD OF CORRECTION
DIVISION OF PROFESSIONAL SERVICES
INMATE INTERVIEW RECORD   County COOTIO

| NAME: Last | First | Middle | Serial No. | Race | Sex | DOB: (M/D/Y) |
|---|---|---|---|---|---|---|
| Gavin | Keith | Edmund | AIS 000SK843 | B | m | 3/30/6 |

USE OF FORM: Each interview summary should contain the following material as appropriate: topics discussed; recommendations made by
counselor; decisions made by inmate; progress noted or other observations of counselor. All inmates must be advised during the initial interview
of the nature and extent of confidentiality in the counseling relationship. Each entry must be dated and signed by the counselor.

NOTE: NO PART OF THIS RECORD IS TO BE DUPLICATED OR EXTRACTED, EITHER IN FACT OR IN SUBSTANCE, WITHOUT THE
WRITTEN AUTHORIZATION OF THE INMATE NAMED ABOVE.

| Date of Entry | SUMMARY OF INTERVIEW | Signature of Counselor |
|---|---|---|
| 12/6/99 | Keith Gavin was picked up by the Cherokee Sheriff's officers. See Order to Transport Defendant dated 11/15/99 by Circuit Judge David A. Rains. | W.D. |
| 12/6/99 | Keith Gavin was returned to St. Clair. | W.D. |
| 12/22/99 | Gavin requested to see the seg. board but I. refused when given the opportunity. | W.D. |
| 1/5/2000 | Keith Gavin was picked up and transported to the Cherokee County Courthouse, Cathe, Ala. for sentencing per the Order to transport Defendant dated 12/13/99 by David A. Rains, Circuit Judge, See copy of orders enclosed. | W.D. |
| 1/10/2000 | Talked with Mr. Powell, classification Supervisor at Holman, and was informed by Mr. Powell that Keith Gavin had been transfered from Cherokee County to Holman. Informed. ICS. | W.D. |

B of C 400                                          Page_____

ALABAMA BOARD OF CORRECTION
DIVISION OF PROFESSIONAL SERVICES
INMATE INTERVIEW RECORD   A15-0005K843

| NAME: Last | First | Middle | Serial No. | Race | Sex | DOB: M |
|------------|-------|--------|------------|------|------|--------|
| Gavin | Keith | Edmund | CODT10 | B | M | 3/3 |

USE OF FORM: Each interview summary should contain the following material as appropriate: topics discussed; recommendations made by counselor; decisions made by inmate; progress noted or other observations of counselor. All inmates must be advised during the initial interv_ _f the nature and extent of confidentiality in the counseling relationship. Each entry must be dated and signed by the counselor.

NOTE: NO PART OF THIS RECORD IS TO BE DUPLICATED OR EXTRACTED, EITHER IN FACT OR IN SUBSTANCE, WITHOUT THE WRITTEN AUTHORIZATION OF THE INMATE NAMED ABOVE.

| Date of Entry | SUMMARY OF INTERVIEW | Signature of Counselor |
|---------------|----------------------|------------------------|
| 11/9/99 | Received at St. Clair. Per court orders of the Circuit Court of DeKalb County Ala. — Case No: CC-98-61, Keith Edmund Gavin " The Defendant was found guilty of Capital Murder on November 6, 1999 and on November 8, 1999 the Jury recommended a sentence of death. A sentence determination hearing is scheduled for December 6 1999 at 2:00 p.m. in the courtroom of the Cherokee County Courthouse, Centre, Ala. " Pending further Orders of this Court the Defendant shall be confined in the custody of the Department of Corrections at the St. Clair Correctional Facility, or such other penal institutions as the Department of Corrections may deem appropriate." Order was done the 9th day of November by David A Rains, Circuit Judge. | W.D. |
| 11/15/99 | Keith Gavin refused to give information or fill out information relating to his Emergency Address or Family members on the Basic Data Sheet. Gavin was informed that this information was confidential and for use in case his family had to visit or be contacted. Gavin stated that no one would be visiting him and that he was not a part of the DOC yet and that he would be going to court on 12/6/99. W.D. |

B of C 400

Page ___

(PICTURE)

NAME Gavin, Keith Edmund
AIS 000 SK843
R/S B/M / MALE    Date of Birth 3/30/60
HT: 5'    WT: 8"11'
HAIR: Black
EYES: Brown
AKA'S: None

TATTOOS/SCARS

SENTENCE DATE: 11/6/99    EOS DATE N/A    PAROLE REVIEW N/A

TOTAL TERM: Jury sentenced to Death COUNTIES CONVICTED DeKalb Co.

CURRENT OFFENSE(S) A sentence determination hearing FROM: scheduled for December 6, 1999, at 2:00 P.M. in the courtroom of Cherokee County Courthouse, Contre, Alabama. See Court Order dated 11/9/99.

Keith Gavin refused to give any of the information listed below. Gavin stated that no one would be visiting him, that he was not part of the DOC yet, and that he had to go to court on December 6, 1999.

EMERGENCY CONTACT:

PHONE:

EMERGENCY ADDRESS: Contact the Circuit Court for DeKalb County, Ala. Case # CC98-61.

FAMILY MEMBERS:    ADDRESS:

SPOUSE:

FATHER:

MOTHER:

SIBLINGS:

CHILDREN:

2099

*Evaluations*

## Segregation Review
## Officer/Mental Health Review

O - Out          RC - Routine Comments
R - Reading      S  - Sleeping

**NAME:** Gavin Keith          **STATUS:**
**AIS #:** 665

| DATE | COMMENTS | SIGNATURE |
|------|----------|-----------|
| 1/9/06 | R | |
| 1/11 | RW | |
| 1/23 | R | |
| 1/31 | S | |
| 2/8 | S | |
| 2/11 | RR | |
| 2/18 | O | |
| 2/20 | O | |
| 3/9 | R | |
| 3/12 | RR | |
| 3/18 | O | |
| 3/23 | S | |
| 4/9 | S | |
| 4/12 | R | |
| 4/23 | No evaluation - check CMS file to see what is said | |
| 8/30 | RR | |
| 8/4 | RR | |
| 8/11 | Stahl | |
| 5/12 | RR | |
| 5/28 | free | |
| 6/8 | S | |
| 6/15 | S | |
| 6/27 | O   TV   free | |

| DATE | Germin Kent | COMMENTS | SIGNATURE |
|------|-------------|----------|-----------|
| 7/4 | On | | RW |
| 7/12 | Lens | | RW |
| 7/23 | O | | R W |
| 7/31 | S | | RW |
| 8/1 | Line | | OW |
| 8/4 | Ri | | OW |
| 8/21 | Off | | OW |
| 8/28 | no problem | | W |

## ALABAMA BOARD OF PARDONS AND PAROLES

### REPORT OF INVESTIGATION

Type of Investigation   Pre-Sentence _____ Date Dictated   11-22-99

Name   KEITH EDMUND GAVIN _____ True name   Edmund Keith Gavin

Alias   Edmond Gavin, Keith Rogers

RSA   B/M _____ DOB   3-30-60 _____ Height and Weight   5'8"  145 lbs.

Complexion   Medium _____ Color of Hair   Black _____ Color of Eyes   Brown

Bodily Marks   None noted.

Driver's License # _____ SSN   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

AIS# _____ FBI#   584560R8 _____ SID# _____

Address   1140 North Lockwood _____ Phone #   773-379-8473
              Chicago, Illinois

County   Cherokee _____ Case #   CC-98-061 & CC-98-062

Offense(s)   Capital Murder and Attempted Murder

Sentence(s)   Death/Life

Date of Sentence      1-5-2000 _____ Date Sentence Began   1-5-2000

Date of Arrest   3-6-98 _____ Date of Bond _____ Bond Amount $   None

Judge   David Rains _____ DA   Michael O'Dell

Attorney   Bayne Smith & John Ufford _____ Retained _____ Appointed   XX

Court Ordered Restitution $   None

Barred From Parole _____ Yes   XX (CC-98-061) _____ No _____

Date Copies Sent to Central Records   1-6-2000

NOTES: _____

## PRESENT OFFENSE(S)

### County, Court, and Case Number:

Cherokee County Circuit Court, Case No. CC-98-061

### Offense:

Capital Murder (two counts:  Count 1, Murder During the Commission of Robbery; and Count 2, Murder After Previous Murder Conviction within 20 Years.

### Sentence:

Death

### Date of Sentence:

1-5-2000

### Details of Offense:

Keith Edmund Gavin was arrested March 6, 1998, and charged with Murder During the Commission of Robbery. On April 13, 1998, the April 1998 Term of the Cherokee County Grand Jury returned a two count Indictment:  Count one, Murder During Robbery; Count two, Murder After Previous Murder Conviction within 20 Years.  Gavin was arraigned on the charges on April 23, 1998, at which time he entered a plea of not guilty.  Gavin was set for trial on May 11, 1998, and continued from time to time until November 1, 1999.  The trial process began on November 1, 1999, and on November 6, 1999, the Jury returned a verdict of Guilty to both counts.  On November 8, 1999, the sentencing phase of the trial began and the Jury returned a sentencing recommendation of Death on a 10 to 2 vote on the same day, November 8, 1999.  A sentencing date is set for December 6, 1999, in the Cherokee County Courtroom.

During the early evening hours on March 6, 1998, DeWayne Meeks and his passenger, Keith Edmund Gavin, pulled in behind a van parked at the corner of River street and immediately adjacent to Regions Bank.  Gavin got out of the Meeks vehicle with a 40 calibre semi-automatic Glock pistol, owned by Dewayne Meeks, and went to the driver's side of the van driven by Mr. Clinton William Clayton.  Witnesses saw Gavin open the driver's door, shoot Mr. Clayton, push Mr. Clayton over and get into the van with Clayton and drive away heading south on Main Street toward Leesburg.

2

An eye witness to the shooting ran to the Cherokee County Sheriff Office and reported the incident. A "be on the look out" (BOLO) message was dispatched over the police radio system with a description of the van and its direction of travel.

Mr. Danny Smith, District Attorney Investigator, was traveling along Alabama Highway 68 towards Leesburg from Collinsville when he intercepted the Van driven by Gavin. Smith turned around and pursued Gavin with his "blue lights" activated until Gavin stopped on the highway. Gavin came out of the Van and shot the same 40 calibre Glock semi-automatic pistol, used at Regions Bank shooting, twice toward Danny Smith. Gavin ran into a wooded area immediately north of his vehicle.

Danny Smith first went to the abandoned Van and found a white male, later identified as Mr. Clinton William Clayton, bleeding profusely from gun shot wounds lying slumped partially between the driver seat and the passenger seat. Smith summoned paramedic assistance and stayed with Mr. Clayton until the arrival of an ambulance.

Mr. Clayton was transported to Cherokee Baptist Medical Center where he was pronounced dead on arrival.

A search party of area law enforcement officers convened at the wooded area along Alabama Highway 68 where Gavin had entered after shooting at Danny Smith. After approximately three hours, Gavin was found hiding in a small creek that traversed the area. Gavin was arrested and carried to the Cherokee County Jail where he remained until the November 1, 1999, trial.

On March 13, 1999, the 40 Calibre Glock semi-automatic pistol was found in the wooded area where Gavin was captured on March 6, 1999. The serial number of the pistol, CCN49US, was the same as the pistol Dewayne Meeks reported taken by Gavin from his automobile.

Forensic report dated March 13, 1998, from the Alabama Department of Forensic Science revealed that Mr. Clinton William Clayton had died from a gunshot wound to the chest.

Forensic analysis of two spent shell casings found at the site of the shooting, of Mr. Clayton and one spent casing found on highway 68 were fired from the same 40 calibre Glock semi-automatic pistol.

## Serious Physical Injury Barring Parole:

Yes

## Subject's Statement:

Keith Edmund Gavin declined to an interview with the Probation Officer on November 9, 1999.

## Case Status of Co-Defendants:

None.

## Location of Offense:

This offense took place on River Street, Centre, Alabama at a location adjacent to Regions Bank and across from the east end of the Cherokee County Courthouse.

## Court Ordered Restitution:

None.

## PRESENT OFFENSE(S)

## County, Court, and Case Number:

Cherokee County Circuit Court, Case No. CC-98-062

## Offense:

Attempted Murder

## Sentence:

Life, consecutive to CC-98-061

## Date of Sentence:

1-5-2000

## Details of Offense:

Keith Edmund Gavin was arrested March 6, 1998, and charged with Attempted Murder. On April 13, 1998, the April 1998 Term of the Cherokee County Grand Jury returned an Indictment charging Gavin with Attempted Murder. Gavin was arraigned on the charges on April 23, 1998, at which time he entered a plea of not guilty. Gavin was set for trial on May 11, 1998, and continued from time to time until November 1, 1999. The trial process began on November 1, 1999, and on

November 6, 1999, the Jury returned a verdict of Guilty to the charge. A sentencing date is set for December 6, 1999.

During the early evening hours on March 6, 1998, District Attorney Investigator Danny Smith heard a "be on the look out" (BOLO) transmission over his police two-way radio from the Cherokee County Central Dispatch. The BOLO reported the shooting, subject of CC-98-061 of this report, and determined that the assailant was heading toward his immediate position on Alabama Highway 68. Smith observed the Van driven by Keith Edmund Gavin heading from the direction of Leesburg toward Collinsville. Smith turned his automobile around and pursued Gavin with his "blue lights" activated until Gavin stopped on the highway. Gavin came out of the Van he was driving and immediately fired a shot at Danny Smith and then ran to the passenger side of the Van and fired a second shot at Smith. Gavin then ran into an adjacent wooded area just north of the vehicle.

A search party was formed of area law enforcement personnel and Gavin was captured approximately three hours later. Gavin was found in a small creek that traversed the wooded area.

A spent shell casing was found on Alabama Highway 68 on the passenger side of the aforementioned Van. Ballistic analysis of the spent casing by the Alabama Department of Forensic Science determined that it was fired from the same gun used in Centre in the Murder of Mr. Clinton William Clayton, a 40 calibre Glock semi-automatic pistol that was owned by Dewayne Meeks.

The pistol was found later in the wooded area, in leaves, on the path that Gavin used when he attempted to evade capture.

## Serious Physical Injury Barring Parole:

Yes

## Subject's Statement:

Keith Edmund Gavin declined to an interview with the Probation Officer on November 9, 1999.

## Case Status of Co-Defendants:

None.

## Victim Notification Information:

Danny Smith

## Victim Impact:

Mr. Smith was not injured.

## Location of Offense:

This offense took place on Alabama Highway 68 near the Sand Rock Community.

## Court Ordered Restitution:

None.

## RECORD OF ARREST(S)

### Prior Arrest Record:

| DATE | AGENCY | CHARGES | DISPOSITION |
|------|--------|---------|-------------|
| 5-11-77 | Chicago, IL PD | Murder | Discharged |
| 4-10-77 | Chicago, IL PD | Theft | Disposition not given |
| 10-27-77 | Chicago, IL PD | Battery | Dismissed |
| 9-29-79 | Chicago, IL PD | Burglary | 10-25-79 sentence 2 yrs. Prob. |
| 10-4-79 | Chicago, IL PD | Burglary | Dismissed |
| 1-19-80 | Chicago, IL PD | Aggravated Battery | Disposition not given |
| 3-28-81 | Chicago, IL PD | Murder | 7-8-82 sent. 34 yrs. Paroled 12-28-97 |

## Subsequent Arrest Record:

| DATE | AGENCY | CHARGES | DISPOSITION |
|------|--------|---------|-------------|

None.

# PERSONAL / SOCIAL HISTORY

## Subject:

Keith Edmund Gavin is a thirty-nine year old black male born March 30, 1960, as the third oldest of twelve children to Willie and Annette Matthews Gavin in Chicago, Illinois. Gavin has always lived in Chicago, Illinois. His mother reported that he had a good childhood.

## Marital Status / History:

Gavin has never been married and has not fathered any children.

## Health:

During his adolescent years, Gavin suffered from a kidney ailment that required hospitalization. Gavin was required to follow a strict diet for several years. He was attacked while in Prison in Illinois and sustained serious injuries. During incarceration in the Cherokee Jail. Gavin complained of chest pains on November 15, 1998, and was transported by ambulance to the Baptist Medical Centre-Cherokee, Centre and test results were negative. At a later date Gavin developed a skin rash that required treatment at a local doctor's office. At the present time Gavin appears fit and healthy.

## Education:

Gavin dropped out of Crane High School during his sophomore year. He had problems at the school with drugs. His mother reported that he attended College at the age of eighteen, but didn't stay very long.

## Financial Status:

None.

## Employment History:

Gavin worked in a security job for a short period of time (his mother could not remember name and dates). Gavin had several part-time jobs of short duration.

*Military Record:*

None.

*Offender's Family:*

*Father:*   Willie Gavin, deceased 1989

*Mother:*   Annette Matthews Gavin, age 62, resides at 1140 North Lockwood, Chicago, Illinois. She is on disability retirement from part-time employment with the U.S. Postal Service.

*Siblings:*   Willie Gavin, Jr., deceased 1996; Elaine Gavin, age 41, resides in Chicago; Victor Gavin, age 38, resides in a Chicago suburb and is employed in a photo shop; Steven Gavin, age 37, resides in a Chicago suburb and is unemployed; Sterling Gavin, age 35, resides in a Chicago suburb and is employed in day labor; Adriane Gavin Brooks, age 32, resides in a Chicago suburb and is attending nursing school; Sharon Gavin, age 30, resides in Chicago and is unemployed; Nichole Gavin, age 24, resides in Chicago and is employed with Brookfield 200, Chicago; Latrice Gavin, age 22, resides in Chicago and is unemployed; Ezra Gavin, age 21, resides in Quincy, Illinois and is employed with a college; Geanetta Gavin Clark, age 19, resides in Chicago and is a housewife.

*Note:* The only sibling reported to have any history of criminal activity was Steven and it was as a juvenile.

## EVALUATION OF OFFENDER

*Psychological Reports:*

Gavin was administered a psychological evaluation on March 18, 1993, by the Mental Health Clinical Service, Illinois River Correctional Center. Doctor Iwashita, Clinical Psychologist, reported that Gavin was not experiencing any psychological problems at that time.

*Reputation and Community Activities:*

Gavin was visited regularly at the Cherokee County Jail by Minister S. J. Johnson of Jehovah's Witness Church. He expressed a strong belief that Gavin was sincere in his belief of God.

## _Probation and Parole Officer's Remarks:_

_The Personal/Social History section of this report was compiled from an interview of Ms. Annette Gavin, Keith Edmund Gavin's mother, jail records and the testimony of Minister S. J. Johnson. Keith Edmund Gavin declined to interview with me._

_Ms. Gavin offered two letters she received from her son over the past twenty months for review. One would deduct from the form and text of the letters that Gavin is intelligent and articulate._

_Signed and dated at Centre, Alabama this the 29th day of November, 1999._

_Whitt L. Latham_
_State Probation & Parole Officer III_

_WLL/vm_

9



ALABAMA DEPARTMENT OF CORRECTIONS     INST: 999
.BR71623    1 ATE SUMMARY AS OF 08/27/20     CODE: CRSUM

:S: 00002665    INMATE: GAVIN, KEITH EDMUND     RACE: B   SEX: M

INST: 999 ~ HOLMAN DEATH ROW     DORM:   SC   JAIL CR: 001Y 10M 05D

JB: 03/30/1960   SSN: 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

ADM DT: 01/05/2000 DEAD TIME: 000Y 00M 00D

.JM TYP: DEATH ROW     STAT: ADMINISTRATIVE SEGREGATION

JRRENT CUST: Z2 ~G    CURRENT CUST DT: 03/14/2001   PAROLE REVIEW DATE: ~ NONE ~

SECURITY LEVEL: NO CLASSIFICATION RECORD FOUND

ERVING UNDER ACT446 LAW IN ELIGIBLE     CURRENT CLASS DATE:   01/05/2000
.NMATE IS EARNING : OR GROUP ACTIVITY

| JUNTY | SENT DT | CASE NO | CRIME | | JL~CR | TERM |
|-------|---------|---------|-------|--|-------|------|
| .HEROKEE | 01/05/00 | N98000061 | MURDER | | 00000 | 000Y 00M 00D CS |
| | | | CAPITAL | ROBBERY CT 1 | | |
| | COURT COSTS | : $0000574 | FINES : $0000000 | RESTITUTION : $0000050 | | |

| TOTAL TERM | MIN REL DT | GOOD TIME BAL | GOOD TIME REV | LONG DATE |
|------------|------------|---------------|---------------|-----------|
| 000Y 00M 00D | 00/00/0000 | 000Y 00M 00D | 000Y 00M 00D | 00/00/0000 |

.NMATE LITERAL: ALSO SERVING #208409

ETAINER WARRANTS SUMMARY

~DET WRT 05/28/2002 TYPE OUT-OF-STATE WARRANT     IL DEPARTMENT OF CORRECTIONS
    LITERAL: MURDER/INTENT KILL/INJURE     SEQ #: 01     CASE #: N#980826
    OFFENSE: 916 ~ PAROLE VIOLATION

LSCAPEE~PAROLE SUMMARY

    INMATE CURRENTLY HAS NO PAROLE RECORDS

    INMATE CURRENTLY HAS NO PROBATION 754 RECORDS

    INMATE HAS NO ESCAPES FROM ALABAMA D.O.C.
    SINCE O.B.S.C.I.S. RECORDING BEGAN IN 1978

ISCIPLINARY/CITATION SUMMARY

>> DISCIPLINE: 03/14/2002   TIME LOST: 00Y00M00D    CUST FROM Z2 G TO Z2 G
    DISCIPLINE TYPE: MAJOR     AT INST: 999    RULE NUMBER: 35
    RETAINED DAYS: 0000   SEQ #: 02   RULE LIT: FIGHTING WITHOUT A WEAPON

>> DISCIPLINE: 03/12/2001   TIME LOST: 00Y00M00D    CUST FROM OTW9 TO OTW9
    DISCIPLINE TYPE: MAJOR     AT INST: 999    RULE NUMBER: 35
    RETAINED DAYS: 0000   SEQ #: 01   RULE LIT: FIGHTING WITHOUT A WEAPON

```
                    A  JAMA DEPARTMENT OF CORRECT  NS        INST:  999
 CBR716             INMATE SUMMARY AS OF 05/28/2002           CODE: CONRQ
```

************************************************************************

IS: 00002665    INMATE: GAVIN, KEITH EDMUND          RACE: B   SEX: M

INSTITUTION: 999 - HOLMAN DEATH ROW                  JAIL CR: 01Y10M050

DOB: 03/30/1960    SSN: 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

 DM DT: 01/05/2000 DEAD TIME: 00Y 00M 00D

ADM TYP: DEATH ROW                     STAT: ADMINISTRATIVE SEGREGATION

 URRENT CUST: Z2 -G   CURRENT CUST DT: 03/14/2001  PAROLE REVIEW DATE: -NONE-

 ECURITY LEVEL: NO CLASSIFICATION RECORD FOUND

SERVING UNDER ACT446 LAW IN  ELIGIBLE      CURRENT CLASS DATE:   01/05/2000
INMATE IS EARNING : OR GROUP ACTIVITY

 OUNTY      SENT DT  CASE NO  CRIME                 JL-CR     TERM
 CHEROKEE   01/05/00 N98000061 MURDER               00000 000Y 00M 00D CS
                              CAPITAL   ROBBERY CT 1
            COURT COSTS   : $0000574   FINES : $0000000   RESTITUTION : $0000050

 TOTAL TERM      MIN REL DT    GOOD TIME BAL    GOOD TIME REV    LONG DATE
 00Y 00M 00D     00/00/0000    000Y 06M 20D     000Y 00M 00D     00/00/0000

INMATE LITERAL: ALSO SERVING #208409
```

************************************************************************

DETAINER WARRANTS SUMMARY

```
 DET WRT 05/28/2002 TYPE OUT-OF-STATE WARRANT    IL DEPARTMENT OF CORRECTIONS
    LITERAL: MURDER/INTENT KILL/INJURE      SEQ #: 01    CASE #: W#980826
```

************************************************************************

ESCAPEE-PAROLE SUMMARY
    INMATE CURRENTLY HAS NO PAROLE RECORDS

    INMATE CURRENTLY HAS NO PROBATION 754 RECORDS

    INMATE HAS NO ESCAPES FROM ALABAMA D.O.C.
    SINCE D.O.C.I.S. RECORDING BEGAN IN 1978

************************************************************************

DISCIPLINARY/CITATION SUMMARY

```
 >> DISCIPLINE: 03/14/2002  TIME LOST: 00Y00M00D   CUST FROM Z2 G TO Z2 G
    DISCIPLINE TYPE: MAJOR              AT INST: 999   RULE NUMBER: 35
    RETAINED DAYS: 0000   SEQ #: 02   RULE LIT: FIGHTING WITHOUT A WEAPON
```

CONTINUED ON NEXT PAGE

```
                                ALABAMA DEPARTMENT OF CORRECTIONS              INST:    999
:BR716                          INMATE SUMMARY AS OF 05/28/2002                CODE: CONRQ
```

**************************       CONTINUATION      *********************************

```
 IS: 00002565    INMATE: GAVIN, KEITH EDMUND                    RACE: B   SEX: M
```

***************************************************************************************

DISCIPLINARY/CITATION SUMMARY

```
>> DISCIPLINE: 03/12/2001   TIME LOST: 00Y00M00D    CUST FROM 0TW9 TO 0TW9
   DISCIPLINE TYPE: MAJOR                    AT INST: 999    RULE NUMBER: 35
   RETAINED DAYS: 0000    SEQ #: 01   RULE LIT: FIGHTING WITHOUT A WEAPON
```

I.D: 0000Z665      NAME:    /name/ KEITH EDMUND          RACE: B   SEX: M

ARNING STATUS:   PROHIBITED FROM EARNING GOODTIME

CLASSIFYING INSTITUTION IS-__Holman Death Row Unit__      Z-2

ECOMMENDED CUSTODY IS-__Z-2__      APPROVED CUSTODY IS-....

RECOMMENDED INST IS-__Holman Unit__      APPROVED PLACEMENT IS-....    HCC

PRESENT WORK    ASSIGNMENT                    NEW WORK ASSIGNMENT.
RIMARY-..__Segregation__...                  ....    D.R.

SECONDARY-.........................          ....

ROGRAM PARTICIPATION-..__Program Offered Death to Death
                      Row inmates and Supportive Therapy in
                      Needed__

WAIVER OF CRITERIA REQUESTED FOR-....................................

USTIFICATION AND COMMENTS-__Subject in review. A Sentence
of Death from Cherokee County Since Weeks at
here at Holman on 1-6-2000. No Discipline
Report on file. 90 Day Observation Period
Completed Without Incident.
Therefore it is recommended that Subject
participation in Program Offered to Death
Row inmates here at Holman and Z-2
Custody status.
This Report is Completed to update and
document that Z-2 Custody Status.__

                                      __/signature/__  1-4-2001
....................................          ....................................
CLASSIFICATION SPECIALIST    DATE             CLASSIFICATION CO-ORDINATOR    DATE
                                              __MHD__  3/17/01
....................................          ....................................
PSYCHOLOGIST    DATE                          CENTRAL REVIEW BOARD    DATE
__Z.C. Angela__  1-4-01
....................................          ....................................
WARDEN OR REPRESENTATIVE    DATE              CENTRAL REVIEW BOARD    DATE
__Keith G.__  -/01
....................................          ....................................
INMATE    DATE                                CENTRAL REVIEW BOARD    DATE

STATE DEPARTMENT OF CORRECTIONS

INITIAL                    CLASSIFICATION SUMMARY                    DATE: 10/26/2000

AIS#: 0000Z665      NAME: GAVIN, KEITH EDMUND                    RACE: B    SEX: M

DATE OF BIRTH: 03/30/1960          PLACE OF BIRTH: UNITED STATES

INSTITUTION: HOLMAN DEATH ROW                         CITIZENSHIP: YES

PAROLE CONSIDERATION DATE: 00/0000                    SSN: 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

EMERGENCY ADDRESS: 1140 North Lockwood Chicago, Illinois

HAIR: BLK          EYES: BRO    Ph. 773-379-8493, 773 626-3634
                                HEIGHT: 5FT 08IN      WEIGHT: 152LBS

CURRENT CUSTODY: DTW9                 HIGHEST GRADE LEVEL COMPLETED: ..

PRIMARY OCCUPATION: MECHANIC, DIESEL

SECONDARY OCCUPATION: LABORER - GENERAL

MIN RELEASE DATE: 00/00/0000          LONG RELEASE DATE: 00/00/0000

## CURRENT CONVICTIONS

| DATE | CRIME | TERM | CS/CC | HO | RST. | FEES |
|------|-------|------|-------|----|----|------|
| 1/05/2000 | MURDER | 1000Y00M00D | CS | N | 0000050 | 000000 |

VICTIM INFO: Clinton W. Clayton was shot and killed while sitting in his van. Subject took victim's van and shot at police officer who try to talk to him

## DETAINERS

NO ACTIVE DETAINERS FOUND ON FILE

POSSIBLE DETAINERS: ...None listed...............

## PRIOR CONVICTIONS

NO PRIOR CONVICTIONS ON FILE

POSSIBLE OUT OF STATE CONVICTIONS: Illinois; Burglary (2yr); Murder (34 yr) was splt

## ESCAPES

NO ESCAPE RECORDS FOUND ON FILE

OTHER THAN STATE ESCAPES/ESCAPE BEHAVIOR: None found

2116

ITEM: 00002565        NAME: ___, KEITH EDWARD                AGE: ___  SEX: M

EARNING STATUS:    PROHIBITED FROM EARNING GOODTIME

CLASSIFYING INSTITUTION IS: ................................

RECOMMENDED CUSTODY IS: ................    APPROVED CUSTODY IS: ................

RECOMMENDED INST IS: ................    APPROVED PLACEMENT IS: ................

PRESENT WORK        ASSIGNMENT                    NEW WORK ASSIGNMENT

PRIMARY ................................

SECONDARY ................................

PROGRAM PARTICIPATION ................................

................................

WAIVER OF CRITERIA REQUESTED FOR ................................

................................

JUSTIFICATION AND COMMENTS ................................

................................

................................

................................

................................

................................

................................

................................

................................

................................

---

* CLASSIFICATION SPECIALIST    DATE          CLASSIFICATION CO-ORDINATOR    DATE

PSYCHOLOGIST                   DATE          CENTRAL REVIEW BOARD           DATE

WARDEN OR REPRESENTATIVE       DATE          CENTRAL REVIEW BOARD           DATE

INMATE                         DATE          CENTRAL REVIEW BOARD           DATE

STATE DEPARTMENT OF CORRECTIONS

INITIAL          CLASSIFICATION SUMMARY          DATE: 10/26/2000

AIS#: 00002665     NAME: DAVIS, KEITH EDMUND          RACE: B   SEX: M

DATE OF BIRTH: 03/30/1966     PLACE OF BIRTH: UNITED STATES

INSTITUTION: HOLMAN DEATH ROW          CITIZENSHIP: YES

PAROLE CONSIDERATION DATE: 00/0000          SSN: 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

EMERGENCY ADDRESS: _____

HAIR: BLK     EYES: BRO          HEIGHT: 5FT 08IN     WEIGHT: 192LBS

CURRENT CUSTODY: DTHR          HIGHEST GRADE LEVEL COMPLETED: ..

PRIMARY OCCUPATION: MECHANIC, DIESEL

SECONDARY OCCUPATION: LABORER - GENERAL

MIN RELEASE DATE: 00/00/0000          LONG RELEASE DATE: 00/00/0000

CURRENT CONVICTIONS

| DATE | CRIME | TERM | CS/CC NO | RST. | FEES |
|------|-------|------|----------|------|------|
| 11/03/2000 | MURDER | 00DY00M00D | CS   0 | 0000050 | 000000 |

VICTIM INFO: _____

DETAINERS

NO ACTIVE DETAINERS FOUND ON FILE

POSSIBLE DETAINERS: _____

PRIOR CONVICTIONS

NO PRIOR CONVICTIONS ON FILE

POSSIBLE OUT OF STATE CONVICTIONS: _____

ESCAPES

NO ESCAPE RECORDS FOUND ON FILE

OTHER THAN STATE ESCAPES/ESCAPE BEHAVIOR: _____

GAVIN, KEITH EDMUND CONTINUED

PAROLE & PROBATION

NO P&P RECORDS FOUND ON FILE

DISCIPLINARIES

NO DISCIPLINARIES FOUND ON FILE

KNOWN ENEMIES

NO ENEMIES FOUND FOR THIS INMATE

POSSIBLE ENEMIES: None reported.

PSYCHOLOGICAL COMMENTS: Per PSI, no problems reported.

PHYSICAL COMMENTS: No major problems reported.

NAME AND ADDRESS OF FAMILY MEMBERS

SPOUSE: None

FATHER: Willie Gavin (Deceased 1989)

MOTHER: Annette Matthews Gavin – 1140 No. Lockwood

SIBLINGS: Elaine Gavin (Chicago); Victor Gavin (Chicago); Steven Gavin (Chicago); Sterling Gavin (Chicago); Adriane Brooks (Chicago); Sharon Gavin (Chicago); Nichole Gavin (Chicago); LaTrice Gavin (Chicago); Ezra Gavin (Chicago); Leonetty Clark (Chicago)

Children: None

CMS

# HEALTH EVALUATION

| I. | HISTORY – (LPN or RN) | YES | NO | COMMENT(S) |
|---|---|---|---|---|
| | Weight Change (greater 15 lbs.) (Compare Weight Below) | | ✓ | Last weight at least 6 months ago |
| | Persistent Cough | | ✓ | |
| | Chest Pain | | ✓ | |
| | Blood in Urine or Stool | | ✓ | |
| | Difficult Urination | | ✓ | |
| | Other Illnesses (Details) | | ✓ | |
| | Smoke, Dip or Chew | ✓ | | 4-5 pkg daily woof |
| | ALLERGIES | ✓ | | |

Weight 149 Height 5'8 Temp 97 5 Pulse 60 Resp 16 Blood Pressure 130/90

Eye Exam: 20/400D 20/500S 20/400U

If greater than > 140/90, repeat in 1hour.
Refer to M.D. if remains > 140/90.

| II. | TESTING – (LPN or RN) | RESULTS | |
|---|---|---|---|
| | Tuberculin Skin Test (q yr) | Date given 12-15-07 Site L F/A | |
| | | Read on 12-17-07 Results 0 mm | |
| | Past Positive TB Skin Test → | **Survey Completed** | |
| | (Chest x-ray if clinical symptoms) | Date _____ Results _____ | |
| | RPR (q 3 yrs) | Date 12/18/06 Results NR | |
| | EKG (baseline at 35, over 45 q 3 yrs) | 12/4/04 | |
| | Cholesterol (at 35 then q 5 yrs) | 9/3/03 | |
| | Finger Stick Blood Sugar | Results 67 | |
| | * If > than 200 repeat Finger Stick BS within 48 hours | Results _____ | |
| | Optometry Exam (@ 50 if not already seen) | n/a | |
| | Mammogram | Date n/a Results _____ | |
| | (females @ 40, q 1 yr/other M.D. order) | | |

III.    PHYSICAL RESULTS – (RN, Mid-Level, M.D.)

| | | |
|---|---|---|
| Heart | RRR | |
| Lungs | Clear bilateral | |
| Breast Exam | abdomen | |
| Rectal (yearly after 45) | Results | Refused |
| with Hemoccult | Results | |
| Pelvic and PAP (q 1 yr) | Date N/A Results _____ | |

Facility Holman   Nurse Signature ___Stabler RN___ Date 12-15-07

M.D. or Mid-Level Signature ___Rot B___ MD   Date 12-17-07

| INMATE NAME | AIS# | | RACE/SEX |
|---|---|---|---|
| Robert Barnes, MD | | | |
| Gavin, Keith | Z-665 | 3-30-60 | B/M |

# IDENTIFICATION OF SPECIAL NEEDS

NAME (PLEASE PRINT) ___Gavin, Keith_____
　　　　　　　　　　　　　LAST　　　　　　　FIRST　　　　　MI

DATE OF BIRTH ___3-30-60_____　SS# __343-54-779/__

**Housing Recommendations:**　DR ✓

General Population_____

Medical Observation Unit_____

Lower Level/Lower Bunk_____

Suicide Precautions_____

Special Watch (15 Minute Checks)_____ .

Isolation_____

Initiate Universal Precautions_____

**Individual found to be:**　Clear

Frail/Elderly_____

Physically Handicapped_____

Developmentally Disabled_____

Drug/Alcohol Withdrawal_____

Special Mental Health Needs_____

Expressed Suicidal Ideation_____

History of Seizures_____

Other_____

Specify_____

_____  Date _12-15-0?_

## HOLMAN CORRECTIONAL FACILITY JOB PLACEMENT

Inmate _Keith Gavin_ _____ AIS# _B12-6665_
Has been considered by the job review board and is placed in the following job:

Date Arrived at Holman C. F. _____ Previous Institution _____

| Job Assignment | Effective Date | Custody |
|---|---|---|
| 3rd Shift Hall Runner | 7/10/03 | May |
| 3rd Shift by Work | 11/19/01 | May |
| | | |
| | | |
| | | |
| | | |
| | | |

| Chair Person | Member | Member | Date |
|---|---|---|---|
| Wanda L. Moman | Mourien | Capt. D. Croft | 7-10-03 |
| | | | 11/19/01 |
| | | | |
| | | | |
| | | | |
| | | | |

The following information was considered in making this assignment:
Offense: _____
Date of Sentence: _____ County _____
Length of Sentence: _____
Long Date: _____ Short date: _____ Duty Status: _____

2123

Inmate Name KEITH GAVIN   AIS# 2-6665   Race (B)   Location D-11cx

Both sides of this form must be filled out at the same time. No more than eight visitors can be listed on your visitors list. List eight people you feel will send you funds. People on your funds list may include but are not limited to people on your visiting list.

| VISITOR'S NAME | D.O.B. | SOCIAL SECURITY NUMBER | ADDRESS, CITY, STATE, ZIP CODE | PHONE NUMBER | RELATIONSHIP |
|---|---|---|---|---|---|
| PLEASE LEAVE VISITORS LIST AS IS. | | | | | |
| | | | Thank you ! | | |
| | | | Kuth Gavin | | |
| | | | | | |
| | | | | | |

| FUNDS LIST | | SOCIAL SECURITY NUMBER | ADDRESS, CITY, STATE, ZIP CODE | PHONE NUMBER | RELATIONSHIP |
|---|---|---|---|---|---|
| PLEASE LEAVE FUNDS LIST AS IS. | | | | | |
| | | | Thank You! | | |
| | | | Keith Gavin | | |
| | | | | | |
| | | | | | |

Note :
I only want to add and change phone numbers.

80-92-1
Dept
CNG
BOQ
Thank (Rham) /

2124

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT

| 1. Institution: W. C. Holman Correctional Facility | 2. Date: 12/05/06 | 3. Time: 8:00AM | 4. Incident Number: HP06- 1346 | Class Code: C |
|---|---|---|---|---|

| 5. Location Where Incident Occurred: Mailroom/Backgate | 6. Type of Incident: Destroyed Rejected Mail-for 8/16 thru 8/31/06 |
|---|---|

| 7. Time Incident Reported: 8:15 AM on 12/05/06 | 8. Who Received Report: DEPUTY WARDEN PATTERSON  12-21-06 |
|---|---|

| 9. Victims: | Name | | |
|---|---|---|---|
| a. | N/A | No. | |
| b. | | No. | |
| c. | | No. | |

AIS

| 10. Suspects: | Name | AIS | | 11. Witnesses: | Name | AIS |
|---|---|---|---|---|---|---|
| a. | Jeffrey Borden | No. Z-593 | | a. | N/A | No. |
| b. | Allan Butler | No. 154111 | | b. | | No. |
| c. | Emanuel McWilliams | No. 186714 | | c. | | No. |
| d. | Leroy White | No. Z-505 | | d. | | No. |
| e. | Eugene Clemons | No. Z-570 | | e. | | No. |
| | SEE ATTACHED | | | f. | | No. |
| | | | | g. | | No. |

PHYSICAL EVIDENCE:
12. Type of Evidence

Rejected mail in excess of thirty days old

13. Description of Evidence:

Rejected mail in excess of thirty days old

14. Chain of Evidence:

a  Holman Correctional Facility mailroom
b  Officer Heron Pete
c  Destroyed
d
e

15. Narrative Summary:

On 12/05/06, at approximately 8:00AM, Ashleigh Etheridge, ASAI, Mailroom Clerk, prepared the rejected mail that was in excess of thirty (30) days old. The inmates had been given thirty (30) days to protest the rejection of mail or have the mail returned to the sender at the inmate's expense.

Mail from the following list of inmates were in excess of thirty days old:
Jeffrey Borden, Allan Butler, Emanuel McWilliams, Leroy White, Eugene Clemons, Marcus Williams, Dominique Ray, Corey Smith, Larry George, Keith Gavin.

Distribution:  ORIGINAL AND ONE (1) COPY to Central I & I Division      COPY to Deputy Commissioner of Operations (Class A and B ONLY)
              COPY to Institutional File                                COPY to Central Records Office

ADOC Form 302-A -- June 1, 2005

CONTINUED

| NAME | AIS# |
|---|---|
| Marcus Williams | Z-656 |
| Dominique Ray | Z-663 |
| Corey Smith | Z-584 |
| Larry George | Z-571 |
| Keith Gavin | Z-665 |



STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| **W. C. Holman Correctional Facility** | **HP06-1346** | C |
| Date: | Type of Incident: | |
| 12/05/06 | Destroyed Rejected Mail | |

Narrative Summary (Continued) Page No. 2

The mail was shredded and placed in a garbage bag and Officer Heron Pete took the rejected mail to the back gate and placed it in the dumpster. The destruction of the rejected mail was reported to Assistant Warden Tony Patterson at 8:15 AM. The rejected mail slips for the mail destroyed in excess of thirty (30) days old are attached to this report.

See attached sheets of the mail that was destroyed

*Ashleigh Etheridge ASAI*
Ashleigh Etheridge, ASAI

On 12/05/06, at approximately 08:15AM, I, Officer Heron Pete, took the rejected mail to the back gate and put it in the dumpster.

*Heron Pete*
Heron Pete, COI

ADOC Form 302-B — June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

# INCIDENT REPORT

| 1. Institution:<br>W. C. Holman Correctional Facility | 2. Date:<br>09/28/06 | 3. Time:<br>8:00AM | 4. Incident Number:<br>HP06-1131 | Class Code:<br>C |
|---|---|---|---|---|
| 5. Location Where Incident Occurred:<br>Mailroom/Backgate | | 6. Type of Incident:<br>Destroyed Rejected Mail-for June | | |
| 7. Time Incident Reported:<br>09/28/06 at 8:15 AM | | 8. Who Received Report:<br>DEPUTY WARDEN PATTERSON | | |

| 9. Victims: | Name | | | |
|---|---|---|---|---|
| a. | N/A | | No. | |
| b. | | | No. | |
| c. | | | No. | |

| 10. Suspects: | Name | | AIS | 11. Witnesses: | Name | | AIS |
|---|---|---|---|---|---|---|---|
| a. | Willie Smith | No. | Z-541 | a. | N/A | No. | |
| b. | Jack Trawick | No. | Z-561 | b. | | No. | |
| c. | Keith GAvin | No. | Z-665 | c. | | No. | |
| d. | Terry Moore | No. | 201439 | d. | | No. | |
| e. | Williams Knotts | No. | Z-543 | e. | | No. | |
| | **SEE ATTACHED** | | | f. | | No. | |
| | | | | g. | | No. | |

PHYSICAL EVIDENCE:
12. Type of Evidence

Rejected mail in excess of thirty days old

13. Description of Evidence:

Rejected mail in excess of thirty days old

14. Chain of Evidence:

a   Holman Correctional Facility mailroom
b   Officer Heron Pete
c   Destroyed
d
e

15. Narrative Summary:

On September 28, 2006, at approximately 8:00AM, J. Renee Parker, ASA II, prepared the rejected mail that was in excess of thirty (30) days old. The inmates had been given thirty (30) days to protest the rejection of mail or have the mail returned to the sender at the inmate's expense.

Mail from the following list of inmates were in excess of thirty days old:
Willie Smith, Jack Trawick, Keith Gavin, Terry Moore, William Knotts, Dorian Williams, James Moore, William Vinson, William Wanninger, Donald Hairgrove, Jamie Knighten, James Nelson, Raymond Earl, Horace Brightwell, Paul Russaw, Randy Roscoe, Enrico Perine, William Bush, Gary Hart, Larry Dunaway, Richard Sanders, Arthur Giles, Joseph Wilson, Randy Stewart, James Ledford, James Griffin, Wade Kimbrough, Randy Bell, Anthony Hinton, David Davis and Michael Carr.

Distribution  ORIGINAL AND ONE (1) COPY to Central I & I Division          COPY to Deputy Commissioner of Operations (Class A and B ONLY)
          COPY to Institutional File                                      COPY to Central Records Office

ADOC Form 302-A – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT/DUTY OFFICER REPORT
## CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| W. C. Holman Correctional Facility | HP06-1131 | C |
| Date: | Type of Incident: | |
| 09/28/06 | Destroyed Rejected Mail | |

Narrative Summary (Continued) Page No. 2

The mail was shredded and placed in a garbage bag and Officer Heron Pete took the rejected mail to the back gate and placed it in the dumpster. The destruction of the rejected mail was reported to Assistant Warden Tony Patterson at 8:15AM. The rejected mail slips for the mail destroyed in excess of thirty (30) days old are attached to this report. See attached sheets of the mail that was destroyed

*J. Renee Parker, ASAII*

J. Renee Parker, ASAII

Statement from Officer Heron Pete

On 09/28/06, at approximately 3:00 PM, I, Officer Heron Pete, took the rejected mail to the back gate and put it in the dumpster.

Heron Pete, COI

ADOC Form 302-B – June 1, 2005

## SUSPECT CONTINUED

| NAME | AIS# |
|---|---|
| F. Dorian Williams | 195451 |
| G. James Moore | 186345 |
| H. William Vinson | 189256 |
| I. William Wanninger | 164749 |
| J. Donald Hairgrove | 178175 |
| K. Jamie Knighten | 183509 |
| L. James Nelson | 148536 |
| M. Raymond Earl | 124131 |
| N. Horace Brightwell | 239772 |
| O. Paul Russaw | 145647 |
| P. Randy Roscoe | 128154 |
| Q. Enrico Perine | 208322 |
| R. William Bush | Z-412 |
| S. Gary Hart | 243445 |
| T. Larry Dunaway | Z-622 |
| U. Richard Sanders | 172580 |
| V. Arthur Giles | Z-394 |
| W. Joseph Wilson | Z-640 |
| X. Randy Stewart | Z-524 |
| Y. James Ledford | 153693 |
| Z. James Griffin | 159128 |
| AA. Wade Kimbrough | 208835 |
| BB. Randy Bell | Z-430 |
| CC. Anthony Hinton | Z-468 |
| DD. David Davis | Z-616 |
| EE. Michael Carr | 209732 |

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

## INCIDENT REPORT

| 1. Institution: W. C. Holman Correctional Facility | 2. Date: 09/28/06 | 3. Time: 8:00AM | 4. Incident Number: HP06-1133 | Class Code: C |
|---|---|---|---|---|
| 5. Location Where Incident Occurred: Mailroom/Backgate | | 6. Type of Incident: Destroyed Rejected Mail-for August 1st-16th | | |
| 7. Time Incident Reported: 09/28/06 @ 8:15 AM | | 8. Who Received Report: DEPUTY WARDEN PATTERSON | | |

| 9. Victims: | Name | | | AIS |
|---|---|---|---|---|
| a. | N/A | | No. | |
| b. | | | No. | |
| c. | | | No. | |

| 10. Suspects: | Name | | AIS | 11. Witnesses: | Name | | AIS |
|---|---|---|---|---|---|---|---|
| a. | Thomas Lane | No. | Z-726 | a. | N/A | No. | |
| b. | Toby Davis | No. | 180152 | b. | | No. | |
| c. | Larry Smith | No. | Z-Z-583 | c. | | No. | |
| d. | Donald Hairgrove | No. | 178175 | d. | | No. | |
| e. | Marcus Webb | No. | 169784 | e. | | No. | |
| | **SEE ATTACHED** | | | f. | | No. | |
| | | | | g. | | No. | |

PHYSICAL EVIDENCE:
12. Type of Evidence

Rejected mail in excess of thirty days old

13. Description of Evidence:

Rejected mail in excess of thirty days old

14. Chain of Evidence:

a. Holman Correctional Facility mailroom

b. Officer Heron Pete

c. Destroyed

d.

e.

15. Narrative Summary:

On 09/28/06, at approximately 8:00AM, J. Renee Parker, ASA II, prepared the rejected mail that was in excess of thirty (30) days old. The inmates had been given thirty (30) days to protest the rejection of mail or have the mail returned to the sender at the inmate's expense.

Mail from the following list of inmates were in excess of thirty days old:

Thomas Harriel, Charles Hastings, Mark Duke, Marcus Harris, Kenny Loggins, Kenny Smith, Keith Gavin, Craig McLaren, Geoff West, Steven Parker, Bobby Waldrop, Ulysses Sneed, Thomas Lane, Toby Davis, Larry Smith, Donald Hairgrove, Marcus Webb, Dionne Eatmon, Nathaniel Hayes, Calvin Middleton, Lorenzo Laffitte, Wesley Turner, Stanley Stephens, John Ward, Milton Reed, Anthony Bryant, Marcus Perry, Gary Moore, Milton Falkner, Gerald Lewis, George Speyer, Timothy Jones and Rick Belisle.

Distribution:   ORIGINAL AND ONE (1) COPY to Central I & I Division          COPY to Deputy Commissioner of Operations (Class A and B ONLY)
        COPY to Institutional File                                               COPY to Central Records Office

ADOC Form 302-A – June 1, 2005

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

INCIDENT REPORT/DUTY OFFICER REPORT
CONTINUATION

| Institution: | Incident Number: | Class Code: |
|---|---|---|
| W. C. Holman Correctional Facility | HP06-1133 | C |
| Date: | Type of Incident: | |
| 09/28/06 | Destroyed Rejected Mail | |

Narrative Summary (Continued) Page No. 2

The mail was shredded and placed in a garbage bag and Officer Heron Pete took the rejected mail to the back gate and placed it in the dumpster. The destruction of the rejected mail was reported to Assistant Warden Tony Patterson at 8:15AM. The rejected mail slips for the mail destroyed in excess of thirty (30) days old are attached to this report. See attached sheets of the mail that was destroyed.

*J. Renee Parker, ASA II*

J./Renee Parker, ASA II

Statement from Officer Heron Pete

On 09/28/06, at approximately 3:00 PM, I, Officer Heron Pete, took the rejected mail to the back gate and put it in the dumpster.

*Heron Pete, COI*

Heron Pete, COI

ADOC Form 302-B – June 1, 2005

CONTINUED

| NAME | AIS# |
|------|------|
| F. Thomas Harriel | 184143 |
| G. Charles Hasting | 140734 |
| H. Mark Duke | 242207 |
| I. Marcus Harris | 196285 |
| J. Kenny Loggins | 187155 |
| K. Kenny Smith | Z-512 |
| L. Keith Gavin | Z-665 |
| M. Craig McLaren | 115624 |
| N. Geoff West | Z-658 |
| O. Steven Parker | 193912 |
| P. Bobby Waldrop | Z-661 |
| Q. Ulysses Sneed | Z-590 |
| R. Dionne Eatmon | Z-714 |
| S. Nathaniel Hayes | 172136 |
| T. Calvin Middleton | 201915 |
| U. Lorenzo Lafitte | 172422 |
| V. Wesley Turner | 235669 |
| W. Stanley Stephens | Z-688 |
| X. John Ward | Z-653 |
| Y. Milton Reed | 190878 |
| Z. Anthony Bryant | 208651 |
| AA. Marcus Perry | 206834 |
| BB. Gary Moore | 113294 |
| CC. Milton Falkner | 110430 |
| DD. Gerald Lewis | Z-668 |
| EE. George Speyer | 175345 |
| FF. Timothy Jones | Z-711 |
| GG. Rick Belisle | Z-697 |

W. C. HOLMAN CORRECTIONAL FACILITY
INMATE TELEPHONE LIST

Inmate Name & AIS#: _Keith Gavin #Z-665_

Inmate Location: _8-U-4_

Date Form Completed: _4-25-05_

Allowed Telephone Numbers

1. _773_ _378_ _8533_ Name _Annette Gavin_ Relationship _Mother_

2. _815_ _726_ _3767_ Name _Bobbie Johnson_ Relationship _Aunt_

3. _773_ _784_ _0239_ Name _Michael Abbinanti_ Relationship _Cousin_

4. _256_ _766_ _8229_ Name _Hunter Gavin_ Relationship _Cousin_

5. _716_ _832_ _0576_ Name _Susan Jackson_ Relationship _Friend_

6. _334_ _269_ _1803_ Name _Lisa Hayes_ Relationship _Attorney_

7. _212_ _364_ _5340_ Name _Barry C Scheck_ Relationship _Attorney_

8. _____ _____ _____ Name _____ Relationship _____

Approved by: _M. Lyons_

Entry date: _8/2/05_

Denied: _____

Comments: _____

_____

_____

_____

Date of Next Change: _10/2/05_

## W. C. HOLMAN CORRECTIONAL FACILITY
### INMATE TELEPHONE LIST

Inmate Name & AIS#: _Keith Gavin #Z-665_

Inmate Location: _8-U-4_

Date Form Completed: _8-11-04_

**Allowed Telephone Numbers**

1. _773  378  8533_ Name _Annette  Gavin_ Relationship _Mother_
2. _815  726  3767_ Name _Bobby  Johnson_ Relationship _Auntie_
3. _212  364  5340_ Name _Barry  C.  Scheck_ Relationship _Attorney_
4. _256  766  8229_ Name _Hunter  Gavin_ Relationship _Cousin_
5. _902  461  1875_ Name _Evline  Fox_ Relationship _Friend_
6. _334  265  5203_ Name _Sue  Williams_ Relationship _"   "_
   _+3_
7. _334  240  0914_ Name _Kathy  Flint_ Relationship _"   "_
8. _716  832  0516_ Name _Susan  Jackson_ Relationship _"   "_

Approved by: _N. Lyons_

Entry date: _8/12/04_

Denied: _____

Comments: _you  also  need  to  provide  DoB  for_
_your  visitors_

Date of Next Change: _8/12/05_

## W. C. HOLMAN CORRECTIONAL FACILITY
## INMATE TELEPHONE LIST

Inmate Name & AIS#: _Keith Gavin #Z-665_

Inmate Location: _8-U-4_

Date Form Completed: _8-11-04_

## Allowed Telephone Numbers

1. _773_ _378_ _8533_ Name _Annette Gavin_ Relationship _Mother_
2. _815_ _726_ _3767_ Name _Bobby Johnson_ Relationship _Auntie_
3. _212_ _364_ _5340_ Name _Barry C. Scheck_ Relationship _Attorney_
4. _256_ _766_ _8229_ Name _Hunter Gavin_ Relationship _Cousin_
5. _902_ _461_ _1875_ Name _Evlline Fox_ Relationship _Friend_
6. _334_ _265_ _5203_ Name _Sue Williams_ Relationship " "
7. _334_ _240_ _0914_ Name _Kathy Fint_ Relationship " "
8. _716_ _832_ _0516_ Name _Susan Jackson_ Relationship " "

Approved by: _N. Lyons_

Entry date: _8/12/04_

Denied: _____

Comments: _you also need to provide DoB for your visitors_

Date of Next Change: _2/12/05_

HOLMAN PRISON

INMATE TELEPHONE LIST

Inmate Name & AIS #: _KEITH GAVIN  I-665_

Inmate Locations: _345_

Date Form Completed: _12-10-03_

Allowed Telephone Numbers

1. _773  379  8424_ Name _ANNETTE GAVIN_  Relationship _MOTHER_

2. _815  726  3767_ Name _BOBBY JOHNSON_  Relationship _AUNTIE_

3. _256  845  7900_ Name _STEPHEN BUSSMAN_  Relationship _ATTORNEY_

4. _962  461  1875_ Name _EVILINE FOX_  Relationship _FRIEND_

5. _815  733  9856_ Name _EVILINE MEEKS_  Relationship _AUNTIE_

6. _256  766  8829_ Name _HUNTER GAVIN_  Relationship _COUSIN_

7. _____  Name _____  Relationship _____

8. _____  Name _____  Relationship _____

Approved By: _M. Lyons_

Entry Date: _12/19/03_

Denied: _____

Comments: _____

Date of Next Change: _6/19/04_

Inmate Name _____ KEITH GAVIN _____   AIS# 72-665 _____ Race B _____ Location S-H-2

Both sides of this form must be filled out at the same time.  No more than eight visitors can be listed on your visitors list.  List eight people you feel will send you funds.  People on your funds list may include but are not limited to people on your visiting list.

| VISITOR'S NAME | D. O. B. | SOCIAL SECURITY NUMBER | ADDRESS, CITY, STATE, ZIP CODE | PHONE NUMBER | RELATIONSHIP |
|---|---|---|---|---|---|
| ANNETTE GAVIN | 9-8-37 | 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 | 1140 N. Lockwood Chicago IL 60651 | 773-378-8533 | MOTHER |
| SHARON GAVIN | 10-14-69 | 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 | " " | " " | SISTER |
| STEVEN GAVIN | 10-14-63 | 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 | " " | " " | BROTHER |
| Nicole GAVIN | 2-21-75 | 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 | " " | " " | SISTER |
| LEONETTA GAVIN Clark | 7-24-80 | 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 | " " | " " | SISTER |
| ADRIANNE GAVIN BROOKS | 11-19-68 | 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 | " " | " " | SISTER |
| Bobbie Jean JOHNSON | 1-18-42 | 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 | 334 Richards ST. Joliet IL 60433 | 815-726-3767 | AUNT PIERCE |
| Joseph Maurin-Kika | 12-30-63 | | 30 Rue des Bassons (GREGUY STOFFELKLAND) | | COUSIN |

| FUNDS LIST | | | | | |
|---|---|---|---|---|---|
| VISITOR'S NAME | | SOCIAL SECURITY NUMBER | ADDRESS, CITY, STATE, ZIP CODE | PHONE NUMBER | RELATIONSHIP |
| ANNETTE GAVIN | | 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 | 1140 N. Lockwood/Chicago IL 60651 | 773-378-8533 | MOTHER |
| SHARON GAVIN | | 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 | " " | " " | SISTER |
| STEVEN GAVIN | | 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 | " " | " " | BROTHER |
| BARBARA LOTTRELL | | 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 | 5239 W. Potomac/Chicago IL 60651 | unknown | AUNT |
| Mavis Matthews Roberts | | 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 | 3239 S. Lake Park/Chicago IL 60652 | " | AUNT |
| Michael Robinson-Jr | | 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 | 3241 W. Farragut/Chicago IL 60625 | " | FRIEND |
| SHELTON MANKIN - KIKA | | | 30 Rue des Bassons (GREGUY STOFFELKLAND) | | COUSIN |
| Fred D. King ATTY NT LAW | | | 1520 mulberry ST / Montgomery AL 36106 334-269-1104 | | ATTORNEY |

HOLMAN PRISON

INMATE TELEPHONE LIST

Inmate Name & AIS #: _Keith Gavin   Z-665_

Inmate Locations: _345_

Date Form Completed: _12-10-03_

Allowed Telephone Numbers

1. _773   379   8474_ Name _Annette Gavin_   Relationship _Mother_

2. _815   726   3767_ Name _Bobby Johnson_   Relationship _Auntie_

3. _256   845   7900_ Name _Stephen Bussman_   Relationship _Attorney_

4. _902   461   1875_ Name _Evline Fox_   Relationship _Friend_

5. _815   733   9856_ Name _Evline Meeks_   Relationship _Auntie_

6. _256   766   8829_ Name _Hunter Gavin_   Relationship _Cousin_

7. _____   Name_____   Relationship_____

8. _____   Name_____   Relationship_____

Approved By: _M. Lyons_

Entry Date: _12/19/03_

Denied:_____

Comments:_____

_____

_____

Date of Next Change: _6/19/04_

Chain of Custody Form

NAME OF INSTITUTION _W.P. HOLMAN_   DATE TESTED _7/9/2003_

INSTITUTION CODE _023_   BATCH # _1_

DATE _7/01/13_   TIME SAMPLE DELIVERED _____

Z-441

| | INMATE'S NAME - AIS # / REASON | | TIME COLLECTED | | INMATE'S NAME - AIS # | REASON | TIME COLLECTED |
|---|---|---|---|---|---|---|---|
| | 1. _Porter, Keith Tanner_ | P | 11.10 | 17. | | | |
| | 2. _Collins, Nathan_ 017-848 | P | 12.41 | 18. | | | |
| | 3. _Adlock, Perry_ 492-451 | R | 1.13 | 19. | | | |
| | 4. _Gavin, Keith_ 96-2665 | R | 1.25 | 20. | | | |
| | 5. _Gibson, Antony_ 92-601 | R | 1.30 | 21. | | | |
| | 6. _Bush, Kevin_ 89-441 | R | 8.00 | 22. | | | |
| | 7. _Clark, Andrew_ 657 | R | 1.20 | 23. | | | |
| | 8. _Myers, Marcus_ 92-96 | R | 2.05 | 24. | | | |
| | 9. _Tanner, Bobby_ 92-635 | P | 12.55 | 25. | | | |
| | 10. _Cook, Terry_ 442-672 | P | 1.40 | 26. | | | |
| | 11. | | | 27. | | | |
| | 12. | | | 28. | | | |
| | 13. | | | 29. | | | |
| | 14. | | | 30. | | | |
| | 15. | | | 31. | | | |
| | 16. | | | 32. | | | |

OUR INSTITUTION REQUESTS THE ABOVE NAMED INMATES BE DRUG SCREENED AND THE RESULTS OF ALL POSITIVE TESTS REPORTED PER PHONE CALL WITH PAPER WORK TO FOLLOW.

THERE ARE A TOTAL OF _10_ SAMPLES TO BE TESTED. DRUGS _CSO, COCN, opiate, ETOH_
From _(The Above Inmates)_   To _Buzz Duke_   Date _7/01/03_   Time _11.00_
From _Buzz Duke_   To _Terry Chisolm_   Date _07/09/03_   Time _1.46 p.m._
From _____   To _____   Date _____   Time _____
From _____   To _____   Date _____   Time _____
From _____   To _____   Date _____   Time _____

_Cw 7/03_

REQUESTING AUTHORITY & PHONE NUMBER

_All tested Negative_

INMATE NAME **Keith Gavin**   AIS NUMBER **Z-665**   RACE **B**   **11/23/10**   LOCATION **BUS**

THIS SIDES OF THIS FORM MUST BE FILLED OUT AT THE SAME TIME. NO MORE THAN EIGHT VISITORS CAN BE LISTED ON YOUR VISITORS LIST. LIST EIGHT
...PLE YOU FEEL THAT WILL SEND YOU FUNDS. PEOPLE ON YOUR FUNDS LIST MAY INCLUDE BUT ARE NOT LIMITED TO PEOPLE ON YOUR VISITING LIST.

**VISITORS**

| NAME | SOCIAL SECURITY NUMBER | ADDRESS, CITY, STATE, ZIP CODE | PHONE | RELATION |
|---|---|---|---|---|
| Annette Gavin | 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 | 1140 N. Lockwood Ave Chicago, Ill 60651 | (773) 379-8473 | Mother |
| Sharon Gavin | 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 | 1140 N. Lockwood Ave Chicago Ill 60651 | " " | Sister |
| Geanette Clark | 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 | " " | " " | Sister |
| Patrice Gavin | 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 | " " | " " | Sister |
| Nicole Gavin | 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 | " " | " " | Sister |
| Sterling Gavin | 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 | " " | " " | Brother |
| Steven Gavin | 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 | " " | " " | Brother |
| Chris Matthews | 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 | 3939 S. Lake Park, Chicago, Ill 60653 | | Auntee |

**FUNDS**

| NAME | SOCIAL SECURITY NUMBER | ADDRESS, CITY, STATE, ZIP CODE | PHONE | RELATION |
|---|---|---|---|---|
| Annette Gavin | 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 | 1140 N. Lockwood Ave. Chicago, IL 60651 | (773) 379-8473 | Mother |
| Sharon Gavin | 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 | " " | " " | Sister |
| Geanetta Clark | 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 | " " | " " | Sister |
| Patrice Gavin | 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 | " " | " " | Sister |
| Nicole Gavin | 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 | " " | " " | Sister |
| Sterling Gavin | 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 | " " | " " | Brother |
| Steven Gavin | 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 | " " | " " | Brother |
| Chris Matthews | 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 | 3937 S. Lake Park Chicago, IL 60652 | " " | Auntee |

ALABAMA DEPARTMENT OF CORRECTIONS

## HOLMAN   PRISON

### INMATE TELEPHONE LIST

INMATE NAME&AIS # :   _KEITH  GAVIN  Z665_

INMATE LOCATION :   _4 - U - 72_

DATE FORM COMPLETED :   _2 - 18 - 00_

ALLOWED TELEPHONE  NUMBERS

1 _773 924 3874_   NAME _STEVEN Roberts_   RELATIONSHIP _Uncle_

2 _773 626 2752_   NAME _Adriane Brooks_   RELATIONSHIP _Sister_

3 _773 379 8473_   NAME _Annette Gavin_   RELATIONSHIP _Mother_

4 _815 726 3767_   NAME _Bobby Johnson_   RELATIONSHIP _Aunt_

5 _815 733 9856_   NAME _Eviline Meeks_   RELATIONSHIP _Aunt_

6 _256 845 7900_   NAME _Stephen Bussman_   RELATIONSHIP _Attorney_

7 _256 528 2107_   NAME _John Ufford_   RELATIONSHIP _Attorney_

8 ~~_____~~   NAME ~~_____~~   RELATIONSHIP ~~_____~~

APPROVED BY: _N. Lyons_

ENTRY DATE : _2/17/00_

DENIED :

COMMENTS :

DATE OF NEXT CHANGE:   _8/17/00_

DAVID A RAINS
CIRCUIT JUDGE
DeKALB COUNTY COURTHOUSE, Suite 406
300 GRAND AVE. S.W.
FORT PAYNE, ALABAMA 35967

36503/9999

Holman Correctional Facility
Holman 3700
Atmore, AL 36503-3700





State of Alabama,
**PLAINTIFF**

\* \* \* \* \* \* \* \*

vs.

Keith Edmund Gavin,
**DEFENDANT**

IN THE CIRCUIT COURT OF
CHEROKEE COUNTY, ALABAMA
CASE NOS. – CC-1998-061.60
CC-1998-062.60

## ORDER TO TRANSPORT DEFENDANT

The Defendant's PETITION FOR RELIEF FROM CONVICTION OR SENTENCE (Pursuant To Rule 32, Alabama Rules of Criminal Procedure) is set before the Court on the 20th day of December 2005, at 9:00 a.m., in the courtroom of the Cherokee County Courthouse, Centre, Alabama, and the Defendant is presently in the custody of Holman Correctional Facility, Atmore, Alabama. It is hereby,

**ORDERED** that the Sheriff of Cherokee County, Alabama, or his duly authorized deputy, shall transport the Defendant from the custody of the Holman Correctional Facility to the Cherokee County Jail for the hearing of the above referenced Petition filed in this case.

At the conclusion the Sheriff shall redeliver the Defendant to the custody of the Holman Correctional Facility.

Done this _26th_ day of October 2005.

DAVID A. RAINS, CIRCUIT JUDGE

faxed to Linda M...

**ORDER TO TRANSPORT DEFENDANT**
**Cherokee Co. CC-1998-061.60**
                    **CC-1998-062.60**
**Page 2**

Copies to:                          Attorney for:

Mr. Scott Lloyd
Mr. Robert F. Johnston               State of Alabama

Mr. Stephen C. Jackson               Keith Edmund Gavin
Mr. C. Andrew Kitchen
2400 AmSouth/Harbert Plaza
1901 Sixth Ave. North
Birmingham, AL  35203

Mr. Prentice H. Marshall, Jr.        Keith Edmund Gavin
Ms. Melanie Walker
10 South Dearborn St.
Chicago, IL  60603

Sheriff of Cherokee County,
Chief Jailer of Cherokee Co. Jail
Chief Deputy of Cherokee Co.

Holman Correctional Facility
Holman 3700
Atmore, AL  36503-3700

CBR202

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
CENTRAL RECORDS DIVISION
1400 LLOYD STREET
MONTGOMERY, ALABAMA 36130-1501
28 MAY 2002

TO: IL DEPARTMENT OF CORRECTIONS
    100 WEST RANDOLPH, STE 4-200
    CHICAGO              IL 60601

RE:     GAVIN, KEITH EDMUND
AIS NO: 0000Z665          CASE NUMBER : W#980826
R&S:    BM     DOB: 30 MAR 1960
CHARGE(S): PAROLE VIOLATION

DEAR SIR:

    AS YOU HAVE REQUESTED WE HAVE PLACED A HOLDOVER AGAINST SUBJECT AND WILL
NOTIFY YOUR OFFICE APPROXIMATELY THIRTY (30) DAYS BEFORE DATE OF HIS RELEASE
SO YOU MAY ARRANGE TO TAKE CUSTODY.

    BY COPY OF THIS NOTIFICATION, THE WARDEN HAVING PHYSICAL CUSTODY OF THE
INMATE IS INSTRUCTED TO INFORM THE INMATE OF THE SOURCE AND CONTENT OF YOUR
DETAINER, AND TO GIVE SUBJECT A COPY ATTACHED. ADDITIONALLY, THE WARDEN HAS
BEEN INSTRUCTED TO ADVISE THE INMATE THAT HE  MAY REQUEST FINAL DISPOSITION
OF ANY UNTRIED INDICTMENT, INFORMATION, OR COMPLAINT, BY WRITING THE COURT
AND DISTRICT ATTORNEY WHERE THESE CHARGES ARE PENDING. IF CHARGES AGAINST
THIS SUBJECT ARE WITHDRAWN PRIOR TO THE EXPIRATION OF HIS PENITENTIARY SENT-
ENCE, REQUEST YOU ADVISE THIS OFFICE.

CURRENT SHORT TIME RELEASE DATE IS: NO DATE SET
PAROLE HEARING SETUP DATE IS: NO DATE SET

INMATE HAS NO ADDITIONAL DETAINERS CURRENTLY IN EFFECT.

                              VERY TRULY YOURS,


                              BETTY H. TEAGUE
                              INMATE RECORDS ADMINISTRATION


                              BY: _____
                              DETAINER CLERK


CC: WARDEN/DIR/SUPT: HOLMAN DEATH ROW
    PAROLE BOARD, 1400 LLOYD STREET, MONTGOMERY, AL., 36130-1501
    INMATE CENTRAL FILE

2146

UP 980826

Warrant Number _____

State of Illinois
## DEPARTMENT OF CORRECTIONS

# WARRANT

REC'D—CHICAGO

MAY 21 1999

FUGITIVE APPREHENSION

It appearing to the undersigned, an officer authorized by the Director of the Department of Corrections, that:

Subject, __**Keith Gavin**__ _____   East Moline   N23865 _____, a person
          (Name)                                            (IDOC #)

in the lawful custody of the Department of Corrections pursuant to the Statutes of the State of Illinois, has escaped

from or has violated the rules and/or conditions of parole, Mandatory Supervised Release or the Community

Correctional Center program on the ___6th___ of ___March___, 19 98.
                                      (day)                        (month)

It is hereby ordered that the above named person be retaken immediately into custody and held for delivery to the Director

of the DEPARTMENT OF CORRECTIONS or his duly authorized agent.

Given under my hand this ___26th___ day of ___March___, 19 98.

ENTERED TERMINALS
DATE 5-28-02 BY

This Warrant is issued pursuant to the authority granted
the Department of Corrections in the Code of Correc-
tions, 730 ILCS 5/3-13-4 and 730 ILCS 5/3-14-2.

State of Illinois
DEPARTMENT OF CORRECTIONS

Seal

_____
Deputy Director, Community Services

_____
Issuing Officer

DC 736 (Rev. 10/95)
IL 428-0286

2147

INMATE NAME __Keith Gavin__   AIS NUMBER __Z-665__   RACE __B__   LOCATION __543__

12-12-01

BOTH SIDES OF THIS FORM MUST BE FILLED OUT AT THE SAME TIME. NO MORE THAN EIGHT VISITORS CAN BE LISTED ON YOUR VISITORS LIST. LIST EIGHT PEOPLE THAT WILL SEND YOU FOUNDS. PEOPLE ON YOUR FUNDS LIST MAY INCLUDE BUT ARE NOT LIMITED TO PEOPLE ON YOUR VISITING LIST.

VISITORS

| NAME | SOCIAL SECURITY NUMBER | ADDRESS, CITY STATE, ZIP CODE | PHONE | RELATION |
|------|------------------------|-------------------------------|-------|----------|
| Dale Ward | | 18293 Al Hwy 14 Sawyerville Al 36776 | | Friend |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

12/11/01

This is your 6 month change. Do
you want a funds list, and
Telephone, on toters delete # 81
everything except to this one
Visitor. (I only wants to add this name to my
list and leave my funds list as it is.) Thank You!
Please delete Kathy Matthews, Olivia Evans
And Richard Wood.

| NAME | SOCIAL SECURITY NUMBER | | | RELATION |
|------|------------------------|---|---|----------|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

2148

"O B"  7/26/07

## STATE OF ALABAMA
## DEPARTMENT OF CORRECTIONS
## CHAIN OF CUSTODY

Name of Institution: W. C. Holman          Inst. Code: 003

Date: 7-25-07          Time Specimens Delivered: 1:30 PM

| | First | Last | Time of Collection | AIS # | Race | Sex (M-F) | Medications (Yes or No) |
|---|---|---|---|---|---|---|---|
| 1 | Dominique | Ray | 10:30 Am | B2663 | B | M | Yes |
| 2 | Keith | Gavin | 11:40 Am | B2665 | B | M | No |
| 3 | Harvey | Windsor | 10:27 Am | W2498 | W | M | Yes |
| 4 | Jerry | Bryant | 1:00 PM | B2-644 | B | M | No |
| 5 | Willie | Scott | 11:48 Am | B2-691 | B | M | Yes |
| 6 | | | | | | | |
| 7 | | | | | | | |
| 8 | | | | | | | |
| 9 | | | | | | | |
| 10 | | | | | | | |
| 11 | | | | | | | |
| 12 | | | | | | | |
| 13 | | | | | | | |
| 14 | | | | | | | |
| 15 | | | | | | | |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | *All tested Negative* | | | | | |
| 23 | | | | | | | |
| 24 | | | | | | | |
| 25 | | | | | | | |

OUR INSTITUTION REQUESTS THE ABOVE NAMED INMATE (S) BE DRUG SCREENED AND THE RESULTS OF ALL POSITIVE TESTS BE REPORTED VIA PHONE CALL WITH PAPERWORK TO FOLLOW.

There are a total of ___5___ specimens to be tested. THC Can, opiate, Meth

| From: | | To: | | Date: | | Time: |
|---|---|---|---|---|---|---|
| From: | (The above Inmates) | To: Bobby Lane CO | Date: 7-25-07 | | Time: 10:30 Am |
| From: Bobby Lane CO | | To: Terry Quarter | Date: 7-25-07 | | Time: 1:30 pm |
| From: | | To: Drug Firm Dr | Date: 7/25/07 | | Time: 2:00 Pm |
| From: | | To: Lab Quarter | Date: 8/2/07 | | Time: 9:10 Am |
| From: | | To: | Date: | | Time: |
| From: | | To: | Date: | | Time: |

RETAIN THIS FORM FOR ONE YEAR

ADOC Form 440-A – January 26, 2006

AR 440 – January 5, 2006

KOB  Document 35-25  Filed 11/07/16  Page 151 of 202

Inmate Name KEITH GAVIN    AIS# 2-lee5   Race (B)   Location D-11A

Both sides of this form must be filled out at the same time. No more than eight visitors can be listed on your visitors list. List eight people you feel will send you funds. People on your funds list may include but are not limited to people on your visiting list.

| VISITOR'S NAME | D. O. B. | SOCIAL SECURITY NUMBER | ADDRESS, CITY, STATE, ZIP CODE | PHONE NUMBER | RELATIONSHIP |
|---|---|---|---|---|---|
| PLEASE LEAVE VISITORS list AS iS. | | | Thank you! | | |
| | | | | | |
| | | | Keith Gavin | | |
| | | | | | |

| FUNDS LIST | | SOCIAL SECURITY NUMBER | ADDRESS, CITY, STATE, ZIP CODE | PHONE NUMBER | RELATIONSHIP |
|---|---|---|---|---|---|
| PLEASE LEAVE Funds list AS iS. | | | Thank You! | | |
| | | | | | |
| | | | Keith Gavin | | |
| | | | | | |

Note:
I only want to add and change phone numbers.

Thank You!
8-9-16
CMO
Keith Gavin

2149

Inmate Name __Bell, Cervin__   AIS# __7-665__   Race __B__   Location __SVR__

Both sides of this form must be filled out at the same time. No more than eight visitors can be listed on your visitors list. List eight people you feel will send you funds. People on your funds list may include but are not limited to people on your visiting list.

| VISITOR'S NAME | D.O.B. | SOCIAL SECURITY NUMBER | ADDRESS, CITY, STATE, ZIP | PHONE NUMBER | RELATIONSHIP |
|---|---|---|---|---|---|
| Annette Gavin G | 9-3-37 | 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 | 1146 N. Lockwood/Chicago IL 60651 | 773-378-8533 | Mother ✓ |
| Sharon Gavin B | 10-14-64 | 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 | " " " | " | Sister ✓ |
| Ever Gavin B | 10-14-63 | 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 | " " " | " | Brother ✓ |
| Isele Gavin | 2-21-75 | 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 | " " " | " | Sister ✓ |
| Lanetta Gavin Clark ✓ | 7-24-80 | 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 | " " " | " | Sister ✓ |
| Adriane Gavin Brooks ✓ | 11-19-68 | 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 | " " " | " | Sister ✓ |
| Bobbie Jean Johnson ✓ | 1-18-42 | 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 | 234 Richards St, Joliet IL 60433 | 815-726-3767 | Aunt/Friend ✓ |
| Elizabeth Manuel - Kirk | 12-23-63 | | 30 Rue des Bossons | | Cousin ✓ |

| FUNDS LIST | | SOCIAL SECURITY NUMBER | ADDRESS, CITY, STATE, ZIP | PHONE NUMBER | RELATIONSHIP |
|---|---|---|---|---|---|
| Annette Gavin B | | 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 | 1146 N. Lockwood/Chicago IL 60651 | 773-378-8533 | Mother ✓ |
| Sharon Gavin B | | 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 | " " " | " | Sister ✓ |
| Steven Gavin B | | 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 | " " " | " | Brother ✓ |
| Sheldon Cottrell | | 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 | 5234 W. Potomac/Chicago IL 60651 | unknown | Nephew ✓ |
| Iris Matthews Roberts | | 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 | 3739 S. Lake Park/Chicago IL 60653 | " | Aunt ✓ |
| Michael Abbinanti | | 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 | 3341 W. Farragut/Chicago IL 60625 | " | Friend ✓ |
| Slizena Miranda - Kirk | | | 30 Rue des Bossons, Geneva Switzerland | " | Cousin ✓ |
| Aird D. King, Atty, NE Law | | | 1530 N. Liberty St/Morganton, NL 36104 (834) 367-1100 | | Attorney ✓ |

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS

CHAIN OF CUSTODY

Name of Institution: WC Holman                     Inst. Code: 003

Date: 2-15-06          Time Specimens Delivered: 10:30 Am

| | First | Last | Time of Collection | AIS # | Race | Sex (M-F) | Medications (Yes or No) |
|---|---|---|---|---|---|---|---|
| 1 | Tony | Barksdale | 7:16 Am | B2611 | B | M | Yes |
| 2 | William | Bush | 6:55 Am | B2412 | B | M | Yes |
| 3 | Keith | Gavin | 8:22 Am | B2665 | B | M | No |
| 4 | ~~Christopher~~ | ~~Hyde~~ | | | | M | No |
| 5 | Jeremiah | Jackson | 7:35 Am | B2625 | B | M | No |
| 6 | Michael | Land | 7:30 Am | W2553 | W | M | Yes |
| 7 | Michael | Lewis | 7:05 Am | W2698 | W | M | Yes |
| 8 | James | McGowan | 7:15 Am | W2602 | W | M | Yes |
| 9 | Robert | Melson | 7:45 Am | B2601 | B | M | No |
| 10 | Harry | Nicks | 7:25 Am | B2444 | B | M | Yes |
| 11 | Dominique | Ray | 8:20 Am | B2663 | B | M | No |
| 12 | Larry | Smith | 8:25 Am | W2583 | W | M | No |
| 13 | Willie | Smith | 7:12 Am | B2541 | B | M | Yes |
| 14 | Devin | Thompson | 7:10 Am | B2717 | B | M | No |
| 15 | David | Davis | 7:41 Am | W2616 | W | M | Yes |
| 16 | | | | | | | |
| 17 | | | | | | | |
| 18 | | | | | | | |
| 19 | | | | | | | |
| 20 | | | | | | | |
| 21 | | | | | | | |
| 22 | | | | | | | |
| 23 | | All tested Negative | | | | | |
| 24 | | | | | | | |
| 25 | | | | | | | |

OUR INSTITUTION REQUESTS THE ABOVE NAMED INMATE (S) BE DRUG SCREENED AND THE RESULTS OF ALL POSITIVE TESTS BE REPORTED VIA PHONE CALL WITH PAPERWORK TO FOLLOW.

There are a total of ___14___ specimens to be tested. CJO, COcn, ETOH, Benz, Oxy

| From: | (The above Inmates) | To: | COI Bobby Love | Date: | 2-15-06 | Time: | 6:55 Am |
|---|---|---|---|---|---|---|---|
| From: | COI Bobby Love | To: | FCC Drug Room | Date: | 2-15-06 | Time: | 10:30 Am |
| From: | | To: | | Date: | | Time: | |
| From: | | To: | | Date: | | Time: | |
| From: | | To: | | Date: | | Time: | |
| From: | | To: | | Date: | | Time: | |

RETAIN THIS FORM FOR ONE YEAR

ADOC Form 440-A -- January 26, 2006

EXT. 311 -
Warden Culliver

11 of 12

AR 440 -- January 5, 2006

# CERTIFICATE OF COMPLETION



THE KAIROS SHORTCOURSE IS A TOTAL IMMERSION THREE-AND-ONE-HALF-DAY INSTRUCTIONAL INTRODUC-TION TO LIVING IN CHRISTIAN COMMUNITY. FORGIVENESS OF OTHERS, SELF EXAMINATION, GOAL SETTING, SELF ESTEEM, SMALL GROUP INTERACTION, COMMUNICATION, RESPONSIBILITY, TRUST AND RESPECT ARE INTENSE ELEMENTS OF THE CURRICULUM.

This certifies that _____ KEITH  GAVIN _____ 2-665 _____ attended and

completed Kairos # _D.R._ 6 ___ at __ HOLMAN  CORRECTIONAL  FACILITY _____

during _November  18-20,  2005_

_William E. Parker_

Chairman, Kairos District of ___ Alabama

This certificate should be a permanent part of the official records of the above named individual.  It certifies participation in a significant program which entails extensive follow-up participation, and is hereby entitled to participate in Kairos activities when these are offered at other Department of Corrections Institutions to which this individual may be assigned.

_____
Chaplain

HOLMAN  CORRECTIONAL  FACILITY
_____
Institution

HOLMAN  CORRECTIONAL  FACILITY

W. C. HOLMAN CORRECTIONAL FACILITY
INMATE TELEPHONE LIST

Inmate Name & AIS#: _Keith Gavin #Z-665_

Inmate Location: _8-U-4_

Date Form Completed: _4-25-05_

Allowed Telephone Numbers

1. _773_ _378_ _8533_ Name _Annette Gavin_ Relationship _Mother_
2. _815_ _726_ _3767_ Name _Bobbie Johnson_ Relationship _Aunt_
3. _773_ _784_ _0239_ Name _Michael Abbinanti_ Relationship _Cousin_
4. _256_ _766_ _8229_ Name _Hunter Gavin_ Relationship _Cousin_
5. _716_ _832_ _0576_ Name _Susan Jackson_ Relationship _Friend_
6. _334_ _269_ _1803_ Name _Lisa Hoyes_ Relationship _Attorney_
7. _212_ _364_ _5340_ Name _Barry C Scheck_ Relationship _Attorney_
8. _____ _____ _____ Name _____ Relationship _____

Approved by: _N. Lyons_
Entry date: _5/2/05_

Denied: _____

Comments: _____

_____

_____

_____

Date of Next Change: _10/2/05_

STATE OF ALABAMA
BOARD OF CORRECTIONS

N601
D of C
DOC No. 601 (REV. 4/81)

## INSTITUTIONAL INCIDENT REPORT

| 1. Institution:<br>Holman C. F. | 2. Date:<br>February 26, 2002 | 3. Time:<br>8:10 AM | 4. Incident Number<br>HP02-165 |
|---|---|---|---|

| 5. Location Where Incident Occurred:<br>Death Row Exercise Yard | 6. Type of Incident:<br>Fighting Without a Weapon |
|---|---|

| 7. Time Incident Reported:<br>8:10 AM | 8. Who Received Report:<br>Lt. David Craft |
|---|---|

9. Victim:  a. _____ No
           b. _____ No

| 10. Suspects: | | | 11. Witnesses: | a. _____ No. |
|---|---|---|---|---|
| | | | | b. _____ No. |
| a. Dominique Ray | B/M | No. Z663 | | c. _____ No. |
| b. Keith Gavin | B/M | No. Z665 | | d. _____ No. |
| c. _____ | | No. ___ | | e. _____ No. |
| d. _____ | | No. ___ | | f. _____ No. |
| e. _____ | | No. ___ | | g. _____ No. |

Physical Evidence:
12. Type of Evidence:   N/A

13. Description of Evidence   N/A

14. Chain of Evidence:
a.   N/A
b.
c.
d.

Narrative Summary: On February 26, 2002, at approximately 8:10 AM, Inmates Dominique Ray, B/Z663, and Keith Gavin, B/Z665, were fighting on the death row walk yard. At first it appeared that the two inmates might have been playing. Officer Kilcrease told both inmates to stop fighting and to come over where he was standing. Both inmates stopped and came over to Officer Jimmy Kilcrease. Officer Kilcrease began to question both inmates to see what was going on. Officer Kilcrease positioned himself between the two inmates as he was questioning them. Both inmates attempted to fight again and had to be restrained until other officers arrived to help escort both inmates back to their cells. Lt. Craft questioned both inmates. Officer Mike Austin escorted Inmate Dominique Ray, B/Z663, to the unit hospital. Inmate Keith Gavin B/Z665, refused to go to the unit hospital. Inmates Dominique Ray and Keith Gavin will receive disciplinary action for fighting without a weapon.

_____ Kilcrease COI         Jimmy Kilcrease, COI                    (cont.)

DISTRIBUTION:     ORIGINAL  Investigation and Inspection Division
                  COPY to Deputy Commissioner, Institutions
                  COPY to Institutional File
                  COPY to Central Records File



N 602

CONTINUATION SHEET

Incident Number: HP02-165

Type of Incident: Fighting without a weapon

Date: February 26, 2002

Narrative Summary (Continued) Page No.

COI Jimmy Kilcrease continued statement:

It was determined that the inmates had words the night before.  Inmate Ray said that inmate Gavin hit him when they were released out of their cell for the walk, and the fight continued on the walk yard.

Kilcrease COI

Jimmy Kilcrease, COI

FORM 225-B     ALABAMA DEPARTMENT OF CORRECTIONS

DISCIPLINARY REPORT

1. INMATE __Gavin__    __Keith__    __Edmund__ CUSTODY __MAX__ AIS NO. __B/M__ __Z665__
     LAST      FIRST      MIDDLE      DISCIPLINARY # __HP02-165__

2. FACILITY: __Holman Correctional Facility__

3. The above named inmate is being charged by __Jimmy Kilcrease, COI__
with a violation of Rule # __35__ specifically _Fighting Without A Weapon_
     from regulation # __403__ which occurred on or about
__February 26__ ,2002 at (time) __8:10__ (am/xx), Location:
__Death row walk yard__ _____ A hearing on this
charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows: __You, inmate Keith Gavin,__
    __B/Z665, were fighting without a weapon with inmate Dominique Ray, B/Z663,__
    __on the death row walk yard.__

5. Date: __02-28-2002__      _Kilcrease COI_
                                Arresting: Officer's Signature/Rank

6. I hereby certify that I have personally served a copy of the foregoing upon the
above named inmate and I informed inmate of his/her right to present written or
oral statement at the hearing and to present written questions for the witnesses
on this the __28th__ day of __February__ , 200_2_ at (time) __11:58__ (am/pm).

7. _Gary Bryan, COI_         _Keith Gavin 2-665_
   Serving Officer's Signature/Rank      Inmate's Signature/AIS Number

8. Witnesses desired? NO _____   YES _Keith Gavin_
              Inmates Signature       Inmates Signature

9. If yes, list __OFFICER HOWARD__

10. Hearing Date __03/05/02__   Time __1200 PM__ Place _____

11. Inmate must be present in Hearing Room. If he/she is not present, explain in
detail on additional page and attach.

12. A finding is made that inmate (is)/is not capable of representing himself.

             _Greg Pierce_
             Hearing Officer's Signature

13. Plea: _____ Not Guilty _____ Guilty.

14. The Arresting Officer, inmate and all witnesses were sworn to tell the
truth.
             _Greg Pierce_
             Hearing Officers Signature

15. Arresting Officer's Testimony (at hearing): __On the date and time in question__
    __while on the exercise yard area of death row, I observed inmates Keith Gavin and__
    __Dominique Ray, B/Z663, fighting without a weapon.__

16. Inmates Testimony: __Guilty, no statement.__     MAR 27 END

Witness: _____  Substance of Testimony: _____

Witness: _____  Substance of Testimony: _____

17. The inmate was allowed to submit written questions to all witnesses.
    Copy of questions and answers are attached
    No questions.                                  _Greg Pierce   COI_
    ─────────────────────────────── Hearing Officer's Signature

18. The following witnesses were not called - Reason not called...
    1. _____   _____
    2. _____   _____
    3. _____

19. After hearing all testimony, the Hearing Officer makes the following
    findings of fact: (Be Specific) The Hearing Officer finds that: On 02/26/02
    at approximately 8:10 a.m. in the exercise yard area of Holman unit, inmate Keith
    Gavin, B/Z665, did violate rule #35, Fighting without a weapon. The chairman further
    finds that such action is not permitted in Holman, therefore, the inmate's actions
    does constitute disciplinary action.

20. Basis for Findings of Fact:    Based on testimony of the arresting officer, Jimmy
    Kilcrease, who stated under oath that the observed inmates Gavin and Ray fighting
    without a weapon on the death row exercise yard. Also, based on inmate Gavin's
    signed plea of guilty.

21. Hearing Officer's Decision:    XX   ✓         Guilty    XX        Major
                                                  Not Guilty           Minor

22. Recommendation of Hearing Officer: Forty-five (45) days disciplinary segregation,
    Forty-five (45) days loss of all privileges, Refer to classification for review.

                                          _Greg Pierce   COI_
                                          Hearing Officer's Signature/Rank
                                          Greg Pierce, COI
                                          Type Name and Title

23. Warden's Action Date: 3-14-02
    Approved  ✓
    Disapproved
    Other (Specify) _____

24. Reason if more than 30 calendar days delay in action: _____

25. I hereby certify that a completed copy of the foregoing Disciplinary Report
    was served on the above named inmate on this ____ day of _____ 2002,
    at (time) _____ (am/pm).

    _Ernest L. Stanton - COI_        _refuse to sign_
    Serving Officer's Signature/Title    Inmate's Signature/AIS Number

                              Annex C to A  403 (page 2 of 3)

2158

54-003

DOC Form 225B (Revised 7/92)

## ALABAMA DEPARTMENT OF CORRECTIONS   HP01-0189
### DISCIPLINARY REPORT

1. INMATE: __Keith E. Gavin__   __B/M__   CUSTODY __Maximum__   AIS __Z665__

2. FACILITY: __Holman Correctional Facility__

3. The above inmate is being charged by __Issac Poindexter, COI__ with a violation of Rule Number __35__ specifically __Fighting without a weapon__

   from regulation # __403__, which occurred on or about __March 5, 2001__ XX at (time) __11:55__ (am/pm), Location: __Death Row Law Library__
   A hearing on this charge will be held after 24 hours from service.

4. Circumstances of the violation(s) are as follows: __You were fighting with inmate Alonzo Burgess, B/Z559 in the Death Row Law Library.__
   __#35 Major__

5. _____
   _Issac S. Poindexter COI_
   Arresting Officer/Signature/Rank

6. I hereby certify that I have personally served a copy of the foregoing upon the above named inmate on this the __7__ day of __March__, 15 03 at (time) __12:05__ (am/pm)

7. _David Smith COI_   x _Keith Gavin_
   Serving Officer/Signature/Rank      Inmate's Signature/AIS Number

8. Witnesses desired? NO _____   YES x _Keith Gavin Z2665_
   Inmate's Signature                    Inmate's Signature

9. If yes, list: _Issac Poindexter COI, Ray, Damian w Curly Bell_

10. Hearing Date __03/10/01__   TIME __8:50 PM__   PLACE __DR office Big__

11. Inmate must be present in Hearing Room. If he is not present explain in detail on additional page and attach.

12. A finding is made that inmate ( is / is not ) capable of representing himself.
    _Greg Pesne_
    Signature/Hearing Officer

13. Plea: _Keith Gavin_   Not Guilty _____   Guilty

14. The Arresting Officer, inmate, and all witnesses were sworn to tell the truth.
    _Greg Pesne_
    Signature/Hearing Officer

15. Arresting Officer's testimony (at the hearing): __On March 5, I was passing by the law library and heard a noise. I observed inmate Alonzo Burgess walking toward inmate Gavin. I got assistance from other officers, we entered the law library and escorted inmate Keith Gavin and Alonzo Burgess out.__

Annex C of AR 403 (Page 1 of 3)

16. Inmate's Testimony: Not guilty, no punches were thrown.

_____

Witness: _____

_____  Substance of Testimony: _____

Witness: _____

_____  Substance of Testimony: _____

Witness: _____

_____  Substance of Testimony: _____

17. The inmate was allowed to submit written questions to all witnesses. Copy of questions and answers are attached.

　　See attached

　　　　　　　　　　　　　　　_Greg Pierce_
　　　　　　　　　　Signature/Hearing Officer

18. The following witnesses were not called — Reason not called
   1. Issac Poindexter　　　　　　　　waived
   2. Dominique Ray　　　　　　　　　　Waived
   3. Randy Bell　　　　　　　　　　　　Waived

19. After hearing all testimony, the Hearing Officer makes the following findings of fact: (Be Specific)
   The Hearing Officer finds that:　On 3/5/01 at approximately 11:55 a.m. in the law
   library area of Holman unit, inmate Keith Gavin, B/Z665, did violate rule
   #35, fighting without a weapon.　The chairman further finds that such action
   is not permitted in Holman and does constitute disciplinary action.

20. Basis for Findings of Fact:　Based on testimony of the arresting officer, Issac
   Poindexter, who stated under oath that he observed both inmates Alonzo
   Burgess and Keith Gavin struggling in the law library.

21. Hearing Officer's Decision: __XX__ Guilty　__XX__ Major
   　　　　　　　　　　　　　　　　　　_____ Not Guilty　_____ Minor

22. Recommendation of Hearing Officer:　Forty-five (45) days disciplinary segregation,
   Forty-five (45) days loss of all privileges. Refer to classification
   for review.

　　　　　　　　　　　　　　　　　_Greg Pierce, COI_
　　　　　　　　　　　Signature/Hearing Officer
　　　　　　　　　　　Greg Pierce, COI
　　　　　　　　　　　Type Name and Title

23. Warden's Action – Date _3/12/01_
   Approved _Grant Culliver_
   Disapproved _____
   Other (Specify) _____

24. Reason if more than 30 calendar days delay in action. _____

25. I hereby certify that a completed copy of the foregoing Disciplinary Report was served on the above named
   inmate on this _12_ day of _03_　© _2001_ at (time) _10:50_　(am/pm)

   _____ COI　　　REFUSED TO SIGN _____ COI
   Signature/Serving Officer/Title　　Inmate's Signature/AIS Number

　　　　　　　　　　　　　　　　　　　Annex C of AR 403 (Page 2 of 3)

STATE OF ALABAMA
BOARD OF CORRECTIONS

INSTITUTIONAL INCIDENT REPORT

N601
D of C
DOC No. 601 (REV. 4/81)

| 1. Institution: Holman C.F. | 2. Date: 3/5/01 | 3. Time: 11:57 a.m. | 4. Incident Number HP01-0189 |
|---|---|---|---|
| 5. Location Where Incident Occurred: Law library Death Row | | 6. Type of Incident: Fighting without a weapon | |
| 7. Time Incident Reported: 11:56 a.m. | | 8. Who Received Report: Sgt. Raymond D. Fuqua | |

9. Victim:   a. _____ No _____
             b. _____ No _____

10. Suspects:

a. Alonzo Burgess  B/M     No. Z559
b. Keith Gavin  B/M        No. Z665
c. _____        No. _____
d. _____        No. _____
e. _____        No. _____

11. Witnesses:
a. _____ No. _____
b. _____ No. _____
c. _____ No. _____
d. _____ No. _____
e. _____ No. _____
f. _____ No. _____
g. _____ No. _____

Physical Evidence:
12. Type of Evidence:

13. Description of Evidence

14. Chain of Evidence:
a.
b.
c.
d.

Narrative Summary: On March 5, 2001, at approximately 11:55 a.m., Officer Issac Poindexter was starting to run the treatment list for the unit infirmary. As Officer Poindexter was passing the law library (death row), he saw two inmates struggling with each other. The inmates were later identified as Alonzo Burgess, B/Z559, and Keith Gavin, B/665. Officer Poindexter alerted Sgt. Raymond D. Fuqua and other segregation officers that a fight was taking place in the library. Officers Poindexter, Sgt. Fuqua, Randall Steele, Mike Austin and David Smart went in and escorted inmate Burgess and Gavin from the law library to the lieutenant's office without incident. Inmates Burgess and Gavin were asked if they would like to go to the unit infirmary. Both inmates refused. See the attached medical release of responsibility form. When the inmates were asked by Sgt. Fuqua what caused this incident, inmate Gavin refused to say anything, inmate Burgess said he was just jenking inmate Gavin. After talking with Sgt. Fuqua inmates Burgess and Gavin were secured in their cells. Both inmates will be

DISTRIBUTION:     ORIGINAL  Investigation and Inspection Division
                  COPY to Deputy Commissioner, Institutions
                  COPY to Institutional File
                  COPY to Central Records File



N 602

## CONTINUATION SHEET

Incident Number: Hp01-0189

Type of Incident:  Fighting without a weapon

Date: 3/5/01

Narrative Summary (Continued) Page No.

charged with rule #35, fighting without a weapon.

Issac S. Poindexter, COI

HOLMAN   PRISON

INMATE TELEPHONE LIST

INMATE NAME&AIS # : _____

INMATE LOCATION  : _____

DATE FORM COMPLETED : _____

ALLOWED TELEPHONE  NUMBERS

1 _____ _____ _____ NAME_____ RELATIONSHIP_____

2 _____ _____ _____ NAME_____ RELATIONSHIP_____

3 _____ _____ _____ NAME_____ RELATIONSHIP_____

_ _____ _____ _____ NAME_____ RELATIONSHIP_____

_____ _____ _____ NAME_____ RELATIONSHIP_____

_____ _____ _____ NAME_____ RELATIONSHIP_____

_____ _____ _____ NAME_____ RELATIONSHIP_____

_____ _____ _____ NAME_____ RELATIONSHIP_____

APPROVED BY: _____

ENTRY DATE : 12/13/0

DENIED  : _____

COMMENTS : _____

DATE OF NEXT CHANGE: 6/13/02

INMATE NAME: Keith Gavin    AIS NUMBER: Z-665    RACE: B    LOCATION: 1231 B    345

ALL SIDES OF THIS FORM MUST BE FILLED OUT AT THE SAME TIME. NO MORE THAN EIGHT VISITORS. EIGHT VISITORS CAN BE LISTED ON YOUR VISITORS LIST. LIST EIGHT PEOPLE YOU FEEL THAT WILL SEND YOU FOUNDS. PEOPLE ON YOUR FOUNDS LIST MAY INCLUDE BUT ARE NOT LIMITED TO PEOPLE ON YOUR VISITING LIST.

## VISITORS

| NAME | SOCIAL SECURITY NUMBER | ADDRESS,CITY STATE,ZIP CODE | PHONE | RELATION |
|---|---|---|---|---|
| Annette Gavin | 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 | 1140 N. Lockwood Ave Chicago, Ill 60651 | (773) 379-8473 | Mother |
| Sharon Gavin | 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 | 1140 N. Lockwood Ave Chicago Ill 60651 | " " | Sister |
| Geanetta Clark | 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 | " | " " | Sister |
| Latrice Gavin | 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 | " | " " | Sister |
| Nicole Gavin | 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 | " | " " | Sister |
| Sterling Gavin | 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 | " | " " | Brother |
| Steven Gavin | 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 | " | " " | Brother |
| Chris Matthews | 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 | 3939 S. Lake Park, Chicago, Ill 60652 | " " | Auntee |

## FOUNDS

| NAME | SOCIAL SECURITY NUMBER | ADDRESS,CITY,STATE,ZIP CODE | PHONE | RELATION |
|---|---|---|---|---|
| Annette Gavin | 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 | 1140 N. Lockwood Ave Chicago Il 60651 | (773) 379-8473 | Mother |
| Sharon Gavin | 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 | " | " " | Sister |
| Geanetta Clark | 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 | " | " " | Sister |
| Latrice Gavin | 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 | " | " " | Sister |
| Nicole Gavin | 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 | " | " " | Sister |
| Sterling Gavin | 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 | " | " " | Sister |
| Steven Gavin | 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 | " | " " | Brother |
| Chris Matthews | 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 | 3939 S. Lake Park, Chicago Il 60652 | " " | Auntee |

Q.B.B Officer engaged in a struggle...?

(A) Yes I did.

Q.B.B there you contact was made by both inmate Slaui and Burgess?

(A). (YES).

Q.B.B were both inmates being held by other inmates in the library

(A) only Burgess.

Q.B.A were there any marks Bruses Scratchs any Signs of Blood ect.?

(A) only Burgess. NO).

# Release of Responsibility

Gavin, Keith
Name of Inmate

Date: 3-5-01

2-665
Inmate ID Number/Date of Birth

I hereby refuse to accept the following treatment / recommendations:

to be seen by nurse after fighting

I acknowledge that I have been fully informed of and understand the above treatment(s) or recommendation(s) and the risk(s) involved in refusing. I hereby release and agree to hold harmless NaphCare, Inc., its employees and agents from all responsibility and ill effect which may result from this action.

Keith Gavin
Inmate Signature

Bonerson W
Witness

3-5-01 / 1205
Date / Time

The aforementioned inmate has refused the listed medical treatment(s)/recommendation(s) and has refused to sign this form.

Witness

Date / Time

Witness

# Release of Responsibility

Burgess, Alonzo      3-5-01
lame of Inmate      Date

Z-559

inmate ID Number/Date of Birth

I hereby refuse to accept the following treatment / recommendations:

to be seen by nurse after fighting

acknowledge that I have been fully informed of and understand the above treatment(s) or recommendation(s) and the risk(s) involved in refusing. I hereby release and agree to hold harmless NaphCare, Inc., its employees id agents from all responsibility and ill effect which may result from this action.

X Alonzo Burgess.      B Emerson LP
nmate Signature      Witness

3-5-01 / 1205
ate / Time

e aforementioned inmate has refused the listed medical treatment(s)/recommendation(s) and has refused to sig his form.

vitness      Date / Time

tness

Release of Responsibility

NC02

FORM NPS-8
(10-22-98)

U.S. DEPARTMENT OF COMMERCE
BUREAU OF THE CENSUS
ACTING AS COLLECTING AGENT FOR THE
BUREAU OF JUSTICE STATISTICS
U.S. DEPARTMENT OF JUSTICE

1121-0030: Approval Expires 02/28/2001

**CENSUS USE ONLY**

a. Report year          b.

Card___of___Cards

# REPORT OF INMATE UNDER SENTENCE OF DEATH
## NATIONAL PRISONER STATISTICS

RETURN TO

Bureau of the Census
ATTN: Demographic Surveys Division
Washington, DC 20233

*Important – Please read instructions on reverse before completing this form.*

**1. State** AL   **Inmate's Dept. of Corrections ID.** Z665

**2. Inmate name**
Last: GAVIN   First: Keith   Middle Initial: E

**3. Sex** – *Mark (X) appropriate box.*
1 ☒ Male    2 ☐ Female

**4a. Race** – *Mark (X) appropriate box.*
1 ☐ White
2 ☒ Black
3 ☐ American Indian or Alaska Native
4 ☐ Asian
5 ☐ Native Hawaiian or other Pacific Islander
6 ☐ Other – *Specify*

**4b. Hispanic origin** – *Mark (X) appropriate box.*
1 ☐ Hispanic    2 ☒ Non-Hispanic    3 ☐ Not known

**5. Date of birth**
Month: 03   Year: 1960

**6. Capital offense(s) for which imprisoned**
Number of death sentences imposed → 1
☒ Murder    ☐ Kidnap
☐ Rape    ☐ Other – *Specify*

**CENSUS USE ONLY**

**7. Marital status at time of first imprisonment for capital offense**
1 ☐ Married – *Include common law marriage*
2 ☐ Divorced or separated
3 ☐ Widowed
4 ☒ Never married
5 ☐ Not known

**8. Highest year of education completed at time of first imprisonment for capital offense**

**11. Date of arrest for capital offense**
Month: 03   Year: 1998

**12. Date of conviction for capital offense**
Month: 11   Year: 1999

**13. Date of sentence for capital offense**
Month: 01   Year: 2000

**14a. Inmate status on December 31, 2000**
*Mark (X) appropriate box.*
1 ☒ Under sentence of death – *Continue with item b*
2 ☐ Sentence of death removed – *Skip to items c and d*

**14b. Was this inmate on escape or at a mental hospital on December 31?**
1 ☐ Yes, on escape – *Enter month and year of escape*   Month ___ Year ___
2 ☐ Yes, at a mental hospital – *Enter month and year of transfer to mental hospital*   Month ___ Year ___
3 ☒ No

*NO FURTHER INFORMATION REQUIRED FOR THIS INMATE*

**14c. Reason for inmate's removal from under sentence of death** – *Mark (X) appropriate box.*
1 ☐ Executed – *Enter date and skip to item 15* ...... Month ___ Year ___
2 ☐ Deceased by other causes – *Enter date and skip to item 16* ...... Month ___ Year ___
3 ☐ Capital sentence declared unconstitutional by State or U.S. Supreme Court ___ ___
4 ☐ Sentence commuted ___ ___
5 ☐ Conviction affirmed, sentence overturned by appellate or higher court ___ ___
6 ☐ Conviction and sentence over turned by appellate or higher court ...... ___ ___

# ROY WYNN

SHERIFF

AL0130000
CHEROKEE COUNTY S.O.
110 CEDAR BLUFF ROAD
CENTRE, AL 35960

COLAN RIVER STREET
CENTRE, ALABAMA 35960



CHEROKEE            COUNTY

TELEPHONE
-256-927-3365
256

## FAX NUMBER: CHEROKEE CO. S.O. (256) 927-4543
## DETENTION CENTER (256) 927-5226

**TO:** Holman State Prison

**DEPT.:** Transfer

**FAX NO.:** (331) 368-1095

**FROM:** Mark / Cherokee Co.

**DATE:** 08-03-00

**RE.:** Gavin, Keith Edmund

**RESPONSE REQUIRED:**    YES    NO

**TOTAL PAGES SENT INCLUDING COVER:** 3
PLEASE CALL (256) 927-3365 IF YOU DO NOT RECEIVE ALL THE PAGES.

**COMMENTS:**

Officers Wood & Hicks will be picking
Inmate Gavin up around 11:Am - 12 noon

Thank You!

Mark Lambert

STATE OF ALABAMA,　　　　　　*　　IN THE CIRCUIT COURT FOR
　　　　　　　　　　　　　　　　*
　　　PLAINTIFF　　　　　　　　*
　　　　　　　　　　　　　　　　*
VS.　　　　　　　　　　　　　　*　　CHEROKEE COUNTY, ALABAMA
　　　　　　　　　　　　　　　　*
KEITH EDMUND GAVIN,　　　　　　*
　　　　　　　　　　　　　　　　*
　　　DEFENDANT　　　　　　　　*　　CASE NO:　CC-98-61 and
　　　　　　　　　　　　　　　　*　　　　　　　　CC-98-62

### O R D E R

The Defendant's MOTION FOR NEW TRIAL was set for hearing on May 30, 2000, at which time the Defendant and his attorneys appeared and argued some of the issues raised in said Motion. The Defendant's attorneys have requested leave to file an additional or supplemental brief, and in consideration of the scheduling needs of this Court it is,

ORDERED, ADJUDGED AND DECREED as follows:

1. On or before June 30, 2000, the State shall file a brief in response to the Defendant's brief and argument presented on May 30, 2000.

2. On or before June 30, 2000, the Defendant shall file any additional or supplemental briefs in support of the MOTION FOR NEW TRIAL.

3. The Defendant and State shall file any further responses on or before July 24, 2000.

The Defendant's MOTION FOR NEW TRIAL shall come for further hearing on Friday, August 4, 2000, at 9:00 a.m. The Defendant has consented for said hearing to be conducted at the third floor courtroom of the DeKalb County Courthouse, in Fort Payne, Alabama. At the hearing hereby scheduled the Sheriff of Cherokee County, for

ORDER
CC-98-61 and CC-98-62
CHEROKEE COUNTY
PAGE 2


providing security and transportation, and same shall be
coordinated by and with the Sheriff of DeKalb County, Alabama.

The deadline of September 1, 2000, for the Court's ruling on
the Defendant's MOTION FOR NEW TRIAL, remains unchanged, and if no
ruling is issued on or before that date said Motion shall be deemed
denied by operation of law thereafter.

Done this _____/_____ day of June, 2000.


_____
DAVID A. RAINS, CIRCUIT JUDGE


Copies to:                          Attorney for:
Mr. Michael E. O'Dell               State of Alabama
Mr. Robert F. Johnston

Mr. Stephen P. Bussman              Keith Edmund Gavin
Mr. Steven G. Noles

Hon. Cecil Reed,
Sheriff, DeKalb County

Hon. Roy Wynn,
Sheriff, Cherokee County

Officer Richard Woods
Security, Cherokee County

Officer Stanley Hollingsworth
Security, DeKalb County

Mr. Cecil Atchison,
Transfer Agent
Alabama Department of Corrections

GAVIN.8

2171

Case 4:16-cv-00273-KOB   Document 35-25   Filed 11/07/18   Page 173 of 202

TE NAME: _Keith Gavin_   AS NUMBER _Z 665_   RACE _B_   LOCATION _____   0" _____

SIDES OF THIS FORM MUST BE FILLED OUT AT THE SAME TIME NO MORE THAN EIGHT VISITORS CAN BE LISTED ON YOUR VISITORS LIST. LIST EIGHT PEOPLE YOU FEEL THAT WILL SEND YOU
$ OS PEOPLE ON YOUR FUNDS LIST MAY INCLUDE BUT ARE NOT LIMITED TO PEOPLE ON YOUR VISITING LIST. VISITORS.

| | SOCIAL SECURITY NUMBER | ADDRESS,CITY STATE,ZIP CODE | PHONE | Relationship |
|---|---|---|---|---|
| **No Fees** | | | | |
| Annette Gavin | 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 | 1600 W Lockwood ave. Chicago, Il 60657 | 773-379-8473 | Mother/Fees |
| Wilson Gavin | 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 | 1600 W Lockwood ave. Chicago, Il 60657 | 773-379-8473 | Sister |
| Cole Gavin | 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 | 5341 W Calumet, Chicago Il 60693 1st floor | None | Sister |
| Sean Gavin | 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 | 5341 W Gladys Chicago Il 60693 Apartment | None | Brother |
| Bobby Johnson | _____ | _____ | _____ | _____ |
| Duane Johnson | 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 | 180 Cedar Bluff Rd. Centre, Alabama 35960 | None | Friend |
| | **SOCIAL SECURITY NUMBER** | **ADDRESS,CITY,STATE,ZIP CODE** | **PHONE** | **Relationship** |
| Duane Brooks | 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 | 5341 W Gladys 2nd floor Chicago Il 60693 | 773-626-2752 | Sister |
| | _____ | 224 Richard St Joliet _____ | 815-726-311 | _____ |
| Annette Gavin | 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 | 1600 W Lockwood ave. Chicago, Il 60657 | 773-379-8473 | Mother |
| Dante Gavin | 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 | 1600 W Lockwood ave. Chicago Il 60657 | 773-379-8473 | Sister |
| Cole Gavin | 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 | 5341 W Gladys W Chicago Il 60693 | None | Sister |
| Sean Gavin | 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 | 5341 W Gladys Chicago Il 60693 | None | Sister |
| Delore Brooks | 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 | 5341 W Gladys Chicago Il 60693 | 773-626-2752 | Sister |
| Sara Gavin | 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 | 1600 W Lockwood ave. Chicago Il 60657 | 773-379-8473 | Brother |
| Luis Matthews | 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 | 3935 S. Lake Park Chicago Il 60653 2 | 773-342-8762 | Aunt |
| Ruthy Matthews | 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 | 5208 W Crenwood av. Chicago IL 60653 | 773-722-7027 | Aunt |

INMATE PROPERTY SHEET

R-S

ON 8-5 2000 , I, INMATE Groom, Keith                AIS# B12-665

(X) WAS RECEIVED AT HOLMAN UNIT--POPULATION/SEGREGATION/DEATH ROW.
() WAS RECEIVED FROM HOLMAN POPULATION TO HOLMAN SEGREGATION DISP. / ADMIN.
() HAD PERSONAL PROPERTY TAKEN DURING A SHAKE DOWN OR TAKEN FROM A PACKAGE.
() OTHER_____

    ON MY ARRIVAL, I WAS SHOOK DOWN BY OFFICER(S) Austin
AND HAD MY PERSONAL PROPERTY (LISTED BELOW)
(X) TAKEN FROM ME AND PUT INTO STORAGE.
() REMOVED FROM MY PACKAGE.
() OTHER_____
THESE ITEMS DO NOT COMPLY WITH ADMINISTRATIVE OR INSTITUTIONAL RULES OR
REGULATIONS, AND / OR SECURITY AT THIS INSTITUTION. I UNDERSTAND THAT I HAVE
THIRTY DAYS FROM THE ABOVE DATE TO SEND THESE ITEMS HOME OR BE PICKED UP BY
MY VISITORS. I FURTHER UNDERSTAND THAT ON THE THIRTY FIRST DAY, THESE ITEMS
WILL BE REPORTED, PROCCESSED AND D E S T R O Y E D........ ***********************
*************************************************************************

_____ COI        Keith Groom         21665
OFFICERS NAME AND TITLE                    INMATES SIGNATURE

                    PROPERTY  PUT  INTO  STORAGE
Magazines,    13                          | Issued 4 Magazines on
Cassette Tapes 10                         | 11-7-00. Traded out 4
Playing Cards    1 deck                   | old magazines. New AZ
1 Red laundry Bag

Traded out (4)
magazines on 11-18-02
Coi Parish
X Keith Groom          | Traded out (4)
                       | magazines on 3-4-03
                       | X
                                              AIS#
ON  1-21-04  19  , I, INMATE_____      19  .
DID RECEIVE MY PERSONAL PROPERTY - TAKEN ON_____
AND/OR: () HAD THEM SHIPPED HOME AT MY OWN EXPENSE.
        () RETURNED TO ME.
        (X) DESTOYED BY THE STATE AS CONTRABAND.
        () OTHER_____        2665

O.7. Parish / Col                INMATES SIGNATURE (IF NOT PRESENT-
OFFICERS SIGNATURE               OFFICER IN CHARGES SIGNATURE)
                                 Not Present. JH

STATE OF ALABAMA
DEPARTMENT OF CORRECTIONS
CHAIN OF CUSTODY   NOV 09 ENTD  11-01-2007

Name of Institution: W. C. Holman      Inst. Code: CO3

Date: Nov. 1   07      Time Specimens Delivered: 12:20 pm

| | First | Last | Time of Collection | AIS # | Race | Sex (M-F) | Medications (Yes or No) |
|---|---|---|---|---|---|---|---|
| 1 | Alonzo | Burgess | 7:29 AM | B2559 | B | M | Yes |
| 2 | Wilson | Robitalle | 7:58 Am | W2687 | W | M | NO |
| 3 | OSCAR | Doster | 7:38 Am | W2648 | W | M | NO |
| 4 | Joseph | Smith | 7:10 Am | W2646 | W | M | NO |
| 5 | Larry | Whitehead | 7:39 Am | W2607 | W | M | Yes |
| 6 | Dominique | Ray | 7:15 Am | B2-663 | B | M | Yes |
| 7 | Keith | Gavin | 8:16 Am | B2-665 | B | M | NO |
| 8 | Harvey | Windsor | 7:18 Am | W2498 | W | M | Yes |
| 9 | Larry | Smith | 7:47 Am | W2583 | W | M | NO |
| 10 | David | Freeman | 7:12 Am | W2506 | W | M | Yes |
| 11 | Arthur | Giles | 7:49 Am | B2394 | B | M | NO |
| 12 | Westley | Harris | 9:25 Am | B2715 | B | M | NO |
| 13 | Kenneth | Smith | 9:05 Am | W2512 | W | M | Yes |
| 14 | James | Lawhorn | 7:21 Am | W2-500 | W | M | Yes |
| 15 | Jerry | Bryant | 9:17 Am | B2644 | B | M | NO |
| 16 | Phillip | Hallford | 8:51 Am | W2-474 | W | M | Yes |
| 17 | Bill | Purvell | | | | | |
| 18 | Willie | Seo II | 7:56 Am | B2-691 | B | M | NO |
| 19 | Robert | Council | 11:40 Am | B-1814188 | B | M | NO |
| 20 | Johnny | Dade | 11:35 Am | B-2027045 | B | M | NO |
| 21 | Ricky | Davis | 10:09 Am | B-1730738 | W | M | NO |
| 22 | Mark | Ford | 10:07 Am | B-188346 | B | M | NO |
| 23 | Jimmie | Garrett | 10:10 Am | B-1182545 | B | M | Yes |
| 24 | Charles | Hastings | 9:52 Am | W-1407348 | W | M | NO |
| 25 | Wanda | Moon | 10:41 Am | B-1757574 | B | M | Yes |

OUR INSTITUTION REQUESTS THE ABOVE NAMED INMATE (S) BE DRUG SCREENED AND THE RESULTS OF ALL POSITIVE TESTS BE REPORTED
VIA PHONE CALL WITH PAPERWORK TO FOLLOW

There are a total of ____24____ specimens to be tested.      COC - OPI - THC

| From: | (The above Inmates) | To: | Bobby Lane Co | Date: 11/1/07 | Time: 7:10 Am |
| From: | Bobby Lane Co | To: | CO Floyd | Date: 11/1/07 | Time: 12:20 pm |
| From: | CO J. Floyed | To: | PHL Shipping | Date: 11/1/07 | Time: 3:50 pm |
| From: | | To: | | Date: | Time: |
| From: | | To: | | Date: | Time: |
| From: | | To: | | Date: | Time: |

RETAIN THIS FORM FOR ONE YEAR      ADOC Form 440-A – January 26, 2006

#13 is Marijuana Positive

11 of 12

Floyd Co 1

HOLMAN UNIT CLINIC

MEMORANDUM:

TO     :     CLASSIFICATION

FROM:      UNIT CLINIC

IN REF :    PHYSICALS

| NAME | AIS | WEIGHT | CHRONIC MEDICAL CONDITION |
|------|-----|--------|---------------------------|
| 1-6-2000 | | | |
| GAVIN, KEITH | Z-665 | 152 | NONE |
| | | | |
| 3-23-2000 | | | |
| JOHNSON, TORA | 174794 | 120 | NONE |
| | | | |
| 3-18-2000 | | | |
| PERRY, WAYLON | 106365 | 238 | NONE |
| MONROE, MYRON | 136734 | 157 ½ | PAST POSTIVE |
| NORWOOD, DARRELL | 165738 | 163 ½ | PAST POSTIVE |
| NORRIS, MICHAEL | 205346 | 241 | PAST POSTIVE |

DATE RECEIVED _____ 4-7-2000 _____

RECEIVED BY _____

## CORRECTIONAL MEDICAL SERVICES
## MEDICAL HISTORY AND SCREENING

Holman INSTITUTION

| INMATE NAME: Gavin Keith | ID# 74615 | RACE: B | D.O.B. 3-30-60 |
|---|---|---|---|

### INMATE QUESTIONNAIRE (circle one)

| | Yes | No |
|---|---|---|
| 1. Do you have a medical problem such as bleeding or injuries that requires immediate medical attention? | Yes | No |
| 2. Have you fainted or had a head injury within past six months? | Yes | No |
| 3. Have you been seen by a doctor in the past six months? | Yes | No |
| 4. Do you wear glasses or contact lenses? | Yes | No |
| 5. Do you have prosthesis, splint, crutches, cast or brace that you need while here? | Yes | No |
| 6. Do you drink wine, beer or whiskey? How often?_____ How much?_____ Last time? | Yes | No |
| 7. Have you had seizures or blackouts when you stop drinking? N/A | Yes | No |
| 8. Do you use drugs? Type_____ How often_____ Last time | Yes | No |
| 9. Have you had withdrawal problems when you stop taking drugs? N/A | Yes | No |
| 10. Are you currently detoxing? If yes, from what substance? N/A | Yes | No |
| 11. Do you have any medical problems we should know about? | Yes | No |
| 12. Have you been in this facility before? | Yes | No |

### MENTAL HEALTH

| | Yes | No |
|---|---|---|
| 13. Have you ever been hospitalized or treated for psychiatric problem? | Yes | No |
| 14. Have you ever considered or attempted suicide? | Yes | No |
| 15. Are you feeling depressed or extremely sad? | Yes | No |
| 16. Do you want to hurt yourself or someone else? | Yes | No |
| 17. Are you hearing voices? If yes, what are they saying? | Yes | No |

### FEMALE INMATES ONLY

| | Yes | No |
|---|---|---|
| 18. Are you pregnant?  LMP | Yes | No |
| 19. Do you use birth control? Type | Yes | No |
| 20. Have you recently had a baby, miscarriage or abortion? | Yes | No |

**COMMENTS: (Explain "Yes" Responses)**
#1 Carpal tunnel!!
#3 assault in jail

### VITAL SIGNS
HT 5'8"  WT 150#  BP 126/84

Pulse 80  Resp 16  Temp 989

### DISPOSITION

| Referrals | None | Placement |
|---|---|---|
| Emergency Room (Pre-booking injury) | | Infirmary |
| Emergency Room (Acute Condition) | | Detoxification |
| Physician | | Setting |
| Sick Call | | Gen Population |
| | | Other |

### CURRENT MEDICAL CONDITIONS (circle terms that apply)

Unconscious
Disoriented
Intoxicated
Lesions (hand Lt fac Rt leg)
Obvious Pain
Bruises Head & Back
Fever
Nausea
Uses Tobacco

Skin Infection
Restricted Mobility
Skin Rash  Hnd a neck calf Ra:
Jaundice
Needle Marks
Swollen Glands
Active Cough
Vaginal/Penile Discharge
Dental Problems

### MEDICAL HISTORY (circle terms that apply)

Arthritis
Diabetes
Seizure Disorder
Asthma
Special Diet
Heart Condition
Hypertension
Stomach Ulcer
Cancer
Sickle Cell Anemia
Emphysema

Frequent Diarrhea
Genital Sores
V.D.
Hepatitis
HIV+
Tuberculosis
Persistent Sore Throat
Dental Problems
Surgeries
Chest Pain (months ago SOB)
Jaundice

### TB HISTORY

Ever treated with TB Drugs?   Yes   No
Previous PPD test?  Yes / No   Previous Positive Reaction?  Yes   No
When_____
Where_____

Chronic Cough/Blood          Fever
Recent Weight Loss           Night Sweats
Recent Appetite Loss         Fatigue

### MEDICATIONS

Current Medications:
none

### ALLERGIES

Medication Allergies:   Yes   No
Type:_____
Other Allergies:   Yes   No
Type: Dirt

I acknowledge that I have answered all questions truthfully and have been told the way to obtain health services and consent to routine care provided by facility healthcare professionals. I understand that any medications not picked up within 30 days of release will be destroyed.

Inmate Signature: _____

2176

| INMATE NAME: Gavin, Keith | VITAL SIGNS |
|---|---|
| TYPE OF ASSESSMENT:  INITIAL ✓  OTHER ___ | HT 5'4"  WT 165  BP 124/84 |
|  | PULSE 80  RESP 16  TEMP 98 |

**FAMILY HISTORY: (F/FATHER; M/MOTHER; B/BROTHER; S/SISTER)**

TB___  HEPATITIS___  HIV+___  HYPERTENSION F
CANCER___  ASTHMA___  EPILEPSY___  ANEMIA___
KIDNEY DISEASE___  SICKLE CELL___  SEIZURES___
MENTAL ILLNESS___  DIABETES___  HEART DISEASE___
OTHER

**VISION (SNELLEN CHART)**
Rt: 20/50 __ with glasses
Lt: 20/25 __ with glasses

## PHYSICAL ASSESSMENT

| Normal/Not Present Please | ✓ | Abnormal/Comment |
|---|---|---|
| **SKIN:** Color |  |  |
| Condition |  |  |
| Turgor |  | Tinea Versicolor |
| Recent Injury |  |  |
| Tatoo |  |  |
| Scars |  |  |
| **HEAD:** Hair | ✓ |  |
| Scalp (pedicull) |  |  |
| **EARS:** Appearance | ✓ |  |
| Canals |  |  |
| **MOUTH:** Throat |  |  |
| Tongue |  |  |
| Tonsils | ✓ |  |
| **NOSE:** Obstruction | ✓ |  |
| Drainage |  |  |
| **NECK:** Veins |  |  |
| Mobility |  |  |
| Thyroid |  |  |
| Carotids | ✓ |  |
| Lymph nodes |  |  |
| **CHEST (BREASTS)** |  |  |
| Configuration |  |  |
| Auscultation |  |  |
| Respirations | ✓ |  |
| Cough/Sputum |  |  |
| **HEART:** Auscultation |  |  |
| Radial pulse | ✓ |  |
| Apical pulse |  |  |
| Rythm |  |  |
| **ABDOMEN:** |  |  |
| Shape |  |  |
| Bowel Sounds |  |  |
| Palpation | ✓ |  |
| Hernia |  |  |
| **SPINE** | ✓ |  |
| **NEUROLOGICAL:** |  |  |
| Reflexes | ✓ |  |
| **GENITAL/URINARY:** |  |  |
| Lesions |  |  |
| Discharge | ✓ |  |
| **RECTAL EXAM:** (For 40 yrs. old and older) |  |  |
| Hemorrhoids |  |  |
| Anal Warts |  |  |
| Stool for Occult | ✓ |  |
| Blood  + |  |  |
| **EXTREMITIES:** |  |  |
| Pulses | ✓ |  |
| Edema |  |  |
| Joints |  |  |

**FEMALES ONLY**

**PELVIC EXAM:**
Pap Smear
Gonorrhea Culture
(Admission PE only)

**IMMUNIZATION STATUS**
Date last Tetanus: 1-6-00

Other

**TB SCREENING**
Current PPD:
Date Given: 1-6-00
Results and Date: 1-8-00 0mm
PLEASE CIRCLE
Follow-up scheduled:  Not Indicated
                                      Yes

**ORAL SCREENING**
Pain/Discomfort:
Condition of teeth:  poor  fair  (good)
Condition of gums:  poor  (healthy)
False teeth:  partial  plate  upper  lower
Oral Hygiene instructions given: ✓

**REMARKS**

HIV & RPR drawn 1/6/00 in
Tinea Versacolor

**REFERRAL**

Assessed by: (signature)
Date: 1/6/00   Time: 12:15
Physician Review: (signature)  Dr. M. Whorley
Date: 1-10-2000   Time: 1330

## TUBERCULIN PPD FOR INMATES

| INITIAL SKIN TEST | |
|---|---|
| Date Given: 1/6/00 | Date Read: 1-8-00 |
| Site Given: left area | Size: 0 mm |
| Lot #: 01129P | |
| Nurse: M. Mathews | Nurse: Bumerson L |

I have received a fact sheet on TB and have had the opportunity to have my questions answered. I agreed to TB testing by PPD. I understand the PPD must be read 72 hours after being administered. I have never had a positive reaction to a TB skin test, nor have I ever been treated with TB drugs. I have also been instructed to check with my regular physician or the public health department if I am released prior to the TB test being read.

X _Keith Ga___
Inmate Signature

_1/6/00_
Date

_M McShella_
Witness Signature

_1/6/00_
Date

| INMATE NAME: | ID#: | RACE: | LOCATION: |
|---|---|---|---|
| Gavin, Keith | 7665 | B | Holman |

N610

## ALABAMA DEPARTMENT OF CORRECTIONS

### RECEIVING SCREENING FORM

Inmate's Name: Gavin, Keith   B/Z-_____   Date: 1-6-2000   Time: 10 30 A

DOB: 3-30-1960   Officer: Parish _____   Institution: Holman

#### Receiving Officer's Visual Opinion

|    |                                                                                                                                   | Yes | No |
|----|-----------------------------------------------------------------------------------------------------------------------------------|-----|----|
| 1. | Is the inmate conscious?                                                                                                           | ✓   |    |
| 2. | Does the inmate have any obvious pain or bleeding/other symptoms suggesting the need for emergency services?                       |     | ✓  |
| 3. | Are there any visible signs of trauma or illness requiring immediate emergency treatment or doctor's care?                         |     | ✓  |
| 4. | Any obvious fever, swollen lymph nodes, jaundice, or other evidence of infection which might spread through the institution?       |     | ✓  |
| 5. | Is the skin in poor condition or show signs of vermin or rashes?                                                                   |     | ✓  |
| 6. | Does the inmate appear to be under the influence of alcohol or drugs?                                                              |     | ✓  |
| 7. | Are there any visible signs of alcohol or drug withdrawl? (extreme perspiration, shakes, nausea, pinpoint pupils, etc.)           |     | ✓  |
| 8. | Is the inmate making any verbal threats to staff or other inmates?                                                                 |     | ✓  |
| 9. | Is the inmate carrying any medication or report that he is on any medication which must be continuously administered or available? |     | ✓  |
| 10.| Does the inmate have any obvious physical handicaps?                                                                               |     | ✓  |

*If the answer is YES to any questions from 2-10 above, specify WHY in section below.*

|    |                                                                                                                                   | Yes | No |
|----|-----------------------------------------------------------------------------------------------------------------------------------|-----|----|
| 11.| Are you presently taking medication for diabetes, heart disease, seizure, arthritis, asthma, ulcers, high blood pressure or psychiatric disorder? |     | ✓  |
| 12.| Are you on any special diet prescribed by a physician? (if YES, what type?)                                                        |     | ✓  |
| 13.| Do you have a history of venereal disease or abnormal discharge?                                                                   |     | ✓  |
| 14.| Have you recently been hospitalized or recently seen a medical or psychiatric doctor for any illness?                              |     | ✓  |
| 15.| Have you ever attempted suicide?                                                                                                   |     | ✓  |
|    | (If YES, When? _____   How? _____)                                                                                           |     |    |
| 16.| Do you want to do any harm to yourself now?                                                                                        |     | ✓  |

Holman Prison Orientation for

Death Row, Administrative Segregation, and Disciplinary Segregation

The following is a brief orientation of rules, regulations, and policies that you will be expected to follow while assigned to the Holman Prison Segregation Unit. The inmate handbook is in the Law Library. You should read this book and become familiar with its contents. If you have any questions after reading this handbook and this orientation you may direct them to your classification specialist or an officer.

1.    Store Draw: Draw slips must be turned in to an officer by Sunday night. Limits for store draw will be $40 for Death Row, $15 Administrative Seg. and $0 for Disciplinary Seg. Store Deliveries will be made on Thursday and Friday of each week. Your money must be received by the previous Friday. You may receive a free itemized list of all store items with prices simply by requesting it on your store slip.

2.    Laundry and Clothing: Laundry will be collected by third shift on Monday, Tuesday, and Wednesday nights. Mondays you may turn in Pants sheets and blankets. Tuesdays you may turn in laundry bags. Wednesday you may turn in pants and shirts only. You laundry will be returned the following afternoon on second shift. Request for six month issue, replacement, damaged or lost clothing should be routed through the segregation shift commanders.

3.    Phone Calls: Upon initial assignment to segregation you will be given the opportunity to make one three minute call to inform whomever you desire the change in your status and the visiting day changes. Death row will be allowed telephone privileges based on the availability of the phone with a fifteen minute limit per call. Admin Seg inmates will be allowed one (1) fifteen (15) minute call per month. Dis Seg will not be allowed to use the phone except for for attorney calls and verified emergencies.

4.    Meals: Breakfast will be fed at 4:00 am., Lunch 10:30 am., and Supper 3:30 pm. All times are approximations.

5    Mail will be delivered Monday through Friday. All out going mail should have your name and AIS#. The address of Holman is Holman Prison, Holman 3700, Atmore, Al. 36503.

6.    Church: Holman has a full time chaplain. Routinely he will make rounds of the unit.

7.    Visiting: visitation will be held on Mondays and Fridays of each week for Death Row and once a month for Administrative Segregation. Dis Seg will not be allowed visits. Visitors 16 years old and older must have a picture ID. Visitors under 19 must be accompanied by an adult on your approved visiting list. You will be given a visiting form during processing with additional forms being requested from the seg officers.

8.    Grievances: Grievances may be presented to the Warden of Assist Warden in writing.

9.    Classification : Your Classification specialist will be designated as follows: names beginning with A-J Mr. Powers, and K-Z Mr. Lang.

10.    Exercise you will be allowed to exercise 45 minutes per day weather and security permitting

11.    Showering: You will be allowed to shower every other day for a period of five (5) minutes.

12. Reading Material: Death Row and Administrative Segregation will be allowed to check out two books per week from the general library. Request will be picked up on Wednesdays and the books if available will be delivered on Thursday. Disciplinary Segregation will not be allowed this privilege. If you are currently receiving a newspaper and/or a magazine you will have 30 days to cancel the subscription. At the end of the 30 days all following issues will be destroyed as contraband.

13. Law Library: A Law Clerk under the supervision of a Correctional officer will tour the admin and dis segregation units Monday Through Friday. Reasonable request will be filled as soon as possible. Death Row may have access to the Death Row Law Library on a rotating basis. A schedule of the rotation is maintained in #4 cubicle. If you are restricted from group activities on Death Row submit a request to the seg shift commander for the needed materials. Reasonable request will be filled.

14. Medical Procedures:

Sick Call: You may request medical treatment by submitting a sick call slip to the nurse during the Morning, Noon or Afternoon pill call. The slip must be turned in by the Evening pill call For treatment that day. Screening will be conducted on Third shift. If you have a medical emergency, notify the cubicle officer or a tier rover.

Dental Treatment: You must sign up for dental treatment in the same manner as sick call. Screening will be on a day designated by the dental Staff

Pill Call: Will be at the following times: 3:30 am., 11:00 am., 4:00 pm., and 8:00 pm. These times are approximates.

Medical treatment is provided for your best interest and is imperative that you follow the treatment order unless you sign a medical waiver. If you do not follow the treatment or sign a medical waiver you may be charged with violation of institutional rules and regulations.

--------------------------------------------------------------------------------

I state by my signature below that the rules of Holman Prison have been explained and the location of the 400 series of Administrative Regulations, Admin Reg 303 (visitation), visitation schedule, the Inmate Handbook and other pertinent information are maintained in the Institutional Law Library. I have been informed if I have any further questions to direct them to a security staff member and they will assist me or direct me to the proper staff member.

X _Keith Ca___  
Inmate's Signature/ AIS#  
Gavin, Keith 8/2-

_Parnell Coe_  
Witness Signature/ Date  
1-6-2000

2181



### STATE OF ALABAMA

# DEPARTMENT OF CORRECTIONS

Holman 37
Atmore, Alabama 36503-0037

**HOLMAN PRISON**

Telephone: 368-8173
Area Code 205

DATE: 1-6-2000

M E M O R A N D U M .

FROM            :   C. E. Jones
                    Warden

TO              :   WHOM IT MAY CONCERN

SUBJECT         :   Receipt of Inmate Handbook
                    For Death Row Inmates

I, INMATE _Keith C_____, DID RECEIVE A COPY OF

THE DEATH ROW INMATE HANDBOOK, REVISED JANUARY, 1985, ON THE

_6th_ DAY OF _January_____ (MONTH), _2000_ (YEAR).


X_____
INMATE'S SIGNATURE        DATE


07-David Jco_____
WITNESS


_____
WITNESS


/bm

cc:  Inmate File



STATE OF ALABAMA
BOARD OF CORRECTIONS
INSTITUTIONAL INCIDENT REPORT

| 1. Institution: St Clair C.F. | 2. Date: 1/2/2000 | 3. Time: 3:45PM | 4. Incident Number: STC-00-0019 |
|---|---|---|---|
| 5. Location Where Incident Occurred: H1 A-07 | | 6. Type of Incident: Failure to obey / USE OF FORCE | |
| 7. Time Incident Reported: 4:05PM | | 8. Who Received Report: Gary Malone, COII | |

9. Victim:   a.   N/A                                                   No,

_____
(Type Full Name)

b. _____       No,

_____
(Type Full Name)

| 10. Suspects: | | | 11. Witness: | |
|---|---|---|---|---|
| a. Keith Gavin | No. B/OSK843 | | a. N/A | No. |
| b. | No. | | b. | No. |
| c. | No. | | c. | No. |
| d. | No. | | d. | No. |
| e. | No. | | e. | No. |
| | | | f. | No. |
| | | | g. | No. |

Physical Evidence:

12. Type of Evidence:   N/A

13. Description of Evidence:   N/A

14. Chain of Evidence:

a.   N/A

b.

c.

d.

15. Narrative Summary:

On 1/2/2000 at approx. 3:45PM, Jerry Puckett, COI, and John B Sanderson, COII, were inspecting the inmates housed in H1A block for haircuts. Officer Puckett ordered inmate Keith Gavin, B/OSK843, to remove a covering from his head. Inmate Gavin refused and started cursing Officer Puckett. Officer Puckett notified Sgt. Sanderson of inmate Gavin's refusal. Sgt. Sanderson notified Gary Malone, COII, assist. Shift commander, of inmate Gavin's refusal. Sgts. Malone and Sanderson returned to H1A cellblock and attempted to talk to inmate Gavin. Inmate Gavin became loud and argumentative by refusing to take the cover from his head. Sgt. Malone then opened the tray door and ordered inmate Gavin to place his hands out to be restrained  Inmate Gavin refused to comply with the order by stating, "If you come into this cell, someone is going to leave in a body bag!". Sgt. Malone closed the tray door and exited the block. Sgt. Malone notified Jimmy Patrick, second shift commander, of the incident. Lt. Patrick instructed Sgt. Malone to notify the on-call official, Steve Dees, Warden III, of the incident at approx. 4:07PM. At approx. 4:18PM, Warden Dees called back and was informed of the incident. Warden Dees instructed Sgt. Malone to form an extraction team and remove inmate Gavin from his cell. At approx. 4:20PM, a team, consisting of Sgt. Sanderson, Samuel Howard, COII, COIs Cedric Bothwell, Frank Mickens, Bryan Chapman and Thomas Martin entered the block. Sgt. Malone opened the tray door and ordered inmate Gavin to present his hands. Inmate Gavin refused to obey Sgt. Malone's order. Sgt. Malone instructed Officer Bothwell to use the Freeze +P spray. Officer Bothwell was unable to do so due to inmate Gavin having his head wrapped in cloth and holding a blanket in front of him. Sgt. Sanderson positioned himself in front of the door with the stun shield and the cubicle officer, Andrew Shorter, COI, was ordered to open the door. As the door opened, inmate Gavin charged the shield but was not affected. Inmate Gavin was placed on the floor and Officer Mickens placed legirons on inmate Gavin's legs. Officers (cont)

DISTRIBUTION.     ORIGINAL Investigation and Inspection Division
COPY to Deputy Commissioner, Institutions
COPY to Institutional File
COPY to Central Records File

N 602

| | Continuation Sheet | |
| --- | --- | --- |
| St. Clair Corr. Fac. | Incident Number: | |
| Date: | | STC-00-0019 |
| 1/2/2000 | Type of Incident: | |
| Narrative Summary (Continued) Page No. 2 | | Failure to obey/USE OF FORCE |

Bothwell, Chapman and Martin placed handcuffs on inmate Gavin. Sgt. Howard had control of inmate Gavin's head. Inmate Gavin was brought to his feet but refused to walk. Inmate Gavin started begging the officers to kill him. Inmate Gavin was carried to the hallway where he stopped resisting and was escorted to the infirmary by the extraction team. Inmate Gavin refused treatment from Nurse Peggy Engle. Nurse Engle wa able to survey inmate Gavin's injuries. See F-15 attached. Sgt. Howard cut inmate Gavin's hair and gave inmate Gavin a clipper shave. Inmate Gavin was escorted to the segregation unit by Lt. Patrick, Sgt. Malone, Sgt. Howard, Sgt. Sanderson and Officers Mickens and Chapman. Inmate Gavin was escorted to the H1 barbershop where he was stripped, due to his threats, and placed in the shower. Inmate Gavin was placed in a stripped cell and the toilet water was turned off, due to his threats. This incident report is for informational purposes due to inmate Gavin being scheduled to return to court on Wednesday, 1/5/2000. No disciplinary action was taken at this time.

John B Sanderson, COII

## STATEMENT

On 1/2/2000, I, Samuel Howard, COII, was part of a cell extraction team sent to extract inmate Keith Gavin, OSK843, from cell H1 A-07. Inmate Gavin had refused all orders to get a haircut. At approx. 4:22PM, the shield officer, John Sanderson, COII, signaled the cubicle officer, Andrew Shorter, COI, to open the cell door. As the cell door opened, inmate Gavin attempted to push his way out of the cell. Inmate Gavin was in a low crouch as he rushed the door. I grabbed inmate Gavin and wrapped my arms around his body and dropped to the cell floor with him. I was holding inmate Gavin on the floor and was assisted by John Sanderson, COII, COIs Thomas Martin, Frank Mickens, Cedric Bothwell and Bryan Chapman putting leg irons and handcuffs on inmate Gavin. At approx. 4:28PM, I along with the above mentioned Officers removed inmate Gavin from cell H1 A-07 and escorted inmate Gavin to the infirmary. Inmate Gavin refused treatment at the infirmary, however, Nurse Peggy Engle was able to do a visual examination of inmate Gavin. See F-15 attached. At approx. 5:03PM, I, along with the above mentioned officers, escorted inmate Gavin into the segregation unit where inmate Gavin was allowed to get a shower before being placed into a stripped cell. During the time inmate Gavin was in the infirmary, I did give inmate Gavin a haircut.

Samuel Howard, COII

N 602

Continuation Sheet

St. Clair Corr. Fac.

Incident Number:
STC-00-0019

Date:
1/2/2000

Type of Incident:
Failure to obey / USE OF FORCE

Narrative Summary (Continued) Page No  3

# STATEMENT

On 1/2/2000, Cedric Bothwell, COI, ws informed to report to the segregation office for a cell extraction on inmate Keith Gavin, B/OSK843. At approx. 4:20PM, Officer Bothwell, COIs Thomas Martin, Frank Mickens, Bryan Chapman, COIIs Samuel Howard, John Sanderson and Gary Malone went to H1 A-07 for a cell extraction. Sgt. Malone gave inmate Gavin a direct order to place his hands out of the tray door to be handcuffed. Inmate Gavin refused to put his hand out. Sgt. Malone told Officer Bothwell to spray inmate Gavin with Freeze +P, a chemical agent. Officer Bothwell attempted to spray inmate Gavin with freeze +P but inmate Gavin was standing at the back of the cell wrapped up in his sheets and blanket. Officer Bothwell informed Sgt. Malone that the Freeze +P didn't effect inmate Gavin because of the sheets and blankets wrapped around his head. Officer Bothwell stepped to the side of the tray door and closed it. Sgt. Malone told Sgt. Sanderson to use the shield. Sgt. Sanderson, Sgt. Howard, Officers Mickens, Martin, Bothwell and Chapman lined up ready to extract inmate Gavin. Sgt. Malone gave Andrew Shorter, COI, cubicle operator, the order to open cell A-07. Officer Shorter opened the door. Inmate Gavin charged the door and had to be placed on the floor and restrained. At approx. 4:25PM, Officers Bothwell, Mickens, Chapman, Martin, Sgts. Howard, Sanderson and Malone escorted inmate Gavin to the infirmary. At approx. 4:47PM, Sgt. Malone told Officers Bothwell and Martin to strip inmate Gavin's cell. Inmate Gavin's cell was stripped and secured by Officers Bothwell and Martin.

_Cedric Bothwell_ cu
Cedric Bothwell, COI

N 602

<table>
<tr><td colspan="2" align="center">Continuation Sheet</td></tr>
<tr><td>St. Clair Corr. Fac.</td><td>Incident Number:</td></tr>
<tr><td>Date:<br>1/2/2000</td><td>STC-00-0019</td></tr>
<tr><td colspan="2">Type of Incident:<br>Failure to obey / USE OF FORCE</td></tr>
</table>

Narrative Summary (Continued) Page No.    4

## STATEMENT

On 1/2/2000 at approx. 4:20PM, Gary Malone, COII, instructed Bryan Chapman, COI, to prepare for an extraction of inmate Keith Gavin, B/OSK843. Officer Chapman signed out one pair of handcuffs and riot gear. At approx. 4:21PM, Sgt. Malone, John Sanderson, COII, Samuel Howard, COII, Thomas Martin, COI, Frank Mickens, COI, Cedric Bothwell, COI, and Officer Chapman entered H1 D-07. At approx. 4:22PM, Sgt. Malone opening inmate Gavin tray door and instructed inmate Gavin to place his hand out the tray door to be handcuff. Inmate Gavin refused to place his hand out. Sgt. Malone instructed Officer Bothwell to spray inmate Gavin with freeze +P. Inmate Gavin had his face cover with a blanket and could not be sprayed. Sgt. Malone closed the tray door and instructed Andrew Shorter, COI, cubicle operator, to open inmate Gavin's door. Sgt. Sanderson entered first with the shield, followed by the rest of the extraction team. Inmate Gavin started charging as the door opened and was placed on the floore and restrained. At approx. 4:28PM, inmate Gavin was escorted to the infirmary by Sgts. Malone, Sanderson, Howard, Officers Chapman, Mickens and Bothwell. At approx. 5:03PM, Jimmy Patrick, COSI, Sgts. Malone, Sanderson, Howard, Chapman and Mickens escorted inmate Gavin from the infirmary to the segregation unit. At approx. 5:08PM, Lt. Patrick and Officer Chapman stripped inmate Gavin and placed inmate Gavin into the shower. At approx. 5:13PM, inmate Gavin was placed in H1 D-07.

*Bryon Chapman C0T*
Bryan Chapman, COI

## STATEMENT

On 1/2/2000 at approx. 4:18PM, Gary Malone, COII, instructed COIs Thomas Martin, Cedric Bothwell, Bryant Chapman, Frank Mickens, Sgts. John Sanderson and Samuel Howard to prepared for a cell extraction on inmate Keith Gavin, B OSK843, H1 A-07. At approx. 4:20PM, the extraction team entered H1A. Sgt. Malone ordered inmate Gavin to place his hands out of the tray door to be handcuffed and receive a haircut. Inmate Gavin refused. Sgt. Malone ordered the extraction team to place itself while Officer Bothwell attempted to spray freeze +P on the inmate from the tray door. Sgt. Malone ordered the cubicle operator to open the cell door. The extraction team entered the cell and placed inmate Gavin on the cell floor. Handcuffs and legirons were placed on inmate Gavin. At approx. 4:28PM, inmate Gavin was escorted to the infirmary by the extraction team and treated by Nurse Peggy Engle. At approx. 4:47PM, Officers Martin and Bothwell stripped inmate Gavin's cell of his bed and personal property. At approx. 5:33PM, inmate Gavin was returned to H1A cellblock and stripped of all clothing and placed in the shower. Inmate Gavin was placed in H1 A-07 in stripped cell status.

*Thomas Martin, COL*
Thomas Martin, COI

N 602

---

## Continuation Sheet

| | |
|---|---|
| St. Clair Corr. Fac. | Incident Number: STC-00-0019 |
| Date: 1/2/2000 | Type of Incident: Failure to obey / USE OF FORCE |

Narrative Summary (Continued) Page No 5

## S T A T E M E N T

On 1/2/2000 at approx. 4:18PM, Gary Malone, COII, advised me, Frank Mickens, COI, to report to the segregation shift office to take part in a cell extraction of inmate Kevin Gavin, B/OSK843, in H1 A-07. As I entered the office an extraction team was formed consisting of Cedric Bothwell, COI, who had Freeze +P pepper spray, John Sanderson, COII, who was assigned as shield man, Bryan Chapman, COI, who was in charge of restraining the hands, Samuel Howard, COII, who was support, Thomas Martin, COI, who was support, and Gary Malone, COII, was supervising the extraction. I was in charge of restraining the legs. At approx. 4:25PM, the extraction team entered H1A. Sgt. Malone gave inmate Garvin several chances to place his hands out of the tray door to be handcuffed. Inmate Garvin refused. Sgt. Malone gave Officer Bothwell the order to spray inmate Gavin with freeze +P. Inmate Gavin then went to the back of his cell and placed a blanket over his head. Officer Bothwell sprayed inmate Gavin but the spray had no affect on him. At that time Sgt. Malone gave the cubicle operator, Andrew Shorter, COI, the order to open inmate Garvin's cell. Inmate Garvin tried to charge out of the cell. The extraction team entered the cell and placed inmate Garvin on the floor, restraining him. At approx. 4:50PM, inmate Garvin was escorted to the infirmary by Officers Bothwell, Mickens, Martin, Chapman, Sgts. Howard, Sanderson and Malone. Nurse Peggy Engle attempted to treat Inmate Garvin. First he refused to be treated but later agreed to let Nurse Engle treat him. See F-15 attached. At approx. 5:05PM, inmate Garvin was released from the infirmary and escorted to his block. He was given a shower and placed in his cell under stripped cell status.

Frank Mickens, COI

DEPARTMENT OF CORRECTIONS

EMERGENCY / _____ TREATMENT RECORD
(OTHER)

| DATE 01/02/12K | TIME 1600 AM/PM | FACILITY SCCF ☐ SIR ☐ PDL ☐ ESCAPEE ☐ FEMALE | ☐ EMERGENCY ☒ OTHER |

| ALLERGIES CKA | CONDITION ON ADMISSION ☐ GOOD ☒ FAIR ☐ POOR ☐ SHOCK ☐ HEMORRHAGE ☐ COMA |

VITAL SIGNS: TEMP _____ ORAL RECTAL   RESP. 24 _____ PULSE 80 B/P 140/70   RECHECK IF SYSTOLIC < 100 > 50

NATURE OF INJURY OR ILLNESS

Body Chart Per DOC

| ABRASION // | CONTUSION # | BURN XX XX | FRACTURE Z Z | LACERATION /// SUTURES |

PHYSICAL EXAMINATION

Refused Treatment
obtain all ___
very thin Blan____ +
tell ___ Nurse ___
Refused - ___ all ___
notifying Hos ___ to see

ORDERS, MEDICATION, etc.

DIAGNOSIS
F15

INSTRUCTIONS TO PATIENT

| RELEASE/TRANSFER DATE 1/2/12K | TIME ___ AM/PM | RELEASE/TRANSFERRED TO ☒ DOC ☐ AMBULANCE ☐ | CONDITION ON DISCHARGE ☐ SATISFACTORY ☐ POOR ☒ FAIR ☐ CRITICAL |

| NURSE'S SIGNATURE | DATE 1/2/K | PHYSICIAN'S SIGNATURE | DATE | CONSULTATION |

| PATIENT'S NAME (LAST, FIRST, MIDDLE) Gavon   Kieth | AGE 40 | DATE OF BIRTH 3/30/16 | R/S ___ |

F-15

|  | Yes | No | No Response |
|---|---|---|---|
| 17. Do you want to talk to a mental health counselor? | | | |
| 18. Are you allergic to any medication? | | | |
| 19. Have you recently fainted or had a head injury? | ✓ | | |
| 20. Do you have epilepsy? | | | |
| 21. Do you have a history of tuberculosis? | | | |
| 22. Do you have diabetes? | | | |
| 23. Do you have hepatitis? | | | |
| 24. Do you have a painful dental problem? | | | |
| 25. Do you have any medical problem we should know about? | ✓ | | |
| 26. Do you have a past alcohol or drug history? | | ✓ | |

What type? _____ How much use? _____

For how long? _____ Last time used? _____

*Comments:* (Unusual behavior, etc.)

3 days ago had blows to the head.

_____

For the Officer:

27. Was the new inmate briefed on sick/dental call procedures?     yes

28. This inmate was:   a. Released for normal processing     yes

             b. Referred to appropriate health care unit

             c. Immediately sent to health care unit

_____
Officer's Signature

*Note:* This form is completed on inter and intra system transfers at receiving and will be filed in the inmates medical jacket to comply with ACA Standards 2-4289, 2-4290 and AMA Standard 140.

_____
Inmate's Signature

**USE OF FORCE REPORT**

DATE: __1-2-00__ TIME: __4:22 Pm__ INCIDENT#

LOCATION: __H1A cell07__

SUSPECT: __KEITH GAVIN__ AIS# __0SK843__ RACE __B__

RULE VIOLATION(S) __Failure to Obey a direct order of a Doc official__

TYPE OF FORCE USED: ( ) CHEMICAL WEAPON    (✓) IMPACT WEAPON
( ) OTHER - RESULTING IN INJURY

IF CHEMICAL, EFFECT: ( ) IMMOBILIZED INMATE    ( ) NO EFFECT

INMATE PERMITTED TO WASH AFTER CHEMICAL USE:
( ) YES    ( ) NO    ( ) REFUSED

INJURY TO INMATE __SOME   MINOR   SCRAPES   AND   BRUISES__
HOSPITAL: __N/A__
DOCTOR: __N/A__

INJURY TO OFFICER: __N/A__

OFFICER USING CHEMICAL AGENT: _____

SUMMARY OF INCIDENT: _Inmate Gavin refused to present his hand to be restrained. Chemical agent was not used due to the inmate being wrapped up in sheets and blankets. Inmate Gavin was extracted by using the stun shield._

SUPERVISOR'S APPROVAL _____    DATE __1-2-00__

DATE: *1-2-00*

FROM: SGT JOHN B SANDERSON

TO: WARDEN STEVE DEES

RE: *KEITH GAVIN, B/M 05K 843*
NAME        AIS #

CELL: *H/1 A 07*

REASON INMATE STRIPPED

INMATE GAVIN REFUSED TO PRESENT HIS HANDS. INMATE GAVIN THREATENED TO PUT SOMEONE IN A "BODYBAG." INMATE GAVIN WAS EXTRACTED AND ESCORTED TO THE INFIRMARY. INMATE GAVIN CONTINUED TO THREATEN TO INJURE STAFF. INMATE GAVIN'S CELL WAS STRIPPED AS A PRECAUTION.

72 HOUR DISPOSITION

FURTHER DISPOSITION AFTER SECOND 72 HOURS

COMMENTS, REFERRALS, OBSERVATIONS

CC:   Assistant Warden
      Segregation Captain
      Segregation Office
      Inmate Seg. File
      Institutional

ANNEX A

| STATE OF ALABAMA, | * | IN THE CIRCUIT COURT FOR |
| | * | |
| PLAINTIFF | * | |
| | * | |
| VS. | * | CHEROKEE COUNTY, ALABAMA |
| | * | |
| KEITH EDMUND GAVIN, | * | |
| | * | |
| DEFENDANT | * | CASE NO: CC-98-61 and |
| | * | CC-98-62 |

## ORDER TO TRANSPORT DEFENDANT

The Defendant shall appear before the Court for sentencing in the above cases on January 5, 2000 at 1:30 p.m. in the courtroom of the Cherokee County Courthouse, Centre, Alabama, and the Defendant is presently in the custody of the Department of Corrections. It is therefore,

**ORDERED** that the Sheriff of Cherokee County, Alabama, or his duly authorized deputy, shall transport the Defendant from the custody of the Department of Corrections, to the Cherokee County Jail for the sentencing in the above cases.

At the conclusion the Sheriff shall redeliver the Defendant to the custody of the Department of Corrections.

Done this ___13___ day of December, 1999.

_____
DAVID A. RAINS, CIRCUIT JUDGE

ORDER TO TRANSPORT
CHEROKEE COUNTY, ALABAMA


Copies to:                    Attorney for:

Mr. Michael E. O'Dell         State of Alabama
Mr. Robert F. Johnston

Mr. H. Bayne Smith            Keith Edmund Gavin
Mr. John H. Ufford

Hon. Roy Wynn
Sheriff, DeKalb County

Mr. Cecil Atchison
Transfer Agent
Alabama Department of Corrections
50 South Ripley Street
Montgomery, Alabama  36130

| STATE OF ALABAMA, | * | IN THE CIRCUIT COURT FOR |
| | * | |
| PLAINTIFF | * | |
| | * | |
| VS. | * | CHEROKEE COUNTY, ALABAMA |
| | * | |
| KEITH EDMUND GAVIN, | * | |
| | * | |
| DEFENDANT | * | CASE NO: CC-98-61 and |
| | * | CC-98-62 |

## ORDER TO TRANSPORT DEFENDANT

The Defendant's sentencing hearing in the above cases is set on December 6, 1999, at 2:00 p.m. in the courtroom of the Cherokee County Courthouse, Centre, Alabama.    Prior  to  the  sentencing hearing a presentence report shall be prepared and submitted in accordance with Rule 26.3 ARCrP and Title 13A-5-47 Code of Alabama (1975).   At the conclusion of the sentencing hearing the Court expects to take the sentencing determination under consideration for announcement of the Court's findings and imposition of the sentence at a later date.

The Defendant is presently in the custody of the Department of Corrections.  It is therefore, **ORDERED** that the Sheriff of Cherokee County, Alabama, or his duly authorized deputy, shall transport the Defendant from the custody of the Department of Corrections, to the Cherokee County Jail for the hearing in the above cases.

At the conclusion the Sheriff shall redeliver the Defendant to the custody of the Department of Corrections.

ORDER TO TRANSPORT
CHEROKEE COUNTY, ALABAMA


Done this ___/5___ day of November, 1999.

DAVID A. RAINS, CIRCUIT JUDGE


Copies to:                        Attorney for:

Mr. Michael E. O'Dell             State of Alabama
Mr. Robert F. Johnston

Mr. H. Bayne Smith                Keith Edmund Gavin
Mr. John H. Ufford

Hon. Roy Wynn
Sheriff, DeKalb County

Mr. Whitt L. Latham,
Probation Officer

Mr. Cecil Atchison
Transfer Agent
Alabama Department of Corrections
50 South Ripley Street
Montgomery, Alabama  36130

STATE OF ALABAMA,           *    IN THE CIRCUIT COURT FOR
                      *
    PLAINTIFF           *
                      *
VS.                  *    DEKALB COUNTY, ALABAMA
                      *
KEITH EDMUND GAVIN,      *
                      *
    DEFENDANT           *    CASE NO:  CC-98-61

## O R D E R

The Defendant was found guilty of Capital Murder on November 6, 1999, and on November 8, 1999, the jury recommended a sentence of death.  A sentence determination hearing is scheduled for December 6, 1999, at 2:00 p.m. in the courtroom of the Cherokee County Courthouse, Centre, Alabama.

Pending further Orders of this Court the Defendant shall be confined in the custody of the Department of Corrections at the St. Clair Correctional Facility, or such other penal institution as the Department of Corrections may deem appropriate.

Done this ____9th____ day of November, 1999.

_____
DAVID A. RAINS, CIRCUIT JUDGE

Copies to:                  Attorney for:

Mr. Michael E. O'Dell        State of Alabama
Mr. Robert F. Johnston

Mr. H. Bayne Smith          Keith Edmund Gavin
Mr. John H. Ufford

Hon. Roy Wynn,
Sheriff

Deputy, Richard Wood
(by facsimile)

Warden, Steve Dees
(by facsimile)

| LEAVE BLANK | CRIMINAL | (STAPLE HERE) | LEAVE BLANK |
|---|---|---|---|

STATE USAGE

NFF SECOND

SUBMISSION    APPROXIMATE CLASS    AMPUTATION    SCAR

STATE USAGE

LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX

Gavin, Keith Edmund

SIGNATURE OF PERSON FINGERPRINTED

SOCIAL SECURITY NO.

LEAVE BLANK

ALIASES/MAIDEN
LAST NAME, FIRST NAME, MIDDLE NAME, SUFFIX

| FBI NO. | STATE IDENTIFICATION NO. | DATE OF BIRTH   MM   DD   YY | SEX | RACE | HEIGHT | WEIGHT | EYES | HAIR |
|---|---|---|---|---|---|---|---|---|
| | | 3  30  60 | M | B | 5'8" | 145 | Brown | Bl |

| 1. R. THUMB | 2. R. INDEX | 3. R. MIDDLE | 4. R. RING | 5. R. LITTLE |
|---|---|---|---|---|

| 6. L. THUMB | 7. L. INDEX | 8. L. MIDDLE | 9. L. RING | 10. L. LITTLE |
|---|---|---|---|---|

LEFT FOUR FINGERS TAKEN SIMULTANEOUSLY | L. THUMB | R. THUMB | RIGHT FOUR FINGERS TAKEN SIMULTANEOUSLY

DERAL BUREAU OF INVESTIGATION, UNITED STATES DEPARTMENT OF JUSTICE
WASHINGTON, D.C. 20537

L. 93-579) REQUIRES THAT FEDERAL, STATE, OR LOCAL AGENCIES INFORM INDIVIDUALS WHOSE SOCIAL SECURITY NUMBER IS REQUESTED WHETHER
NDATORY OR VOLUNTARY, BASIS OF AUTHORITY FOR SUCH SOLICITATION, AND USES WHICH WILL BE MADE OF IT.

| | DATE OF ARREST | ORI | |
|---|---|---|---|
| YES ☐ | MM  DD  YY | CONTRIBUTOR | AL003025C |
| | | ADDRESS | DEPT OF CORR |
| YES ☐ | | | MONTGOMERY AL |
| | | REPLY   YES ☐ | |
| | | DESIRED? | |

| | DATE OF OFFENSE | PLACE OF BIRTH (STATE OR COUNTRY) | COUNTRY OF CITIZENSHIP |
|---|---|---|---|
| | MM  DD  YY | Chicago, Illinois | U.S.A. |

RS | SCARS, MARKS, TATTOOS, AND AMPUTATIONS

| | RESIDENCE/COMPLETE ADDRESS | CITY | STATE |
|---|---|---|---|

IPRINTS | LOCAL IDENTIFICATION/REFERENCE | PHOTO AVAILABLE? YES ☐ | PALM PRINTS TAKEN? YES ☐

, C Class.
Spca

VERNMENT, INDICATE SPECIFIC AGENCY.
Y, LIST BRANCH OF SERVICE AND SERIAL NO. | OCCUPATION

DISPOSITION
1.

2.

3

ADDITIONAL

BASIS FOR CAUTION | STATE BUREAU STAMP

☆U.S. GPO: 1966—405-015/20032





## State of Alabama
## Alabama Department of Corrections
Central Records Office
P. O. Box 301501
Montgomery, AL 36130

**BOB RILEY**
GOVERNOR

**DONAL CAMPBELL**
COMMISSIONER

November 30, 2005

Mr. Jasper B Roberts Jr
Office of the Attorney General
11 South Union Street
Montgomery AL 36130

Dear Mr. Roberts:

This is to certify that I (Kathy Holt) am Director, Central Records Office, and that I am the legal custodian of inmate central records on file with the Alabama Department of Corrections and the enclosed or attached documents are true and correct copies taken directly from the records on file with the Department of Corrections and pertain to none other than the person whose name appears hereon:

| Keith Edmund Gavin | 00Z665 | B/M | Cherokee |
|---|---|---|---|
| NAME | NUMBER | R&S | COUNTY |

DOCUMENTS ENCLOSED/ATTACHED

(A) Inmate's Central Records file

KATHY HOLT
Director of Records

SWORN TO AND SUBSCRIBED BEFORE ME
THIS THE 30th DAY OF NOVEMBER 2005

Mary Ann Little, Notary Public
State of Alabama at Large
MY COMMISSION EXPIRES JULY 19, 2006

Telephone (334) 353-9500                Fax (334) 353-9735

NOV- 9-99 TUE 12:53 AM  DEKALB CO CIRCUIT COURT    FAX NO. 12564352999              P. 2

SK 843

| | | |
|---|---|---|
| STATE OF ALABAMA, | * | IN THE CIRCUIT COURT FOR |
|     PLAINTIFF | * | |
| | * | |
| VS. | * | DEKALB COUNTY, ALABAMA |
| | * | |
| KEITH EDMUND GAVIN, | * | |
| | * | |
|     DEFENDANT | * | CASE NO: CC-99-61 |

## O R D E R

290

The Defendant was found guilty of Capital Murder on November 6, 1999, and on November 8, 1999, the jury recommended a sentence of death.   A sentence determination hearing is scheduled for December 6, 1999, at 2:00 p.m. in the courtroom of the Cherokee County Courthouse, Centre, Alabama.

Pending further Orders of this Court the Defendant shall be confined in the custody of the Department of Corrections at the St. Clair Correctional Facility, or such other penal institution as the Department of Corrections may deem appropriate.

Done this __9th__ day of November, 1999.

DAVID A. RAINS, CIRCUIT JUDGE

Copies to:

Mr. Michael E. O'Dell
Mr. Robert F. Johnston

Mr. H. Bayne Smith
Mr. John H. Ufford

Hon. Roy Wynn,
Sheriff

Deputy, Richard Wood
(by facsimile)

Warden, Steve Dees
(by facsimile)

Attorney for:

State of Alabama

Keith Edmund Gavin

ENTERED, TERMINALS
ATE 11/10/99 BY JL
informed SCCF
& SK.H.